**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| UNITED SERVICES AUTOMOBILE ASSOCIATION a Texas reciprocal inter-insurance exchange, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 2:18-CV-366 JURY TRIAL DEMANDED |
| WELLS FARGO BANK, N.A., a national banking association, | ) ) ) | |
| Defendant. | ) | |

---

**DEFENDANT WELLS FARGO BANK, N.A.'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT**

---

Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), by and through its undersigned counsel, responds to the allegations of Plaintiff's Complaint as follows:

The first paragraph of the Complaint is an introductory paragraph that does not require a response by Wells Fargo.  To the extent that this introductory paragraph requires a response, Wells Fargo admits that the Complaint purports to have been filed by United Services Automobile Association ("USAA"), a Texas reciprocal inter-insurance exchange, by and through its undersigned counsel of Irell & Manella LLP and Parker, Bunt & Ainsworth, P.C.

## I.     THE PARTIES

1.     Wells Fargo admits that "USAA is a reciprocal inter-insurance exchange and unincorporated association organized under the laws of the State of Texas having its principal place of business at 9800 Fredericksburg Road, San Antonio, Texas 78288."  Wells Fargo further admits that the USAA family of companies provides insurance, banking, investments, retirement

products and services to members of the military and their eligible family members.  Wells Fargo further admits that USAA "does business in this judicial district, and through its website at www.usaa.com and USAA Mobile smartphone applications."  Unless specifically admitted, Wells Fargo is without knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 1 of the Complaint and, on that basis, denies all such allegations.

2.      Wells Fargo admits the allegations of paragraph 2 of the Complaint.

## II.      JURISDICTION AND VENUE

3.      Wells Fargo admits that this Court has subject matter jurisdiction over this action.

4.      Wells Fargo admits it is registered to do business in Texas and maintains an agent authorized to receive service of process within Texas.  Wells Fargo further admits that it operates bank branches and ATMs in the state of Texas and in this judicial district.  Unless specifically admitted, Wells Fargo denies the remaining allegations of paragraph 4 of the Complaint, including (but not limited to) any allegation that Wells Fargo has committed any act of infringement within this judicial district, the State of Texas, or elsewhere in the United States.

5.      While Wells Fargo does not contest that venue is proper in this judicial district, venue is not convenient for Wells Fargo and its witnesses, and Wells Fargo reserves the right to seek transfer pursuant to 28 U.S.C. § 1404.  Wells Fargo denies that it has committed any act of infringement within this judicial district, the State of Texas, or elsewhere in the United States that would render venue proper under 28 U.S.C. § 1400(b).

### III.    ONGOING LITIGATION

6.    Wells Fargo admits there is another patent infringement case pending against Wells Fargo, Case No. 2:18-cv-245, which was filed on June 7, 2018.  Wells Fargo further admits that the two suits involve different patent families. Wells Fargo also admits that two of the patents asserted in the instant complaint did not issue until after the 2:18-cv-245 case was filed.    Unless specifically admitted, Wells Fargo denies the remaining allegations of paragraph 6 of the Complaint.

### IV.    FACTUAL ALLEGATIONS

The USAA Patents-in-Suit

7.    Wells Fargo admits that the '136, '332, '681, '227, and '605 Patents list USAA as the assignee.  Wells Fargo is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 7 of the Complaint and, on that basis, denies all such allegations.

The '136, '332, and '681 Patents

8.    Wells Fargo admits that the '136, '332, and '681 Patents are entitled "Systems and methods for remote deposit of checks," and indicate on their face that Charles Lee Oakes III, randy Ray Morlen, Bharat Prasad, and Troy Bartlette Hugh are inventors.  Wells Fargo further admits that paragraph 8 of the Complaint includes a figure from the '136, '332, and '681 Patents. Unless specifically admitted, Wells Fargo denies the remaining allegations of paragraph 8 of the Complaint, including (but not limited to) any allegation that Wells Fargo has committed any act of infringement, and any allegation that the '136, '332, and '681 Patents are directed to any improvements over the prior art.

9.    Wells Fargo admits that the '136, '332, and '681 Patents state, "[t]he described embodiments contemplate a system, method and computer-readable medium with computer-

executable instructions for remotely redeeming a negotiable instrument." Wells Fargo further admits that the '136, '332, and '681 Patents state, "[a] log file may be generated comprising one or more of said first image and said second image, in addition to a variety of other potentially useful information for processing and/or trouble-shooting the deposit transaction."    Wells Fargo further admits that the '136, '332, and '681 Patents state, "[u]pon receipt of check images, an Optical Character Recognition (OCR) process may be invoked to determine certain information about the check."  Unless specifically admitted, Wells Fargo denies the remaining allegations of paragraph 9 of the Complaint, including (but not limited to) any allegation that the '136, '332, and '681 Patents provide any improvements over the prior art.

<u>The '227 and '605 Patents</u>

10.     Wells Fargo admits the '227 Patent is entitled "Systems and methods for remote deposit of checks," and the '605 Patent is entitled "Digital camera processing system."  Wells Fargo admits that the '227 and '605 Patents indicate on their face that Charles Lee Oakes, III, Randy Ray Morlen, Michael Frank Morris, Reynaldo Medina, III, Greg Alan Harpel, Gabriel Glenn Gavia, Bharat Prasad, Frank Kyle Major, and Jeffrey Neal Pollack are inventors.  Wells Fargo further admits that paragraph 10 of the Complaint includes a figure from the '227 and '605 Patents.  Unless specifically admitted, Wells Fargo denies the remaining allegations of paragraph 10 of the Complaint, including (but not limited to) any allegation that Wells Fargo has committed any act of infringement, and any allegation that the '227 or '605 Patents are directed to any improvements over the prior art.

11.     Wells Fargo admits the '227 Patent is entitled "Systems and methods for remote deposit of checks," and the '605 Patent is entitled "Digital camera processing system."  Unless specifically admitted, Wells Fargo denies the remaining allegations of paragraph 11 of the

Complaint, including (but not limited to) any allegation that the '227 and '605 Patents were new, novel, and useful, provide any improvements over the prior art, or solve discrete, technological problems associated with computer systems.

**Wells Fargo's [Alleged] Infringement**

12.     Wells Fargo admits the allegations of paragraph 12 of the Complaint.

13.     Wells Fargo expressly denies any allegation it committed acts of patent infringement.  Wells Fargo admits that USAA collectively refers to Wells Fargo's remote deposit capture systems as "Wells Fargo Mobile Deposit" in the Complaint.  Unless specifically admitted, Wells Fargo denies the remaining allegations of paragraph 13 of the Complaint.

14.     Wells Fargo is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 14 of the Complaint and, on that basis, denies all such allegations.

15.     Wells Fargo admits that on June 26, 2012, a Wells Fargo representative—identified as Brian Pearce—is quoted as stating about mobile deposit that "[i]t's the service our mobile customers request most often," and that "[t]here's a lot of demand for this service." Unless specifically admitted, Wells Fargo denies the remaining allegations of paragraph 15 of the Complaint.

16.     Wells Fargo admits the allegations of paragraph 16 of the Complaint.

17.     Wells Fargo admits the allegations of paragraph 17 of the Complaint.

18.     Wells Fargo admits that Mobile Deposit is incorporated into the "Wells Fargo Mobile" iPhone and Android applications, where it is highlighted as a feature in the applications' descriptions.  Wells Fargo further admits that "[a]ccording to the Google Play Store, Wells Fargo Mobile has been downloaded over 10 million times on Android devices."  Wells Fargo further

admits that (as of the date of the Complaint) "Wells Fargo Mobile for iPhone" has a "ranking [of] #8 on the iTunes App Store's Finance category."  Unless specifically admitted, Wells Fargo denies the remaining allegations of paragraph 18 of the Complaint.

19.     Wells Fargo admits that "Wells Fargo Mobile Deposit allows customers to deposit checks remotely," and that this process may include the steps of "identifying an account for deposit, [and] entering the dollar amount of the deposit."  Wells Fargo further admits that sequence of screenshots in paragraph 19 of the Complaint could be found on Wells Fargo's website as of the filing of this Answer.  Unless specifically admitted, Wells Fargo denies the remaining allegations of paragraph 19 of the Complaint.

20.     Wells Fargo denies the allegations of paragraph 20 of the Complaint.

21.     Wells Fargo denies the allegations of paragraph 21 of the Complaint.

22.     Wells Fargo admits that USAA approached Wells Fargo in August 2017 to discuss USAA's Remote Deposit Capture (RDC) patents.  Wells Fargo denies any allegation that Wells Fargo has committed any act of infringement.  Unless specifically admitted, Wells Fargo is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 22 of the Complaint and, on that basis, denies all such allegations.

## V.     FIRST CLAIM FOR RELIEF – '136 PATENT

23.     Paragraph 23 does not require a response by Wells Fargo.

24.     Wells Fargo admits that the '136 Patent is entitled "Systems and methods for remote deposit of checks" and indicates on its face that it issued on December 29, 2015.   Wells Fargo admits that Exhibit 1 to the Complaint purports to be a copy of the '136 Patent.  Wells Fargo denies that the '136 Patent was duly and lawfully issued.  Any remaining allegations are denied.

25.     Wells Fargo admits that the '136 Patent lists USAA as the assignee. Unless specifically admitted, Wells Fargo denies the remaining allegations of paragraph 25 of the Complaint, including (but not limited to) any allegation that Wells Fargo has committed any act of infringement (whether literal or under the doctrine of equivalents).

26.     Wells Fargo admits that Wells Fargo Mobile Deposit is accessible from Android or iPhone smartphones.  Any remaining allegations of paragraph 26 of the Complaint are denied.

27.     Wells Fargo admits that Wells Fargo Mobile Deposit is accessible from Android or iPhone smartphones.  Any remaining allegations of paragraph 27 of the Complaint are denied.

28.     Wells Fargo admits that the version of Wells Fargo Mobile Deposit depicted in paragraph 28 of the Complaint instructs the user to indicate the amount to be deposited and the account into which the check is to be deposited.  Unless specifically admitted, Wells Fargo denies the remaining allegations of paragraph 28 of the Complaint.

29.     Wells Fargo denies the allegations of paragraph 29 of the Complaint.

30.     Wells Fargo denies the allegations of paragraph 30 of the Complaint.

31.     Wells Fargo admits that USAA has approached Wells Fargo regarding licensing of USAA's mobile deposit patents.  Unless specifically admitted, Wells Fargo denies the remaining allegations of paragraph 31 of the Complaint, including (but not limited to) any allegation that Wells Fargo has committed any act of infringement.

32.     Wells Fargo denies the allegations of paragraph 32 of the Complaint.

33.     Wells Fargo denies the allegations of paragraph 33 of the Complaint.

34.     Wells Fargo denies the allegations of paragraph 34 of the Complaint.

35.     Wells Fargo denies the allegations of paragraph 35 of the Complaint.

36.     Wells Fargo denies the allegations of paragraph 36 of the Complaint.

37.     Wells Fargo denies the allegations of paragraph 37 of the Complaint.

## VI.     SECOND CLAIM FOR RELIEF – '332 PATENT

38.     Paragraph 38 does not require a response by Wells Fargo.

39.     Wells Fargo admits that the '332 Patent is entitled "Systems and methods for remote deposit of checks," and indicates on its face that it issued on March 5, 2013.  Wells Fargo admits that Exhibit 2 to the Complaint purports to be a copy of the '332 patent.  Wells Fargo denies that the '332 patent was duly and lawfully issued.  Any remaining allegations are denied.

40.     Wells Fargo admits that the '332 Patent lists USAA as the assignee.  Unless specifically admitted, Wells Fargo denies the remaining allegations of paragraph 40 of the Complaint.

41.     Wells Fargo denies the allegations of paragraph 41 of the Complaint.

42.     Wells Fargo admits that Wells Fargo Mobile Deposit is accessible from Android or iPhone smartphones.  Any remaining allegations of paragraph 42 of the Complaint are denied.

43.     Wells Fargo admits that Wells Fargo Mobile Deposit is accessible from Android or iPhone smartphones.  Any remaining allegations of paragraph 43 of the Complaint are denied.

44.     Wells Fargo admits that the version of Wells Fargo Mobile Deposit depicted in paragraph 44 of the Complaint instructs the user to indicate the amount to be deposited and the account into which the check is to be deposited.  Unless specifically admitted, Wells Fargo denies the remaining allegations of paragraph 44 of the Complaint.

45.     Wells Fargo denies the allegations of paragraph 45 of the Complaint.

46.     Wells Fargo denies the allegations of paragraph 46 of the Complaint.

47.     Wells Fargo denies the allegations of paragraph 47 of the Complaint.

48.     Wells Fargo admits that USAA has approached Wells Fargo regarding licensing of USAA's mobile deposit patents.  Unless specifically admitted, Wells Fargo denies the remaining allegations of paragraph 48 of the Complaint, including (but not limited to) any allegation that Wells Fargo has committed any act of infringement.

49.     Wells Fargo denies the allegations of paragraph 49 of the Complaint.

50.     Wells Fargo denies the allegations of paragraph 50 of the Complaint.

51.     Wells Fargo denies the allegations of paragraph 51 of the Complaint.

52.     Wells Fargo denies the allegations of paragraph 52 of the Complaint.

53.     Wells Fargo denies the allegations of paragraph 53 of the Complaint.

54.     Wells Fargo denies the allegations of paragraph 54 of the Complaint.

55.     Wells Fargo denies the allegations of paragraph 55 of the Complaint.

## VII.     THIRD CLAIM FOR RELIEF – '681 PATENT

56.     Paragraph 56 does not require a response by Wells Fargo.

57.     Wells Fargo admits that the '681 Patent is entitled, "System and method for mobile check deposit," and indicates on its face that it issued on July 3, 2018.  Wells Fargo admits that Exhibit 3 to the Complaint purports to be a copy of the '681 Patent.  Wells Fargo denies that the '681 patent was duly and lawfully issued.  Any remaining allegations are denied.

58.     Wells Fargo admits that the '681 Patent lists USAA as the assignee.  Unless specifically admitted, Wells Fargo denies the remaining allegations of paragraph 58 of the Complaint, including (but not limited to) any allegations that Wells Fargo has committed any act of infringement either literally and/or under the doctrine of equivalents.

59.     Wells Fargo admits that Wells Fargo Mobile Deposit is accessible from Android or iPhone smartphones.  Any remaining allegations of paragraph 59 of the Complaint are denied.

60.    Wells Fargo admits that Wells Fargo Mobile Deposit is accessible from Android or iPhone smartphones.  Any remaining allegations of paragraph 60 of the Complaint are denied.

61.    Wells Fargo admits that the version of Wells Fargo Mobile Deposit depicted in paragraph 61 of the Complaint instructs the user to indicate the amount to be deposited and the account into which the check is to be deposited.  Unless specifically admitted, Wells Fargo denies the remaining allegations of paragraph 61 of the Complaint.

62.    Wells Fargo denies the allegations of paragraph 62 of the Complaint.

63.    Wells Fargo admits that the version of Wells Fargo Mobile Deposit depicted in paragraph 63 of the Complaint states, "Center check and hold steady."  Unless specifically admitted, Wells Fargo denies the remaining allegations of paragraph 63 of the Complaint.

64.    Wells Fargo denies the allegations of paragraph 64 of the Complaint.

65.    Wells Fargo denies the allegations of paragraph 65 of the Complaint.

66.    Wells Fargo denies the allegations of paragraph 66 of the Complaint.

67.    Wells Fargo admits that USAA has approached Wells Fargo regarding licensing of USAA's mobile deposit patents.  Unless specifically admitted, Wells Fargo denies the remaining allegations of paragraph 67 of the Complaint, including (but not limited to) any allegation that Wells Fargo has committed any act of infringement.

68.    Wells Fargo denies the allegations of paragraph 68 of the Complaint.

69.    Wells Fargo denies the allegations of paragraph 69 of the Complaint.

70.    Wells Fargo denies the allegations of paragraph 70 of the Complaint.

71.    Wells Fargo denies the allegations of paragraph 71 of the Complaint.

72.    Wells Fargo denies the allegations of paragraph 72 of the Complaint.

73.    Wells Fargo denies the allegations of paragraph 73 of the Complaint.

74.     Wells Fargo denies the allegations of paragraph 74 of the Complaint.

## VIII.   FOURTH CLAIM FOR RELIEF – '227 PATENT

75.     Paragraph 75 does not require a response by Wells Fargo.

76.     Wells Fargo admits that the '227 Patent is entitled "Systems and methods for remote deposit of checks," and indicates on its face that it issued on April 24, 2014.  Wells Fargo admits that Exhibit 4 to the Complaint purports to be a copy of the '227 patent.  Wells Fargo denies that the '227 patent was duly and lawfully issued. Any remaining allegations are denied.

77.     Wells Fargo admits that the '227 Patent lists USAA as the assignee.  Unless specifically admitted, Wells Fargo denies the remaining allegations of paragraph 77 of the Complaint.

78.     Wells Fargo admits that Wells Fargo Mobile Deposit is accessible from Android or iPhone smartphones.  Any remaining allegations of paragraph 78 of the Complaint are denied.

79.     Wells Fargo admits that Wells Fargo Mobile Deposit is accessible from Android or iPhone smartphones.  Any remaining allegations of paragraph 79 of the Complaint are denied.

80.     Wells Fargo admits that the version of Wells Fargo Mobile Deposit depicted in paragraph 80 of the Complaint instructs the user to indicate the amount to be deposited and the account into which the check is to be deposited.  Unless specifically admitted, Wells Fargo denies the remaining allegations of paragraph 80 of the Complaint.

81.     Wells Fargo denies the allegations of paragraph 81 of the Complaint.

82.     Wells Fargo admits that the version of Wells Fargo Mobile Deposit depicted in paragraph 82 of the Complaint states, "Center check and hold steady."  Unless specifically admitted, Wells Fargo denies the remaining allegations of paragraph 82 of the Complaint.

83.     Wells Fargo denies the allegations of paragraph 83 of the Complaint.

84.     Wells Fargo denies the allegations of paragraph 84 of the Complaint.

85.     Wells Fargo denies the allegations of paragraph 85 of the Complaint.

86.     Wells Fargo denies the allegations of paragraph 86 of the Complaint.

87.     Wells Fargo admits that USAA has approached Wells Fargo regarding licensing of USAA's mobile deposit patents.  Unless specifically admitted, Wells Fargo denies the remaining allegations of paragraph 87 of the Complaint, including (but not limited to) any allegation that Wells Fargo has committed any act of infringement.

88.     Wells Fargo denies the allegations of paragraph 88 of the Complaint.

89.     Wells Fargo denies the allegations of paragraph 89 of the Complaint.

90.     Wells Fargo denies the allegations of paragraph 90 of the Complaint.

91.     Wells Fargo denies the allegations of paragraph 91 of the Complaint.

92.     Wells Fargo denies the allegations of paragraph 92 of the Complaint.

93.     Wells Fargo denies the allegations of paragraph 93 of the Complaint.

94.     Wells Fargo denies the allegations of paragraph 94 of the Complaint.

## V.     FIFTH CLAIM FOR RELIEF – '605 PATENT

95.     Paragraph 95 does not require a response by Wells Fargo.

96.     Wells Fargo admits that the '605 Patent is entitled "Digital camera processing system," and indicates on its face that it issued on May 10, 2016.  Wells Fargo admits that Exhibit 5 to the Complaint purports to be a copy of the '605 Patent.  Wells Fargo denies that the '605 patent was duly and lawfully issued.  Any remaining allegations are denied.

97.     Wells Fargo admits that the '605 Patent lists USAA as the assignee.  Unless specifically admitted, Wells Fargo denies the remaining allegations of paragraph 97 of the Complaint.

98.     Wells Fargo admits that Wells Fargo Mobile Deposit is accessible from Android or iPhone smartphones.  Any remaining allegations of paragraph 98 of the Complaint are denied.

99.     Wells Fargo admits that Wells Fargo Mobile Deposit is accessible from Android or iPhone smartphones.  Any remaining allegations of paragraph 99 of the Complaint are denied.

100.    Wells Fargo denies the allegations of paragraph 100 of the Complaint.

101.    Wells Fargo admits that the version of Wells Fargo Mobile Deposit depicted in paragraph 101 of the Complaint instructs the user to indicate the amount to be deposited and the account into which the check is to be deposited. Unless specifically admitted, Wells Fargo denies the remaining allegations in paragraph 101 of the Complaint.

102.    Wells Fargo denies the allegations of paragraph 102 of the Complaint.

103.    Wells Fargo admits that the version of Wells Fargo Mobile Deposit depicted in paragraph 103 of the Complaint states, "Center check and hold steady."  Unless specifically admitted, Wells Fargo denies the remaining allegations of paragraph 103 of the Complaint.

104.    Wells Fargo denies the allegations of paragraph 104 of the Complaint.

105.    Wells Fargo denies the allegations of paragraph 105 of the Complaint.

106.    Wells Fargo denies the allegations of paragraph 106 of the Complaint.

107.    Wells Fargo denies the allegations of paragraph 107 of the Complaint.

108.    Wells Fargo denies the allegations of paragraph 108 of the Complaint.

109.    Wells Fargo admits that USAA has approached Wells Fargo regarding licensing of USAA's mobile deposit patents.  Unless specifically admitted, Wells Fargo denies the remaining allegations of paragraph 109 of the Complaint, including (but not limited to) any allegation that Wells Fargo has committed any act of infringement.

110.    Wells Fargo denies the allegations of paragraph 110 of the Complaint.

111.    Wells Fargo denies the allegations of paragraph 111 of the Complaint.

112.    Wells Fargo denies the allegations of paragraph 112 of the Complaint.

113.    Wells Fargo denies the allegations of paragraph 113 of the Complaint.

114.    Wells Fargo denies the allegations of paragraph 114 of the Complaint.

115.    Wells Fargo denies the allegations of paragraph 115 of the Complaint.

116.    Wells Fargo denies the allegations of paragraph 116 of the Complaint.

## VI.    <u>PRAYER FOR RELIEF</u>

Wells Fargo denies that USAA is entitled to any relief from Wells Fargo and denies all of the allegations contained paragraphs "A." through "H." of USAA's Prayer for Relief.

## VII.    <u>DEMAND FOR JURY TRIAL</u>

117.    Wells Fargo admits that the Complaint sets forth a request for trial by jury.

## AFFIRMATIVE DEFENSES

Wells Fargo's Affirmative Defenses are listed below.  Wells Fargo reserves the right to Amend its Answer to add additional affirmative defenses, including allegations of inequitable conduct, consistent with the facts discovered in this case.

### FIRST DEFENSE
### (Non-Infringement)

1.     Wells Fargo does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement)), and/or under the doctrine of equivalents, any valid, enforceable claim of U.S. Patent Nos. 9,224,136; 8,392,332; 10,013,681; 8,708,227; and 10,013,605 ("the Asserted Patents").

### SECOND DEFENSE
### (Invalidity)

2.     Each asserted claim of the Asserted Patents is invalid for failure to comply with one or more requirements of United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112, and the rules, regulations, and laws pertaining thereto.

### THIRD DEFENSE
### (Limitation on Damages)

3.     To the extent that USAA failed to properly mark any of its relevant products as required by 35 U.S.C. § 287 or otherwise give proper notice that Wells Fargo's actions allegedly infringed the Asserted Patents, Wells Fargo is not liable to USAA for the acts alleged to have been performed before it received actual notice that it was allegedly infringing the Asserted Patents. Accordingly, upon information and belief, USAA's claims for recovery of alleged damages may be limited by 35 U.S.C. § 287.  In addition, upon information and belief, USAA's claims for

recovery of alleged damages are limited by 35 U.S.C. § 286, and USAA is barred from recovering

costs in connection with this action under 35 U.S.C. § 288.

## FOURTH DEFENSE
### (Lack of Knowledge)

4.     To the extent that USAA asserts that Wells Fargo indirectly infringes, either by

contributory infringement or inducement of infringement, Wells Fargo is not liable to USAA for

the acts alleged to have been performed before Wells Fargo knew that its actions would allegedly

cause indirect infringement.

## FIFTH DEFENSE
### (Prosecution History Estoppel/Disclaimer)

5.     USAA's claims are barred, in whole or in part, based on prosecution history

estoppel and/or prosecution history disclaimer.

## SIXTH DEFENSE
### (Equitable Defenses)

6.     On information and belief, USAA's claims are barred, in whole or in part, by

equitable doctrines including the doctrines of waiver, laches, acquiescence, unclean hands, and/or

equitable estoppel.

## SEVENTH DEFENSE
### (License)

7.     On information and belief, USAA's claims are barred, at least in part, by the

existence of licenses or releases between USAA and other third-parties.  For example, USAA sued

Mitek Systems, Inc., the leading technology company for mobile check deposit, in March 2012 in

the United States District Court for the Western District of Texas in connection with Mitek

Systems' Mobile Deposit product and its patents related to mobile check deposit technology (with

a provisional application filed as early as January 18, 2008).  On information and belief, at least

by July 2014, 2500 banks, including all of the top ten retail banks, had chosen to use Mitek

Systems' Mobile Deposit product.  Wells Fargo was one such bank.  In September 2014, USAA and Mitek Systems reached a full settlement of all claims and issues between the parties, and in connection therewith, USAA dismissed with prejudice its claims and counterclaims of misappropriation of trade secrets, breach of contract, reimbursement, fraud and fraudulent inducement, correction of inventorship, and invalidity of Mitek Systems' patents asserted in that litigation.  Accordingly, USAA's claims alleged in this case against Wells Fargo are barred by license or release.

## PRAYER FOR RELIEF ON PLAINTIFF'S COMPLAINT

WHEREFORE, Wells Fargo asks this Court to enter judgment in Wells Fargo's favor and against USAA by granting the following relief:

a)      Dismissal of all claims in USAA's Complaint with prejudice and a complete denial of USAA's request for a judgment of infringement, validity, enforceability, damages, interest, costs, and any other form of relief; and

b)      An award to Wells Fargo of its reasonable attorneys' fees, costs, and all interest (including without limitation any attorney fee awards based upon 35 U.S.C. § 285) and any such other and further relief as the Court finds just and proper.

## COUNTERCLAIMS

1.      For its Counterclaims against Counterclaim Defendant United Services Automobile Association ("USAA"), Counterclaim Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo"), based on personal knowledge as to all acts or events that it has undertaken or witnessed, and upon information and belief as to all others, alleges the following.  Wells Fargo reserves the right to amend its Counterclaims further to add additional counts, including allegations of inequitable conduct, consistent with the facts discovered in this case.

## NATURE OF THE ACTION

2.      This is an action by Defendant and Counterclaim Plaintiff Wells Fargo pursuant to Rule 13 of the Federal Rules of Civil Procedure for declarations of non-infringement and invalidity of U.S. Patent Nos. 9,224,136 ("'136 Patent"); 8,392,332 ("'332 Patent"); 10,013,681 ("'681 Patent"); 8,708,227 ("'227 Patent"); and 10,013,605 ("'605 Patent") (the "Asserted Patents"). Counterclaim Plaintiff Wells Fargo strongly denies any claims of patent infringement. Taking and processing check images using a digital camera or mobile device was well-understood, routine, and conventional prior to the Asserted Patents. Counterclaim Plaintiff Wells Fargo prioritizes providing its customers with a simple, easy-to-use, and customer-driven mobile banking experience.

## PARTIES

3.      Counterclaim Plaintiff Wells Fargo is a national banking association, with its principal place of business at 101 North Phillips Avenue, One Wachovia Center, Sioux Falls, SD 57104.

4.      On information and belief, and based on paragraph 1 of the Complaint as pled by USAA, Counterclaim Defendant USAA is an unincorporated association organized under the laws of the State of Texas, with a principal place of business at 9800 Fredericksburg Road, San Antonio, Texas 78288.

## JURISDICTION

5.      These counterclaims arise under the patent laws of the United States, Title 35, United States Code, or are so related to claims arising under Title 35, United States Code, as to form part of the same case or controversy under Article III of the United States Constitution.  The

jurisdiction of this Court is proper under at least 35 U.S.C. § 271 *et seq.*, and 28 U.S.C. §§ 1331, 1338, 1367, and 2201-02.

6.      Counterclaim Defendant USAA, based on averments in USAA's Complaint, claims to own all rights, title, and interest in and to the Asserted Patents and claims to possess all rights of recovery.  Counterclaim Defendant USAA has also claimed in its Complaint that Wells Fargo has infringed the Asserted Patents, which Wells Fargo expressly denies.

7.      Counterclaim Defendant USAA has consented to personal jurisdiction by commencing its action for patent infringement in this judicial district, as set forth in its Complaint.

8.      Counterclaim Defendant USAA has claimed that venue is proper in this judicial district under 28 U.S.C. § 1400(b), but venue is not convenient for Wells Fargo and Wells Fargo's witnesses and Wells Fargo reserves the right to seek transfer pursuant to 28 U.S.C. § 1404.  To the extent this action remains in this district, venue is appropriate for Wells Fargo's counterclaims because USAA has consented to venue in this Court by filing its claims for alleged patent infringement in this district.

## FACTUAL ALLEGATIONS

9.      The Asserted Patents purport to claim priority to U.S. Patent No. 7,873,200 filed on October 31, 2006.

### Prior Art Electronic Check Processing

10.      Electronic processing of financial transactions has a long history, dating back decades before the claimed priority dates of the Asserted Patents.

11.    For example, in the 1970s, Automated Clearing House (ACH) was created and allowed for electronic financial transactions such as direct deposit or direct debit.[1]

12.    ACH was used to convert checks into electronic payments.

13.    For example, ACH could be used in a point of purchase (POP) conversion, since September 1999, to convert checks into an electronic transaction at a cash register while the customer is present.  Point of purchase transactions convert checks at a cash register to an electronic transaction, void the check, and return it to a customer.[2]

14.    As another example, ACH could be used in an accounts receivable conversion (ARC), since March 2002, to convert checks mailed or deposited to a drop box to pay a customer's bill.[3]

15.    Additionally, the Federal Reserve in the 1990s attempted to shift away from paper via electronic check presentment (ECP).  In electronic check presentment, the MICR line and the amount of the check were electronically transmitted and a paper check or truncated check (substitute electronic check) would be transmitted later.  By 2002, 25% of checks deposited at Federal Reserve Bank offices were deposited using electronic check presentment.[4]

16.    Prior to the claimed priority date of the Asserted Patents, it was known that a check reader could read the MICR code on a paper check.

---

[1] *Automated Clearing Houses* (ACHs), Federal Reserve Bank of New York (May 2000) (attached as Exhibit 1), available at https://www.newyorkfed.org/aboutthefed/fedpoint/fed31.html.

[2] *POP, ARC and BOC—A Comparison*, Federal Reserve Banks, at 1(Jan. 7, 2009) (attached as Exhibit 2), available at https://web.archive.org/web/20090107101808/https://www.frbservices.org/files/eventseducation/pdf/pop_arc_boc_comparison.pdf.

[3] *Id.*

[4] David B. Humphrey & Robert Hunt, *Getting Rid of Paper: Savings From Check 21*, Working Paper No. 12-12, Research Department, Federal Reserve Bank of Philadelphia, at 9 (May 2012) (attached as Exhibit 3), available at https://philadelphiafed.org/-/media/research-and-data/publications/working-papers/2012/wp12-12.pdf.

17.     For example, U.S. Patent No. 5,237,620, issued on August 17, 1993, disclosed a check reader that "detects a MICR code on a check and generates electrical signals representative of the MICR code."[5]

18.     Additionally, U.S. Patent No. 5,444,616, issued on August 22, 1995, disclose a MICR reader that contains a "read head . . . that reads the account number from the magnetic ink characters 25 printed along the bottom edge of the check."[6]

19.     Another example is found in U.S. Patent No. 6,059,185, issued on May 9, 2000, which discloses a "MICR reader 200 to read the checking account information pre-printed on the check."[7]

20.     As yet another example, U.S. Patent No. 6,351,735, issued on February 26, 2002, discloses that "check reader 119 automatically scans the magnetic ink character recognition (MICR) data printed along the bottom edge of the customer's check."[8]

21.     Accordingly, electronic check presentment existed prior to the priority date of the Asserted Patents.

22.     Electronic check presentment, using MICR character recognition, existed prior to the priority date of the Asserted Patents.

23.     Electronic check presentment was well-understood, routine, and conventional prior to the priority date of the Asserted Patents.

24.     Electronic check presentment, using MICR character recognition, was well-understood, routine, and conventional prior to the priority date of the Asserted Patents.

---

[5] U.S. Patent No. 5,237,620 at Abstract (attached as Exhibit 4).

[6] U.S. Patent No. 5,444,616 at 9:55-57 (attached as Exhibit 5).

[7] U.S. Patent No. 6,059,185 at 3:49-50 (attached as Exhibit 6).

[8] U.S. Patent No. 6,351,735 at 10:60-63 (attached as Exhibit 7).

## Check 21 and Prior Art Check Imaging

25.     Check float accounts for the value of checks in process of transportation and/or collection, and represents the amount credited to the depositing bank before the value had been debited from the paying bank.  After planes were grounded in response to September 11, 2001, check float rose significantly to $47 billion, well in excess of the daily average of $766 million for the first eight months of 2001.[9]

26.     In response to concerns about check float after September 11, 2001, the Federal Reserve asked Congress to change the law to allow substitute images of checks to be legally the same as the original check.[10]

27.     In 2003, Congress passed the Check Clearing for the 21st Century Act, which has come to be more commonly known as "Check 21."  12 U.S.C. § 5001 *et seq.*

28.     Check 21 took effect in 2004 and allowed banks to take images of the front and back of a paper check, electronically transfer that, and print a substitute check (paper reproduction of the front and back of the original check) for delivery to banks that would not accept checks electronically.[11]

29.     Check 21 was recognized as opening the door to remote check deposit solutions, for example, in U.S. Patent No. 7,609,873, filed December 7, 2005:

> Traditionally, businesses have deposited checks received from, for example, customers by physically taking them to a branch of their bank and depositing them over the counter with a teller or dropping them into a night deposit box. The actual physical presentation of checks to be deposited was necessary because, under prior banking laws, the depository bank had to present the original of each check to the

---

[9] Jeffrey M. Lacker, *Payment System Disruptions and the Federal Reserve Following September 11, 2001*, The Federal Reserve Bank of Richmond, at 10 (Dec. 23, 2003) (attached as Exhibit 8).

[10] Humphrey, *Getting Rid of Paper*, at 2.

[11] Check Clearing for the 21st Century Act Foundation for Check 21 Compliance Training, Federal Financial Institutions Examination Council, (Oct. 16, 2004) (attached as Exhibit 9), available at https://web.archive.org/web/20041016100648/https://www.ffiec.gov/exam/check21/check21foundationdoc.htm

corresponding paying bank in order to clear the check. This changed in October of 2004 with the enactment of The Check Clearing for the 21st Century Act, commonly referred to Check 21. Check 21 removed the legal requirement that an original paper check had to be presented to obtain payment. Instead, banks can now use digital images to transport check data from the bank of first deposit to the paying bank. Thus, depositors now have the option of depositing checks electronically. In particular, when a depositor wishes to deposit one or more checks, an operator, such as an accounts receivable clerk, may scan each of the paper checks to be deposited using some type of a digital scanner to create an image of each check. The check images may then be transmitted electronically to the bank of first deposit. If any downstream bank, such as the paying bank, cannot process a check image, the image can be printed, according to certain specifications, to create what is known as a substitute check, which is the legal equivalent of the original paper check. Check 21 has thus opened the door for remote check deposit solutions wherein check images, rather than original paper checks, are used to make deposits, thereby enabling businesses to eliminate trips to the bank. In addition, the use of check images also reduces check transportation costs among banks and improves funds availability.[12]

30.    USAA also recognized the benefits of Check 21 as increasing productivity, in U.S. Patent Application Publication No. 2002/0097046, published May 5, 2005:

This invention allows bankers all across the continent to lessen their labor expenditures and manual operating costs, while increasing service options to their customers. Banking productivity will increase due to less paper processing. With the new Law, Check 21 century act (as of October 2004), substitute checks will allow banks to decrease paper trails, by allowing substitutes of the checks to be accepted. This invention will allow users and the banking industry to quickly adapt and make a comfortable transition using this tool as a "banker's handyman."[13]

31.    One method for processing check images under Check 21 is to take front and back images of a check and then process those images via optical character recognition to determine the financial data (account number and routing number) for further processing of the check.

[12] U.S. Patent No. 7,609,873 at 1:13-45 (attached as Exhibit 10).

[13] U.S. Patent Application Publication No. 2002/0097046 at ¶ [0011] (attached as Exhibit 11).

32.     Prior to the claimed priority date of the Asserted Patents, it was known that one could process images via optical character recognition ("OCR") to identify the text present in those images.

33.     For example, U.S. Patent No. 5,077,805, issued on May 7, 1990, discloses a system for optical character recognition using both "feature-based character recognition" and "template matching character recognition."[14]

34.     Additionally, U.S. Patent No. 5,091,968, issued on December 28, 1990, discloses an "optical scanner" that scans a document and compares to "predetermined character-identification patterns (templates)" to identify the characters in a document.[15]

35.     In another example, U.S. Patent No. 5,455,875, issued on August 3, 1993, discloses "optical character recognition logic" that processes "electronically stored document images" to identify the characters in the document.[16]

36.     In yet another example, U.S. Patent No. 6,148,102, issued on May 29, 1997, discloses a system for using optical character recognition and "recognizing text in a multicolor image."[17]

37.     In yet another example, the well-known document display and processing software suite, Adobe Acrobat, offered "Optical Character Recognition in 16 languages" with "legal, medical, scientific, and large user-defined dictionaries" as early as 2000 in its Adobe Acrobat Capture 3.0 release.[18]

---

[14] U.S. Patent No. 5,077,805 at Abstract (attached as Exhibit 12).

[15] U.S. Patent No. 5,091,968 at Abstract (attached as Exhibit 13).

[16] U.S. Patent No. 5,455,875 at Abstract (attached as Exhibit 14).

[17] U.S. Patent No. 6,148,102 at Abstract (attached as Exhibit 15).

[18] *Big Red Book*, Adobe Systems Incorporated (2000) at 10 (attached as Exhibit 16).

38.     In addition, prior to the claimed priority date of the Asserted Patents, it was known that one could take images of a check and then process those images via optical character recognition ("OCR").

39.     For example, U.S. Patent No. 5,345,090, issued on March 8, 1993, discloses a check reader with an "optical reader."  This patent explained that a signal "trigger[s] the optical detector circuitry to begin capturing image data for the purposes of capturing MICR line data for decoding. In this particular embodiment, the optical detector chip and associate circuitry and software utilizes a neural network technology."[19]

40.     Additionally, U.S. Patent No. 6,181,837, issued on January 30, 2001, discloses a check image system in which "checks 1 are then conveyed along the track 220 sequentially to digital imager 204 . . . .  The check images made by the imager are passed to the Optical Character Recognition device (OCR) 206."  The patent explains that the OCR device "through optical character recognition, decodes the MICR characters optically from the image."[20]

41.     As another example, U.S. Patent No. 6,473,519, issued on October 29, 2002 discloses an "imaging assembly [for] imaging the dollar amount line of a check [that] may be, for example, a full width imaging assembly having optics for imaging the full width of a check."[21]

42.     In sum, processing images via OCR to identify the text present in those images existed prior to the priority date of the Asserted Patents.

43.     Moreover, taking images of a check and then processing those images via OCR, existed prior to the priority date of the Asserted Patents.

---

[19] U.S. Patent No. 5,345,090 at Abstract and 7:8-12 (attached as Exhibit 17).

[20] U.S. Patent No. 6,181,837 at 14:20-25, and 14:61-63 (attached as Exhibit 18).

[21] U.S. Patent No. 6,473,519 at 16:32-35 (attached as Exhibit 19).

44.     Processing images via OCR to identify the text present in those images was well-understood, routine, and conventional prior to the priority date of the Asserted Patents.

45.     Taking check images and then processing those images via OCR, was well-understood, routine, and conventional prior to the priority date of the Asserted Patents.

46.     Taking check images using a digital camera, including a camera on a phone was well-understood, routine, and conventional prior to the priority date of the Asserted Patents.

### COUNT I (DECLARATION REGARDING NON-INFRINGEMENT)

47.     Wells Fargo incorporates and realleges the foregoing paragraphs of these counterclaims.

48.     Based on USAA's filing of this lawsuit and Wells Fargo's First and Fourth Defenses above, an actual controversy has arisen and now exists between the parties as to whether Wells Fargo infringes the Asserted Patents.

49.     Wells Fargo does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement)), and/or under the doctrine of equivalents, any valid, enforceable claim of the Asserted Patents.

50.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Wells Fargo requests a declaration by the Court that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the Asserted Patents.

### COUNT II (DECLARATION REGARDING INVALIDITY)

51.     Wells Fargo incorporates and realleges the foregoing paragraphs of these counterclaims.

52.     Based on USAA's filing of this action and Wells Fargo's Second Defense above, an actual controversy has arisen and now exists between the parties as to the validity of the claims of the Asserted Patents.

53.     One or more claims of the Asserted Patents are invalid under Title 35 of the United States Code, including without limitation, §§ 101, 102, 103, and/or 112, and the rules, regulations, and laws pertaining thereto.

54.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and 35 U.S.C. § 100 *et seq.*, Wells Fargo requests a declaration by the Court that the claims of the Asserted Patents are invalid under Title 35 of the United States Code for failing to satisfy the requirements of, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

## JURY DEMAND

55.     Wells Fargo hereby demands trial by jury on all issues.

## PRAYER FOR RELIEF ON WELLS FARGO'S COUNTERCLAIMS

WHEREFORE, Wells Fargo asks this Court to enter judgment in Wells Fargo's favor and against USAA by granting the following relief:

a)   a declaration that Wells Fargo does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the Asserted Patents;

b)   a declaration by the Court that the claims of the Asserted Patents are invalid under Title 35 of the United States Code for failing to satisfy the requirements of, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112;

c)   a permanent injunction restraining USAA, and their respective officers, agents, servants, employees, attorneys, and any other persons acting on their behalf or in concert with

them, from charging or threatening, orally or in writing, that the Asserted Patents been infringed by Wells Fargo under any subsection of 35 U.S.C. § 271; and

d)   an award to Wells Fargo of its reasonable attorneys' fees, costs, and all interest (including without limitation any attorney fee awards based upon 35 U.S.C. § 285) and any such other and further relief as the Court finds just and proper.

October 15, 2018.

Respectfully submitted,

**WINSTON & STRAWN LLP**

By:   _/s/ Thomas M. Melsheimer_
        **Thomas M. Melsheimer**
        Texas Bar No. 13922550
        tmelsheimer@winston.com
        **Michael A. Bittner**
        Texas Bar No. 00790975
        mbittner@winston.com
        **James T. Underwood**
        Texas Bar No. 24102587
        tunderwood@winston.com
        2121 N. Pearl Street, Suite 900
        Dallas, TX 75201

        **E. Danielle T. Williams**
        North Carolina Bar No. 23283
        dwilliams@winston.com
        **Winston & Strawn LLP**
        300 S. Tryon Street, 16th Floor
        Charlotte, NC 28202

        **Matthew R. McCullough**
        California Bar No. 301330
        mrmcculough@winston.com
        **Winston & Strawn LLP**
        275 Middlefield Road, Suite 205
        Menlo Park, CA 94025

        _Counsel for Defendant_
        Wells Fargo Bank, N.A.

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2018, a true and correct copy of the above and foregoing document has been served on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.  Any other counsel of record will be served via electronic mail.

/s/ *Thomas M. Melsheimer*
Thomas M. Melsheimer