IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| UNITED SERVICES AUTOMOBILE ASSOCIATION a Texas reciprocal inter-insurance exchange,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A., a national banking association,<br><br>Defendant. | Civil Action No. 2:16-CV-366<br>JURY TRIAL DEMANDED |

# E-DISCOVERY AND ESI ORDER

The Court ORDERS as follows:

1. This order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

2. This order may be modified in the court's discretion or by agreement of the parties. The parties shall jointly submit any proposed modifications within 30 days after the Federal Rule of Civil Procedure 16 conference. If the parties cannot resolve their disagreements regarding these modifications, the parties shall submit their competing proposals and a summary of their dispute.

3. A party's meaningful compliance with this order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

4. Absent a showing of good cause, general ESI production requests under Federal Rules of Civil Procedure 34 and 45, or compliance with a mandatory disclosure requirement of this Court, shall not include metadata other than that specified in paragraph 12.

5. General ESI production requests under Federal Rules of Civil Procedure 34 and 45, or compliance with a mandatory disclosure order of this court, shall not include e-mail or other forms of electronic correspondence (collectively "e-mail"). To obtain e-mail parties must propound specific e-mail production requests.

6. E-mail production requests shall be phased to occur timely after the parties have exchanged initial disclosures, a specific listing of likely e-mail custodians, a specific identification of the fifteen most significant listed e-mail custodians in view of the pleaded claims and defenses,[1] infringement contentions and accompanying documents pursuant to P.R. 3-1 and 3-2, invalidity contentions and accompanying documents pursuant to P.R. 3-3 and 3-4, and preliminary information relevant to damages. The exchange of this information shall occur 10-days after the later of P.R. 3-3 and 3-4 disclosure, or the entry of this order. Each requesting party may also propound up to five written discovery requests and take one deposition per producing party to identify the proper custodians, proper search terms, and proper time frame for e-mail production requests. The court may allow additional discovery upon a showing of good cause.

7. E-mail production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms, and proper time frame. Each requesting party shall limit its e-mail production requests to a total of eight custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the court's leave. The court shall consider contested requests for additional or fewer custodians per producing party, upon showing a distinct need based on the size, complexity, and issues of this specific case.

---

[1] A "specific identification" requires a short description of why the custodian is believed to be significant.

8. Each requesting party shall limit its e-mail production requests to a total of ten search terms per custodian per party. The parties may jointly agree to modify this limit without the court's leave. The court shall consider contested requests for additional or fewer search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery.

9. Should a search produce an unreasonably large number of non-responsive or irrelevant results, the parties shall (at the producing party's request) meet and confer to discuss application of further negative search restrictions (e.g., if a single search was for "card" and ninety percent of the resulting documents came from the irrelevant term "credit card," a negative limitation to ignore documents only returned as a result of "credit card" may be applied to remove these documents). The party receiving production shall not unreasonably oppose such further restrictions designed to filter immaterial search results. If the parties cannot reach an agreement, the producing party may seek a protective order from the Court.

10. Pursuant to Federal Rule of Evidence 502(d), the inadvertent production of a privileged or work product protected ESI is not a waiver in the pending case or in any other federal or state proceeding.

11. The mere production of ESI in a litigation as part of a mass production shall not itself constitute a waiver for any purpose.

12. **<u>Production Format and Limitations.</u>** Absent agreement of the parties or further order of this court, the following parameters shall apply to ESI production:

    A. **General Document Image Format**. Each electronic document shall be produced in either Tagged Image File Format ("TIFF") format, PDF format, or native format, in accordance with the following:

        i. <u>TIFF format</u>:

        TIFFs. Single-page 300 dpi CCITT Group IV black and white TIFFs shall be provided. The parties shall accommodate reasonable requests for production of specific images in color.

        Database Load Files/Cross-Reference Files. Documents shall be provided with (1) a Concordance delimited load file(s) and (2) an Opticon delimited cross-reference file(s) showing document breaks.

        <u>Example of Concordance Delimited File</u>:

        þBegDocþ þEndDocþ þBegAttachþ þEndAttachþ

        <u>Example of Opticon Delimited File</u>:

```
MSC000001,MSC001,D:\IMAGES\001\MSC000001.TIF,Y,,,3
MSC000002,MSC001,D:\IMAGES\001\MSC000002.TIF,,,,
MSC000003,MSC001,D:\IMAGES\001\MSC000003.TIF,,,,,
MSC000004,MSC001,D:\IMAGES\001\MSC000004.TIF,Y,,,2
MSC000005,MSC001,D:\IMAGES\001\MSC000005.TIF,,,,
```

        ii. <u>PDF format</u>: PDF files at a resolution of at least 300 dpi shall be produced along with Concordance/Opticon image load files that indicate the beginning and ending of each document. For documents which already exist in PDF format prior to production (i.e., which the producing party receives from a client or third party

in PDF format), the producing party may provide them in that same PDF format, whether searchable or non-searchable. For documents converted to PDF format prior to production, the producing party shall make reasonable efforts to convert to searchable PDF.

 iii. <u>Native Format</u>: Each file produced in native format shall be named to match the beginning production number of the corresponding entries in the database load file. The confidentiality designation of the document shall appear in the document's production file name or shall be otherwise identified at the time the document is produced, such as on a label provided with the media containing the file.

B. **Unique Documents**. The parties shall attempt to de-duplicate ESI to avoid substantially duplicative productions. No party shall remove any attachment to any email, regardless of whether the attachment is duplicative of any other document. The parties may de-duplicate email families that are identical (i.e., the e-mail and attachments are identical). Custodian metadata for a given document shall reflect any Custodian of any document removed as a duplicate of that document.

C. **Text-Searchable Documents**. No party has an obligation to make its production text- searchable; however, if a party's documents already exist in text-searchable format independent of this litigation, or are converted to text-searchable format for use in this litigation, including for use by the producing party's counsel, then such documents shall be produced in the same text-searchable format at no cost to the receiving party.

D. **Footer**. Each document image shall contain a footer with a sequentially ascending production number. If placing such a footer on the document is impracticable, the file name shall include the sequentially ascending production number, along with any applicable confidentiality designation. To the extent that any ESI is printed for use in this litigation, the printing

party shall print any and all ESI with the footer described in herein. To the extent ESI is devoid of the footer, the printing party shall affix a legend or a stamp on the ESI that includes the file name described herein.

E. **Metadata**. The following metadata shall be provided within the load files or productions described above to the extent reasonably accessible[2] and not subject to a justified and proper claim of privilege:

For all documents:

> Md5Hash
> Time Zone
> Confidentiality (designation under Protective Order)
> Custodian
>
> DuplicateCustodian
> Bates Beg
> Bates End
> Bates Beg Attach
> Bates End Attach
> Number of Attachments

Additionally, for emails:

> To
> From
> CC
> BCC
> Date and Time Sent
> Subject

Additionally, for non-email documents:

> Author
> Filename
> File Extension
> Last Modified Date
> Created Date

---

[2] For example, the parties are not obligated to include metadata for any document that does not contain such metadata in the original, if it is not possible to automate the creation of metadata when the document is collected. The presence of hard copy documents in a folder in an office shall include in all cases at a minimum, the title of the folder or receptacle, and the custodian.

F.  **Additional Metadata.** Should additional metadata (such as the original filepath of documents) be reasonably accessible that if provided would significantly aid a receiving party in understanding or using the documents, if requested, the producing party shall not unreasonably withhold such metadata.

G.  **Native Files**. Excel spreadsheets and Powerpoints will be provided in native format, if not redacted for privilege. A party may make a reasonable request to receive other types of documents in native format, and upon receipt of such a request, the producing party shall produce the document in its native format unless producing it in that format presents an undue burden. If a party needs to redact a document for privilege that does not render to TIFF in a readable format, such as an Excel spreadsheet, it may redact the document by inserting the words "REDACTED – PRIVILEGED" in the appropriate places in the native document as long as it keeps a pristine, unaltered copy of the original native and discloses in its production cover letter the Bates numbers for the native documents redacted. All documents produced in native format shall be produced with a one page Bates numbered TIFF slip sheet indicating that the document is being produced in native.

H.  **No Backup Restoration Required**. Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup

tapes, disks, SAN, and other forms of media, to comply with its discovery obligations in the present case.

I. **Voicemail and Mobile Devices**. Absent a showing of good cause, voicemails, PDAs and mobile phones are deemed not reasonably accessible and need not be collected and preserved.

J. **Source code**. This Stipulation does not govern the format for production of source code, which shall be produced pursuant to the relevant provision of the Protective Order.

K. **Parent and child emails**. The parties shall produce email attachments sequentially after the parent email. The parties need not produce privileged documents and/or documents that are not responsive that are attached to otherwise responsive documents. If nonresponsive or privileged documents are removed from a family of documents, a slip sheet will be inserted indicating that the document was removed as either nonresponsive or privileged, as applicable, and the metadata for that document will not be produced. The parties need not comply with this section for loose e-mails or e-mail attachments that already exist as separate documents.

L. **Databases**. Certain types of databases are dynamic in nature and will often contain information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Thus, a party may opt to produce relevant and responsive information from databases in an alternate form, such as a report or data table. These reports or data tables will be produced in a static format. The parties agree to identify the specific databases, by

name that contain the relevant and responsive information that parties produce. If a dispute arises with regard to the form of production of data from a database, including regarding the sufficiency of static reports or data tables produced, the parties will meet and confer in good faith to try to resolve it.

M. **Requests for hi-resolution or color documents**. The parties agree to respond to reasonable and specific requests for the production of higher resolution or color images. Nothing in this Stipulation shall preclude a producing party from objecting to such requests as unreasonable in number, timing or scope, provided that a producing party shall not object if the document as originally produced is illegible or difficult to read. The producing party shall have the option of responding by producing a native-file version of the document. If a dispute arises with regard to requests for higher resolution or color images, the parties will meet and confer in good faith to try to resolve it.

N. **Foreign language documents**. All documents shall be produced in their original language. Where a requested document exists in a foreign language and the producing party also has an English-language version of that document that it prepared for non-litigation purposes prior to filing of the lawsuit, the producing party shall produce both the original document and all English-language versions. In addition, if the producing party has a certified translation of a foreign-language document that is being produced, (whether or not the translation is prepared for purposes of litigation) the

producing party shall produce both the original document and the certified translation. Nothing in this agreement shall require a producing party to prepare a translation, certified or otherwise, for foreign language documents that are produced in discovery.

O. **Production Media**. Documents shall be produced on CD/DVD discs, on portable hard drives (including thumb drives or memory sticks), or via email, FTP, or similar electronic file transfer.

P. **Parties to Confer in Good Faith.** The parties agree to confer in good faith about disputes regarding the form of document production, including to resolve issues not addressed by this stipulation.

13. Except as expressly stated, nothing in this order affects the parties' discovery obligations under the Federal or Local Rules.

**So Ordered this**
**Dec 12, 2018**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE