**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **UNITED STATES AUTOMOBILE ASSOCIATION,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 2:18-cv-366-JRG** |
| **WELLS FARGO BANK, N.A.,** | |
| **Defendant.** | |

## DEFENDANT'S CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................................... 1

II.   THE ASSERTED PATENTS ........................................................................................ 1

III.  LEVEL OF ORDINARY SKILL IN THE ART ........................................................ 3~~3~~

IV.   ARGUMENT ................................................................................................................. 3~~3~~

      A.    "deposit" terms........................................................................................................ 3~~3~~

            1.    The disputed preambles are not limiting..................................................... 4~~4~~

            2.    The intrinsic evidence confirms that "deposit" should not be conflated
                  with "presentment" or "clearing.".............................................................. 6~~6~~

            3.    The extrinsic evidence (including USAA's witnesses) confirms that Wells
                  Fargo's construction is correct and that USAA's construction improperly
                  conflates "depositing," "presentment," and "clearing."............................. 7~~7~~

            4.    The term "remote deposit processing component" does not require
                  construction................................................................................................. 10~~10~~

      B.    "using [a/the] customer's own [handheld] mobile device with a digital
            camera" .................................................................................................................. 11~~11~~

      C.    "device" terms...................................................................................................... 12~~12~~

            1.    "remote device" ........................................................................................ 12~~12~~

            2.    "depositor owned device" ......................................................................... 15~~15~~

            3.    "portable device" / "mobile device" ....................................................... 15~~15~~

      D.    "general purpose" terms....................................................................................... 16~~16~~

      E.    "log file" terms.................................................................................................... 18~~18~~

      F.    "instruction" terms............................................................................................... 21~~21~~

V.    CONCLUSION........................................................................................................... 23~~23~~

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Sandoz, Inc.*,
    544 F.3d 1341 (Fed. Cir. 2008)............................................................................15

*Clearstream Wastewater Sys., Inc. v. Hydro-Action, Inc.*,
    206 F.3d 1440 (Fed. Cir. 2000)......................................................................19, 20

*Embrex Inc. v. Serv. Eng'g Corp.*,
    216 F.3d 1343 (Fed. Cir. 2000)............................................................................15

*ERBE Elektromedizin GmbH v. Int'l Trade Comm'n*,
    566 F.3d 1028 (Fed. Cir. 2009)..............................................................................9

*Karlin Tech., Inc. v. Surgical Dynamics, Inc.*,
    177 F.3d 968 (Fed. Cir. 1999)......................................................................10, 13

*Lantech, Inc. v. Keip Mach. Co.*,
    32 F.3d 542 (Fed. Cir. 1994)................................................................................14

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)..............................................................................1

*In re Power Integrations, Inc.*,
    884 F.3d 1370 (Fed. Cir. 2018)......................................................................12, 14

*Rowe v. Dror*,
    112 F.3d 473 (Fed. Cir. 1997)................................................................................4

*SimpleAir, Inc. v. Sony Ericsson Mobile Commc'ns AB*,
    820 F.3d 419 (Fed. Cir. 2016)......................................................................6, 7, 13

*SRI Int'l v. Matsushita Elec. Corp. of Am.*,
    775 F.2d 1107 (Fed. Cir. 1985) (*en banc*) ..........................................................15

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996)..........................................................................7, 14

ii

## I.    INTRODUCTION

The Asserted Patents in this case relate to check capture using standard computers (such as desktops/laptops) with conventional image capture devices like scanners or cameras.  Unlike the patents in the other case between the parties (Case No. 2:18-cv-245), the patents here do not recite autocapture, but instead broadly relate to the overall process of manually scanning and depositing a check, with each patent reciting varying combinations of specific limitations to the capture process (*e.g.*, logging certain information, or instructions to the user to assist in cropping images).

Just as in the other case, the claims themselves and the remainder of the intrinsic evidence clearly inform the proper construction of the claims.  The Court should therefore adopt Wells Fargo's constructions, which identify this plain and ordinary meaning based on the claims and intrinsic evidence.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) ("the words of a claim 'are generally given their ordinary and customary meaning'").  USAA, by contrast, relies on voluminous extrinsic evidence (including an 81-page expert report) in an attempt to rewrite the claims by introducing concepts not actually recited (*e.g.*, presentment and clearing) or by effectively removing key elements from the claims (*e.g.*, logging specific identification of devices, or instructions to the user for cropping).  The Court should thus reject USAA's proposed constructions.

## II.    THE ASSERTED PATENTS

The five Asserted Patents generally relate to remote check deposit in which a user can use a general purpose computer (*e.g.*, a laptop or desktop) connected to an imaging device (*e.g.*, a scanner or camera) to create an image of a check for deposit manually.  The Asserted Patents are from two families (the '332, '136, and '681 Patents are related; and the '227 and '605 Patents are related).  The Asserted Patents all ultimately claim priority to one of two applications filed on the same day, October 31, 2006.  Although the patents come from two families, the parties agree that

the specifications share significant commonalities.  *See* Br. at 5 (USAA stating that the patents
"have largely overlapping disclosures").  As such, Wells Fargo primarily discusses the claim terms
common to both patent families together, with any distinctions between the patents noted where
applicable.

Although the claims vary in terms of which specific steps/elements are recited, each of the
Asserted Patents broadly relates to conventional computers, such as laptop or desktop computers,
connected to separate imaging devices, such as scanners or cameras:



'227 Pat., Fig. 2; *see also* '227 Pat. at 4:16–25 ("A general purpose computer 111 is generally a
Personal Computer (PC) . . . .  A general purpose computer 111 may be in a desktop or laptop
configuration"); '332 Pat. at 3:58–67 (same); '227 Pat. at 6:50–52 ("Image capture device 112
may be, for example, a scanner or digital camera."); '332 Pat. at 4:64–65 (same).  After a check is
manually scanned, an image is created that may be processed and/or transmitted to a bank.

2

III.    **LEVEL OF ORDINARY SKILL IN THE ART**

According to William L. Saffici—Wells Fargo's expert and an industry expert with over 40 years in the check processing industry—a person of ordinary skill in the art ("POSITA") would be someone with at least two years of prior experience with image scanning technology involving transfer to and processing of image data at a server.  Ex. A (Saffici Decl.), ¶ 17.  USAA proposes that a POSITA would be someone with "at least one year of experience developing applications on mobile, portable, or customer-controlled devices for imaging."  Br. at 1.  Wells Fargo's proposed constructions would remain correct even under this proposed level of skill.

IV.    **ARGUMENT**

A.    **"deposit" terms**

| Term (Patent/Claim) | USAA's Proposed Construction | Wells Fargo's Proposed Construction |
|---|---|---|
| A system for processing a check deposit ['136 Pat., claim 14; '332 Pat., claim 8]  A processor-implemented method for processing a check deposit ['332 Pat., claim 1]  A non-transitory computer readable medium bearing instructions for processing a check deposit ['332 Pat., claim 15]  A system for facilitating deposit of a check ['227 Pat., claim 1]  A processor-implemented method for facilitating deposit of a check ['227 Pat., claim 5] | The preamble is limiting. | The preamble is not limiting. |
| deposit ['136 Pat., claims 1, 7, 14; '332 Pat., claims 1, 8, 15; '227 Pat., claims 1, 5, 9; | Deposit a check is "providing a check image to a depository for presentment and | No construction necessary.  Alternatively, the scope of the term "deposit" should be |

| '605 Pat., claims 1, 12; '681 Pat., claims 1, 12] | clearing in order for money to be credited to an account." | construed as follows: provide a check image and/or check information to a depository (such as a bank) for money to be credited to an account. |
|---|---|---|
| remote deposit processing component ['227 Pat., claims 1, 5, 9] | "A software component on a user's device for facilitating deposit of a check." Deposit of a check is "providing a check image to a depository for presentment and clearing in order for money to be credited to an account." | No construction necessary. ("deposit" should be construed as above) |

The parties have already devoted extensive argument to the term "deposit" in the other case pending between the parties, Case No. 2:18-cv-245, and Wells Fargo incorporates herein its briefing and oral argument from that case. *See* Case No. 2:18-cv-245, Dkt. No. 84 & 94. As shown below, the term "deposit" is used in its ordinary meaning in all of the Asserted Patents and the intrinsic evidence is consistent with the evidence in the patents from the -245 case. Thus, the "deposit" term should be construed the same in both cases.

### 1.    The disputed preambles are not limiting.

The preambles of the claims in the '136, '332, and '227 Patents—the only ones disputed[1]— are not limiting. A preamble is not limiting when the "patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention." *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997). This is the case here, as the claims are structurally complete without consideration of the preamble.

---

[1] USAA includes one additional preamble, the '681 Patent, claim 12, in its list of preambles, but the parties have already agreed that preamble is limiting. *See* Dkt. No. 35-2 at 2.

Contrary to USAA's argument, the preambles of the disputed claims do not provide antecedent basis for any subsequent claim limitation.  First, USAA alleges that the '136 Patent claim 14 preamble is limiting because a single dependent claim (claim 15) allegedly refers back to the claim 14 preamble.  Initially, USAA offers no explanation of why a dependent claim is relevant to whether the preamble of an independent claim is limiting.  Moreover, USAA is incorrect that claim 15 refers back to the preamble.  The recitation of "the check deposit" in claim 15 appears to be a reference back to the term "a deposit" in the body of claim 14, rather than a reference to the claim 14 preamble.[2]  Indeed, the use of "a deposit" in the body of claim 14 confirms that the preamble is not necessary because the invention is structurally complete standing alone.  Next, for the '332 Patent, USAA confusingly argues that the term "receiving a customer identification of an account for **a** deposit" supports that the preambles are limiting.  Br. at 9 (emphasis added).  But this claim term uses the indefinite article "**a**" and thus plainly does not refer back to the preamble in any way.  Finally, for the '227 Patent, USAA alleges that the term "initiate said deposit of said check into said account" refers back to the preamble.  Br. at 9.  But again, this refers to a limitation earlier in the *body* of the claim that uses indefinite articles and does not refer back to the preamble ("receive . . . **an** identification of **an** account for deposit of **a** check") (emphasis added).  Thus, the preambles of the '136, '332, and '227 Patents do not provide antecedent basis for any limitation.

Next, USAA argues that the preambles are limiting because the patents allegedly emphasize the importance of depositing.  Br. at 10–12.  But the specifications discuss depositing only as a goal in relation to the steps taken on the user's device or at the bank's computers—the actual focus of both the claims and specifications.  *See, e.g.*, '227 Pat. at Abstract (beginning

---

[2] Furthermore, the Court should not rely on claim 15, as it lacks antecedent basis for the term "the processor-executable instructions" and is therefore nonsensical.

"Remote deposit of checks **can be facilitated** by a financial institution," and continuing to describe steps taken on the customer's device) (emphasis added).  The specifications also teach that the deposit step is optional.  *See, e.g.*, '227 Pat. at 2:52–55 ("such electronics **may** be further configured to initiate a deposit of the check") (emphasis added).  Thus, the intrinsic evidence is clear that depositing is not an essential step such that the disputed preambles should be considered limiting.

Finally, USAA clearly knows how to claim the "deposit" step as a claim limitation and expressly did so in many of the asserted claims here.  *See, e.g.*, '681 Pat., claim 1 ("submitting the check for deposit").  The asserted claims in this case should be limited to what USAA actually claimed, rather than importing steps based on preambles that are not limiting.

### 2. The intrinsic evidence confirms that "deposit" should not be conflated with "presentment" or "clearing."

The claims mean what they say and address check deposit.  USAA attempts to rewrite the meaning of the term "deposit" to include various unclaimed steps of check processing—namely, check presentment and check clearing.  Check presentment and check clearing, however, are not recited in the claims.  While the specifications use "presentment" and "clearing" throughout, indicating USAA's familiarity with them, USAA chose to refer only to "depositing" in the claim terms at issue.  The Court should respect that choice and decline to import additional "presentment" and "clearing" limitations into these claims.  *SimpleAir, Inc. v. Sony Ericsson Mobile Commc'ns AB*, 820 F.3d 419, 431 (Fed. Cir. 2016) (recitation of different terms in claims and specification "lends further support to our conclusion that [the two terms] do not carry the same meaning").

Just as in the -245 case, the specifications here contrast that the *user* may deposit, whereas the *financial institution* may present and/or clear the check.  For example, the specifications discuss that "the payee deposits the check." '332 Pat. at 2:31–34; *see also id.* at 5:66–6:1

("Account owner 110 may deposit the check").  By contrast, "[f]inancial institution 130 may clear the check by presenting the digital image to an intermediary bank."  *Id.* at 6:12–20.  Thus, "depositing"—the term at issue here—refers to a person's submitting a check to his/her bank so that money may be credited to his/her account, while the terms "presentment" and "clearing"— which are not recited in the asserted claims—refer to inter-bank processes that happen after the customer deposits a check.  Wells Fargo's construction is consistent with this intrinsic evidence and respects the choice USAA made to recite only "depositing" in these claim elements.  *See SimpleAir*, 820 F.3d at 431.

In support of its construction, USAA notes that certain claims recite steps that occur after transmission of the image.  Br. at 14.  But this actually supports Wells Fargo's argument: where USAA wanted to recite additional steps (such as clearing or image processing), it did so using specific claim limitations.  The general term "deposit" does not encompass these additional steps, and USAA's attempt to conflate those steps with mere "depositing" should therefore be rejected.

USAA further argues that the specification supports that presentment and clearing are part of depositing.  Br. at 14–18.  But none of the passages of the specification cited by USAA purport to offer any definition of "deposit" to that effect.  Indeed, several of the passages do not even use the word "deposit."  *See, e.g.*, '136 Pat. at 11:12–23 (quoted in Br. at 15).  Instead, these passages discuss various standard bank processes (*e.g.*, provisional credits, discussed in '136 Pat. at 11:17–23 (quoted in Br. at 18)), but do not support USAA's attempt to redefine the simple word "deposit" as referring to the distinct inter-bank processes of presentment and clearing.

### 3. The extrinsic evidence (including USAA's witnesses) confirms that Wells Fargo's construction is correct and that USAA's construction improperly conflates "depositing," "presentment," and "clearing."

Because the intrinsic evidence is clear, the Court need not consider the extrinsic evidence.  *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) ("In those cases

where the public record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper."). Nevertheless, the extrinsic evidence both parties cite is also fully consistent with Wells Fargo's construction and inconsistent with USAA's construction. For example, Mr. Saffici explains that "deposit," in its plain and ordinary usage, refers to the act of handing over a check to an institution (such as a bank) to be credited to an account. Ex. B (Saffici -245 Decl.),[3] ¶ 19. USAA's expert also agrees. Ex. C (Calman Tr.) at 62:16–18 (agreeing that "deposit is the act of the consumer presenting a negotiable instrument to their bank"). In the context of the Asserted Patents, rather than referring to a traditional paper check, depositing would refer to a check image or check data. Ex. B (Saffici -245 Decl.), ¶ 19. Thus, the extrinsic evidence confirms Wells Fargo's proposed alternative construction is correct.

USAA's alternative construction, however, is not supported by the extrinsic evidence— including USAA's inventor and expert witness—which confirms that USAA's construction improperly conflates the separate concepts of "depositing," "presentment," and "clearing." Ex. B (Saffici Decl.), ¶ 18; *see also* Dkt. No. 41-14 (Saffici Dep. Tr.) at 22:19–23:22, 25:9–26:12 (explaining that the deposit process is internal to the customer's bank and ends with the provisional credit of funds to a customer's account while clearing is an inter-bank (or bank to Federal Reserve) process that occurs after deposit is complete). As noted in Wells Fargo's briefing in the -245 case, these witnesses all agree that "presentment" and "clearing" refer to concepts distinct from "depositing":

---

[3] Mr. Saffici incorporated his opinions from the -245 case in his declaration in this case. Ex. A, ¶ 19.

| Term & Meaning | USAA Inventor Minya Liang | USAA Expert Mr. Calman |
|---|---|---|
| Presentment: a financial institution presenting check to a paying bank. Ex. B (Saffici -245 Decl.), ¶ 18. | Ex. D (Liang Tr.) at 38:10–15 (check presentment is "essentially the process of sending the check to the financial institution from which the check will be drawn from"). | Ex. C (Calman Tr.) at 63:25–64:4 (agreeing that "presentment [is] the act of presenting the check to the paying bank"). |
| Clearing: a process among banks where depositor's bank is paid by the paying bank. Ex. B (Saffici -245 Decl.), ¶ 18. | Ex. D (Liang Tr.) at 48:20–49:3 (in clearing, "the funds get transferred from the payee's -- sorry, the payer's account and the funds get settled"). | Ex. C (Calman Tr.) at 64:5–11 (clearing includes "accounting steps, to yield those good funds in the end to that customer"). |

Thus, USAA's proposed alternative construction is inconsistent with not only the specification but also the opinions of both experts, and should therefore be rejected. *See ERBE Elektromedizin GmbH v. Int'l Trade Comm'n*, 566 F.3d 1028, 1034 (Fed. Cir. 2009) (it is improper to "construe claim language to be inconsistent with the clear language of the specification").

Finally, USAA argues that various statements about ANSI standards support its construction. Br. at 18–19. Initially, USAA cites to no case, and Wells Fargo is aware of none, supporting USAA's apparent argument that legal requirements (*i.e.*, any legislative and/or regulatory requirements) should be imported into the construction of a claim term.[4] If USAA wished to recite compliance with these standards, it plainly could have because, as USAA itself notes, the specification of the Asserted Patents discusses the Check 21 legislation and its attendant regulatory framework. Br. at 18 (citing '136 Pat. at 11:46–50). USAA chose not to recite these elements as part of the claims, and that should be the end of the matter. Moreover, none of the

---

[4] Moreover, USAA offers no limiting principle—if the Check 21 standards should be imported into the construction, then why not Regulation CC, a Federal Reserve regulation regarding the availability of funds while a check is being cleared (where "clearing" is one of the elements USAA contends is part of "depositing")? USAA's construction ignores not only this but also a host of other legal requirements governing the financial industry, and is thus woefully incomplete according to the principles of its own argument.

9

testimony USAA quotes is relevant to construing the word "deposit" because none of that testimony involved any witness being asked a question about the meaning of the word "deposit"; the testimony only involved questions about legal and/or technical requirements that are not recited in the claims, and is thus immaterial.  *See* Br. at 18–19.

### 4. The term "remote deposit processing component" does not require construction.

The term "remote deposit processing component" does not require construction (beyond any potential construction of the term "deposit," as discussed above).   This term is readily understandable as referring to a component "provide[d] . . . to a depositor owned device" by the processor of the claims.  *See, e.g.*, '227 Pat., claim 1.

USAA's construction should be rejected because it is inconsistent with the plain claim language and improperly attempts to import claim language from other patents.  First, USAA's construction is inconsistent with the plain claim language of the '227 Patent because the claims state that the "remote deposit processing component" is "provid[ed] . . . to a depositor owned device."  '227 Pat., claims 1, 5, 9.  This confirms that the remote deposit processing component does not exist solely "on a user's device" as USAA contends, but is provided from the processor of the claims (*e.g.*, a bank server) to the device.  Second, USAA's construction improperly attempts to import claim language from other asserted patents.  The '605 and '681 Patents both recite a "downloaded software component."  *See* '605 Pat., claim 1, '681 Pat., claim 1.  The '227 Patent, by contrast, does not.  *See* '227 Pat., claims 1, 5, 9.  USAA offers no reason the Court should import the language "a software component" into the construction when USAA deliberately chose to use different claim terms in different asserted claims.  *See Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971–72 (Fed. Cir. 1999) (explaining the "common sense notion that

different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope").

**B.** **"using [a/the] customer's own [handheld] mobile device with a digital camera"**

| Term (Patent/Claim) | USAA's Proposed Construction | Wells Fargo's Proposed Construction |
|---|---|---|
| using [a/the] customer's own [handheld] mobile device with a digital camera<br>['681 Pat., claim 12;<br>'605 Pat., claim 12] | Unknown. | No construction necessary.<br><br>Alternatively, the scope of this term should be construed as follows: using a [handheld] mobile device with a digital camera, where the camera may be separate from the mobile device. |

USAA acknowledges Wells Fargo's construction of this limitation (Br. at 8), but never addresses this limitation or provides a proposed construction.  As such, it is unclear what, if any, construction USAA advances for this claim term.  Because Wells Fargo's primary position is that this claim term does not require construction, Wells Fargo will address this claim term only briefly: the claim term "using [a/the] customer's own [handheld] mobile device with a digital camera" does not require construction, but to the extent there is a dispute between the parties, this term should <u>not</u> be limited to a mobile device with an integrated camera.

The patents repeatedly describe that the imaging device (*e.g.*, camera or scanner) is separate from the computer.  *See, e.g.*, '605 Pat., Fig. 2 (shown *supra* at <u>22</u>).  The Asserted Patents explain that the imaging device may be "communicatively coupled" to a computer and may use conventional software to transfer images from the device to the computer.  *See, e.g.*, '605 Pat. at 6:30–35 (for scanners, "TWAIN® software is often used to control image capture from a computer"), 6:35–38 (for cameras, "software [] allows users to move images from the camera to a computer"); '681 Pat. at 4:39–48 (same).  The Asserted Patents further explain that the image

capture device has its own separate processor and memory. '605 Pat. at 6:39–56. Thus, it is clear from the specifications that the camera may be separate from the mobile device. Indeed, this is the only embodiment disclosed in the patents—there is no disclosure of a mobile device with an integrated camera in any of the Asserted Patents. The dependent claims confirm this, expressly reciting that the "digital camera is separate from the customer's [handheld] mobile device." '605 Pat., claim 15; '681 Pat., claim 15. Accordingly, to the extent there is a dispute between the parties, the claim language "using [a/the] customer's own [handheld] mobile device with a digital camera" cannot be limited to a mobile device with an integrated camera, but must encompass the separate computing devices (*e.g.*, laptops/desktops) and imaging devices (*e.g.*, scanner/camera) described in the Asserted Patents.

### C. "device" terms

| Term (Patent/Claim) | USAA's Proposed Construction | Wells Fargo's Proposed Construction |
|---|---|---|
| remote device ['136 Pat., claim 14] | A "customer-controlled general-purpose device." | a general purpose computing device at a different location from the check processing system |
| portable device ['681 Pat., claim 1] | No additional construction necessary. | a computing device capable of being easily moved |
| mobile device ['681 Pat., claims 12, 30; '605 Pat., claim 1] | No additional construction necessary. | a computing device capable of being easily moved |
| depositor owned device ['227 Pat., claims 1, 5, 9] | "A customer-controlled general purpose device." | No construction necessary. |

### 1. "remote device"

USAA's proposed construction for the "remote device" term suffers from two flaws: it imports a limitation from the specification and reads out the word "remote" from the claim language. In committing these errors, USAA's proposed construction runs afoul of the Federal Circuit's instruction that "[c]laim construction must begin with the words of the claims themselves." *In re Power Integrations, Inc.*, 884 F.3d 1370, 1376 (Fed. Cir. 2018).

As an initial matter, USAA's proposed construction imports the "customer-controlled" language from the specification.  In support of adding this language to the claim, USAA argues that "[t]he specification repeatedly discloses receiving the images of the check from a customer-controlled general purpose device," adding that "in its CBM petitions, Wells [Fargo] argued that all embodiments in the specification use[] customer-controlled general purpose computers."  Br. at 20.  But USAA's argument tells an incomplete story.  While true that the ***specification*** discloses "customer-controlled" computers, ***claim 14*** of the '136 Patent does not use the term "customer-controlled" at all.  As a result, the term "remote device," as used in claim 14, and the term "customer-controlled general purpose computer," as used in the specification, do not carry the same meaning.  *See SimpleAir*, 820 F.3d at 431 (recitation of different terms in claims and specification "lends further support to our conclusion that [the two terms] do not carry the same meaning").

The '332 Patent lends additional support for rejecting USAA's attempt to import the "customer-controlled" limitation into claim 14.  The '332 Patent and the '136 Patent share the exact same specification and claim priority to the same non-provisional patent applications.  *Compare* '332 Pat. *with* '136 Pat.  Unlike claim 14 in the '136 Patent, however, the claims of the '332 Patent actually recite "a customer-controlled general purpose computer."  *See, e.g.*, '332 Pat. at 14:17–18.  The use of the "customer-controlled" language in the claims of the '332 Patent and its omission in the '136 Patent demonstrate that USAA could have included the term in the claims of the '136 Patent and instead chose not to.  *See Karlin*, 177 F.3d at 971–72 (explaining the "common sense notion that different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope").

13

USAA's proposed construction is also flawed because it reads out the term "remote" from the claim language.  USAA proposes that the Court construe "remote device" as a "customer-controlled general-purpose device," without giving any effect to the use of the word "remote."  Thus, adopting USAA's construction would violate the established claim construction tenet that "[a]ll the limitations in a claim must be considered meaningful."  *Lantech, Inc. v. Keip Mach. Co.*, 32 F.3d 542, 546 (Fed. Cir. 1994).  And not only does this construction flout the plain claim language, it also runs afoul of the specification, which focuses on the need for a system that enables bank customers to deposit checks remotely, without having to "physically present[] the check to a bank teller."  '136 Pat. at 2:9–19 ("While a check may provide a payor with a convenient and secure form of payment, receiving a check may put certain burdens on the payee, such as the time and effort required to deposit the check.  For example, depositing a check typically involves going to a local bank branch and physically presenting the check to a bank teller.  In addition to the time commitment that may be required, visiting a bank branch may be problematic for the payee if the bank's hours of operation coincide with the payee's normal hours of employment.  Thus, the payee may be required to leave work early and/or change work schedules.").

Unlike USAA's proposed construction, Wells Fargo's construction is rooted in the claim language.  It does not import limitations from the specification, nor does it read out the "remote" term.  USAA asserts that there is "no basis in the intrinsic record" for construing the "remote device" term as being "at a different location from the check processing system."  Br. at 22.  But this argument inexplicably ignores the most important evidence in claim construction: the claim language itself.  *See Power Integrations*, 884 F.3d at 1376 ("[c]laim construction must begin with the words of the claims themselves."); *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("First, we look to the words of the claims themselves, both asserted

and nonasserted, to define the scope of the patented invention."). It also ignores the discussion in the specification concerning the need for a system that allows a customer to deposit a check without physically travelling to the bank. *See* '136 Pat. at 2:9–19. Ignoring the language of the claim— and reading out a limitation—is error, and the Court should reject USAA's proposed construction.

### 2. "depositor owned device"

USAA proposes that the Court adopt the same construction of the term "depositor owned device" as it proposes for the "remote device" term. This fact is telling: USAA would have the Court adopt the ***same*** construction for ***different*** terms. Doing so, however, would violate one of the bedrock tenets of claim construction: claim differentiation. *See SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1122 (Fed. Cir. 1985) (*en banc*) ("It is settled law that when a patent claim does not contain a certain limitation and another claim does, that limitation cannot be read into the former claim in determining either validity or infringement."). Although USAA's proposed construction arguably relates to this "depositor owned" term better than it does the "remote" term (in that it emphasizes that the device be "customer controlled"), the jury needs no guidance from the Court on what it means for a device to be "depositor owned." For this reason, the Court need not construe this term. *See Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1360 (Fed. Cir. 2008) (observing that "[c]laim construction is for the purpose of explaining and defining terms in the claims . . ." and that "claims are construed as an aid to the decision-maker . . ."); *Embrex Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1347 (Fed. Cir. 2000) ("The construction of claims is simply a way of elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims.") (internal brackets omitted).

### 3. "portable device" / "mobile device"

The intrinsic evidence demonstrates that the terms "portable device" and "mobile device" both refer to computing devices that are capable of being easily moved. For example, claim 1 of

15

the '605 and '681 Patents recites that the "portable device" comprises "a ***general purpose computer*** including a processor coupled to a memory." '605 Pat., claim 1; '681 Pat., claim 1 (emphasis added). Figure 1 of the '605 and '681 Patents illustrates a "general purpose computer," which "may be coupled to an image capture device." '605 Pat. at 3:36–47; '681 Pat. at 3:26–49, 4:37–48. The specifications go on to explain that the general purpose computing devices recited are "ubiquitous" and can be a "desktop or laptop configuration." '605 Pat. at 3:59–4:9; '681 Pat. at 3:31–49. They also note that "[a] particular advantage of embodiments of the invention is its ability to operate in conjunction with electronics that today's consumers actually own or can easily acquire, such as a general purpose computer, a scanner, and a digital camera." '605 Pat. at 4:5–9; '681 Pat. at 3:45–49. Along these same lines, the '605 and '681 Patent claims indicate that a "mobile device" may be a "laptop" (*e.g.*, '681 Pat., claim 16) or a "PDA" (*e.g.*, '605 Pat., claim 16). Thus, the intrinsic evidence teaches that the terms "portable device" and "mobile device" refer to computing devices capable of being easily moved.

### D.    "general purpose" terms

| Term (Patent/Claim) | USAA's Proposed Construction | Wells Fargo's Proposed Construction |
|---|---|---|
| general purpose computer ['332 Pat., claims 1, 8, 15; '681 Pat., claim 1; '605 Pat., claim 1] | A general purpose computer excludes "specialized equipment as may be purchased by a business or other commercial enterprise, for example, for the specialized purpose of high-speed, high-volume check deposits." | No construction necessary.<br><br>Alternatively, the scope of this term should be construed as follows: a device that performs general computing functions, such as a laptop or desktop computer. |

| general purpose image capture device ['227 Pat., claims 1, 5, 9] | "A device capable of capturing an image and with the ability to run applications that are written for and compatible with the device's operating system, excluding specialized equipment as may be purchased by a business or other commercial enterprise, for example, for the specialized purpose of high-speed, high-volume check deposits." | No construction necessary.<br><br>Alternatively, the scope of this term should be construed as follows: a device that performs general image capture functions, such as a camera or a scanner. |
|---|---|---|

The terms "general purpose computer" and "general purpose image capture device" do not require construction.  These are readily understandable terms that refer simply to devices that perform, respectively, general computing functions (like a laptop or desktop) or general image capture functions (like a camera or scanner).  *See, e.g.*, '227 Pat. at 4:16–25, 6:50–52 (describing exemplary general purpose computers and image capture devices, including laptops, desktops, scanners, and cameras).

USAA's proposed construction is based on the following statement in the specifications: "The term 'general purpose computer' specifically excludes specialized equipment as may be purchased by a business or other commercial enterprise, for example, for the specialized purpose of high-speed, high-volume check deposits."  *E.g.*, '681 Pat. at 3:41–49 (quoted in Br. at 24). Wells Fargo has no objection to this statement as applied to the term "general purpose computer," but does not believe that a construction is required as the parties can simply reference this language in the specification.

For the "general purpose image capture device" term, however, USAA's construction is inappropriate for at least two reasons.  First, USAA's construction references the same language regarding "specialized equipment" above that is linked in the specification ***only*** to the term

"general purpose computer." *See, e.g.*, '681 Pat. at 3:41–49 (linking this language only to "general purpose computer"). Thus, it is inappropriate to import that negative limitation into a different claim term.[5] Second, USAA's construction improperly includes the language "with the ability to run applications that are written for and compatible with the device's operating system." This language has no basis in the specification, and USAA does not even attempt to justify this language in its argument. *See* Br. at 24–26. There is simply no discussion, anywhere in the specification, of running an "application" on an image capture device of any kind. *C.f.* '227 Pat. at 6:15–48 (discussing "applications" only in the context of running on a general purpose computer). The patent, instead, discusses conventional imaging devices such as cameras or scanners ('227 Pat. at 6:50–52) that would not run "applications." Thus, USAA's construction of "general purpose image capture device" is improper and should be rejected.

### E.     "log file" terms

| Term (Patent/Claim) | USAA's Proposed Construction | Wells Fargo's Proposed Construction |
|---|---|---|
| log file<br>['136 Pat., claim 14;<br>'332 Pat., claims 1, 4, 6, 8, 11, 13, 15, 18, 20;<br>'681 Pat., claims 1, 12;<br>'605 Pat., claims 1, 12, 23] | "Collection of data related to a check deposit transaction." | No construction necessary. |

---

[5] USAA alleges that the term "general purpose" was discussed in the '227 Patent file history, but did not attach any exhibit with this alleged discussion. *See* Br. at 25. In fact, the only discussion of "general purpose" in the '227 Patent file history related to the term "general purpose computer," not "general purpose image capture device." *Compare* Ex. E at 7–8 (file history discussion of "general purpose computer") *with* Ex. F (office action response introducing the "general purpose image capture device" language, which was not linked to the discussion in the specification or otherwise explained in any way).

18

| said log file comprising said second image, an identification of said customer-controlled general purpose computer, and an identification of an image capture device that was used to capture said first image<br>['332 Pat., claims 1, 8, 15] | "an identification of said customer-controlled general purpose computer" means "information related to the customer-controlled general purpose computer used to generate the image(s) of the check."<br><br>"an identification of an image capture device" means "information related to the image capture device used to generate the image(s) of the check." | The log file includes the second image, identifies the specific customer-controlled general purpose computer [from which the first image was received], and identifies the specific image capture device used to capture the first image. |
|---|---|---|

The term "log file" on its own does not require construction.  In every instance, the term "log file" in the claims is modified with the specific type of data that must be included for the log file of that particular claim.  *See, e.g.*, '681 Pat., claim 1 ("the log file including a bi-tonal image of the check"); '136 Pat., claim 14 ("the log file comprising at least a portion of the deposit information for the check").  There is no reason to extract the individual phrase "log file," devoid of the context of the claims, for construction.  The full claim language makes clear what the "log file" for each claim requires, and the Court should not risk confusing the issues by separately construing "log file."

The "log file" claim terms in the '332 Patent independent claims present a very simple case of claim differentiation.  "Under the doctrine of claim differentiation, it is presumed that different words used in different claims result in a difference in meaning and scope for each of the claims." *Clearstream Wastewater Sys., Inc. v. Hydro-Action, Inc.*, 206 F.3d 1440, 1446 (Fed. Cir. 2000).  Here, the independent claims recite that the log file includes an "identification" of a specific device, whereas a dependent claim recites that the log file further includes an "identification" of a device "type":

| Independent Claim 1 | Dependent Claim 6 |
|---|---|
| *said log file comprising* said second image, an identification of said customer-controlled general purpose computer, and *an identification of an image capture device* that was used to capture said first image | *said log file further comprises an identification of an image capture device type* for an image capture device that was used to capture said first image |

'332 Pat., claims 1 & 6 (emphasis added); *see also* '332 Pat., claims 8 & 13, and 15 & 20 (substantially identical independent/dependent claim pairs for independent claims 8 and 15).  Thus, in order to give effect to USAA's claim language, the independent claim must be construed to require an "identification" of the image capture device, not merely of the "type" of image capture device.  Similarly, the "identification" of the general purpose computer should also be specific, rather than a mere identification of the "type" of general purpose computer.[6]  Only Wells Fargo's construction is consistent with this interpretation, and it should therefore be adopted.

USAA's construction would render the independent and dependent claims superfluous and therefore should be rejected.  *See Clearstream*, 206 F.3d 1440, 1446 (Fed. Cir. 2000).  USAA's only alleged support is discussion in the specification that confirms that the log file may include a "make and model" or a "Global Unique Identifier."  Br. at 28 (quoting '681 Pat. at 12:52–61).  This actually supports Wells Fargo's construction: the "make and model" information plainly relates to the claim 6 embodiment, whereas the "Global Unique Identifier" relates to independent claim 1.  USAA does not allege that the specification offers an express definition that would

---

[6] Although there is no dependent claim specifically reciting an identification of the "type" of general purpose computer, the plain language of the independent claim is identical to that for the "identification" of the image capture device, and should be construed the same.  Additionally, dependent claims recite the logging of other non-specific type information about the computer, such as the "identification of an operating system" (claim 4) or "version of a browser application" (claim 5), confirming that the identification of the general purpose computer likewise must be specific.

support its construction, nor could it.  The specification, consistent with Wells Fargo's construction

and the plain claim language, confirms that the independent claims refer to a specific identification

of the devices involved rather than any more general "type" information.

Finally, USAA's construction is overbroad on its face.  USAA's proposal to include any

"information related to the image capture device" is plainly improper.  For example, the color of

the camera or scanner used is "information related to the image capture device" that is not an

"identification" of the device under any plausible construction.  USAA's proposal to include

"information related to" the general purpose computer is similarly deficient.  The extraordinarily

overbroad nature of USAA's proposed constructions confirms that USAA is simply trying to

rewrite its claims, an effort the Court should reject.

### F.      "instruction" terms

| Term (Patent/Claim) | USAA's Proposed Construction | Wells Fargo's Proposed Construction |
| --- | --- | --- |
| said instructions instructing a depositor to: . . . identify selected points of said initial image to enable cropping of said initial image beyond a boundary of the front side of said check ['227 Pat., claim 1, 5, 9] | "Instructing the user to determine the position of selected points of the check, such as its corners." | instructions to the depositor to identify points on the captured image to indicate where the image should be cropped |

The Court should adopt Wells Fargo's proposed construction to prevent USAA from

reading out the limitation that the user's identification of the points be "to enable cropping of said

initial image."

The claim language as written unequivocally recites instructions to "identify selected

points of said initial image *to enable cropping of said initial image* . . ." '227 Pat., claims 1, 5, 9

(emphasis added).  Also, the specification recites that "a customer may be instructed to modify

21

said electronic image of a front side of a check and/or a back side of the check, ***such that said electronic image of a front side of a check meets at least one second criterion***." '227 Pat. at 14:40–44 (emphasis added).   The specification goes on to note: "[f]or example, an image as scanned may be presented to the customer, and the customer may be asked to select a bottom right corner of the check in the image.  Assuming the top left corner of the check is also in the top left corner of the image, ***the customer selection of the bottom right corner of the check can be used to crop out any and all of the image that goes beyond the boundaries of the check***." '227 Pat. at 14:44–51 (emphasis added).  Thus, the specification is consistent with the claim language, in that it recites instructions to the user "to indicate where the image should be cropped."

USAA argues that Wells Fargo's proposed construction adds a new limitation and requires "that cropping must occur precisely at" the point of identification. Br. at 30.  Not so.  Wells Fargo's proposed construction contains no such limitation.  Instead of centering on ***the precise details of how the cropping is performed***, as USAA misleadingly argues, Wells Fargo's proposed construction focuses on ***the content of the instructions*** to the user.   The construction merely explains that the instructions instruct the user to identify the points "to indicate where the image should be cropped."   USAA also points to the testimony of Wells Fargo's claim construction expert, Mr. Saffici, arguing that he testified that "cropping is simply 'removing some portion of the image.'" Br. at 30.  But that testimony is irrelevant to the parties' present dispute.  Indeed, Mr. Saffici went on to explain that the patents were specifically designed to allow users to remove extraneous information that might be included in the image of the check.  (Dkt. No. 41-14 at 83:20–24) ("in this patent, what it does, it provides the depositor the ability to get rid of some of that extraneous information, so that I assume they provided some kind of cropping tool to be able to do that").

Wells Fargo anticipates that at trial USAA will seek to read out the requirement that the instructions instruct the user to identify selected points on the image "to enable cropping of said initial image beyond a boundary of the front side of said check."   Indeed, USAA's original proposed construction was "instructing the user to determine the position of selected points of the check, such as its corners."   *See* Dkt. No. 35-3 at 109–10.  This construction, to the extent that USAA continues to assert it under the guise of an alleged plain meaning, would eviscerate the claim limitation requiring the user to "identify" selected points on the image by instead allowing a user to merely "determine" them (*e.g.*, merely think about them mentally).  To prevent such an argument, the Court should adopt Wells Fargo's proposed construction, which is consistent with the claim language.

## V.   CONCLUSION

For the foregoing reasons, Wells Fargo's proposed constructions should be adopted.

May 31, 2019                                    Respectfully submitted,

                                        By:   */s/ Thomas M. Melsheimer*
                                              Thomas M. Melsheimer
                                              TX Bar No. 13922550
                                              tmelsheimer@winston.com
                                              Michael A. Bittner
                                              TX Bar No. 24064905
                                              mbittner@winston.com
                                              J. Travis Underwood
                                              TX Bar No. 24102587
                                              tunderwood@winston.com
                                              **Winston & Strawn LLP**
                                              2121 North Pearl Street, Suite 900
                                              Dallas, TX 75201
                                              (214) 453-6500 – Telephone
                                              (214) 453-6400 – Facsimile

                                              E. Danielle T. Williams
                                              NC Bar No. 23283
                                              dwilliams@winston.com
                                              **Winston & Strawn LLP**
                                              300 South Tryon Street, 16th Floor
                                              Charlotte, NC 28202
                                              (704) 350-7700 – Telephone
                                              (704) 350-7800 – Facsimile

                                              Matthew R. McCullough
                                              CA Bar No. 301330
                                              mrmccullough@winston.com
                                              **Winston & Strawn LLP**
                                              275 Middlefield Road, Suite 205
                                              Menlo Park, CA 94025
                                              (650) 858-6500 – Telephone
                                              (650) 858-6550 – Facsimile

                                              *Counsel for Defendant*
                                              *Wells Fargo Bank, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Therefore, this document was served on all counsel who are deemed to have consented to electronic service pursuant to Local Rule CV-5(a)(3)(A).

/s/ *Thomas M. Melsheimer*
Thomas M. Melsheimer