**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| UNITED STATES AUTOMOBILE ASSOCIATION, | |
| *Plaintiff,* | |
| v. | Case No. 2:18-cv-00366-JRG |
| WELLS FARGO BANK, N.A., | |
| *Defendant.* | |

## CLAIM CONSTRUCTION MEMORANDUM OPINION AND ORDER

Before the Court is the opening claim construction brief of United States Automobile Association ("Plaintiff") (Dkt. No. 41, filed on May 17, 2019),[1] the response of Wells Fargo Bank, N.A. ("Defendant") (Dkt. No. 47, filed on May 31, 2019),[2] and Plaintiff's Reply (Dkt. No. 48, filed on June 7, 2019). The Court held a hearing on the issues of claim construction and claim definiteness on June 27, 2019. Having considered the arguments and evidence presented by the parties at the hearing and in their briefing, the Court issues this Order.

---

[1] Citations to the parties' filings are to the filing's number in the docket (Dkt. No.) and pin cites are to the page numbers assigned through ECF.

[2] Defendant submitted a corrected brief (Dkt. No. 53, filed on June 24, 2019) to address "cosmetic flaws" in the originally submitted brief. Dkt. No. 51. The Court cites the corrected brief herein.

**Table of Contents**

I.      BACKGROUND ................................................................................................ 3

II.     LEGAL PRINCIPLES ...................................................................................... 5

        A.    Claim Construction ................................................................................ 5

        B.    Departing from the Ordinary Meaning of a Claim Term ....................... 8

III.    CONSTRUCTION OF DISPUTED TERMS .................................................... 9

        A.    The Deposit Terms ................................................................................ 9

        B.    The Device Terms ............................................................................... 20

        C.    "general purpose computer" and "general purpose image capture device" .......... 26

        D.    "log file" and "said log file comprising said second image, an
              identification of said customer-controlled general purpose computer, and
              an identification of an image capture device that was used to capture said
              first image" ......................................................................................... 29

        E.    "said instructions instructing a depositor to: . . . identify selected points of
              said initial image to enable cropping of said initial image beyond a
              boundary of the front side of said check" ........................................... 34

IV.     CONCLUSION ............................................................................................. 36

## I. BACKGROUND

Plaintiff alleges infringement of five U.S. Patents: No. 8,392,332 (the "'332 Patent"), No. 8,708,227 (the "'227 Patent"), No. 9,224,136 (the "'136 Patent"), No. 10,013,605 (the "'605 Patent"), No. 10,013,681 (the "'681 Patent") (collectively, the "Asserted Patents"). The '332, '136, and '681 Patents (the "'332 Patent Family") are related through continuation applications and thus share a substantially identical specification (outside the claim sets). Similarly, the '227 and '605 Patents (the "'227 Patent Family") are related through continuation applications and thus share a substantially identical specification (outside the claim sets). Each of the Asserted Patents lists an effective filing date of October 31, 2006. The two patent families are directed to related subject matter. '332 Patent col.1 ll.11–17 (noting the related subject matter of U.S. Patent Application No. 11/590,974, which issued as the '227 Patent); '227 Patent col.1 ll.7–14 (noting the related subject matter of U.S. Patent Application No. 11/591,247, which is the parent application to the '332 Patent).

The Court recently construed patents having subject matter related to the subject matter of Asserted Patents. *United States Auto. Ass'n v. Wells Fargo Bank, N.A.*, No. 2:18-cv-00245-JRG, 2019 U.S. Dist. LEXIS 99285 (E.D. Tex. June 13, 2019) (the "'245 Case"). In the '245 Case, the Court considered what it means to deposit a check in the context of "deposit" claim language in the patents there at issue. *Id*. at *22–26. A similar issue is presented to the Court here.

The Asserted Patents are directed to technology for facilitating remote deposit of checks.

The abstracts of the '332, '136, and '227 Patents are identical and provide:

> Remote deposit of checks can be facilitated by a financial institution. A customer's general purpose computer and image capture device may be leveraged to capture an image of a check and deliver the image to financial institution electronics. Additional data for the transaction may be collected as necessary. The transaction can be automatically accomplished utilizing the images and data thus acquired.

The abstract of the '681 Patent provides:

Machine-readable storage media having instructions stored therein that, when executed by a processor of a mobile device, configure the mobile device to capture a check image for deposit and read a MICR line of the received check image. The mobile device is configured to present electronic images of the check to the user after the electronic images are captured. The mobile device may be configured to confirm that the deposit can go forward after optical character recognition (OCR) is performed on the check, the optical character recognition (OCR) determining an amount of the check, comparing the OCR determined amount to an amount indicated by the user, and reading a MICR line of the check.

The abstract of the '605 Patent provides:

A digital camera processing system with software to manage taking photos with a digital camera. Camera software controls the digital camera. A downloaded software component controls the digital camera software and causes a handheld mobile device to perform operations. The operations may include instructing a user to have the digital camera take photos of a check; displaying an instruction on a display of the handheld mobile device to assist the user in having the digital camera take the photos; or assisting the user as to an orientation for taking the photos with the digital camera. The digital camera processing system may generate a log file including a bi-tonal image formatted as a TIFF image.

Claim 1 of the '332 Patent and Claim 1 of the '227 Patent, exemplary method and system claims respectively, recite as follows:

**'332 Patent Claim 1**. A processor-implemented method for processing a check deposit, comprising:
through a processor:
receiving a customer identification of an account for a deposit;
receiving a first image of a front side of a check, wherein said first image is in a first file format, and wherein said first image is received from a customer-controlled general purpose computer;
creating a second image of said front side of a check by converting said first image into a second file format;
generating a log file, said log file comprising said second image, an identification of said customer-controlled general purpose computer, and an identification of an image capture device that was used to capture said first image.

**'227 Patent Claim 1**. A system for facilitating deposit of a check, said system comprising:
a memory storing a plurality of processor executable instructions; and
a processor in communication with said memory, said processor configured to execute the plurality of processing instructions to:

provide a remote deposit processing component to a depositor owned device communicatively coupled to a general purpose image capture device;

receive from the remote deposit processing component on the depositor owned device an identification of an account for deposit of a check, and an amount of said check;

provide instructions to the remote deposit processing component, said instructions instructing a depositor to:

position said check with respect to said image capture device to produce an initial image including an image of a front side of said check;

identify selected points of said initial image to enable cropping of said initial image beyond a boundary of the front side of said check; and

approve a cropped portion of said initial image, the cropped portion including said image of the front side of said check; and

receive from said depositor owned device said image of the front side of said check;

analyze said image of the front side of said check to determine whether said image of the front side of said check meets at least one criterion;

perform Optical Character Recognition (OCR) on said image of the front side of said check;

determine whether there is an error in said deposit of said check, by validating a routing number associated with said check, determining whether said check was previously deposited, and comparing said amount of said check to an amount determined by performing OCR on said image; and

initiate said deposit of said check into said account.

## II.    LEGAL PRINCIPLES

### A.    Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To determine the meaning of the claims, courts start by considering the intrinsic evidence. *Id.* at 1313; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). The intrinsic evidence includes the claims themselves, the

specification, and the prosecution history. *Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. The general rule—subject to certain specific exceptions discussed *infra*—is that each claim term is construed according to its ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.") (vacated on other grounds).

"The claim construction inquiry . . . begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). "[I]n all aspects of claim construction, 'the name of the game is the claim.'" *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) (quoting *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998)). First, a term's context in the asserted claim can be instructive. *Phillips*, 415 F.3d at 1314. Other asserted or unasserted claims can also aid in determining the claim's meaning, because claim terms are typically used consistently throughout the patent. *Id.* Differences among the claim terms can also assist in understanding a term's meaning. *Id.* For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id.* at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*,

299 F.3d 1313, 1325 (Fed. Cir. 2002). But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

The prosecution history is another tool to supply the proper context for claim construction because, like the specification, the prosecution history provides evidence of how the U.S. Patent and Trademark Office ("PTO") and the inventor understood the patent. *Phillips*, 415 F.3d at 1317. However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* at 1318; *see also Athletic Alternatives, Inc. v. Prince Mfg.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996) (ambiguous prosecution history may be "unhelpful as an interpretive resource").

Although extrinsic evidence can also be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony

may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are not helpful to a court. *Id*. Extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id*. The Supreme Court has explained the role of extrinsic evidence in claim construction:

> In some cases, however, the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period. *See, e.g., Seymour v. Osborne*, 11 Wall. 516, 546 (1871) (a patent may be "so interspersed with technical terms and terms of art that the testimony of scientific witnesses is indispensable to a correct understanding of its meaning"). In cases where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence. These are the "evidentiary underpinnings" of claim construction that we discussed in *Markman*, and this subsidiary factfinding must be reviewed for clear error on appeal.

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015).

## B. Departing from the Ordinary Meaning of a Claim Term

There are "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution."[3] *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (quoting *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)); *see also GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) ("[T]he specification and prosecution history only compel departure from the plain meaning

---

[3] Some cases have characterized other principles of claim construction as "exceptions" to the general rule, such as the statutory requirement that a means-plus-function term is construed to cover the corresponding structure disclosed in the specification. *See, e.g., CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1367 (Fed. Cir. 2002).

in two instances: lexicography and disavowal."). The standards for finding lexicography or disavowal are "exacting." *GE Lighting Solutions*, 750 F.3d at 1309.

To act as his own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term" and "clearly express an intent to define the term." *Id.* (quoting *Thorner*, 669 F.3d at 1365); *see also Renishaw*, 158 F.3d at 1249. The patentee's lexicography must appear "with reasonable clarity, deliberateness, and precision." *Renishaw*, 158 F.3d at 1249.

To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender. *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009); *see also Thorner*, 669 F.3d at 1366 ("The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."). "Where an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

## III. CONSTRUCTION OF DISPUTED TERMS

### A. The Deposit Terms

| Disputed Term[4] | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "A processor-implemented method for processing a check deposit"<br><br>• '332 Patent Claim 1 | The preamble is limiting. | The preamble is not limiting. |

---

[4] For all term charts in this order, the claims in which the term is found are listed with the term but: (1) only the highest-level claim in each dependency chain is listed and (2) only asserted claims identified in the parties' P.R. 4-5(d) Claim Construction Chart (Dkt. No. 50) are listed.

| Disputed Term[4] | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "A system for processing a check deposit"<br><br>• '332 Patent Claim 8<br>• '136 Patent Claim 14 | The preamble is limiting. | The preamble is not limiting. |
| "A non-transitory computer readable medium bearing instructions for processing a check deposit"<br><br>• '332 Patent Claim 15 | The preamble is limiting. | The preamble is not limiting. |
| "A system for facilitating deposit of a check"<br><br>• '227 Patent Claim 1 | The preamble is limiting. | The preamble is not limiting. |
| "A processor-implemented method for facilitating deposit of a check"<br><br>• '227 Patent Claim 5 | The preamble is limiting. | The preamble is not limiting. |
| "A system for allowing a customer to deposit a check using the customer's own mobile device with a digital camera"<br><br>• '681 Patent Claim 12 | The preamble is limiting.<br><br>"deposit a check" means "providing a check image to a depository for presentment and clearing in order for money to be credited to an account" | The preamble is limiting.<br><br>No construction necessary.<br><br>Alternatively,<br>• "using the customer's own [handheld] mobile device with a digital camera" means "using a mobile device with a digital camera, where the camera may be separate from the mobile device"<br>• "deposit" means "provide a check image and/or check information to a depository (such as a bank) for money to be credited to an account" |

| Disputed Term[4] | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "A system for allowing a customer to deposit a check using a customer's own handheld mobile device with a digital camera"<br><br>• '605 Patent Claim 12 | The preamble is limiting.<br><br>"deposit a check" means "providing a check image to a depository for presentment and clearing in order for money to be credited to an account" | The preamble is limiting.<br><br>No construction necessary.<br><br>Alternatively,<br>• "using a customer's own handheld mobile device with a digital camera" means "using a handheld mobile device with a digital camera, where the camera may be separate from the mobile device"<br>• "deposit" means "provide a check image and/or check information to a depository (such as a bank) for money to be credited to an account" |
| "deposit"/"deposit a check"/ "deposit of a check"/"check deposit"[5]<br><br>• '332 Patent Claims 1, 8, 15<br>• '227 Patent Claims 1, 5, 9<br>• '136 Patent Claims 1, 7, 14<br>• '605 Patent Claims 1, 12<br>• '681 Patent Claims 1, 12, 30 | providing a check image to a depository for presentment and clearing in order for money to be credited to an account | No construction necessary.<br><br>Alternatively,<br>• provide a check image and/or check information to a depository (such as a bank) for money to be credited to an account |

Because the parties' arguments and proposed constructions with respect to these terms are related, the Court addresses the terms together.

---

[5] In their P.R. 4-5(d) Claim Construction Chart, the parties list a variety of claim phrases each of which includes the term "deposit" but present a dispute solely over the term "deposit" or "deposit a check." Dkt. No. 50-1 at 2–10 (term numbers 1–3). The parties also identify claims that recite "deposit of a check" or "check deposit." The Court understands that "deposit of a check" and "check deposit" should be construed the same as "deposit" and "deposit a check." As such, the Court addresses these terms together and holds that the surrounding claim language listed in the P.R. 4-5(d) chart does not need to be construed.

## The Parties' Positions

With respect to whether the preambles are limiting, Plaintiff submits: The preamble of each of the claims here in dispute is limiting because each preamble provides antecedent basis for terms recited in the body of the claim. For example, the "check deposit" in the preamble of Claim 14 of the '136 Patent provides the antecedent basis for "the check deposit" recited in Claim 15, which depends from Claim 14. The "check deposit" in the preambles of Claims 1, 8, and 15 of the '332 Patent provides the antecedent basis for "a deposit" in the claims. And "deposit of a check" in the preambles of Claims 1 and 5 of the '227 Patent provides the antecedent basis for "said deposit of said check" in the claims. Further, the check-deposit aspect recited in the preambles is described in the patents as an important aspect of the invention and thus should be treated as a claim limitation. Dkt. No. 41 at 7–12.

With respect to the meaning of "deposit," Plaintiff submits: a "deposit" of a check is something that "occurs after an image is received and processed by the bank." It is more than just a transfer of an image, it is a transaction that includes presentment and clearing of the check and includes analysis of the check to determine its sufficiency for deposit. Dkt. No. 41 at 7–8, 13–19

In addition to the claims themselves, Plaintiff cites the following intrinsic and extrinsic evidence to support its position: **Intrinsic evidence**: '136 Patent figs.2–3, col.2 ll.9–19, col.2 ll.29–32, col.2 ll.34–36, col.2 ll.40–43, col.2 ll.62–63, col.3 ll.4–8, col.6 ll.1–20; col.9 ll.2–4, col.9 l.13, col.10 ll.7–9, col.10 ll.45–47, col.11 ll.7–10, col.11 ll.12–23, col.11 ll.46–50, col.12 ll.3–9, col.12 ll.46–49; '605 Patent col.2 ll.20–32, col.10 l.65 – col.11 l.24, col.13 ll.51–57; '681 Patent col.9 ll.27–32, col.9 ll.56–60, col.10 ll.36–42; '605 Patent File Wrapper March 28, 2019 Petition for Covered Business Method Review at 4, 8, CBM2019-00029 (Plaintiff's Ex. 15, Dkt. No. 41-15 at

14, 18). **Extrinsic evidence**: Calman Decl.[6] ¶¶ 49–64, 112–19, 125–36, 161–63, 182–87 (Plaintiff's Ex. 6, Dkt. No. 41-6); Saffici Decl.[7] ¶¶ 19–20 (Plaintiff's Ex. 8, Dkt. No. 41-8); '245 Case, Saffici Dep.[8] 21:5–21, 18:16–21, 19:14 – 21:3, 21:5–21, 39:2 – 40:13, 43:25 – 44:10, 46:16 – 47:9 (Plaintiff's Ex. 10, Dkt. No. 41–10); '245 Case, Usapkar Dep.[9] 40:10–24 (Plaintiff's Ex. 11, Dkt. No. 41-11); '245 Case, Knight Dep.[10] 34:16–20, 34:25 – 37:10 (Plaintiff's Ex. 12, Dkt. No. 41-12); '245 Case, Alexander Dep.[11] 38:17–21 (Plaintiff's Ex.13, Dkt. No. 41-13); Saffici Dep.[12] 10:24 – 11:3, 55:4–19, 67:6–12, 67:16–24 (Plaintiff's Ex. 14, Dkt. No. 41-14); Decision, *Wells Fargo Bank, N.A. v. United Services Automobile Association*, CBM2019-00004 (Patent No. 8,977,571), paper 22 at 14 (PTAB May 15, 2019) (Plaintiff's Ex. 16, Dkt. No. 41-16 at 14).

With respect to whether the preambles are limiting, Defendant responds: The claim bodies of the claims here in dispute each provides a structurally complete invention, with the preamble providing only an intended use. Thus, the preambles are not limiting. These preambles do not provide antecedent basis for any term recited in the claim body. Specifically, "a deposit" is recited in the body of Claims 1, 8, 15 of the '332 Patent, with the "a" indicating that there is no need for an antecedent basis. Further, "the check deposit" in Claim 15 of the '136 Patent refers to "a deposit" recited in the body of Claim 14, which in turn does not need an antecedent reference. And "said deposit of said check" in Claims 1 and 5 of the '227 Patent refers to "deposit of a check" recited in the body of the claim. Finally, the depositing is not an essential feature of the described

---

[6] April 5, 2019 Declaration of Matthew A. Calman. (Plaintiff's litigation expert.)
[7] April 5, 2019 Declaration of William L. Saffici Regarding Claim Construction. (Defendant's litigation expert.)
[8] March 29, 2019 Deposition of William L. Saffici.
[9] November 20, 2018 Deposition of Nishant Usapkar. (Defendant's employee.)
[10] February 8, 2019 Deposition of Katie Night. (Defendant's employee.)
[11] January 23, 2019 Deposition of Peter Alexander, Ph.D. (Defendant's patent-office expert.)
[12] May 14, 2019 Deposition of William L. Saffici.

invention but is rather described in the patents as a goal of the invention, with the deposit itself being optional. In fact, some claims specifically claim a deposit (e.g., Claim 1 of the '681 Patent) while others do not. Dkt. No. 53 at 6–9.

With respect to the meaning of "deposit," Defendant responds: As described in the patents and as known in the art, presentment and clearing of a check are distinct from "deposit" of a check. In fact, some of the claims recite steps that Plaintiff argues are inherent to deposit. But if the steps were inherent in "deposit," there would be no need to recite them in the claims. Dkt. No. 53 at 6–7, 9–14.

In addition to the claims themselves, Defendant cites the following intrinsic and extrinsic evidence to support its position: **Intrinsic evidence**: '332 Patent col.2 ll.31–34, col.5 l.66 – col.6 l.1, col.6 ll.12–20; '227 Patent, at [57] Abstract, col.2 ll.52–55; '136 Patent col.11 ll.12–23. **Extrinsic evidence**: Saffici Decl. ¶ 19 (Defendant's Ex. A, Dkt. No. 53-1); '245 Case, Saffici Decl. ¶¶ 18–19 (Defendant's Ex. B, Dkt. No. 53-2); '245 Patent, Calman Dep.[13] 62:16–18, 63:25 – 64:11 (Defendant's Ex. C, Dkt. No. 53-3); '245 Case, Liang Dep.[14] 38:10–15, 48:20 – 49:3 (Defendant's Ex. D, Dkt. No. 53-4); Saffici Dep. 22:19 – 23:22, 25:9 – 26:12 (Plaintiff's Ex. 14, Dkt. No. 41-14).

Plaintiff replies: The limitations of the claims here in dispute only make sense when read in the context of the preamble; thus, the preambles are limiting. Further, the patents "make clear that processing a check deposit is an essential component of the inventions." And a "deposit" is more than submission of a check image, it necessarily includes presentment and clearing of the check. Dkt. No. 48 at 4–8.

---

[13] March 28, 2019 Deposition of Matt Calman.
[14] March 27, 2019 Deposition of Minya Liang.

Plaintiff cites further **intrinsic evidence** to support its position: '227 Patent, at [57] Abstract, col.2 ll.34–42, col.7 ll.12–14, col.7 ll.23–30.

<u>Analysis</u>

The dispute distills to two issues. First, whether the preambles of Claims 1, 8 and 15 of the '332 Patent, Claim 14 of the '136 Patent, and Claims 1 and 5 of the '227 Patent are limiting. They are. Second, whether "deposit" in the claims necessarily includes or follows presentment and clearing of a check. It does not, though it is not simply submitting a check image or information to a depository.

The disputed preambles are limiting. Under Federal Circuit precedent "a preamble is not limiting where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention." *Acceleration Bay, LLC v. Activision Blizzard, Inc.*, 908 F.3d 765, 770 (Fed. Cir. 2018) (quotation marks and citations omitted). A preamble is limiting, however, when it "necessary to give life, meaning, and vitality to the claim." *Catalina Mktg. Int'l v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (quotation marks omitted). For example, "dependence on a particular disputed preamble phrase for antecedent basis may limit claim scope because it indicates a reliance on both the preamble and claim body to define the claimed invention." *Id*. "Likewise, when the preamble is essential to understand limitations or terms in the claim body, the preamble limits claim scope." *Id*. "Further, when reciting additional structure or steps underscored as important by the specification, the preamble may operate as a claim limitation." *Id*. Here, the check-deposit aspect of the preambles is more than simply a statement of intended use, they reflect an important aspect of the described invention and they are essential to properly understanding limitations in the claim bodies.

A preamble is limiting when it tethers the claim body to the described invention. In *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, the Federal Circuit noted that the "specification makes clear that the inventors were working on the particular problem of an effective optical communication system not on general improvements in conventional optical fibers" and held the "optical waveguide" language in the preamble was limiting when the claim body was ostensibly directed to optical fibers irrespective of any waveguide properties. 868 F.2d 1251, 1256–57 (Fed. Cir. 1989). That is, the claim body was properly understood only with reference to the preamble, and the preamble was thus limiting. *Id.* Similarly, in *GE Co. v. Nintendo Co., LTD.*, the Federal Circuit noted that "the '125 specification makes clear that the inventors were working on the particular problem of displaying binary data on a raster scan display device and not general improvements to all display systems" and held that the term "system for displaying a pattern on a raster scanned display device" in the preamble was limiting when the claim body was ostensibly directed to all types of display systems. 179 F.3d 1350, 1361–62 (Fed. Cir. 1999). The Federal Circuit addressed a similar issue in *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563 (Fed. Cir. 1996). There, it noted that the "specification also states that the purpose of the invention" was to address a problem in a "cold purge process" and held that the term "[i]n a cold purge process" in the preamble was limiting. *Id.* at 1571–73. *See also*, *Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1309–10 (Fed. Cir. 2004) (reading the preamble as limiting because the patent document "shows that the inventor considered that the . . . preamble language represented an important characteristic of the claimed invention"); *On Demand Mach. Corp. v. Ingram Indus.*, 442 F.3d 1331, 1343–44 (Fed. Cir. 2006) (reading the preamble as limiting because "it states the framework of the invention . . . [that] is fundamental to the [] invention" as described in the patent and therefore "embraces the totality of [the recited]

limitations, and limits the claim to the subject matter of the preamble"); *Mems Tech. Berhad v. ITC*, 447 F. App'x 142, 153–54 (Fed. Cir. 2011) (reading the preamble as limiting because it states "the essence of the invention" and "standing alone, the bodies of [the claims] do not require" the important characteristic of the invention recited in the preamble). Common to these cases is that the preamble is limiting when the preamble tethers the claims to the focus of the described invention—when it provides an important aspect of the invention when that aspect is not understood solely from body of the claim.

The claims are properly understood only with reference to the preambles. Both the '332 and '227 Patent Families focus on processing the deposit of a negotiable instrument such as a check. For example, the patents provide a description of the benefits of checks and some failings of the check-deposit process and conclude "there is a need for a convenient method of remotely depositing a check while enabling the payee to quickly access the funds from the check." '332 Patent col.1 l.33 – col.2 l.38; '227 Patent col.1 l.25 – col.2 l.30. All the embodiments are directed to "remotely redeeming a negotiable instrument." '332 Patent col.2 ll.42–45; '227 Patent col.2 ll.34–37. For the claims in which the preamble is in dispute, the check-deposit aspect of the invention is found clearly only in the preamble.[15] For example, the body of Claim 1 of the '332 Patent provides "receiving a customer identification of an account for a deposit" and various check-image-processing steps all without reference to depositing a check. Absent the preamble, the body is ostensibly directed to all types of check-image processing, such as for archiving or reporting. But the focus of the inventions of the patents is facilitating the deposit process by submission of check images. The inventions are not directed to general improvements in check-

---

[15] At the hearing, Defendant stated that the claims are related to the check-deposit process, but Defendant reaches this conclusion because of references to "deposit" in the bodies of the claims rather than because of the preamble.

image processing. The claim bodies here are properly understood only with reference the tethering language found in the preambles. The check-deposit language in the preambles is essential to a proper understanding of claim scope.

The importance of the check-deposit language manifests in the dispute over whether "a check deposit" in the preamble of Claim 14 of the '136 Patent provides antecedent reference for "the check deposit" in the body Claim 15, which depends from Claim 14. The only express antecedent reference to "check deposit" is in the preamble of Claim 14, which suggests that the preamble for Claim 14 is limiting. *See Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d 1021, 1023–24 (Fed. Cir. 2015) (holding "repetitive motion pacing system for pacing a user" in the preamble is limiting in part because "'repetitive motion pacing system' in the preamble of claim 25 similarly provides antecedent basis for the term 'repetitive motion pacing system' recited as a positive limitation in the body of claim 28, which depends from claim 25"). Defendant argues that "receive a customer identification of an account for a deposit" recited in the body of Claim 14 provides the antecedent basis for "initiate the check deposit" in Claim 15. *See* Dkt. No. 53 at 8. But this makes sense only when "a deposit" of Claim 14 is properly understood in the context of "a check deposit" as provided in the preamble. That is, the check-deposit language in the preamble is essential to understanding the "deposit" of the claim.

A check "deposit" does not necessarily involve presentment and clearing, though it does require submission of the check in a form sufficient for presentment and clearing, if such is necessary to effect the transfer of the check funds to the deposit account.[16] The term "deposit" is used somewhat loosely in the Asserted Patents. To begin, "deposit" is used variably as a verb and

---

[16] The parties agree that "check deposit" and variants have the same meaning in the Asserted Patents as they do in the patents at issue in the '245 Case. As such, the Court reiterates its reasoning on "depositing a check" set forth in the '245 Case. 2019 U.S. Dist. LEXIS 99285, at *22–26.

a noun. In some instances, the "deposit" is distinct from clearing and transfer of funds. For instance, the patents describe that "the payee may not have access to the funds from the check until the payee deposits the check at the bank, the check has cleared and the funds have been credited to the payee's account. The payee may have to wait even longer if the payee chooses to deposit the check by mail." '332 Patent col.2 ll.31–34; '227 Patent col.2 ll.23–26. Similarly, the patents describe that one "may deposit the check into account [] by converting the check into electronic data and sending the data to financial institution" and thereafter the "financial institution [] may credit the funds to account . . . [and] may clear the check by presenting the digital image to an intermediary bank." '332 Patent col.5 l.66 – col.6 l.20; '227 Patent col.9 ll.41–62. In other instances, the "deposit" appears to include more than submission of a check or image in suitable form. For example, the '332 Patent Family provides: "If the server determines that the delivered images and any corresponding data are sufficient to go forward with the deposit, the customer's account may be provisionally credited." '332 Patent col.9 ll.5–8. If the check image is not sufficient, "the deposit transaction may be aborted." *Id.* at col.10 ll.10–14. The '227 Patent Family teaches that a "deposit of a check" is initiated by "any action that sets in motion a chain of automated events resulting in a crediting of the customer's account." '227 Patent col.12 ll.51–62. On balance, the patents teach that a check deposit necessarily involves submission of a check in a form sufficient to effect the crediting of funds to an account. The deposit may also involve other steps, such as presentment and clearing and the actual transfer of funds, but it need not.

Accordingly, the Court construes the Deposit Terms as follows:

- The preambles of Claims 1, 8 and 15 of the '332 Patent, Claim 14 of the '136 Patent, and Claims 1 and 5 of the '227 Patent are limiting;

- when used as a verb, "deposit," "deposit a check," "deposit of a check," and "check deposit" means "providing a check to a depository in a form sufficient to allow money to be credited to an account";

- when used as a noun, "deposit," "deposit a check," "deposit of a check," and "check deposit" means "a transaction involving provision of a check to a depository in a form sufficient to allow money to be credited to an account."

### B. The Device Terms

| Disputed Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "remote device"<br><br>• '136 Patent Claim 14 | customer-controlled general-purpose device | a general purpose computing device at a different location from the check processing system |
| "depositor owned device"<br><br>• '227 Patent Claims 1, 5, 9 | customer-controlled general-purpose device | No construction necessary. |
| "portable device"<br><br>• '681 Patent Claim 1<br><br>"mobile device"<br><br>• '605 Patent Claim 1<br>• '681 Patent Claims 12, 30 | No additional construction necessary. | a computing device capable of being easily moved |

Because the parties' arguments and proposed constructions with respect to these terms are related, the Court addresses the terms together.

<u>**The Parties' Positions**</u>

Plaintiff submits: The Asserted Patents describe the remote-deposit process is accomplished through a customer-controlled general-purpose computer and thus teach that the "remote" aspect refers not to a location but rather to the use of a customer-controlled general-purpose computer. That is, "remote device" does not encompass a bank-controlled device, like an ATM, that is located

somewhere other than at the location of the bank's check-processing system. Finally, the terms "portable device" and "mobile device" do not need to be construed as they are readily understandable. Dkt. No. 41 at 19–22.

In addition to the claims themselves, Plaintiff cites the following intrinsic and extrinsic evidence to support its position: **Intrinsic evidence**: '136 Patent col.2 ll.40–46, col.2 l.66 – col.3 l.2, col.3 l.51 – col.4 l.28, col.6 ll.51–52, col.7 ll.40–43, col.9 ll.19–26, col.12 ll.12–16; '136 Patent File Wrapper, March 28, 2019 Petition for Covered Business Method Review at 8, CBM2019-00027 (Plaintiff's Reply Ex. 7, Dkt. No. 41-7 at 18). **Extrinsic evidence**: Calman Decl. ¶ 69 (Plaintiff's Ex. 6, Dkt. No. 41-6).

Defendant responds: The plain reading of "remote device" is that it is not necessarily a "customer-controlled general purpose computer." Some claims in the Asserted Patents recite a "customer-controlled general purpose computer," suggesting that "remote device" has a different meaning. Further, the benefit of "remote" deposit described in the patents is that the bank customer need not physically go to the bank to deposit the check. That is, "remote" is about location. The meaning of "depositor owned device" is accessible without construction. Finally, a "portable" or "mobile" device is simply one that is easily moved, such as a laptop or PDA. Dkt. No. 53 at 15–19.

In addition to the claims themselves, Defendant cites the following **intrinsic evidence** to support its position: '332 Patent col.14 ll.17–18; '136 Patent col.2 ll.9–19; '605 Patent col.3 ll.36–47, col.3 l.59 – col.4 l.9; '681 Patent col.3 ll.26–49, col.4 ll.37–48.

Plaintiff replies: The functionality of the "remote device" of Claim 14 of the '136 Patent is the same functionality described in the patent for the customer-controlled general-purpose computer. This is to enable a customer to deposit a check remotely, i.e., without the need to use

bank systems, regardless of where the customer is located. Similarly, the "depositor owned device" is not any device the depositor may own, but is described in the patents as a general-purpose device that is controlled by the customer. The terms "remote device" and "depositor owned device" are simply other ways of expressing the "customer-controlled general purpose computer" described in the patents. Finally, it is not clear what it means for a mobile or portable device to be "capable of being easily moved" as proposed by Defendant. Dkt. No. 48 at 7–10.

Plaintiff cites further **intrinsic evidence** to support its position: '136 Patent col.2 l.40 – col.3 l.10.

### Analysis

There are three issues in dispute. First, whether "depositor owned device" and "remote device" should be construed coextensively with "customer-controlled general purpose computer" elsewhere recited in the claims. They should not. Second, whether "remote device" is "remote" by virtue of its location or by virtue of its control. "Remote" here refers to the relationship with the system for processing a check deposit, but does not necessarily require a geographically distant location. Third, whether "portable device" and "mobile device" should each be understood as a device that is capable of easily being moved. They should, with the understanding that the ease of movement is with reference to a human moving the device by hand and that a "mobile device" differs from a "portable device" in that a "mobile device" is necessarily a handheld device.

To begin, the Court declines to interpret "remote device" and "depositor owned device" as "customer-controlled general purpose device." The Court understands "customer-controlled general purpose device" proposed by Plaintiff to be coextensive with "customer-controlled general purpose computer" recited in the claims of the '332 Patent. There is a presumption in favor of construing different claim terms to have different meanings. *CAE*

*Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("we must presume that the use of . . . different terms in the claims connotes different meanings"). Plaintiff has not convinced the Court that "remote device," "depositor owned device," and "customer-controlled general purpose computer" are used synonymously in the patents. Indeed, the meaning of "depositor owned device" is plain on its face—it requires the device be owned by the depositor. The patents suggest, however, that not all customer-controlled general purpose computers are "owned" by the depositor. *See, e.g.*, '227 Patent col.5 l.60 – col.6 l.3 (noting that "computers in college dormitories, in workplace offices, and so forth may also be considered to be 'customer-controlled.'"). Similarly, the patents suggest that not all depositor-owned devices are customer-controlled. *See, e.g.*, *id*. ("The owner of . . . computer [in a private residence] ***typically*** has the power to install programs and configure the computer as they wish." (emphasis added)).

"Remote" in Claim 14 of the '136 Patent refers not specifically to location, but rather to relationship. That is, the "remote device" is not necessarily at a different geographic location from the "system for processing a check deposit, comprising: a plurality of processors" of Claim 14, but it is structurally and logically distinct from this system. The term "remote" is used in a variety of ways in the Asserted Patents. For example, "remotely depositing a check" is apparently posed in contrast to "deposit[ing] the check at the bank." '332 Patent col.2 ll.31–38; '227 Patent col.2 ll.23–30. This suggests "remote" means at a different location. The patents also relate "remotely redeeming a negotiable instrument" to a process involving a customer device communicating with a bank server. '332 Patent col.2 l.42 – col.3 l.10; '227 Patent col.2 l.34 – col.3 l.10. This suggests that "remote" means the customer device is not part of the bank's server. *See also*, '332 Patent fig.2, col.6 ll.53–61, and col.12 ll.13–20 (collectively showing that "remote deposit capability" is

related to communication between a customer device and a bank server); '227 Patent[17] col.9 ll.16–18 ("A server is typically, though not necessarily, a remote computer system accessible over a remote or local network, such as the Internet."). The teaching of the '227 Patent suggests that a server may be "distributed across multiple computing devices and objects," suggesting that two components of the server may be geographically distant from each other. '227 Patent col.9 ll.23–25. The teaching of the '332 Patent notes that a computer in a "workplace office" may be used for remote deposit of a check, allowing for the possibility of remote deposit to a bank from an office in the bank's building. *See* '332 Patent col.4 ll.17–19, col.12 ll.15–20. In total, the teachings of the patents suggest that a device is "remote"—it is suitable for remote deposit—because it is not part of the bank's system that processes the check images. This understanding best fits with the language of Claim 14 of the '136 Patent, which provides (with emphasis added):

> *A system* for processing a check deposit, *comprising*:
> *a plurality of processors*, each having a memory associated therewith, *configured* to execute instructions to:
>> receive a customer identification of an account for a deposit;
>> *receive an image* of a front side of a check captured by a camera, wherein the image of the front side of the check is received *from a remote device*;
>> *receive an image* of a back side of the check captured by the camera, *from the remote device*;
>> process the image of the front side of the check to obtain deposit information for the check; process the image of the back side of the check to determine whether a mark is present on the image of the back side of the check by: determining whether a mark is present at an endorsement location in the image of the back side of the check without further performing a signature identification procedure; and
>> generate a log file, the log file comprising at least a portion of the deposit information for the check.

'136 Patent col.15 l.5 – col.16 l.2. The claim distinguishes two computing devices, the check-processing system and the remote device. In this context, the best understanding of "remote" here

---

[17] The '136 Patent is not in the '227 Patent Family, but the '136 Patent provides that it is "related by subject matter" to the '227 Patent. '136 Patent col.1 ll.17–23; '332 Patent col.1 ll.11–20.

is that it refers to the distinction of the image-providing "remote device" from the image-receiving "system . . . comprising: a plurality of processors." *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc) ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." (quotation marks omitted)). The "remote device" and the check-processing system are two distinct systems.

Finally, the "portable device" and "mobile device" phrases appear only in the claims, suggesting that these terms have their customary meanings; namely, devices that are portable or mobile. That is, the devices are easily moved as Defendant suggests. In the context of the Asserted Patents, in which customers are using devices for remote deposit of checks, the Court understands the ease of movement to be from the customer's perspective—the device is easily moved manually by a human. But "portable device" and "mobile device" are distinct terms in the claims, suggesting that they have different meanings. The Court understands that under its customary meaning, a "mobile device" is distinct from a "portable device" in that the "mobile device" is a handheld device whereas a "portable device" would encompass a device such as a laptop computer.

Accordingly, the Court rejects Plaintiff's construction of "depositor owned device," determines this term has its plain and ordinary meaning without the need for further construction. The Court construes the remaining Device Terms as follows:

- "remote device" means "computing device distinct from the system comprising the plurality of processors";

- "mobile device" means "handheld computing device"; and

- "portable device" means "computing device capable of being easily moved manually."

### C. "general purpose computer" and "general purpose image capture device"

| Disputed Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "general purpose computer"<br><br>• '332 Patent Claims 1, 8, 15<br>• '605 Patent Claim 1<br>• '681 Patent Claim 1 | excludes "specialized equipment as may be purchased by a business or other commercial enterprise, for example, for the specialized purpose of high-speed, high-volume check deposits" | No construction necessary.<br><br>Alternatively,<br>• a device that performs general computing functions, such as a laptop or desktop computer |
| "general purpose image capture device"<br><br>• '227 Patent Claims 1, 5, 9 | a device capable of capturing an image, excluding specialized equipment as may be purchased by a business or other commercial enterprise, for example, for the specialized purpose of high-speed, high-volume check deposits | No construction necessary.<br><br>Alternatively,<br>• a device that performs general image capture functions, such as a camera or a scanner |

Because the parties' arguments and proposed constructions with respect to these terms are related, the Court addresses the terms together.

**The Parties' Positions**

Plaintiff submits: The Asserted Patents expressly exclude certain specialized equipment from the scope of "general purpose computer." A "general purpose image capture device" similarly excludes specialized check-processing equipment. Defendant's proposed constructions of these terms would improperly encompass expressly excluded specialized equipment for high-speed, high-volume check deposits so long as the equipment also performed general computing or image-capture functions. Dkt. No. 41 at 23–26.

In addition to the claims themselves, Plaintiff cites the following **intrinsic evidence** to support its position: '227 Patent, at [57] Abstract, col.3 l.65 – col.4 l.3, col.4 ll.19–34; '681 Patent col.3

ll.41–49; '227 Patent File Wrapper February 12, 2009 Reply at 7 (Plaintiff's Reply Ex. 1, Dkt. No. 48-1 at 8[18]).

Defendant responds: The general-purpose terms are understandable without construction. While the patents include language excluding certain specialized equipment from the scope of "general purpose computer," that language need not be included in a construction but could rather just be referenced by the parties. This exclusion language does not apply to "general purpose image capture device." Dkt. No. 53 at 19–21.

In addition to the claims themselves, Defendant cites the following **intrinsic evidence** to support its position: '227 Patent col.4 ll.16–25, col.6 ll.15–48, col.6 ll.50–52; '681 Patent col.3 ll.41–49; '227 Patent File Wrapper February 12, 2009 Reply 7–8 (Defendant's Ex. E, Dkt. No. 53-5 at 8–9), April 5, 2019 Request for Continued Examination (Defendant's Ex. F, Dkt. No. 53-6).

Plaintiff replies: The patents' exclusion of specialized equipment should be included in the construction of these terms so that the parties do not make claim-construction arguments to the jury. As explained during prosecution of the '227 Patent, the exclusion of specialized equipment is a function of the meaning of "general purpose" and thus attaches to both "general purpose computer" and "general purpose image capture device." Dkt. No. 48 at 10.

Plaintiff cites further **intrinsic evidence** to support its position: '227 Patent col.4 ll.29–34.

---

[18] Plaintiff cites Exhibit 15 to its opening brief, which is a petition for CBM review of the '605 Patent. Dkt. No. 41 at 25; Dkt. No. 41-15 at 1. The passage it quotes from the prosecution history of the '227 Patent is found in Plaintiff's Reply Exhibit 1. Dkt. No. 48-1 at 8. This excerpt from the '227 Patent file wrapper was also submitted as Defendant's Exhibit E. Dkt. No. 53-5.

**<u>Analysis</u>**

There are two issues in dispute. First, whether the Asserted Patents' express exclusion of certain exemplary specialized equipment from "general purpose" equipment should attach both to "general purpose computer" and "general purpose image capture device." It should. Second, whether the exclusion should be included in the claim construction. It should not, the exclusion is expressly exemplary and including it in a construction could confuse rather than clarify the otherwise plain meaning of "general purpose."

The term "general purpose" is used in the Asserted Patents according to its plain and ordinary meaning; namely, to denote equipment that is not specialized for a specific purpose. For example, the patents provide "[g]eneral purpose computers are ubiquitous today and the term should be well understood." '332 Patent col.3 ll.63–64; '227 Patent col.4 ll.20–21. The patents further provide that "specialized equipment as may be purchased by a business or other commercial enterprise, for example, for the specialized purpose of high-speed, high-volume check deposits" is not "general purpose." '332 Patent col.4 ll.1–4; '227 Patent col.4 ll.25–29. From this, the Court understands the general-purpose equipment, be it a computer or image-capture device, is not specialized for a particular application. For example, specialized equipment for high-speed, high-volume check deposits is not "general purpose."

Accordingly, the Court construes these terms as follows:

- "general purpose computer" means "computer that is not specialized for a particular purpose"; and

- "general purpose image capture device" means "image capture device that is not specialized for a particular purpose."

**D.** **"log file" and "said log file comprising said second image, an identification of said customer-controlled general purpose computer, and an identification of an image capture device that was used to capture said first image"**

| Disputed Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "log file"<br><br>• '332 Patent Claims 1, 8, 15<br>• '136 Patent Claim 14<br>• '605 Patent Claims 1, 12<br>• '681 Patent Claims 1, 12 | collection of data related to a check deposit transaction | No construction necessary. |
| "said log file comprising said second image, an identification of said customer-controlled general purpose computer, and an identification of an image capture device that was used to capture said first image"<br><br>• '332 Patent Claims 1, 8, 15 | "an identification of said customer-controlled general purpose computer" means<br>• information related to the customer-controlled general purpose computer used to generate the image(s) of the check<br><br>"an identification of an image capture device" means<br>• information related to the image capture device used to generate the image(s) of the check | the log file includes the second image, identifies the specific customer-controlled general purpose computer [from which the first image was received], and identifies the specific image capture device used to capture the first image. |

Because the parties' arguments and proposed constructions with respect to these terms are related, the Court addresses the terms together.

**The Parties' Positions**

Plaintiff submits: The "log file" is described in the Asserted Patents as a collection of data related to a deposit transaction. The "identification" data referenced in Claims 1, 8, and 15 of the '332 Patent refers information about the computer or capture device, such as the "make and model" and "other identification information such as an image capture device Global Unique Identifier and "an identification of software associated with the device." This identification data does not

29

necessarily identify the specific computer or image capture device used in processing the check. Dkt. No. 41 at 26–29.

In addition to the claims themselves, Plaintiff cites the following **intrinsic evidence** to support its position: '681 Patent col.2 ll.46–49, col.8 ll.40–44, col.10 ll.45–55, col.12 ll.52–61.

Defendant responds: The specific data in the "log file" is recited in the claims; thus, there is no need to separately construe "log file" and doing so threatens to confuse rather than clarify. With respect to the '332 Patent claims, the "identification of an image capture device" of the independent claims is distinct from "further . . . identification of an image capture device type" recited in the dependent claims (e.g., Claim 6, which depends from Claim 1). This claim-recited distinction indicates that identification of a device or computer is different than identification of the type of device or computer. Identification of a device or computer means identification of the specific device or computer, rather than a general identification such as the make or model, or just any information related to the device or computer. Dkt. No. 53 at 21–24.

Plaintiff replies: The claims specify what must be included in the log file, but they do not define what a log file is. With respect to the "identification" data in the log file of the '332 Patent claims, the independent claims recite "identification" broadly and the independent claims provide a specific example of such identification, an "identification of image capture device type." The patents provide other examples, such as the software associated with the device. The "identification" in the log file is not limited to a unique identifier. Requiring a device unique identifier in the independent claims would actually cause the dependent claim requirement of a device type to be superfluous. Dkt. No. 48 at 11–13.

Plaintiff cites further **intrinsic evidence** to support its position: '332 Patent fig.5, col.12 l.67 – col.13 l.15.

**Analysis**

There are two issues in dispute. First, whether the claim-recited data in the "log file" is sufficient to define the log file without the need for further construction. It is. Second, whether the "identification" in the log file of the independent claims of the '332 Patent necessarily refers to specific identification of the computer and image-capture device used for the check-deposit processing. It does not.

The "log file" in the claims is a file that includes certain specified information. For example: Claim 14 of the '136 Patent recites: "the log file comprising at least a portion of the deposit information for the check." '136 Patent col.16 ll.1–2. Claim 1 of the '605 Patent and Claim 1 of the '681 Patent each recites: "the log file including a bi-tonal image of the check." '605 Patent col.15 ll.63–64; '681 Patent col.14 ll.45–46. Claim 12 of the '605 Patent and Claim 12 of the '681 Patent each recites: "the log file including an image of the check submitted for [the] mobile check deposit." '605 Patent col.17 ll.1–3; '681 Patent col.15 ll.55–56. Further, the deposit-related nature of the log file is stated in the claims. *See, e.g.*, '605 Patent col.15 ll.63–64 (Claim 1 reciting "generating a log file for the deposit, the log file including . . . ."); '681 Patent col.14 ll.45–56 (Claim 1 reciting, "generating a log file for the deposit, the log file including . . . ."). And "log file" is used in the written description to denote an unspecified collection of data. *See, e.g.*, '332 Patent col.12 ll.25–28 ("The log file comprises log file data . . . [that] may comprise, for example[,] the data illustrated in the log file 500 in FIG.5"); '227 Patent col.14 ll.54–64 ("Exemplary data that may be collected in the log file is [a variety of information types] and so forth."). That is, the nature of the log file, beyond being a file containing information, is stated in the claims themselves in that the claims recite the information that must be in the log file. No real dispute exists as to the scope of that information currently before the Court, other than for Claims 1, 8, and 15 of the '332

Patent. As such, there is no need to construe "log file" apart from the recited information it must include.

The "identification" information in the log files of Claims 1, 8, and 15 of the '332 Patent refers to identification of the equipment generally and not necessarily to a specific, unique identifier. The Court agrees with Plaintiff that the Asserted Patents describe identification broadly. For example, the '332 Patent teaches:

> In general, a log file can advantageously comprise an identification of an image capture device used to generate an image of a check, for example a scanner make and model, digital camera make and model, or other identification information such as an image capture device Global Unique Identifier (GUID). This identification information may also include an identification of software associated with the device, for example the familiar TWAIN drivers that can be used with scanners, digital cameras, and other image capture devices.

'332 Patent col.12 l.67 – col.13 l.5; *see also* '227 Patent col.14 ll.54–58 ("Exemplary data that may be collected in the log file is an identification of the operating system used by the customer's general purpose computer, an identification of a browser used by the customer's general purpose computer, an identification of an image capture device make and model . . . ."). The Court acknowledges that dependent claims in the '332 Patent provide that the log file "***further*** comprises [general identification information]." *See, e.g.*, '332 Patent col.14 ll.36–39 ("wherein said log file further comprises an identification of an image capture device type for an image capture device that was used to capture said first image") (emphasis added). Indeed, the Court is somewhat sympathetic to Defendant's claim-differentiation argument. That said, "[c]laim differentiation is a guide, not a rigid rule." *Wi-LAN USA, Inc. v. Apple Inc.*, 830 F.3d 1374, 1391 (Fed. Cir. 2016). "Claim differentiation cannot overcome a contrary construction dictated by the written description or prosecution history." *Id*. (quotation and modification marks omitted). "If a claim will bear only one interpretation, similarity will have to be tolerated." *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991). Here, the clear teaching of the '332 Patent is that "identification" may

be specific or general. It is a broad term. That certain general-identification information is recited in dependent claims cannot redefine "identification" in the independent claims to carry only a specific-identification meaning when such would be contrary to the specifications' clear use of that term to broadly refer to both general and specific identification. *See Multilayer Stretch Cling Film Holdings, Inc. v. Berry Plastics Corp.*, 831 F.3d 1350, 1360 (Fed. Cir. 2016) ("But the language of a dependent claim cannot change the scope of an independent claim whose meaning is clear on its face. We have held that while it is true that dependent claims can aid in interpreting the scope of claims from which they depend, they are only an aid to interpretation and are not conclusive. The dependent claim tail cannot wag the independent claim dog." (quotation marks omitted)).

Accordingly, the Court determines that there is no dispute to resolve regarding the meaning of "log file" apart from the claim-recited information included in the log file. The Court construes the "identification" terms in the log-file limitations of Claims 1, 8, and 15 of the '332 Patent as follows:

- "an identification of said customer-controlled general purpose computer" means "a general or specific identification of the customer-controlled general purpose computer"; and

- "an identification of an image capture device" means "a general or specific identification of an image capture device."

### E. "said instructions instructing a depositor to: . . . identify selected points of said initial image to enable cropping of said initial image beyond a boundary of the front side of said check"

| Disputed Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "said instructions instructing a depositor to: . . . identify selected points of said initial image to enable cropping of said initial image beyond a boundary of the front side of said check"<br><br>• '227 Patent Claims 1, 5, 9 | instructing the user to determine the position of selected points of the check, such as its corners | instructions to the depositor to identify points on the captured image to indicate where the image should be cropped |

### The Parties' Positions

Plaintiff submits: The express claim language states simply that the selected points are "to enable cropping," not that the cropping occurs precisely on the points. For example, the '227 Patent describes an embodiment in which one point is provided by the user to enable the system to determine the cropping boundary. Dkt. No. 41 at 29–30.

In addition to the claims themselves, Plaintiff cites the following intrinsic and extrinsic evidence to support its position: **Intrinsic evidence**: '227 Patent col.14 ll.44–51. **Extrinsic evidence**: Calman Decl. ¶¶ 176–77 (Plaintiff's Ex. 6, Dkt. No. 41-6); Saffici Dep. 84:11–17 (Plaintiff's Ex. 14, Dkt. No. 41-14).

Defendant responds: This term should be construed to give effect to the "cropping" language. That is, the points are used to identify where the image is to be cropped. While the cropping need not occur precisely at the points, the claim language is directed to instructing the depositor to indicate where the image should be cropped. Dkt. No. 53 at 24–26.

In addition to the claims themselves, Defendant cites the following intrinsic and extrinsic evidence to support its position: **Intrinsic evidence**: '227 Patent col.14 ll.40–51. **Extrinsic evidence**: Saffici Dep. 83:20–24 (Plaintiff's Ex. 14, Dkt. No. 41-14).

Plaintiff replies: All the claim language requires is that the depositor be instructed to identify points on the image. This identification provides information about the position of the check in the image, which enables cropping. And where the image will be cropped is recited in the claims; namely, "beyond the boundary of the front side of said check." Dkt. No. 48 at 13–14.

Plaintiff cites further **intrinsic evidence** to support its position: '227 Patent col.14 ll.40–44.

## Analysis

The issue in dispute appears to be whether the "selected points" necessarily indicate where the image should be cropped or whether they are just any points. The Court rejects both positions. The claim language plainly states that "selected points of said initial image . . . *enable* cropping."

The Court agrees with Plaintiff that the claim language states where the image should be cropped: the image is cropped "beyond a boundary of the front side of said check." Defendant's proposed construction would then require the user to identify the boundary of the check. The '227 Patent, however, provides that the cropping can be enabled by identifying a single corner of a check with the boundary inferred from this reference point. '227 Patent col.14 ll.44–51. This teaches that the boundary can be inferred from a reference point of the image. Thus, identifying a reference point can enable the cropping at the boundary. This is what the claim language states— that the "selected points of said initial image . . . enable cropping of said initial image beyond a boundary of the front side of said check." Notably, although the cropping boundary is defined in the claim as the "boundary of the front side of said check," the claim does not expressly require

the selected points be on the boundary. The Court thus understands that the "selected points" may be any points of the check image, so long as they "enable cropping."

The Court also agrees with Defendant that Plaintiff's proposed construction is entirely divorced from the cropping function recited in the claim language. As expressed in the claims, the points must "enable cropping."

Accordingly, the Court construes this term as follows:

- "said instructions instructing a depositor to: . . . identify selected points of said initial image to enable cropping of said initial image beyond a boundary of the front side of said check" means "said instructions instructing a depositor to: . . . identify selected points of said initial image to allow determination of the boundary of the front side of the check in the initial image so the initial image can be cropped beyond a boundary of the front side of said check."

## IV.    CONCLUSION

The Court adopts the constructions above for the disputed terms of the Asserted Patents. Furthermore, the parties should ensure that all testimony that relates to the terms addressed in this Order is constrained by the Court's reasoning. However, in the presence of the jury the parties should not expressly or implicitly refer to each other's claim construction positions and should not expressly refer to any portion of this Order that is not an actual construction adopted by the Court. The references to the claim construction process should be limited to informing the jury of the constructions adopted by the Court.

**SIGNED this 28th day of July, 2019.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE