IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| UNITED SERVICES AUTOMOBILE ASSOCIATION, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Case No. 2:18-CV-00366-JRG-RSP |
| WELLS FARGO BANK, N.A., | § § § | |
| *Defendant*. | § § | |

## MEMORANDUM ORDER

Plaintiff United Services Automobile Association ("USAA") filed a *Daubert* Motion to Strike Portions of the Expert Report of John Villasenor, which is now before the Court. (Dkt. No. 82.) USAA seeks to strike portions of the expert report of Defendant Wells Fargo Bank, N.A's ("Wells Fargo") expert, Dr. Villasenor, regarding (1) non-infringement of system claims and (2) non-infringing alternatives. (*Id*.) After consideration, the Court **DENIES** the Motion.

### I. APPLICABLE LAW

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

"Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993). Questions about the bases and sources of an expert's opinion generally relate to the weight that should be given to that opinion rather than the opinion's admissibility. *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).

Rule 703 of the Federal Rules of Evidence provides that:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

## II. ANALYSIS

### A. Dr. Villasenor's Non-Infringement Opinions Regarding System Claims

USAA argues that the Court should strike Dr. Villasenor's non-infringement opinions regarding the system claims of the asserted patents because he does not analyze these claims under the same "direction or control" standard as applies to method claims. (Dkt. No. 82 at 1–4.) USAA argues that the *Akamai* standard—that "third party actions are attributable to a defendant who 'directs or controls' those actions"—is applicable to both method and system claims. (*Id.* at 2 (citing *Akamai Techs, Inv. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015).) According to USAA, because Dr. Villasenor fails to apply the *Akamai* standard, his opinion is unreliable and should be stricken. (*Id.*)

Wells Fargo responds that *Akamai* is not the appropriate standard to analyze system claims but rather *Centillion* is the appropriate standard. (Dkt. No. 88 at 1–2 (citing *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011).) Under *Centillion*, "direct infringement by 'use' of a system claim 'requires a party . . . to use each and every . . .

element of a claimed [system].' . . . by putting every element collectively into service." 631 F.3d at 1284 (alterations to internal quotation in original). Wells Fargo notes that post-*Akamai*, the Federal Circuit has recognized that the infringement standards for method and system claims are different. *See Lyda v. CBS Corp.*, 838 F.3d 1279, 1284 (Fed. Cir. 2016) (stating that Federal Circuit "cases have applied joint infringement to method claims and not system claims" and citing *Centillion* as "analyzing system claims under a different framework"). Additionally, courts in this and other Districts have continued to analyze system claims under the *Centillion* framework. *See Plano Encryption Techs., LLC v. Alkami Tech., Inc.*, No. 2:16-cv-1032-JRG, 2017 WL 8727249, *3 (E.D. Tex. Sept. 22, 2017) (applying *Centillion* to system claims); *Acceleration Bay LLC v. Activision Blizzard, Inc.*, 324 F. Supp. 3d 470, 482 (D. Del. 2018) ("[S]ystem claims are different from method claims and are still treated under the *Centillion* standard for infringement.").

The Court finds that even in light of *Akamai*, *Centillion* continues to be the appropriate standard under which to analyze infringement of system claims. USAA points to several decisions from this Court that discuss potential infringement of system claims in terms of "joint enterprise," "direction," or "control" as indicative that this Court no longer relies upon *Centillion*. (Dkt. No. 107 at 3–4 (citing *e.g.*, *Plano*, 2017 WL 8727249, at *3; *DataTreasury Corp. v. Wells Fargo & Co.*, 758 F. Supp. 2d 382, 387 (E.D. Tex. 2010).) These decisions are not inconsistent with *Centillion*, let alone an express repudiation of *Centillion* in favor of the *Akamai* standard for system claims.[1] *See Centillion*, 631 F.3d at 1284 ("It did not matter that the user did not have physical control over the relays, the user made them work for their patented purpose . . . ."). If such an

---

[1] In the Court's view, *Centillion* makes clear that physical control of every element is not required to directly infringe by use of a system claim. 631 F.3d at 1284. Whether Wells Fargo has or has not directly infringed in this manner is not a question currently before the Court.

3

express statement should be made, it is the province of the Federal Circuit to do so, not this Court. The Court concludes that Dr. Villasenor has applied the correct legal standard.

### B. Dr. Villasenor's Opinions Regarding Non-Infringing Alternatives

USAA asks the Court to strike Dr. Villasenor's opinions regarding non-infringing alternatives because, according to USAA, "Dr. Villasenor has not provided any evidence that the alleged alternatives were 'available' to Wells Fargo at the time of the hypothetical negotiation, as required by the law." (Dkt. No. 82 at 4.) To be an acceptable non-infringing substitute, the substitute "must be available or on the market at the time of infringement." *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999). The Federal Circuit has indicated that a finding of availability is appropriate where "(1) the defendant could readily obtain all of the material needed to implement the non-infringing alternative; (2) the non-infringing alternative was well known in the field at the time of infringement; and (3) the defendant had all of the necessary equipment, know-how, and experience to use the non-infringing alternative." *LaserDynamics, Inc. v. Quanta Comput., Inc.*, No. 2:06-cv-348, 2011 WL 197869, at *3 (E.D. Tex. Jan. 20, 2011) (citing *Grain Processing*, 185 F.3d at 1353–54).

In his report, Dr. Villasenor discusses several purported non-infringing alternatives, which primarily involve removing certain functionality from the accused product or performing those functions from a different device. (Dkt. No. 88-2 ¶¶ 192–199.) Dr. Villasenor concludes that these "alternatives would be relatively simple and low-cost to implement." (*Id.* ¶ 200.) He arrives at this conclusion "[b]ased on [his] technical experience." (*Id.*)

USAA criticizes Dr. Villasenor as having "cited no facts indicating that any of the non-infringing alternatives identified in his report were on the market during the [damages] period" and failing to "opine as to whether [Wells Fargo] would be capable of implementing the non-

4

infringing alternatives identified in his report." (Dkt. No. 82 at 5 (alterations in original) (quoting *LaserDynamics*, 2011 WL 197869, at \*3). It is true that Dr. Villasenor does not indicate that any non-infringing alternative was on the market. However, it is difficult to interpret Dr. Villasenor's opinion that the "alternatives would be relatively simple and low-cost to implement" as anything other than an opinion that Wells Fargo "would be capable of implementing the non-infringing alternatives identified in his report," and thus that they were "available" under *Grain Processing*.

USAA further criticizes Dr. Villasenor for relying upon USAA's corporate testimony regarding changes that could be made to *USAA's* product, rather than Wells Fargo's product, to avoid coverage by the asserted patents.[2] (Dkt. No. 82 at 5.) USAA argues that there is no basis to conclude that these changes to the USAA system could also be employed by Wells Fargo. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). However, more than mere *ipse dixit* connects USAA's Deposit@Mobile system with Wells Fargo's Mobile Deposit system. USAA itself intends to offer evidence that the two products are "strikingly similar." (*See, e.g.*, Dkt. No. 93-2 ¶ 315 (Expert Report of Matthew Calman); Dkt. No. 93 at 11 (opposing exclusion of "Mr. Calman's comparison of Deposit@Mobile and Wells Fargo's product").) The Court does not find that there is "too great an analytical gap between the data and the opinion proffered." *Joiner*, 522 U.S. at 146.

Finally, USAA argues that Dr. Villasenor fails to offer any evidence in support of his opinions that implementing any of his suggested non-infringing alternatives would be "simple and

---

[2] USAA also criticizes Dr. Villasenor for offering no opinion regarding "what would be commercially acceptable." (Dkt. No. 82 at 5.) However, Wells Fargo is required to present only the "next-best available alternative, which is not necessarily an 'acceptable' alternative." *Salazar v. HTC Corp.*, No. 2:16-cv-01096-JRG-RSP, 2018 WL 2033709, \*3 (E.D. Tex. March 28, 2018).

low-cost to implement," and would "cost substantially less than $8.5 million." (Dkt. No. 82 at 6–7 (citing Dkt. No. 82-3 ¶¶ 200–201).) USAA cites *Burleson v. Texas Department of Criminal Justice* for the proposition that a court may exclude expert testimony based on "speculation, guesswork, and conjecture." 393 F.3d 577, 587 (5th Cir. 2004). In *Burleson*, the plaintiff's expert failed to determine the total amount of radiation exposure endured by the plaintiff despite the fact that the Fifth Circuit had "previously stated in toxic tort cases that scientific knowledge of the harmful level of exposure to a chemical, and knowledge that the plaintiff was exposed to such quantities are minimal facts necessary to sustain the plaintiffs' burden." *Id.* at 586. This is not a toxic tort case. As Wells Fargo notes, Dr. Villasenor is attempting to establish what types of non-infringing alternatives "the parties would consider at a hypothetical negotiation." (Dkt. No. 88 at 6.) USAA offers no case law to support the proposition that the Federal Circuit would consider a detailed explanation of "how one would implement" (Dkt. No. 82 at 6) a non-infringing alternative part of the "minimum facts necessary to sustain [Wells Fargo's] burden" in this regard. *Burleson*, 393 F.3d at 586. The Court concludes that Dr. Villasenor's opinion is not "guesswork" but is properly supported by his technical experience, his review of the patents in suit, and USAA's own corporate testimony.

USAA also argues that Dr. Villasenor lacks the qualifications to opine that implementation of any non-infringing alternative would "cost substantially less than $8.5 million." (Dkt. No. 82 at 7 (citing Dkt. No. 82-3 ¶ 201).) In discussing his qualifications, Dr. Villasenor states in his report, "I have several decades of experience in early stage technology venture capital in the Bay Area. In that capacity I have met with a large number of startup companies seeking venture financing spanning a wide range of technology areas, including those listed [elsewhere in his qualifications]." Thus, it appears that Dr. Villasenor not only has experience in implementing

related technology but also in valuing the cost of such implementation. On the record before the Court, the Court finds no basis to exclude this opinion for lack of qualification at this stage. However, this does not preclude USAA from challenging Dr. Villasenor's qualifications either on *voir dire* or during cross-examination.

### III. CONCLUSION

USAA's *Daubert* Motion to Strike Portions of the Expert Report of John Villasenor (Dkt. No. 82) is **DENIED**.

**SIGNED this 17th day of December, 2019.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE