# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| UNITED SERVICES AUTOMOBILE ASSOCIATION, | § § § § § | |
| *Plaintiff*, | § § | |
| v. | § | Case No. 2:18-CV-00366-JRG-RSP |
| WELLS FARGO BANK, N.A., | § § § | |
| *Defendant*. | § § | |

## MEMORANDUM OPINION AND ORDER

Defendant Wells Fargo Bank, N.A. ("Wells Fargo") filed a Motion to Exclude and/or Strike Expert Testimony Provided by Mr. Calman (the "Motion to Strike Calman"), which is now before the Court. (Dkt. No. 83.) After consideration, the Motion to Strike Calman is **GRANTED-IN-PART**. The Motion to Strike Calman is **GRANTED** as to paragraphs 54–73, 85–133, and 322–329, and those portions of Mr. Calman's report are **STRICKEN**. The Motion to Strike Calman is otherwise **DENIED**.

Also before the Court is Part II(a) of Wells Fargo's Motion to Strike Portions of the Conte Report (the "Motion to Strike Conte"), which seeks to exclude portions of Dr. Conte's report that incorporate by reference portions of Mr. Calman's report challenged in the Motion to Strike Calman. (Dkt. No. 84 at 2.) After consideration, the Motion to Strike Conte is **GRANTED-IN-PART**. The Motion to Strike Conte is **GRANTED** to the extent Dr. Conte's report incorporates the stricken paragraphs of Mr. Calman's report, and such incorporations are likewise **STRICKEN**. Part II(a) of the Motion to Strike Conte is otherwise **DENIED**.

## I.   DISCUSSION

### a. Mr. Calman's Apportionment Opinion

Wells Fargo offers three reasons why Mr. Calman's apportionment opinions should be excluded. The Court finds none persuasive.

Wells Fargo first argues that Mr. Calman's apportionment theories should be struck because they directly contradict Plaintiff United Services Automobile Association's ("USAA") 30(b)(6) testimony. According to Wells Fargo, Mr. Calman opines that "Wells Fargo does not have commercially viable non-infringing alternatives to the patents-in-suit," whereas USAA's 30(b)(6) witness admitted that several non-infringing alternatives exist. (Dkt. No. 83 at 3–4.)

Even if Mr. Calman's opinions and USAA's testimony were directly contradictory, as Wells Fargo contends, this would not be a sufficient basis to exclude Mr. Calman's testimony. "A Rule 30(b)(6) deposition is admissible against the party designating the representative but is not 'binding' on the entity for which the witness testifies in the sense of preclusion or judicial admission. . . . Testimony given in a Rule 30(b)(6) deposition is evidence, which, like other deposition testimony, can be contradicted and used for impeachment purposes." *Crompton Greaves, Ltd. v. Shippers Stevedoring Co.*, 776 F. Supp. 2d 375, 392 n.11 (S.D. Tex. 2011); *accord Med. Components, Inc. v. Osiris Med., Inc.*, 226 F. Supp. 3d 753, 765 n.5 (W.D. Tex. 2016). USAA is free to elicit testimony from Mr. Calman that contradicts its own prior testimony, and if Wells Fargo believes the testimony is contradictory, it is free to cross-examine Mr. Calman accordingly.

Wells Fargo relies upon *DAC Surgical Partners P.A. v. United Healthcare Services, Inc.* for the proposition that a party may *not* later contradict its own 30(b)(6) testimony. No. 4:11-cv-1355, 2016 WL 7157522, at *3 (S.D. Tex. Dec. 7, 2016). However, *DAC* addressed a motion to strike summary judgment evidence and thus relied upon an exception to the general rule—that a party may contradict its prior testimony—applicable only in the summary judgment context. *See*

*id.* at 5. "It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996). This exception is not applicable here.

Wells Fargo next argues that Mr. Calman has violated the entire market value rule because "Mr. Calman . . . attributes **all** of the profit saved from avoided duplicate check deposits to the Asserted patents." (Dkt. No. 83 at 3 (emphasis in original).) "[A] patentee may assess damages based on the entire market value of the accused product *only where* the patented feature creates the basis for customer demand or substantially creates the value of the component parts." *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) (emphasis in original). But Mr. Calman does not claim the entire market value of the accused product, which is Wells Fargo's Mobile Deposit system. Rather, as Wells Fargo itself states, he claims "the profit saved from avoided duplicate check deposits." (Dkt. No. 83 at 3.) The Court is satisfied that Mr. Calman has done enough "to estimate what portion of the value of [the accused] product is attributable to the patented technology." *Virnetx*, 767 F.3d at 1327. Mr. Calman has not violated the entire market value rule because he does not claim the entire value of Wells Fargo's Mobile Deposit system.

The Court agrees with USAA that "Wells Fargo's complaint appears to be that, once Mr. Calman apportioned down to the specific duplicate check-detection technique claimed by the asserted patents, he attributed all of the value of that feature to the asserted patents." (Dkt. No. 93 at 3.) Wells Fargo argues that this is inappropriate because other non-infringing alternatives are available to avoid duplicate check fraud. (Dkt. No. 83 at 4–5; Dkt. No. 103 at 3–4.) This goes to the weight rather than the admissibility of the evidence.

Finally, Wells Fargo argues that Mr. Calman's apportionment opinion improperly relies upon the "rule of thumb" because he "attributes 25% of non-duplicate, non-on-us MRDC fraud

3

prevention to the Asserted patents." (Dkt. No. 83 at 5.) USAA disagrees with Wells Fargo that Mr. Calman "fails to provide any analytical support—or any justification whatsoever—for this 25% factor." Rather, USAA argues, Mr. Calman analyzed data and Wells Fargo's corporate testimony related to other non-fraud, non-on-us avenues of loss prevention and found that each relied heavily, if not entirely, on the Asserted patents. (Dkt. No. 94 at 4–5; *see also* Dkt. No. 94-2 ¶ 425.) Accordingly, Mr. Calman "conservatively estimate[d] that at least a further 25%, and likely more, of the 'other losses' category is attributable to the patented inventions." (Dkt. No. 94-2 ¶ 425.)

The Federal Circuit has held that "[e]vidence relying on the 25 percent rule of thumb is . . . inadmissible under *Daubert* and the Federal Rules of Evidence, because it fails to tie a reasonable royalty base to the facts of the case at issue." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011). It has not held that any apportionment of 25% necessarily violates this rule or even that there should be such a presumption. Rather, it reiterated the general rule that "the patentee must 'sufficiently [tie the expert testimony on damages] to the facts of the case." *Id.* (alteration in original) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993)). The Court finds that Mr. Calman has sufficiently tied his analysis to the facts of this case and thus has not improperly relied upon the 25 percent rule of thumb.

b. **Mr. Calman's Narrative Account**

Wells Fargo asks the Court to strike paragraphs 54–156 of Mr. Calman's report, arguing that these paragraphs "do nothing other than parrot facts from the documents and witnesses" without adding any expert analysis. (Dkt. No. 83 at 6–7.) Expert testimony is permissible only where "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Expert testimony that does not meet this requirement should be excluded.

The Court finds that the majority of this portion of Mr. Calman's report contains no expert analysis that would "help the trier of fact to understand the evidence or to determine a fact in issue" and thus should be excluded as expert testimony. *Id.* Specifically, paragraphs 54–73 and 85–133 recite the background of the check industry, the development of digital check imaging, USAA's history of developing check imaging technology, and USAA's interactions with Mitek, largely through the summation of various documents and testimony. These paragraphs do not employ Mr. Calman's expertise to help the jury understand facts or issues beyond a lay person's understanding. As paragraphs 54–73 and 85–133 do not contain expert opinions useful to the jury, the Court finds that they should be and are **STRICKEN**. This does not preclude Mr. Calman from providing factual testimony regarding the topics covered in these paragraphs to the extent such testimony is within Mr. Calman's personal knowledge as a fact witness.

By contrast, the Court finds that paragraphs 74–84 and 134–156 do provide expert analysis that is helpful to the jury to understand the evidence and determine factual issues. These paragraphs draw upon Mr. Calman's technical knowledge and expertise to explain how digital check imaging is challenging, how the inventions disclosed in the patents-in-suit function, and how they are an improvement over the prior art. These opinions will be helpful to the jury in understanding the relevant technology and determining issues related to infringement, invalidity, and damages. Accordingly, the Court finds that paragraphs 74–84 and 134–156 constitute appropriate expert opinions.[1]

---

[1] The Court does not decide whether any documentary evidence or testimony upon which Mr. Calman relies is appropriate to present to the jury. Such "facts or data . . . need not be admissible for the opinion to be admitted." Fed. R. Evid. 703. The parties are free to raise any evidentiary objections to these facts and data in the appropriate manner.

### c. Mr. Calman's Willfulness Opinion

Wells Fargo argues that Mr. Calman's willfulness opinion contained in paragraphs 322–329 of his report should be stricken because these paragraphs "simply rehash[] other evidences" without any expert "analysis or interpretation of this evidence." Mr. Calman's willfulness opinion is similar to the opinion he offered in paragraphs 359–365 of his opening report in a related case between the parties tried earlier this year. *United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*, No. 2:18-cv-245-JRG (E.D. Tex.) (the "-245 Case"). There, Chief Judge Gilstrap found that the opinion should be excluded because it was simply a presentment of evidence and an assertion, without expert analysis, that it was evidence of willfulness. (-245 Case, Dkt. No. 263 at 43:2–7 ("[W]hat he's doing . . . , to me, is [saying, 'H]ere's evidence, here's evidence, here's evidence. Boom, . . . that means it's willfulness.['] I'm not seeing any analysis other than just the presentation of the underlying evidence."); *id.* at 48:3–5.) Here, the Court likewise finds that Mr. Calman simply presents purported evidence of willfulness without offering any expert analysis that "will help the trier of fact understand the evidence." Fed. R. Evid. 702. Accordingly, paragraphs 322–329 are **STRICKEN**.

### d. Mr. Calman's Infringement Opinions

Wells Fargo argues that Mr. Calman's infringement opinions contained in paragraph 170–321 of his report should be stricken because, Wells Fargo argues, he has simply adopted Dr. Conte's opinions without doing his own independent analysis. (Dkt. No. 83 at 8.) To the contrary, in paragraph 170 of his report, Mr. Calman offers a detailed description of the documentation he reviewed and the steps he took to independently arrive at his opinions in paragraphs 171–320. (Dkt. No. 93-2 ¶ 170.) These paragraphs are Mr. Calman's own opinions, not verbatim reproductions of Dr. Conte's opinions.

It is true that in paragraph 321, Mr. Calman simply incorporates by reference "the [element-by-element] analysis in Dr. Conte's report, which I have attached as Appendix A to my Report." (*Id.* ¶ 321.) While this is essentially a verbatim recitation of Dr. Conte's report, "lack of originality is not dispositive. The crucial issue is whether [Mr. Calman] independently evaluated or verified the opinions upon which he relies." *Hunt v. McNeil Consumer Healthcare*, 297 F.R.D. 268, 275 (E.D. La. 2014). Mr. Calman states that he has by "examin[ing] the source code for the accused products." (Dkt. No. 93-2 ¶ 321.) Wells Fargo has offered no evidence to suggest that Mr. Calman is being untruthful. Accordingly, the Court finds that Mr. Calman's infringement opinions contained in paragraphs 170–321 are appropriate. (*Cf.* -245 Case, Dkt. 263 at 64:12–14 ("I do not think that [Mr. Calman] is simply parroting . . . Dr. Conte. I'm persuaded there's enough independent review and investigation by [Mr.] Calman to deny the motion to strike it on a Daubert basis.").)

### e. Irrelevant and Prejudicial Information

Wells Fargo asks the Court to exclude portions of Mr. Calman's report because they are irrelevant and would be prejudicial to place before the jury. (Dkt. No. 83 at 8–10.) As an initial matter, the Court notes that it is often difficult to draw the line between issues that are properly the subject of a motion to strike and those that are more properly raised as a motion *in limine*. "An expert may base an opinion on facts or data in the case . . . [i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion." Fed. R. Evid. 703. These underlying facts or data "need not be admissible for the opinion to be admitted." *Id.* Accordingly, motions to strike an expert's opinion should relate to facts or data upon which "experts in the particular field would [not] reasonably rely." Arguments that the underlying facts and data should not be presented to a jury despite being otherwise reliable are more properly the subject of a motion *in limine*.

7

Wells Fargo asks the Court to strike references in Mr. Calman's report to (1) the Patent Trial and Appeal Board ("PTAB") and Wells Fargo's Covered Business Method ("CBM") petitions; (2) patents not asserted in this case; and (3) the prior litigation between USAA and Mitek. (Dkt. No. 83 at 8–9.) Wells Fargo offers no argument that these facts and data are not of the type "experts in the particular field would reasonably rely." Accordingly, Wells Fargo's motion to strike on these grounds is **DENIED**.

The Court has considered any motions *in limine* to preclude the presentment of these underlying facts and data to the jury at the pretrial conference.

### f. Comparison between the Accused Instrumentality and USAA's commercial embodiment.

Wells Fargo asks the Court to strike Mr. Calman's comparisons between Wells Fargo's Mobile Deposit system and USAA's Deposit@Mobile, which Wells Fargo states is a commercial embodiment of the Asserted patents.[2] (Dkt. No. 83 at 10–11.) Wells Fargo asserts that "[i]t is legal error to compare the accused product to the patentee's commercial embodiment for purposes of analyzing infringement." (Dkt. No. 83 at 10 (citing *Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994).) This may be true for purposes of infringement. However, as USAA correctly points out, comparisons between the accused product and commercial embodiments are relevant to other issues, such as obviousness and willfulness. The Federal Circuit has held that "evidence of copying is relevant to an obviousness determination." *Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc.*, 344 F.3d 1186, 1196 (Fed. Cir. 2003). Additionally,

---

[2] Wells Fargo expressly asks the Court to strike paragraphs 129 and 348–355 of Mr. Calman's report in addition to Exhibits P and Q. (Dkt. No. 83 at 11.) However, Wells Fargo cites to paragraphs 127 and 313–320 during its argument. (*Id.*) The Court believes reference to paragraphs 129 and 348–355 is an inadvertent reference to Wells Fargo's prior motion to strike Mr. Calman's report in the -245 Case. (*See* -245 Case, Dkt. 294 at 2 ("This motion is DENIED as to paragraphs 129, 348–355 . . . .").) The Court interprets the instant motion as one to strike paragraphs 127 and 313–320.

"whether the infringer deliberately copied the ideas or design of another" is the first *Read* factor in determining willfulness. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992). "Access to the patented product combined with substantial similarity to the patented product" is relevant evidence of copying. *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010). Accordingly, Mr. Calman's opinion that "Wells Fargo's Mobile Deposit system is strikingly similar to USAA's Deposit@Mobile system" is appropriate and relevant to issues in this case beyond the issue of infringement. (Dkt. No. 315.) Accordingly, its blanket exclusion pursuant to a motion to strike is inappropriate.

g. **The Motion to Strike Conte**

Wells Fargo also seeks to exclude from Dr. Conte's report his incorporation by reference of challenged portions of Mr. Calman's report. (Dkt. No. 84 at 2.) To the extent Dr. Conte incorporates by reference portions of Mr. Calman's report that have been excluded, such incorporations are likewise **STRICKEN** from Dr. Conte's report.

II. **CONCLUSION**

Wells Fargo's Motion to Strike Calman (Dkt. No. 83) is **GRANTED-IN-PART**. The Motion to Strike Calman is **GRANTED** as to paragraphs 54–73, 85–133, and 322–329, and such paragraphs are **STRICKEN**. The Motion to Strike Calman is otherwise **DENIED**.

Part II(a) of Wells Fargo's Motion to Strike Conte (Dkt. No. 84) is likewise **GRANTED-IN-PART**. The Motion to Strike Conte is **GRANTED** to the extent Dr. Conte's report incorporates by reference paragraphs 54–73, 85–133, and 322–329 of Mr. Calman's report, and such incorporations are **STRICKEN**. Part II(a) of the Motion to Strike Conte is otherwise **DENIED**.

**SIGNED this 17th day of December, 2019.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE