# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| UNITED SERVICES AUTOMOBILE ASSOCIATION, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | Case No. 2:18-CV-00366-JRG-RSP |
| WELLS FARGO BANK, N.A., | § § § | |
| *Defendant*. | § § | |

## MEMORANDUM ORDER

Plaintiff United Services Automobile Association filed suit against Defendant Wells Fargo Bank, N.A., alleging patent infringement. To help prove its case, USAA hired Mr. Roy Weinstein as its damages expert. Wells Fargo now brings a Motion to Strike and/or Exclude the Expert Testimony of Roy Weinstein. (Dkt. No. 85.)[1] USAA specifically requests that Mr. Weinstein be prohibited from referencing: (1) his "specialized equipment analysis," (2) Wells Fargo's previous Covered Business Method petitions, and (3) Mr. Calman's expert report. For the following reasons, the Court **DENIES** Wells Fargo's Motion to Strike.[2]

### I. LEGAL STANDARD

In *Daubert v. Merrell Dow Pharm., Inc.,* the Supreme Court, in accordance with Rule 702 of the Federal Rules of Evidence, instructed courts to function as gatekeepers to shield the jury from unreliable or irrelevant expert testimony. 509 U.S. 579 (1993); *see also Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999). When evaluating *Daubert* challenges, courts must focus "on

---

[1] After Wells Fargo filed this motion, USAA responded. (Dkt. No. 96). Wells Fargo then replied (Dkt. No. 105) and USAA filed a sur-reply. (Dkt. No. 130).

[2] Concurrently before the Court is a motion to strike portions of Mr. Calman's report. (Dkt. No. 83.) To the extent that Mr. Weinstein relies on portions of Mr. Calman's report that were stricken, this motion is **GRANTED**.

[the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert,* 509 U.S. at 594. As the Court has emphasized, the *Daubert* framework is "a flexible one." *Id.* Further, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id*. at 596. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Expl. & Producing U.S. Inc.,* 224 F.3d 402, 405 (5th Cir. 2000) (citation omitted).

II.      **DISCUSSION**

Mr. Weinstein is USAA's proffered damages expert. He wrote a report discussing his calculation of appropriate damages in this case and the reasoning behind it. Wells Fargo argues that Mr. Weinstein's report contains prejudicial flaws that the jury should not be exposed to and therefore, asks the Court to strike portions of the report. (*See* Dkt. No. 85.)

Wells Fargo argues three portions should be stricken. First, Mr. Weinstein's discussion regarding avoidance of specialized equipment since it is irrelevant and prejudicial. (*Id*. at 2–5.) Second, Mr. Weinstein's references to Mr. Calman's apportionment model and fraud analysis for the reasons discussed in Wells Fargo's concurrent motion to strike Mr. Calman's report. (*Id*. at 5). Third, references in Mr. Weinstein's report to Wells Fargo's previous petitions for CBM review of the asserted patents as that information is irrelevant and prejudicial and this Court routinely excludes such information. (*Id*. at 5–6.)

a.  **Avoidance of Specialized Equipment**

In his discussion of *Georgia-Pacific* Factor 13,[3] Mr. Weinstein considers four approaches to identify the value attributable to the claimed invention. In the first approach, he considers the

_____

[3] Factor 13 is "the portion of the realizable profit that should be credited to the invention. *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

profit enabled by Wells Fargo's avoidance of requiring customers to use specialized check scanners for mobile remote deposit checking ("MRDC"). This approach led to a figure significantly bigger than the others—$2.8 billion.[4] (Dkt. No. 85-2 at 88; *see also* Dkt. No. 101.)

Wells Fargo argues that the reference is prejudicially high and should be stricken. It first argues that the discussion in Paragraphs 113-16, 152-54, 180, and 184[5] of Mr. Weinstein's report is irrelevant to the damages analysis since Mr. Weinstein states that he "do[es] not include these profits as part of my damages quantifications." (*Id*. at 88). Instead, Wells Fargo argues that the number is to presumably let "USAA present a very high figure to the jury . . . and make Mr. Weinstein's actual suggested royalty analysis appear modest in comparison." (Dkt. No. 85 at 2.)

USAA counters that even if Mr. Weinstein does not base his final damages calculation on this number, it still has a proper purpose. Mr. Weinstein's analysis of the profits Wells Fargo would lose "by foregoing the patented invention and using . . . a dedicated check scanning device" is meant to rebut the notion raised by Wells Fargo's damages expert "that 'using a phone versus a scanner' is an insubstantial difference." (Dkt. No. 96 at 4.) This is supported by Mr. Weinstein's statement in the report that the reference "reflect[s] a powerful metric as to the value of being able to offer the infringing systems." (Dkt. No. 85-2 at 88.) Essentially, Mr. Weinstein uses this data to show that the only non-infringing alternative was prohibitively expensive. Since there is a proper purpose for Mr. Weinstein's large figure, Wells Fargo's first argument fails.

Wells Fargo also argues that the analysis is flawed as "an improper backdoor entire market value analysis." (Dkt. No. 85 at 6.) As an initial matter, Mr. Weinstein uses 97, not 100, percent of the profit he attributes to Wells Fargo's MRDC program. Further, Mr. Weinstein, in his report,

---

[4] For reference, the other three approaches had amounts in the millions with the next biggest amount at $376.5 million.
[5] The exact paragraphs Wells Fargo wants stricken is unclear since, in the body of the motion, it asks the Court to strike Paragraphs 113-16, 152-54, 180, and 184 (Dkt. No. 85 at 5) but in its conclusion, asks the Court to only strike Paragraphs 113-15 and 152-54. (*Id*. at 6.) In an abundance of caution, the Court considers all the cited paragraphs.

explains why he believes that the value of the asserted patents equals $2.8 billion or 97 percent of the value of Wells Fargo's MRDC program as a whole.

He concludes that Wells Fargo would have lost up to 97 percent of its MRDC customers if they had to use a specialized scanning device due to three factors. First, USAA's data shows that deploying general-purpose devices as opposed to specialized scanners is responsible for as much as 97 percent of the population of remote deposit checking users.[6] Second, "Wells Fargo's internal documents described MRDC as 'table-stakes,' i.e., required." Third, he concludes that no reasonable alternatives exist. He then determines, using Wells Fargo's data, that $2.9 billion was the total Wells Fargo profit attributable to MRDC in the relevant time period. Finally, he multiplies 97 percent, the percentage of profit he attributes to the asserted patents, by $2.9 billion, the total Wells Fargo profit attributable to MRDC to arrive at the $2.8 billion figure. (Dkt. No. 85-2 at 88.)

When evaluating *Daubert* challenges, courts must focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert,* 509 U.S. at 594. While Wells Fargo may disagree with the Mr. Saffici's conclusion, the Court does not find that his principles and methodology are so unreliable or flawed that they should be stricken. Accordingly, this argument by Wells Fargo fails.

As an aside, arguments that the underlying facts and data should not be presented to a jury even if otherwise reliable are more properly the subject of a motion *in limine*.

Wells Fargo's final argument in support of striking the avoidance of specialized equipment analysis is that Mr. Weinstein did not tie any feature of the asserted patents to the value attributed to them. Instead, Wells Fargo argues that he incorrectly found that the lack of a feature, namely

---

[6] USAA acquired this data due to its two check-deposit programs: Deposit@Home, which requires a specialized scanning device, and Deposit@Mobile, a program that allows users to deposit checks through their mobile phones.

the requirement to use a specialized scanner, drives the value. By not tethering it to the claims of the patent, Wells Fargo argues that Mr. Weinstein committed error.

This is one interpretation of Mr. Weinstein's analysis. Another is that the driving feature is the ability to use a general-purpose computer, such as a smartphone, to deposit checks instead of requiring customers to use specialized check scanning devices. Under this alternate interpretation, Mr. Weinstein did properly tie features of the asserted patents to the value attributed to them. Accordingly, Wells Fargo's third argument fails.

In conclusion, the Court does not find Wells Fargo's arguments persuasive enough to strike the relevant portions of Mr. Weinstein's report. Mr. Weinstein used principles and methodologies that an expert in the field would reasonably rely on. To the extent that Wells Fargo has an issue with the weight that should be given to his conclusions, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

### b. Petitions for Covered Business Method Review

Wells Fargo next asks the Court exclude portions of Mr. Weinstein's report because they are irrelevant and would be prejudicial to place before the jury. (Dkt. No. 85 at 5–6.) As an initial matter, the Court notes that it is often difficult to draw the line between matters that are properly the subject of a motion to strike versus those that are more properly raised as a motion *in limine*. "An expert may base an opinion on facts or data in the case . . . [i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion." Fed. R. Evid. 703. These underlying facts or data "need not be admissible for the opinion to be admitted." *Id.* Accordingly, motions to strike an expert's opinion should relate to facts or data upon which "experts in the particular field would [not] reasonably rely on." *Id*. Arguments that the underlying

facts and data should not be presented to a jury even if it is otherwise reliable are more properly the subject of a motion *in limine*.

Wells Fargo asks the Court to strike the references to Wells Fargo's petitions for CBM review of the asserted patents in Paragraph 55 of Mr. Weinstein's report. (*Id*. at 6.) Wells Fargo offers no argument that these facts and data are not of the type "experts in the particular field would reasonably rely on." *Id*. Instead, its only argument is that this Court "routinely precludes parties from presenting evidence or argument relating to PTO review of asserted patents." (*Id*.) Accordingly, Wells Fargo's motion to strike on these grounds is **DENIED**.

The rulings on the motions *in limine* address the presentment of these underlying facts and data to the jury.

### c.  Reliance on Portions of Mr. Calman's expert report

Wells Fargo, in a single sentence, asks the Court to strike portions of Mr. Weinstein's report where he relied on Mr. Calman's apportionment models. (*Id*. at 5.) Wells Fargo has also filed a contemporaneous motion (Dkt. No. 83) to strike the opinions in Mr. Calman's report. The Court adopts the same reasoning and conclusion found in the order addressing that contemporaneous motion to the extent that the same issues are raised here.

## III.  CONCLUSION

For the reasons stated herein, the Court **DENIES** Wells Fargo's Motion to Strike and/or Exclude the Expert Testimony of Roy Weinstein.

**SIGNED this 17th day of December, 2019.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE