# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| UNITED SERVICES AUTOMOBILE ASSOCIATION, | § § § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Case No. 2:18-CV-00366-JRG-RSP |
| WELLS FARGO BANK, N.A., | § § § § | |
| *Defendant*. | § | |

## MEMORANDUM ORDER

Plaintiff United Services Automobile Association filed a *Daubert* Motion to Strike Portions of the Expert Report of Christopher Gerardi, which is now before the Court. (Dkt. No. 79).[1] USAA seeks to strike portions of the expert report of Defendant Wells Fargo Bank, N.A.'s damages expert, Christopher Gerardi, regarding a several issues.

### I. ANALYSIS

#### a. USAA's efforts to license the asserted patents

USAA first asks the Court to strike Mr. Gerardi's discussions of USAA's efforts to license the asserted patents since the discussion is "irrelevant and will only serve to confuse and mislead the jury." (Dkt. No. 79 at 1.) Specifically, USAA asks the Court to strike the discussion found in Paragraphs 22, 68-69, 118-123, 148, and 177 of Mr. Gerardi's Report. (*See* Dkt. No. 79-3.)

USAA argues that Mr. Gerardi's discussion of USAA's outreach "to over 1,000 financial institutions with less than $10 billion in assets" in order to license its remote deposit capture portfolio of over fifty patents, including three of the five asserted patents, was improper. (*Id.* at 21)

---

[1] The motion is fully briefed. After USAA filed this motion (Dkt. No. 79), Wells Fargo responded (Dkt. No. 91), USAA replied (Dkt. No. 97), and Wells Fargo filed a sur-reply. (Dkt. No. 123.)

Most importantly, USAA argues that Mr. Gerardi did not lay a proper foundation that the third-party financial institutions USAA contacted were in comparable situations to Wells Fargo in a hypothetical negotiation.

For an expert to introduce other licenses, agreements, negotiations, or the like to support the expert's theory surrounding the hypothetical negotiation, the Federal Circuit requires a showing of comparability. A showing of comparability requires showing that the other data point is comparable, both technologically and economically, to the hypothetical negotiation between the parties. *See Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014) ("Thus, we have cautioned that 'district courts performing reasonable royalty calculations [must] exercise vigilance when considering past licenses to technologies *other* than the patent in suit,' *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010), and 'must account for differences in the technologies and economic circumstances of the contracting parties,' *Finjan, Inc. v. Secure Computing Corp.,* 626 F.3d 1197, 1211 (Fed. Cir. 2010).").

USAA also argues that the purported statements and views of unnamed bank managers in response to USAA's outreach are hearsay and it is improper for Mr. Gerardi to recite them in his report or channel them to the jury. Further, USAA argues that injecting these third-party quotes into the trial would be confusing, prejudicial, and require a complicated backstory and sideshow about various third parties, including opening the door to discussion of the Patent Trial and Appeal Board's denials of Wells Fargo's petitions for Covered Business Method review.

This Court excluded the same testimony, offered by Mr. Gerardi in his expert report, in the previous case by the parties, Case No. 2:18-CV-245-JRG ("Case 1"). In Case 1, Chief Judge Gilstrap granted USAA's motion to strike the same material. He described his reasoning as such:

> Well, I'm going to grant the motion in this regard. Mr. Gerardi concedes, and counsel agrees, that these offers weren't comparable, and there's nothing to support comparability

> here. I'm very concerned about the likelihood of jury confusion. If we start down this path, this seems to me to be fraught with dangers of becoming a distraction and side show. If Mr. Gerardi is going to talk about these thousand banking institutions who declined, if the Plaintiff has got evidence that they declined because Wells Fargo leaned on Fiserv and Fiserv told them not to take a license, we're going to -- we're going to end up in a quagmire that is going to result in confusion and distraction, that probative value is going to quickly get swallowed up by the prejudice and the confusion. And I'm not at all excited about opening the possible -- possibly opening the door to talking about review at the PTAB or the PTO under CBM or IPR. We went through all of that yesterday. On balance, I think the probative value is exceeded by the risk of prejudice and confusion. And on that basis alone, especially considering the lack of comparability, I'm going to grant Plaintiff's motion in regard to these paragraphs.

(Dkt. No. 79-8 at 16.)

While Mr. Gerardi does not explicitly concede that USAA's efforts to license the asserted patents are not comparable here, neither does he lay a foundation in his report that the efforts are comparable to a hypothetical negotiation. Instead, Wells Fargo argues that it does not have a duty to establish a comparability foundation between the terms of the licensing contacts and the terms of the hypothetical license at issue in this case. The Court disagrees.

Since Mr. Gerardi did not establish the comparability of the hypothetical negotiation between USAA and Wells Fargo with USAA's efforts to license its patents to smaller banks, its relevance is quite unclear. *See* Fed. R. Evid. 401 (defining "relevant evidence"). Irrelevant evidence is not admissible. Fed. R. Evid. 402. Further, even relevant evidence may be excluded if there is a high risk of confusing or misleading the jury. Fed. R. Evid. 403. As Chief Judge Gilstrap discussed in Case 1, the probative value of discussing the licensing campaign could easily be exceeded by the risk of prejudice and confusion. Therefore, the Court finds that Mr. Gerardi needed to establish comparability in his report for it to be admitted.

Next, Wells Fargo argues that the two are comparable, although a similar argument cannot be found in Mr. Gerardi's report. The Court will not find comparability based solely on Wells Fargo's argument in its Response. (Dkt. No. 91 at 3–5.) Thus, the Court grants the motion to strike

the references to USAA's licensing campaign in Paragraphs 22, 68-69, 118-23, 148, and 177 of Mr. Gerardi's Report since Mr. Gerardi did not establish comparability and the probative value is exceeded by the risk of prejudice and confusion.

### b. USAA's prior litigation with Mitek

USAA next asks the Court to strike Paragraphs 65, 66, and 67 of Mr. Gerardi's report as they refer to unrelated prior litigation between USAA and Mitek and will only serve to confuse and mislead the jury. USAA argues that the interactions, which led to litigation and settled in 2014, did not involve the asserted patents or Wells Fargo. Wells Fargo responds that it "does not intend to reference USAA's litigation with Mitek at trial. Indeed, it filed a motion *in limine* seeking to preclude such references in [Case 1], which the Court granted as modified by agreement. Dkt. No. 294 at 9-10 ('USAA shall not reference the Mitek litigation.')" (Dkt. No. 91 at 7.) The Court agrees to deny this motion as it relates to the prior Mitek litigation insomuch as the parties agree not to reference the aforementioned litigation between USAA and Mitek at trial.

### c. Individuals not included in Wells Fargo's Rule 26 disclosure

USAA next argues that the Court should strike Paragraphs 16, 124, 193, and 213 of Mr. Gerardi's expert report as they contain references to conversations with Wells Fargo employees Christa Johnson, Mark Lentz, Gregg Saunders, and Hermes Soyez who were not part of Wells Fargo's Rule 26 disclosures.

Rule 26 requires a party, without awaiting a discovery request, to provide the other party "the name . . . of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a). Rule 26 further provides:

(e) Supplementing Disclosures and Responses.

> (1) *In General.* A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission— must supplement or correct its disclosure or response:
> > (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
> > (B) as ordered by the court.

Fed. R. Civ. P 26(e). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c).

Four factors guide the Court's exercise of discretion in evaluating whether to exclude evidence under Rule 37. *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 280 (5th Cir. 2009); *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, No. 2:17-CV-00651-JRG, 2019 WL 2267212, at *3 (E.D. Tex. May 28, 2019). These factors are: "(1) [the untimely party's] explanation for its failure to disclose the evidence, (2) the importance of the evidence, (3) the potential prejudice to [the objecting party] in allowing the evidence, and (4) the availability of a continuance." *CQ*, 565 F.3d at 280. A party's failure to provide *any* justification for its untimely disclosure weighs heavily in favor of striking the disclosure and may even be sufficient standing alone to support exclusion. *Sobrino-Barrera v. Anderson Shipping Co.*, 495 F. App'x 430, 433 (5th Cir. 2012).

As an initial matter, Wells Fargo concedes that the four named witnesses were not in their Rule 26(a) disclosures. Wells Fargo does not contest USAA's motion with respect to Hermes Soyez. (Dkt. No. 91 at 7 n.5.) On the other hand, Wells Fargo argues that Christa Johnson and Mark Lentz were both later disclosed to USAA in writing as required by Rule 26. USAA counters that randomly mentioning witnesses at points in discovery is not a sufficient disclosure under Rule 26(a), citing two Northern District of Texas and a 9th Circuit case as support. *See, e.g., Ollier v.*

*Sweetwater Union High School Dist.*, 768 F.3d 843, 863 (9th Cir. 2014) ("a passing reference in a deposition to a person with knowledge or responsibilities who could conceivably be a witness does not satisfy a party's disclosure obligations."). (Dkt. No. 97 at 4).

Wells Fargo argues that Christa Johnson and Mark Lentz were disclosed to USAA in writing in June at the corporate representative deposition of Margot Lockwood-Stein. (Dkt. No. 91-8 at 2). Wells Fargo also argues that Christa Johnson was further disclosed at the deposition of Paul Rosati (Dkt. No. 91-9 at 4), and Mark Lentz was identified in dozens of Wells Fargo documents produced during discovery. (Dkt. No. 91-10.)[2] Wells Fargo argues these disclosures were enough and therefore, it did not need to amend its initial disclosures under Rule 26. The Court is unpersuaded by Wells Fargo's arguments. The references to the witnesses in the cited documents are not clear enough to comply with Rule 26. Thus, Wells Fargo did not sufficiently disclose Christa Johnson or Mark Lentz. This error is further compounded by Wells Fargo's failure to provide *any* justification for its untimely disclosure. *Sobrino-Barrera v. Anderson Shipping Co.*, 495 F. App'x 430, 433 (5th Cir. 2012).

Lastly, Wells Fargo argues that Mr. Gerardi's reliance on a conversation with Gregg Saunders, an analytical consultant with knowledge of Wells Fargo's fraud detection procedures, should be allowed. Wells Fargo did not explicitly lay out the four-factor test described above. Nonetheless, Wells Fargo explains that its failure to disclose Mr. Saunders originally, the first factor, was due to not anticipating that Mr. Saunders would be needed. Mr. Saunders rebutted the damage models proposed by Mr. Weinstein, USAA's damages expert, and Wells Fargo claims that it only realized this was necessary after receiving Mr. Weinstein's report. It seems unlikely that Wells Fargo would not anticipate needing a witness to help rebut the other side's damages expert,

---

[2] Wells Fargo attached Dkt. No. 91-10 as support of its assertion that "Mark Lentz was produced in dozens of Wells Fargo's documents" (Dkt. No. 91 at 8), but the Court did not find Mark Lentz mentioned in the produced document.

especially in an area as important to a bank as fraud detection. This factor weighs against allowing the evidence in. Wells Fargo also downplays Mr. Saunders' importance, the second factor, saying only "half of one sentence" can be attributed to Mr. Gerardi's conversation with him. (Dkt. No. 91 at 9.) Thus, this factor also weighs against allowing the evidence in. The other two factors—the potential prejudice to the objecting party in allowing the evidence and the availability of a continuance—are neutral. Therefore, the factors lean against allowing the evidence in, meaning the motion to strike as it relates to Mr. Saunders should be granted.

In conclusion, four witnesses—Christa Johnson, Mark Lentz, Gregg Saunders, and Hermes Soyez—were not disclosed in Wells Fargo's Rule 26 disclosures or properly added later. The reference to these witnesses in Paragraph 16 is stricken. Paragraph 124 is entirely stricken. Yet, Mr. Gerardi does not rely on the improperly disclosed witnesses for his entire analysis in Paragraphs 193 and 213. For Paragraph 193, only the first half sentence up until and including footnote 262 is stricken ("I understand that Wells Fargo only analyzes the causes of an MRDC fraud instance (e.g., alteration, counterfeit, forgery) if the fraud amount meets a certain threshold (currently, $1,750 per case),[262]"). The rest of the paragraph does not rely on Mr. Gerardi's discussion with Gregg Saunders and is therefore proper for the purposes of this motion. For similar reasons, only the first sentence of Paragraph 213 is stricken ("I understand that the net income after-tax per Wells Fargo checking account, include spread income and fee income, such as service fee and overdraft fee paid by checking account customers.[285]"). (*See* Dkt. No. 91-4.)

### d. Mr. Gerardi's background and experience

Paragraph 127 of Mr. Gerardi's expert report says Mr. Gerardi has "reviewed hundreds of technology and intellectual property license agreements entered into by financial institutions." (*Id.* at 39). USAA considers this "classic hearsay" as the agreements were not produced and none of

the contract parties were identified. (Dkt. No. 79 at 5.) Wells Fargo counters by reminding USAA that Judge Gilstrap denied the same request in Case 1. The Court in Case 1 denied the motion since it was "simply a part of his background to establish his experience." (Dkt. No. 91-12 at 6.) Since it appears to have the same purpose in this case, the motion to strike is denied as to Paragraph 127.

### e. Prior agreements and negotiations

USAA next argues that in Paragraphs 38, 43, 65-76, 120, and 126-128, Mr. Gerardi discusses the following USAA documents: (1) USAA-Mitek settlement agreement that did not involve any USAA patents; (2) discussions with Dollar Bank and Suncoast Credit Union; and (3) informal discussions with three other small, regional banks. In Case 1, the Court ruled that these agreements and discussions are not comparable. (Dkt. No. 79 at 6.)

Further, in Paragraphs 38, 78-89, 125, and 178-179, Mr. Gerardi discusses the following Wells Fargo documents: (1) payments to Carreker/Fiserv for software products and services; (2) settlement and license agreements with Leon Stambler, Data Treasury, and Pollin Patent Licensing & Autoscribe Corp.; (3) a settlement and license agreement entered into by third-party Proofpoint to which Wells Fargo contributed some funds; and (4) a license from Helfrerich Patent Licensing.

USAA claims that Wells Fargo's corporate representative on the issue of comparable license agreements provided testimony "making clear that there was no evidence whatsoever that they were comparable." (*Id*. at 6–7.) Further, USAA argues Mr. Gerardi admitted as much in both his expert report for Case 1 and his deposition for this case. Accordingly, USAA concludes that he did not lay any foundation in his report that the licenses are comparable or relevant for the purposes of the hypothetical negotiation. Instead, USAA believes that Mr. Gerardi recites the figures only to highlight that they are lower than the sums that USAA is seeking, a tactic it claims

the Federal Circuit has rejected, citing *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012).

Wells Fargo responds first by stating that it "does not intend to introduce or otherwise reference the (1) USAA-Mitek settlement agreement; (2) settlement and license agreements with Leon Stambler, DataTreasury, and Pollin Patent Licensing & Autoscribe Corp.; (3) settlement and licensing agreement with Proofpoint, to which Wells Fargo contributed funds; and (4) license agreement from Helferich Patent Lincensing.[3]" (Dkt No. 91 at 9–10).

It also argues that it categorized the negotiations with Dollar Bank and Suncoast Credit Union and the informal discussions with three other small, regional banks as part of USAA's licensing campaign, which the Court already addressed. Accordingly, the Court's reasoning and conclusion from Section I(a) is incorporated by reference for these negotiations and discussions.

The only real conflict in this section appears to be the agreements with Carreker, including the amount that Wells Fargo pays Carreker in exchange for the accused Mitek products, as Wells Fargo seeks to introduce those agreements. Wells Fargo first argues that it does not need to demonstrate comparability since Mr. Gerardi is not using this amount to set his reasonable royalty. This argument was already addressed and denied in section I(a). Next, Wells Fargo argues that "the agreements with Carreker are, at a minimum, technologically comparable to the license that would result from the hypothetical negotiation in this case." (*Id*. at 11.) Yet, Wells Fargo does not address whether the two are economically comparable. Thus, Wells Fargo has not sufficiently alleged comparability, let alone persuasively argued that fact. *See Virnetx*, 767 F.3d at 1330. Accordingly, its argument fails.

---

[3] Instead, Wells Fargo intends to make an offer of proof for the record.

In conclusion, since Wells Fargo promises not "to introduce or otherwise reference the (1) USAA-Mitek settlement agreement; (2) settlement and license agreements with Leon Stambler, DataTreasury, and Pollin Patent Licensing & Autoscribe Corp.; (3) settlement and licensing agreement with Proofpoint, to which Wells Fargo contributed funds; and (4) license agreement from Helferich Patent Lincensing" (*id*. at 9–10), the motion to strike is denied as moot with respect to these items. The motion to strike is otherwise granted as to references in Mr. Gerardi's report of (1) discussions with Dollar Bank and Suncoast Credit Union; (2) informal discussions with three other small, regional banks; and (3) payments to Carreker/Fiserv for software products and services.

### f. Unrelated patents

USAA next argues that Mr. Gerardi improperly asserts that Mitek's product is patented in Paragraph 37. Wells Fargo agrees that "the Court should strike the word 'patented' from Paragraph 37 as it previously did with respect to Mr. Gerardi's [Case 1] Report." (*Id*. at 11.) Accordingly, the Court strikes the word "patented" from Paragraph 37.

Next, USAA asks that references to non-asserted patents in Paragraphs 23, 147, and 150 should be stricken. Wells Fargo counters that since it "commits not to present any testimony that the hypothetical negotiation would include unasserted patents, [] the Court should deny USAA's Motion with respect to Paragraphs 23, 147, and 150." (*Id*. at 12.) Considering Wells Fargo's assurances, the Court agrees and denies the motion as moot with respect to the references to non-asserted patents in Paragraphs 23, 147, and 150.

### g. Non-infringing alternative opinions

USAA's final argument is that the discussion in Paragraphs 24-25, 90-92, and 151-152 of Mr. Gerardi's report suggesting that Wells Fargo could have implemented a non-infringing design

and costs associated with designing around should be stricken. It argues that Mr. Gerardi is not qualified to analyze the impact of making technical changes to Wells Fargo's mobile remote deposit checking system. Instead, Mr. Gerardi merely parrots the conclusory opinions of Dr. Villasenor, whose testimony is the subject of a concurrently filed motion to strike. (Dkt. No. 82.)

The Court denied the motion regarding Dr. Villasenor. Adopting the reasoning in that order, the Court similarly denies this motion with respect to Mr. Gerardi's reliance on Dr. Villasenor's testimony in Paragraphs 24-25, 90-92, and 151-152, finding that Mr. Gerardi is allowed to rely on Dr. Villasenor's opinions.

## II. CONCLUSION

After consideration, the Court **GRANTS IN PART** and **DENIES IN PART** USAA's *Daubert* motion to strike portions of the expert report of Christopher Gerardi (Dkt. No. 79).

**SIGNED this 19th day of December, 2019.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE