**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| UNITED SERVICES AUTOMOBILE ASSOCIATION a Texas reciprocal inter-insurance exchange, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 2:18-CV-366 (JRG) |
| WELLS FARGO BANK, N.A., a national banking association, | ) ) ) | JURY TRIAL DEMANDED |
| Defendant. | ) ) | |

**PROPOSED JURY INSTRUCTIONS[1]**

---

[1] Submissions which are agreed to by both Plaintiff United Services Automobile Association ("USAA") and Defendant Wells Fargo Bank, N.A. ("Wells Fargo") are not highlighted.

Submissions proposed by USAA which are not agreed to by Wells Fargo are bracketed and highlighted in green.  Submissions proposed by Wells Fargo which are not agreed to by USAA are bracketed and highlighted in blue.  The parties have entered their objections, explanations, citations, and commentary in footnotes only.

The parties reserve their respective rights to further object or propose new instructions based on their pending motions or further development at trial.

# JURY CHARGE

## INTRODUCTION[2]

Ladies and Gentlemen:

You have now heard the evidence in this case, and I will now instruct you on the law that you must apply.

Each of you are going to have your own printed copies of these final jury instructions that I'm giving you now, so there's really no need for you to take notes unless you just particularly want to.

It's your duty to follow the law as I give it to you. On the other hand, Ladies and Gentlemen, as I've said previously, you, the jury, are the sole judges of the facts in this case.  Do not consider any statement that I have made in the course of the trial or make during these instructions as an indication to you that I have any opinion about the facts in this case.

You're about to hear closing arguments from the attorneys.  Statements and arguments of the attorneys, I remind you, are not evidence, and they are not instructions on the law.  They're intended only to assist the jury in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you. You are to take this verdict form with you to the jury room; and when you have reached a unanimous decision or agreement as to the verdict, you're to have your foreperson fill in the blanks in the verdict form, date it, and sign it.

Answer each question in the verdict form from the facts as you find them to be. Do not decide who you think should win the case and then answer the questions to reach that result.  Again, your answers and your verdict must be unanimous.

---

[2] *Whirlpool Corp. v. TST Water, LLC,* Case No. 2:15-cv-01528-JRG, Dkt. 166 (E.D. Tex. March 23, 2017).

In determining whether any fact has been proven in this case, you may, unless otherwise instructed, consider the testimony of all the witnesses, regardless of who may have called them, and you may consider the effect of all the exhibits received and admitted into evidence, regardless of who may have produced or presented them.  You, the jurors, are the sole judges of the credibility of each and every witness and the weight and effect to be given to the evidence in this case.

As I've told you previously, the attorneys in this case are acting as advocates for their competing parties and their competing claims, and they have a duty to object when they believe evidence is offered that should not be admitted under the rules of the Court.

In that case, when the Court has sustained an objection to a question addressed to a witness, you are to disregard the question entirely, and you may not draw any inferences from its wording or speculate about what the witness would have said if I had permitted them to answer the question. If, on the other hand, the objection was overruled, then you're to treat the answer to the question and the question itself just as if no objection had been made; that is, like any other question and answer.

Now, at times during the trial, it was necessary for the Court to talk to the lawyers here at the bench or outside of your hearing when you were in the jury room. This happens because during a trial, there are things that sometimes come up that do not involve the jury. You should not speculate, Ladies and Gentlemen, about what was said during such discussions that took place outside of your presence.

Now, there are two types of evidence that you may consider in properly finding the truth as to the facts in this case. One is direct evidence, such as the testimony of an eyewitness.  The other is indirect or circumstantial evidence; that is, the proof of a chain of circumstances that

indicates the existence or nonexistence of certain other facts.  As a general rule, you should know that the law makes no distinction between direct or circumstantial evidence, but simply requires that you, the jury, find the facts based on the evidence presented, both direct and circumstantial.

The Parties may have stipulated or agreed to some facts in the case.  When the lawyers for both sides stipulate as to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence and regard the fact as proven.

Certain testimony in the case has been presented to you through depositions. A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial. If a witness cannot be present to testify in person, then the witness's testimony may be presented under oath in the form of a deposition.  As I told you earlier, before the trial, the attorneys representing the parties in this case questioned these deposition witnesses under oath. At that time, a court reporter was present and recorded their sworn testimony.  Deposition testimony is entitled to the same consideration by you, the jury, as testimony given by a witness in person from the witness stand in open court.  Accordingly, you should judge the credibility and importance of the deposition testimony to the best of your ability, just as if the witness had testified before you in open court.

While you should consider only the evidence in this case, Ladies and Gentlemen, you should understand that you are permitted to draw such reasonable inferences from the testimony and the exhibits as you feel are justified in the light of common experience.

In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and the evidence in this case.  However, you should not base your decisions on any evidence not presented by the

parties in open court during the trial of this case, including your own personal experiences with any particular mobile remote deposit capture products and services.

Now, unless I instruct you otherwise, you may properly determine that the testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary if, after considering all of the other evidence, you believe that single witness.

When knowledge of a technical subject may be helpful to the jury, a person who has special training and experience in that technical field, called an expert witness, is permitted to state his or her opinions on those technical matters to the jury.  However, Ladies and Gentlemen, you're not required to accept those opinions. As with any other witness, it is solely up to you to decide who you believe and who you don't believe and whether or not you want to rely on their testimony.

Now, certain exhibits have been shown to you during the trial that were illustrations. We call these types of exhibits demonstrative exhibits or sometimes just demonstratives for short.

Demonstrative exhibits are a party's description, picture, or model to describe something involved in this trial. If your recollection of the evidence differs from the demonstratives, you should rely on your recollection.  Demonstrative exhibits are sometimes called jury aids.  The demonstrative is not evidence, but the witness's testimony during which they use the demonstrative is evidence.

In any legal action, facts must be proven by a required amount of evidence known as the burden of proof.  The burden of proof in this case is on USAA for some issues, and it is on Wells Fargo for other issues.  There are two burdens of proof that you will apply in this case.  One is the preponderance of the evidence, and the other is clear and convincing evidence.

The Plaintiff, USAA, has the burden of proving patent infringement by a preponderance of the evidence.  [USAA also has the burden of proving willful patent infringement by a preponderance of the evidence.]³  USAA also has the burden of proving damages for any patent infringement by a preponderance of the evidence.

A preponderance of the evidence means evidence that persuades you that a claim is more probably true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony.

Wells Fargo has the burden of proving patent invalidity by clear and convincing evidence. Clear and convincing evidence means evidence that produces in your mind an abiding conviction that the truth of the party's factual contentions are highly probable. Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard. [If the proof establishes in your mind an abiding conviction in the truth of the matter, then the clear and convincing evidence standard has been met⁴] [Proving a claim or defense by clear and convincing evidence means that it is highly probable that the facts are as the party contends.]⁵

These standards are different from what you may have learned about in criminal proceedings where a fact is proven beyond a reasonable doubt. [On a scale of the various standards

---

³ Wells Fargo objects to any instructions relating to willfulness on the basis of an anticipated motion for judgment as a matter of law of no willful infringement made pursuant to Federal Rule of Civil Procedure 50(a).
⁴ *KAIST IP US LLC, v. Samsung Elecs. Co, et al.*, No. 2:16-cv-1314-JRG-RSP, Dkt. 498 (E.D. Tex. June 15, 2018).
⁵ *Colorado v. New Mexico, et al.*, 467 U.S. 310, 316 (1984).

of proof, as you move from the preponderance of the evidence, where the proof need only be sufficient to tip the scales in favor of the party proving the fact, to at the other end beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between those two standards.][6] [The burden of proof called "beyond a reasonable doubt" is the burden of proof applied in a criminal case.  It has no application in a civil case like this one.][7]

In determining whether any fact has been proved by a preponderance of the evidence or by clear and convincing evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of all the witnesses, regardless of who called them, and all the exhibits received into evidence during the trial, regardless of who may have produced them.

---

[6] Wells Fargo objects to instructing the jury on the "beyond a reasonable doubt" standard as it does not apply in a civil case. There is also no support for this construction.
USAA notes that it is important to reduce jury confusion to explain to jurors how the "beyond a reasonable doubt" standard compares to the standards they will apply in this case.
[7] *United Services Automobile Association v. Wells Fargo Bank, N.A.*, No. 2:18-cv-245-JRG, Final Jury Instructions, Dkt. No. 335 (E.D. Tex. Nov. 7, 2019).

## CONTENTIONS OF THE PARTIES[8]

Now, as I did at the beginning of the case, I'll give you a summary of each side's contentions, and then I'll provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I told you previously, this case concerns two United States Patents, those being U.S. Patent Nos. 10,013,681; and 10,013,605, which you've consistently heard referred to throughout the trial as the '681 and '605 patents.  I will refer to them as the patents-in-suit.  I may also refer to them as the Asserted Patents.

USAA, the Plaintiff, seeks money damages from Wells Fargo for allegedly infringing the patents-in-suit, by making, using, selling, and/or offering to sell in the United States the [WELLS FARGO MOBILE DEPOSIT SYSTEM][9] [accused product].  Sometimes in these instructions I will refer to that system in shorthand as the "accused product."  USAA contends that the accused product infringes the following claims:

> '605 Patent claims 1, 3, 11-14, 22; and
> '681 Patent claims 12-14, 20, 22, 30

---

[8] *Whirlpool,* Case No. 2:15-cv-01528-JRG, Dkt. 166 (E.D. Tex. Mar. 23, 2017).

[9] *See United Services Automobile Association v. Wells Fargo Bank, N.A.*, No. 2:18-cv-245-JRG, Final Jury Instructions, Dkt. No. 335 (E.D. Tex. Nov. 7, 2019) (referring to "Wells Fargo's Mobile Deposit System, which I may refer to as the Accused Product."). This language also matches the identification of the infringing instrumentality in USAA's infringement contentions. USAA's Amended Disclosure of Asserted Claims and Infringement Contentions at 3-4.

Wells Fargo objects to the proposed instruction's reference to "Wells Fargo Mobile Deposit System" because USAA has only alleged that certain features of the system infringe the Asserted Patents, and it is simpler to refer to the "accused product." Moreover, referring to the Wells Fargo Mobile Deposit System is highly prejudicial and suggestive of a substantive ruling.

These claims are sometimes referred to as the asserted claims.  USAA has alleged that the accused product infringes the asserted claims.   [USAA also alleges that Wells Fargo's infringement is and has been willful.][10]  USAA seeks damages in the form of a reasonable royalty for Wells Fargo's alleged infringement.

Wells Fargo denies that the [WELLS FARGO MOBILE DEPOSIT SYSTEM] [accused product][11] infringes the asserted claims of the '681 and '605 patents.  [Wells Fargo further denies USAA's allegation that it willfully infringed any claim of the asserted patent.][12]  Wells Fargo also contends that the asserted claims are invalid.  Wells Fargo denies it owes USAA any damages in this case.

[Now, if you decide that any claim has been infringed and is not invalid, then you'll need to decide whether Wells Fargo's infringement has been willful, and to decide the amount of money damages that are to be awarded to USAA as compensation for that infringement.][13]  [It's your job, members of the jury, to decide whether USAA has proven that Wells Fargo has infringed any of the asserted claims and whether Wells Fargo has proven that any of the asserted claims are invalid.[14]  If you decide that any claim of the asserted patents has been infringed and is not invalid,

---

[10] Wells Fargo objects to any instructions relating to willfulness on the basis of an anticipated motion for judgment as a matter of law of no willful infringement made pursuant to Federal Rule of Civil Procedure 50(a).

[11] *See* the parties' previous comments and objections regarding the accused instrumentality.

[12] Wells Fargo objects to any instructions relating to willfulness on the basis of an anticipated motion for judgment as a matter of law of no willful infringement made pursuant to Federal Rule of Civil Procedure 50(a).

[13] Wells Fargo objects to any instructions relating to willfulness on the basis of an anticipated motion for judgment as a matter of law of no willful infringement made pursuant to Federal Rule of Civil Procedure 50(a).

[14] *Intellectual Ventures v. Great West Casualty Co.*, 6:18-cv-299-JRG, Dkt. No. 110.

you will then need to decide any money damages to be awarded to USAA to compensate it for the infringement.[15]][16]

## ESTABLISHED FACTS

I will now instruct you on a number of established facts.  You must take these facts as true when deciding the issues in this case.

(1.)    USAA is the record assignee and owner of the '605, and '681 Patents.

(2.)    The asserted claims of the '605 Patent are claims 1, 3, 11-14, 22.

(3.)    The asserted claims of the '681 Patent are claims 12-14, 20, 22, 30.

Now, before you can decide many of the issues in this case, you'll need to understand the role of the patent claims.

## PATENT CLAIMS[17]

The claims of a patent are numbered sentences at the end of the patent.  The claims define the patent owner's rights under the law.  The claims are important, because it is the words of the claims themselves that define what the patent covers.  The figures and the text in the rest of the patent [may[18]] provide a description or examples of the invention, and they provide a context for the claims; but it is the claims that define the breadth of the patent's coverage.

---

[15] *Intellectual Ventures v. Great West Casualty Co.*, 6:18-cv-299-JRG, Dkt. No. 110.
[16] USAA objects to Wells Fargo's proposed instruction because the first sentence is repetitive of previous instructions and unnecessary, and the second sentence fails to address willfulness.
[17] *Whirlpool*, Case No. 2:15-cv-01528-JRG, Dkt. 166 (E.D. Tex. Mar. 23, 2017).
[18] Whether or not the Asserted Patents contain an adequate written description is in dispute.  *See* Wells Fargo's Trial Brief on Written Description, Dkt. No. 246 (incorporated here by reference).

Each claim is effectively treated as if it were its own separate patent, and each claim may cover more or may cover less than any other claim. Therefore, what a patent covers collectively or as a whole depends on what each of its claims cover.

## CLAIM CONSTRUCTION

You first need to understand what each claim covers in order to decide whether or not there is infringement of that claim and to decide whether or not the claim is invalid.  And the first step is to understand the meaning of the words used in the patent claim.  Now, the law says that it is my role to define the terms of the claims, but it is your role to apply my definitions to the issues that you're asked to decide in this case.

Accordingly, as I explained at the beginning of the case, I've determined the meaning of certain claim language. I have provided the definitions of those claim terms in your jury notebooks. You must accept my definitions of these words in the claims as being correct, and it is your job to take these definitions that I have supplied and apply them to the issues that you are asked to decide, including the issues of infringement and invalidity.  [My interpretation of the claim terms should not be taken by you as an indication that I have a view regarding the issues of infringement or invalidity.[19]  The decisions regarding infringement and invalidity are yours to make.][20]

For claim limitations where I have not construed, that is defined or interpreted, any particular term, you are to use the plain and ordinary meaning of that term as understood by one of ordinary skill in the art, which is to say, in the field of technology of the patent at the time of

---

[19] *United Services Automobile Association v. Wells Fargo Bank, N.A.*, No. 2:18-cv-245-JRG, Final Jury Instructions, Dkt. No. 335 (E.D. Tex. Nov. 7, 2019).
[20] USAA objects to this instruction because there is no implication in the instructions that a claim construction decides validity or infringement.  This simply adds unnecessary verbiage to the instructions.

the alleged invention.  The meanings of the words of the patent claims must be the same when deciding both the issues of infringement and validity.

## PATENT CLAIMS AND LIMITATIONS

I'll now explain how a claim defines what it covers.  A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device satisfies each of these requirements in that sentence, then it is covered by and infringes the claim.  There can be several claims in a patent. A claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed on a claim-by claim basis.

In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations."  [For example, a claim that covers the invention of a table may recite a tabletop, four legs, and glue that secures the legs to the tabletop. In this example, the tabletop, the legs, and the glue are each separate limitations or elements of the claim.[21]][22]

When a product meets all the requirements of a claim, where it meets all of its limitations or all of its elements, the claim is said to cover that product; and that product is said to fall within the scope of that claim. In other words, a claim covers a product where each of the claim elements or limitations is present in that product. If a product is missing even one limitation or element of a claim, the product is not covered by that claim.  If the product is not covered by the claim, the product does not infringe the claim.

## INDEPENDENT VS. DEPENDENT CLAIMS

_____

[21] Adapted from *Optis Wireless Tech., LLC v. Huawei Techs. Co. Ltd.*, No. 2:17-cv-123-JRG-RSP, No. 284 (E.D. Tex. Aug. 25, 2018).
[22] USAA objects that this language is redundant of the language on the next page of the instruction (providing the chair example).

This case involves two types of patent claims: independent claims and dependent claims. [This case involves 4 independent claims and 9 dependent claims].  An independent claim does not refer to any other claim in the patent. An independent claim sets forth all the requirements that must be met in order to be covered by the claim. It's not necessary to look to any other claim to determine what an independent claim covers.

By contrast, a dependent claim does not by itself recite all the requirements of the claim but refers to another claim or claims for some of its requirements. In this way, the dependent claim depends on another claim.

The law considers a dependent claim to incorporate all the requirements of the claim or claims to which it refers or depends, as well as the additional claims set forth in the dependent claim itself.  To determine what a dependent claim covers, it's necessary to look at both the dependent claim and any other claim to which it refers. A product that meets all the requirements of both the dependent claim and the claim or claims to which it refers is covered by that dependent claim.

## COMPRISING

The claims of the patent-in-suit use the word "comprising."  Comprising means including or containing.  When the word "comprising" is used, a product that includes all the limitations or elements of the claim, as well as additional elements, is covered by the claim.[23]  Some of the claims of the patents-in-suit use the word "including."  In a claim, including means comprising.[24]

---

[23] *Intellectual Ventures v. Great West Casualty Co.*, 6:18-cv-299-JRG, Dkt. No. 110.
[24] SanDisk Corp. v. Memorex Products, Inc., 415 F.3d 1278, 1284, 75 U.S.P.Q.2d 1475 (Fed. Cir. 2005) ("As a patent law term of art, 'includes' means 'comprising.' Neither includes, nor comprising, forecloses additional elements that need not satisfy the stated claim limitations.")

For example, if you take a claim that covers the invention of a table, if the claim recites a table comprising a tabletop, four legs and glue that holds the legs and the tabletop together, the claim will cover any table that contains those structures, even if the table also contains other structures, such as leaves to go in the tabletop or wheels to go on the ends of the legs.  [That's a simple example using the word "comprising" and what it means.  But, in other words, it can have other features, in addition to those that are covered by the patent.][25]

[If a product is missing even one element or limitation of a claim, it does not meet all the requirements of the claim and is not covered by the claim.  And if a product is not covered by the claim, it does not infringe that claim.][26]

## INFRINGEMENT[27]

I will now instruct you on infringement in more detail.  [If a person makes, uses, sells, or offers for sale within the United States or imports into the United States what is covered by a patent claim without the patent owner's permission, that person is said to infringe the patent.][28]  To determine whether there is infringement, you must compare the asserted patent claims, as I've defined each of them, to the accused product[, the WELLS FARGO MOBILE DEPOSIT

---

[25] *KAIST IP US LLC, v. Samsung Elecs. Co, et al.*, No. 2:16-cv-1314-JRG-RSP, Dkt. 498 (E.D. Tex. June 15, 2018).
[26] *Optis Wireless Tech., LLC v. Huawei Techs. Co. Ltd.*, No. 2:17-cv-123-JRG-RSP, No. 284 (E.D. Tex. Aug. 25, 2018).  USAA objects to this instruction because this concept is covered repeatedly in the instructions, including nearly verbatim two pages earlier in the "Patent Claims and Limitations" insert.  It is redundant to again include it here.  Wells Fargo is simply try to over-emphasize a part of the instructions it likes.
[27] *Whirlpool*, Case No. 2:15-cv-01528-JRG, Dkt. 166 (E.D. Tex. Mar. 23, 2017).
[28] Wells Fargo objects to this instruction as redundant and unnecessary.

---

SYSTEM[29]].  You should not compare the accused product with any specific example set out in the patent or with the patent owner's commercial product or with the prior art in reaching your decision on infringement.[30]  As I've reminded you during the trial, the only correct comparison is between the accused product and the language of the claim itself.  [For any claim of infringement, an accused infringer's ownership of its own patent is not a defense to infringement.[31]][32]

You must reach your decision as to each assertion of infringement based on my instructions about the meaning and the scope of the claims, the legal requirements for infringement, and the evidence presented to you by both of the parties.

In order to prove infringement, USAA must prove by a preponderance of the evidence that Wells Fargo made, used, sold, or offered for sale a product that meets all the requirements of the asserted claims; that is, that it is more likely than not that the accused product meets all the requirements of the asserted claims.][33] [If the accused product does not perform any single step or

---

[29] See the parties' previous comments and objections regarding the accused instrumentality.

[30] Comparisons between the accused product and the patentee's commercial embodiment for purposes of analyzing infringement constitute legal error.  *Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994) ("As we have repeatedly said, it is error for a court to compare in its infringement analysis the accused product or process with the patentee's commercial embodiment or other version of the product or process . . . ."); *Martin v. Barber*, 755 F.2d 1564, 1567 (Fed. Cir. 1985); *see also* Docket No. 234 at 1 (granting Wells Fargo's Motion in Limine No. 1, and excluding comparison between Wells Fargo's Mobile Deposit System and USAA's Deposit@Mobile. .

[31] *Mass Engineered Designs, Inc. v. Ergotron, Inc.,* Case No. 06-cv-272-LED, Final Jury Instructions, Dkt. 658 (E.D. Tex. Nov. 19, 2008).

[32] Wells Fargo objects to this instruction as irrelevant, unnecessary, and not supported by the evidence because Wells Fargo does not intend to present evidence that its own patents is a defense to infringement. USAA agrees that Wells Fargo should not present evidence of its own patents. However, because Wells Fargo has already insinuated to the jury that it is an innovator, USAA believes this instruction is appropriate.

[33] Adapted from *Flexuspine v. Globus*, 6:15-cv-201-JRG-KNM, Dkt. No. 250.

---

element or perform such steps in the order required by the asserted patent claim, then Wells Fargo does not infringe that claim.][34]

The issue of infringement is assessed on a claim-by-claim basis within each patent. Therefore, there may be infringement of a particular patent as to one claim even if there is no infringement as to other claims in that patent.[35]

[There is one exception to this rule. To establish direct infringement of a dependent claim, USAA must show that it is more likely than not that the Wells Fargo directly infringed each and every element of the independent claim and the additional elements of the dependent claim. So, if you find that an independent claim is not infringed, then you must also find that its dependent claims are not infringed. If you find that an independent claim is infringed, you must further decide whether its dependent claims are also infringed.][36]

[I'll now instruct you on the specific rules that you must follow to determine whether the Plaintiff, USAA, has proven that Wells Fargo has infringed one or more of the patent claims involved in this case. In order to prove direct infringement of a patent claim, USAA must show

---

[34] USAA objects that this sentence is directly contrary to the Court's constructions (which do not require any specific order of steps) and to settled Federal Circuit law that claims are not required to be performed in the order recited, absent an express teaching in the patent to the contrary. *E.g., Altiris Inc. v. Symantec Corp.,* 318 F.3d 1363, 1371, 65 USPQ2d 1865, 1869-70 (Fed. Cir. 2003) (Even where the specification discussed only a single embodiment, the court held that it was improper to read a specific order of steps into method claims where, as a matter of logic or grammar, the language of the method claims did not impose a specific order).

[35] *United Services Automobile Association v. Wells Fargo Bank, N.A.*, No. 6:18-cv-245-JRG, Final Jury Instructions, Dkt. No. 335 (E.D. Tex. Nov. 7, 2019).

[36] USAA objects that this statement of the law is inaccurate and would be confusing. If there is infringement of a dependent claim, for example, there is also infringement of the independent claim.

---

by a preponderance of the evidence that the accused product includes each and every requirement or limitation of the claim.[37]]

## INFRINGEMENT[38]

In order to infringe a patent claim, the accused device must include each and every element of the claim.  In determining whether Wells Fargo infringes USAA's asserted claims, you must determine if the accused [WELLS FARGO MOBILE DEPOSIT SYSTEM][39] [product] contains each and every element recited in a claim of the asserted patent.  A claim element is literally present if it exists in the accused product as it is described in the claim language either as I have explained it to you or if I did not explain it according to its ordinary meaning as understood by one of ordinary skill in the art.

[In making your determination, you must consider each claim separately.  Not all of the claims of a patent must be infringed for infringement to exist.  The Plaintiff need only establish by a preponderance of the evidence that one claim is infringed.  If you find that each and every element of a patented claim is found in the accused product then the claim is infringed, even if the accused product may include additional features or functions not found in the claims.[40] ]

---

[37] *Whirlpool*, Case No. 2:15-cv-01528-JRG, Dkt. 166 (E.D. Tex. Mar. 23, 2017). Wells Fargo objects to this instruction as redundant in light of its alternate proposal above.

[38] *Whirlpool*, Case No. 2:15-cv-01528-JRG, Dkt. 166 (E.D. Tex. Mar. 23, 2017).

[39] Wells Fargo objects to the proposed instruction's reference to "Wells Fargo Mobile Deposit System" because USAA has only alleged that certain features of the system infringe the Asserted Patents, and it is simpler to refer to the "accused product."

[40] *KAIST IP US LLC, v. Samsung Elecs. Co, et al.*, No. 2:16-cv-1314-JRG-RSP, Dkt. 498 (E.D. Tex. June 15, 2018). Wells Fargo objects to this instruction as redundant and unnecessary.  Wells Fargo anticipates that the verdict form will have a blank for each asserted claim, thus requiring the jury to consider the claims separately.  Additionally, the instruction regarding the "comprising" language has already been addressed.

[If the accused product omits even one single requirement of a claim, then you must find that the accused product does not infringe the claim.][41]  [Additionally, for purposes of determining infringement, the only correct comparison that you should make is between the language of the asserted claims and the accused product of the Defendant.][42]

[A patent can be directly infringed even if the alleged infringer did not have knowledge of the patent and without the infringer knowing that what it was doing is infringement of the claim.][43] A patent may also be directly infringed, even though the accused infringer believes in good faith that what it is doing is not infringement of the patent.][44]]

**INFRINGEMENT INVOLVING MULTIPLE ENTITIES OR COMPONENTS**

As I just mentioned, infringement requires a party to make, use, sell, or offer to sell each and every component or step of a claimed system or method. A party "makes" a claimed system when it combines all of the elements of the claims, even if it does not make each individual component element.[45] A party "uses" a claimed system when it controls the system and obtains

---

[41] *Optis Wireless Tech., LLC v. Huawei Techs. Co. Ltd.*, No. 2:17-cv-123-JRG-RSP, No. 284 (E.D. Tex. Aug. 25, 2018).  USAA objects that this instruction is redundant and unnecessary in light of previous instructions.

[42] *Optis Wireless Tech., LLC v. Huawei Techs. Co. Ltd.*, No. 2:17-cv-123-JRG-RSP, No. 284 (E.D. Tex. Aug. 25, 2018).
USAA objects to this instruction as redundant and unnecessary in light of previous instructions.

[43] *Whirlpool*, Case No. 2:15-cv-01528-JRG, Dkt. 166 (E.D. Tex. Mar. 23, 2017).  Wells Fargo objects to any instructions relating to willfulness on the basis of an anticipated motion for judgment as a matter of law of no willful infringement made pursuant to Federal Rule of Civil Procedure 50(a).

[44] *KAIST IP US LLC, v. Samsung Elecs. Co, et al.*, No. 2:16-cv-1314-JRG-RSP, Dkt. 498 (E.D. Tex. June 15, 2018); *United Services Automobile Association v. Wells Fargo Bank, N.A.*, No. 2:18-cv-00245-JRG, (E.D. Tex. Nov. 5, 2019).  Wells Fargo objects to any instructions relating to willfulness on the basis of an anticipated motion for judgment as a matter of law of no willful infringement made pursuant to Federal Rule of Civil Procedure 50(a).

[45] *Centrak, Inc. v. Sonitor Techs., Inc.*, 915 F.3d 1360, 1371 (Fed. Cir. 2019) ("[A]s long as a defendant adds the final limitations to complete a claimed combination, the defendant infringes . . . a final assembler

benefit from it, but need not exercise physical or direct control over each individual element of the system.[46]

Where no one party performs all of the steps of a claimed method but multiple parties combine to perform every step of the method, that claim will nevertheless be infringed if one party exercises control or direction over the entire method so that every step is attributable to the controlling party. Similarly, where no one party makes, uses, sells, or offers to sell all components of a claimed system, that claim will nevertheless be infringed if one party exercises control or direction over the entire system so that the making, using, selling, or offering to sell of every

---

can be liable for making an infringing combination . . . even if it does not make each individual component element.").

[46] **USAA:** *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.,* 631 F.3d 1279, 1285 (Fed. Cir. 2011) ("We hold that the on-demand operation is a 'use' of the system as a matter of law. The customer puts the system as a whole into service, *i.e.*, controls the system and obtains benefit from it."); *id.* at 1284 ("The district court erred, however by holding that in order to 'use' a system under Section 271(a), a party must exercise physical or direct control over each individual element of the system."). **Wells Fargo:** this instruction misstates the law by suggesting that a generalized "benefit" of any kind is sufficient to show infringement.  It is not.  Under *Centillion*, proof of an infringing "use" of the claimed system requires the patentee to demonstrate that the direct infringer both controlled the system as a whole and "obtained 'benefit' from each and every element of the claimed system." *Intellectual Ventures I LLC v. Motorola Mobility LLC,* 870 F.3d 1320, 1329 (Fed. Cir. 2017).

component is attributable to the controlling party.  Thus, a party cannot avoid infringement by directing someone else to carry out one or more of the claimed steps or components.[47] [48]

_____

[47] The Federal Circuit in *Akamai* explicitly held that the "direction or control" standard governs "when the activities of one entity are attributable to another" in analyzing "infringement under Section 271(a)," which covers all patent claims.  *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015).  *Centillon* is in accord, as the plaintiff accused Qwest of "making" and "using" a claimed "***system***" under § 271(a) by providing software to customers, who install it to complete the "system." *Centillion Data Systems, LLC v. Qwest Comms. Int'l, Inc.*, 631 F.3d 1279 (Fed. Cir. 2011).  Judge Payne's Order denying USAA's Motion to Strike testimony of Dr. Villasenor is consistent with USAA's proposed instruction, which includes instructions on both the *Centrak/Centillion* standards for "making" and "using" system claims with multiple components as well as the *Akamai* standard for vicarious liability in situations where multiple *parties* perform different steps or make/use different components of a system.   Wells Fargo responds that, as correctly recognized by Magistrate Judge Payne in his decision denying USAA's attempts to strike Dr. Villasenor's testimony, the *Centillion* standard applies to "use" of a system.  Dkt. No. 229, at 3 ("The Court finds that even in light of *Akamai*, *Centillion* is the appropriate standard under which to analyze infringement of system claims.").  Under *Centillion*, proof of an infringing "use" of the claimed system requires the patentee to demonstrate that the direct infringer both controlled the system as a whole and "obtained 'benefit' from each and every element of the claimed system." *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017).  Wells Fargo further objects that "vicarious liability" is not a cognizable theory of infringement.  *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 n.2 (Fed. Cir. 2015) (en banc) ("We note that previous cases' use of the term 'vicarious liability' is a misnomer. Restatement (Third) of Torts: Apportionment of Liability § 13 (2000). In the context of joint patent infringement, an alleged infringer is not liable for a third party's commission of infringement—rather, an alleged infringer is responsible for method steps performed by a third party. Accordingly, we recognize that vicarious liability is not a perfect analog.").  Wells Fargo further objects that there are no method claims asserted at trial, and the jury should thus not be instructed on the legal standard applicable to method claims, as USAA proposes.

[48] Wells Fargo objects to this instruction as misstating the law.  The standards for divided infringement are distinct for system and method claims and this instruction misstates both standards.  *See* Wells Fargo's Response and Sur-Reply to Motion to Strike Testimony of Dr. Villasenor Dkt. Nos. 88, 126; *see also Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016) ("Our cases have applied joint infringement to method claims and not system claims. *See Centillion Data Sys. LLC v. Qwest Commc'ns Int'l Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011) (analyzing system claims under a different framework: "to 'use' a system for purposes of infringement, a party must put the invention into service, i.e., control the system as a whole and obtain benefit from it").").  USAA responds that, as held by *Akamai* and explained above, there is a single vicarious liability doctrine that applies to all infringement under Section 271(a); the fact that the situation arises more commonly with method claims does not create a different standard for system claims.

_____

[Direct infringement requires a single party be responsible for infringement of the claim.[49] Where more than one party is involved in the system accused of infringement, you must determine whether the acts of one are attributable to the other such that a single party is responsible for the infringement.

For system claims, there may be direct infringement if one party (1) combine(s) all of the claim elements; or (2) controls the system as a whole and obtains benefit from it.  In order to show that Wells Fargo has obtained benefit from a system, USAA must show that Wells Fargo obtains a benefit from each and every element of the claimed system.[50]]

---

[50] USAA: Wells Fargo's proposed instruction is legally incorrect and confusing.  Wells Fargo's proposed instruction of "In order to show that Wells Fargo has obtained benefit from a system, USAA must show that Wells Fargo obtains a benefit from each and every element of the claimed system" is also unnecessary and misleading as it suggests that an explicit element-by-element analysis is required. The controlling case, *Centillion*, only says that the defendant must "obtain benefit from [the claimed system]," *Centillion*, 631 F.3d 1284, and makes clear that a party may "use" every element of a system by using the system as a whole. *Centillion*, 631 F.3d at 1284 ("It did not matter that the [entity alleged to use the system] did not have physical control over the relays, the user made them work for their patented purpose, and thus 'used' every element of the system by putting every element collectively into service."); Wells Fargo responds that, as correctly recognized by Magistrate Judge Payne in his decision denying USAA's attempts to strike Dr. Villasenor's testimony, the *Centillion* standard applies.  Dkt. No. 229, at 3 ("The Court finds that even in light of *Akamai*, *Centillion* is the appropriate standard under which to analyze infringement of system claims.").  Wells Fargo further notes that the Federal Circuit later clarified that *Centillion* requires an element-by-element analysis of benefits. *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017) ("In an analysis of a system claim under *Centillion*, proof of an infringing 'use' of the claimed system under § 271(a) requires the patentee to demonstrate that the direct infringer obtained "benefit" from each and every element of the claimed system."); *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011); *Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016); *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017); *Grecia v. McDonald's Corp.*, 724 F. App'x 942, 946–47 (Fed. Cir. 2018).

---

## WILLFULNESS[51]

[In this case, USAA contends that Wells Fargo willfully infringed its patent. If you decided that Wells Fargo has infringed, you must go on and separately address the additional issue of whether or not Wells Fargo's infringement was willful.

USAA must prove willfulness by a preponderance of the evidence. In other words, you must determine whether it is more likely than not that Wells Fargo willfully infringed.  You may not determine that the infringement was willful just because Wells Fargo knew of the Asserted Patents and infringed them. However, you may find that Wells Fargo willfully infringed if you find that it acted egregiously, willfully, or wantonly. You may find Wells Fargo's actions were egregious, willful, or wanton if it acted in reckless or callous disregard of or with indifference to the rights of USAA. A Defendant is indifferent to the rights of another when it proceeds in disregard of a high or excessive danger of infringement that was known to it or was apparent to a reasonable person in its position. Your determination of willfulness should incorporate the totality of the circumstances based on all the evidence presented during the trial.

Willfulness can be established by circumstantial evidence. [You may consider whether or not Wells Fargo intentionally copied a USAA commercial embodiment that is covered by an

---

[51] *United Services Automobile Association v. Wells Fargo Bank, N.A.*, No. 2:18-cv-00245-JRG, (E.D. Tex. Nov. 5, 2019).  Wells Fargo objects to any instructions relating to willfulness on the basis of an anticipated motion for judgment as a matter of law of no willful infringement made pursuant to Federal Rule of Civil Procedure 50(a).

asserted patent when assessing willfulness.[52]][53] Willfulness can be established by circumstantial evidence.][54]

---

[52]*Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 n. 7 (Fed. Cir. 1992); *Wi-Lan v. Apple, Inc. et al.*, 2:11-cv-00068-JRG (E.D. Tex. Oct. 23, 2013). Wells Fargo objects to the inclusion of a copying instruction in light of Magistrate Judge Payne's ruling on Wells Fargo's Motion in Limine No. 11, which precludes evidence of alleged copying and/or willful infringement that is unrelated to the patented features. USAA has not laid the required foundation for any of its evidence of purported copying.

USAA responds that the foundation has been laid at trial. For example, Mr. Brady testified that USAA's Deposit@Mobile system practices the asserted claim limitations. *See, e.g.*, 1-6-20 PM Trial Tr. At 232:7-12, 235:18-239:3. USAA also expects to introduce testimony by video deposition of Mr. Prasad, who personally worked on the development of the Deposit@Mobile system and is an inventor on the asserted patents, confirming that USAA's Deposit@Mobile system practices his patents. Prasad Dep., at 74 ("Q. And so my question is, does USAA's Deposit@Mobile product practice any of the claims of your patents? A. Yes. Q. It does? A. It does."). The jury will also hear substantial evidence that Wells Fargo repeatedly examined USAA's Deposit@Mobile system and specifically sought to copy its features. *See, e.g.*, PX1182 (document in Wells Fargo's files with detailed screenshots of various aspects of USAA's Deposit@Mobile system in operation including claimed features); *see also* Rosati Dep. 22:16-25 (admitting his group examined "the user interfaces that USAA uses for its mobile check deposit system . . . specific to manual and auto-capture"); Ajami Dep., 11:15-25 (Q. Sure. This e-mail that you wrote in 2010 regarding the mobile deposit capture system that Wells Fargo was launching, you stated that you were planning on leveraging design learnings from USAA; fair? A. Okay. Yes, for design.); 16:03-07 (Q. Sir, your team examined USAA's Mobile@Deposit (sic) check deposit system; fair? A. The user experience of that system, yeah, we looked at.); PX-438; PX-1182.

[53] *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 n.7 (Fed. Cir. 1992); *Wi-Lan v. Apple, Inc. et al.*, 2:11-cv-00068-JRG (E.D. Tex. Oct. 23, 2013).

[54] Wells Fargo objects to any instructions relating to willfulness on the basis of an anticipated motion for judgment as a matter of law of no willful infringement made pursuant to Federal Rule of Civil Procedure 50(a). Wells Fargo further objects to this instruction on the grounds that it misstates the law of willful infringement, in that neither the Supreme Court nor the Federal Circuit has endorsed a recklessness, callous disregard, or indifference standard for willful infringement. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016) (characterizing such conduct as "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or . . . characteristic of a pirate"). Wells Fargo further objections to the inclusion of copying specifically, as it is duplicative of the instruction to the jury to consider the totality of the circumstances. Wells Fargo further objects to the copying instruction that suggests that a USAA commercial embodiment is covered by an asserted patent, when no such evidence has been produced in this case. Wells Fargo further objects to the copying instruction as inconsistent of Magistrate Judge Payne's ruling on Wells Fargo's Motion in Limine No. 11, which precludes evidence of alleged copying and/or willful infringement that is unrelated to the patented features. Dkt. No. 188 at 6. Wells Fargo further objects to this instruction because it does not include a requirement that knowledge of the patents is a prerequisite for willful infringement. *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016).

[In this case, USAA argues both that Wells Fargo infringed and, further, that Wells Fargo infringed willfully. If you have decided that Wells Fargo has infringed, you must go on and address the additional issue of whether or not this infringement was willful. Willfulness requires you to determine whether USAA proved that it is more likely than not that the infringement by Wells Fargo was especially worthy of punishment.

In order to prove willful infringement, USAA must prove that Wells Fargo knew of the asserted patents.[55]  However, you may not determine that the infringement was willful just because Wells Fargo knew of the asserted patents and infringed them. Instead, willful infringement is reserved for only the most egregious behavior, such as where the infringement is malicious, deliberate, consciously wrongful, or done in bad faith, or characteristic of a pirate. In deciding whether Wells Fargo acted egregiously, which can include conduct that is willful, wanton, malicious, in bad faith, deliberate, consciously wrong, flagrant, or indeed, characteristic of a pirate,

---

[55] **Wells Fargo:** *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016).  Inclusion of a willful blindness instruction in this case would be highly prejudicial and confusing as there is no evidence to suggest that Wells Fargo was willfully blind of the Asserted Patents, which did not issue until July 3, 2018. The evidence of purported "willful blindness" identified by USAA predates the both the issuance and filing of the Asserted Patents by several years, and thus is not indicative that Wells Fargo willfully infringed the Asserted Patents or were willfully blind to their existence.  Moreover, Federal Circuit precedent shows that pre-issuance knowledge of a patent for willfulness is relevant only where there is also evidence that the accused infringer had notice or knowledge of the pending applications or the fact that the patent would be issued.  There is no evidence in this case that Wells Fargo had any knowledge of the Asserted Patents prior to the date of suit, August 17, 2018.
**USAA** objects to this instruction.  USAA has already laid the foundation for willful blindness in this case. *E.g.*, Rosati Dep. 25:05-25:23 (Q. Before this lawsuit began, you were aware that USAA had announced a licensing initiative relating to its mobile deposit capture patents, correct?  A. I saw some press releases.  Q. You took no steps to approach USAA about that process, correct?  A. I read the press release.  That was it.); *id*. 27:01-27:08 (Q. To be clear, you were aware that USAA had announced it was expecting folks to take a license to its intellectual property if they were using it, fair?  A. I read the press release, yes.  Q. Your superior, Margot Lockwood-Stein, was aware of that too, correct?  A. Yes.)..

---

you should consider all of the facts.  Your determination of willfulness should incorporate the totality of the circumstances based on all the evidence presented during the trial.  If you decide that any infringement was willful, that decision should not affect any damages award that you might make. I will take willfulness into account later. ][56]

Knowledge of the existence of a patent or patent family can be relevant to the question of willful infringement. For example, if Wells Fargo knew of the existence of a patent or subjectively believed that there was a high probability that a patent existed and took deliberate actions to avoid learning of the patent, you may take this into account when considering willfulness.  You may also take into account whether Wells Fargo had knowledge of a patent family.[57] ]] [[In this case,

---

[56] *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923 (2016); *Optis Wireless Tech., LLC v. Huawei Techs. Co. Ltd.*, No. 2:17-cv-123-JRG-RSP, No. 284 (E.D. Tex. Aug. 25, 2018); *Finjan Inc. v. Sophos, Inc.*, No. 3:14-cv-01197, Dkt. No. 396 (N.D. Cal. Sept. 21, 2016); Federal Circuit Bar Association Model Patent Jury Instruction 3.10; *WBIP, LLC v. Kohler Co*., 829 F.3d 1317, 1341 (Fed. Cir. 2016).

[57] **USAA:** *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011) (willful blindness defense requires: "(1) The defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact."); *VirnetX Inc. v. Apple Inc.*, 324 F. Supp. 3d 836, 859 (E.D. Tex. 2017) ("culpability for willfulness is 'measured against the knowledge of the actor at the time of the challenged conduct'"); *Dentsply Sirona, Inc. v. Edge Endo, LLC*, No. CV 17-1041 WJ/SCY, 2019 WL 1517584, at *4 (D.N.M. Apr. 8, 2019) ("[T]he universe of evidence that is relevant to the question of willful infringement is expansive . . . including citations to "two pending patent applications that name [the plaintiffs' individual founders] as inventors and that are great-grandparent and great-great-grandparent applications of the asserted '467 patent"; an email among employees of the alleged infringers "forwarding a news report" about the plaintiff's "failure to patent certain aspects of its technology"; and evidence that the alleged infringer had actually referenced, in its own family of patents, the "patents and patent applications in the same family as the '467 patent."); *see also Arthrex*, Dkt. No. 275 at 4-6 (knowledge of a parent patent can expand to knowledge of child patent when it issues).  **Wells Fargo** objects to the instruction as unfairly prejudicial and unnecessary, as there is no basis for a willful blindness defense or for contending that Wells Fargo knew of the family.  "Knowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages." *WBIP, LLC v. Kohler Co*., 829 F.3d 1317, 1341 (Fed. Cir. 2016).  There is no authority—and USAA points to none—to suggest that one can *completely* supplant the Federal Circuit's requirement for knowledge of the patent alleged to be willfully infringed with knowledge of a parent or related patent.  In other words, because there is not one scintilla of evidence that Wells Fargo was aware of the '605 or '681 patents prior to suit, Wells Fargo cannot be found to have

---

"knowledge" is relevant to willfulness.  To show that Wells Fargo's infringement was willful, USAA must prove by a preponderance of the evidence that Wells Fargo knew of the asserted patent and intentionally infringed at least one asserted claim of that patent.  For willfulness purposes, "knowledge" refers to Wells Fargo's knowledge of an issued patent.[58]  You may not find that Wells Fargo's infringement was willful merely because Wells Fargo knew about the patent, without more.  For example, you may consider whether Wells Fargo's behavior was malicious, wanton, deliberate, consciously wrongful, flagrant, or in bad faith. In determining whether USAA

---

willfully infringed the '605 or '681 patents prior to suit, and accordingly, any pre-suit knowledge of related or parent patents is irrelevant to copying or willfulness inquiry.  *Gustafson, Inc. v. Intersystems Indus. Prod., Inc.*, 897 F.2d 508, 511 (Fed. Cir. 1990) ("[A] party cannot be found to have 'willfully' infringed a patent of which the party had no knowledge.").

[58] **Wells Fargo:** *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("To willfully infringe a *patent*, the patent must exist and one must have knowledge of it. A "patent pending" notice gives one no knowledge whatsoever. It is not even a guarantee that an application has been filed. Filing an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents. What the scope of claims in patents that do issue will be is something totally unforeseeable."); *Netfuel, Inc., v. Cisco Systems Inc.*, 2018 WL 4510737, *2-*3 (N.D. Cal. 2018) ("[K]nowledge of a patent application alone is insufficient to meet the knowledge requirement for either a willful or induced infringement claim."). Cases distinguishing *State Industries* similarly focus on instances in which the accused infringer had prior warning of the asserted prior to issuance.  *Gustafson*, 897 F.2d at 510.  Accordingly, in this case, where the patent applications for the '605 and '681 were kept secret and it was impossible to discern the scope and content of the final claims, and Wells Fargo had no warning or indication that the '605 and '681 patents existed prior to issuance and prior to suit, the concerns identified in *State Industries* are very much relevant and valid.

**USAA** responds that these cases do not stand for the proposition that the only relevant evidence of "knowledge" for purposes of willfulness is Wells Fargo's knowledge of a specific issued patent, which would be inconsistent with the Supreme Court's decision in *Halo*. Willfulness may be proved by circumstantial evidence and the willfulness inquiry requires consideration of all the circumstances, which would include, among other things, Wells Fargo's knowledge of pending patent applications or related patents.

PROPOSED JURY INSTRUCTIONS

has proven that Wells Fargo's infringement was willful, you must consider all of the circumstances and assess Wells Fargo's knowledge at the time the challenged conduct occurred.[59]]]

## VALIDITY[60]

I'll now instruct you on the rules that you must follow in deciding whether or not Wells Fargo has proven by clear and convincing evidence that the asserted claims of the patent are invalid.

An issued patent is accorded a presumption of validity based on the presumption that the United States Patent and Trademark Office, which you've heard referred to throughout this trial as the PTO or the Patent Office, acted correctly in issuing the patent. [This presumption of validity extends to all issued United States patents. In order to overcome this presumption, Wells Fargo must establish by clear and convincing evidence that the Plaintiff's patent or any claim in the patent is not valid.][61] [The time it took the United States Patent and Trademark Office to examine and grant the patents in suit is not relevant to any issue in this case.[62]]

---

[59] Adapted from AIPLA Model Patent Jury Instructions 11.0 (2018).

[60] For the reasons articulated in its Motion for Summary Judgment Under 35 U.S.C. § 101, Wells Fargo believes that the Asserted Claims are patent ineligible as a matter of law. However, if the Court finds that the claims are directed to an abstract idea at Step One, but finds a fact question at Step Two, that issue should be sent to the jury, and Wells Fargo reserves the right to propose an appropriate jury instruction and verdict question later. However, it is also Wells Fargo's position that absent a ruling that the Asserted Claims are directed to an abstract idea at Step One, it would not be appropriate to send Step Two to the jury.

[61] *KAIST IP US LLC, v. Samsung Elecs. Co, et al.*, No. 2:16-cv-1314-JRG-RSP, Dkt. 498 (E.D. Tex. June 15, 2018). Wells Fargo objects to the repeated use and emphasis of the phrase "presumption of validity" as it is unduly prejudicial, will confuse the jury regarding the respective burdens of proof in this case, and is addressed via the Court's charge on the clear and convincing evidence standard with regard to invalidity.

[62] Wells Fargo has repeatedly emphasized the duration of time taken for the prosecution of the asserted patents in this case, including express reference to the "Track One" expedited prosecution program under which they were filed. Wells Fargo has created an issue in the case that goes far beyond the basic background information provided in the FJC patent video, which requires clarification in closing

---

[While patents issued by the USPTO are presumed to be valid, the presumption of validity is not absolute, and that presumption can be rebutted by clear and convincing evidence.[63] Even though the PTO examiner has allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are valid. This is because there may be facts or arguments that the examiner did not consider, such as prior art that was not located by the PTO or provided by the application.[64] In addition, there is of course the possibility that mistakes were

---

instructions that makes clear for the jury that the time taken for prosecution is not relevant to the question of validity, which must be decided solely on the merits of the claims in view of prior art. *Magnivision, Inc. v. Bonneau Co.*, 115 F.3d 956, 960 (Fed. Cir. 1997) (holding that it is improper to suggest there was something wrong with the patent because of the procedure used); *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 939 (Fed. Cir. 1990) ("It is presumed that public officials do their assigned jobs."); *Bausch & Lomb, Inc. v. Alcon Labs., Inc.*, 79 F. Supp. 2d 252, 255-56 (W.D. N.Y. 2000) (ruling inadmissible testimony on "the time constraints under which Examiners in the PTO must operate;" "generalized testimony about 'problems' in the PTO is not admissible").

Wells Fargo objects to the proposed instruction as argumentative, irrelevant, and confusing. The FJC patent video provided a balanced approach and the parties have been careful to abide by the Court's instructions not to disparage or inflate the PTO. If the Court does add this instruction, Wells Fargo requests that the Court add "without more" before "is not relevant."

[63] *Flexuspine;* 6:15-cv-201-JRG-KNM, Dkt. No. 250, p. 24.

[64] **USAA** contends that this instruction is particularly inappropriate in this case, given that there is no anticipation or obviousness argument being presented apart from Wells Fargo's argument that USAA's parent applications anticipate if its written description argument is accepted. Further, all of Wells Fargo's arguments were already before the Examiner. Indeed, it would be highly prejudicial, particularly if USAA is not permitted to put on its evidence that many of the arguments and references were again before the PTO and rejected during PTAB proceedings. Further, Wells Fargo is not asserting a prior art defense against either of the patents-in-suit. Moreover, it is wholly improper to suggest that there is something wrong with a patent because of the procedure used to issue it. *Magnivision, Inc. v. Bonneau Co.*, 115 F.3d 956, 960 (Fed. Cir. 1997) ("The validity of a patent is always subject to plenary challenge on its merits. . . . Procedural lapses during examination, should they occur, do not provide grounds of invalidity."); *Northern Telecom, Inc. v. Datapoint Corp.,* 908 F.2d 931, 939 (Fed. Cir. 1990) ("It is presumed that public officials do their assigned jobs."). Wells Fargo is free to argue to the jury that these particular patents should not have been issued, based on substantive issues of invalidity for these particular patents and their claims, but it is inappropriate to include argumentative language in the final jury instructions that suggests the jury must consider the reliability of the PTO's processes and procedures. This is particularly true where district courts also routinely exclude this kind of argument before the jury at all, much less in final jury instructions. *See, e.g., Erfindergemeinschaft UroPep GbR v. Eli Lilly and Co.*, 2017 WL 959592, at *4, n. 6 (E.D. Tex. Mar. 13,

---

made or important information overlooked. Examiners have a lot of work to do and no process is perfect. Also, unlike a court proceeding, prosecution of a patent application takes place without input from people who might later be accused of infringement. So it is important that we provide a chance for someone who is accused of infringement to challenge the patent in court.[65]]

Like infringement, invalidity is determined on a claim-by-claim basis. You must determine separately for each claim whether that claim is invalid.[66] Claims are construed in the same way for determining infringement as for determining invalidity. You must apply the claim language

---

2017) (excluding argument of misconduct or impropriety in patent prosecution) (J. Bryson); *Applied Materials, Inc. v. Advanced Semiconductor Materials America, Inc.,* 1995 WL 261407, at *3 (N.D. Cal. 1995) (precluding generalized attacks against the USPTO because they serve no purpose other than inappropriate disrespect for the examiner in his quasi-judicial capacity and excluding expert testimony concerning overwork at the USPTO and other matters insinuating that the USPTO does not do its job properly as "irrelevant speculation"); *Bausch & Lomb, Inc. v. Alcon Labs., Inc.,* 79 F. Supp. 2d 252, 255-56 (W.D. N.Y. 2000) (ruling inadmissible testimony on "the time constraints under which Examiners in the PTO must operate;" "generalized testimony about 'problems' in the PTO is not admissible").
**Wells Fargo:** notes this statement is consistent with the FJC video.  Further, none of Wells Fargo's defenses were decided by the examiner or the PTAB, and any suggestion to the contrary would be inaccurate, misleading, and prejudicial. Wells Fargo also responds that in the entire prosecution history for the '605 and '681 patents, there is no discussion of the written description requirement by USAA or the examiner, no reference to Section 112's written description requirement, no reference to any case law on written description, and no comparison (by either USAA or the examiner) of the claims to the specification (the comparison required by the written description analysis). Because none of Wells Fargo's defenses were decided by the examiner or the PTAB, any suggestion to the contrary would be inaccurate, misleading, and prejudicial.  The mere fact that the examiner did not dispute USAA's identification of the applications as continuations does not mean that written description was decided in USAA's favor, much less Wells Fargo's specific written description defense. Any argument to the contrary can be based on nothing more than speculation as to the examiner's mental state, which is improper. *In re Biogen '755 Patent Litig.,* No. 10-2734, 2018 U.S. Dist. LEXIS 125298, at *37 (D.N.J. Jul. 26, 2018) ("[E]xperts may not testify as to a patent examiner's state of mind."). Additionally, Wells Fargo notes this statement is consistent with the FJC video.
[65] *Flexuspine v. Globus*, 6:15-cv-201-JRG-KNM, Dkt. No. 250; FJC Video.
[66] *KAIST IP US LLC, v. Samsung Elecs. Co, et al.*, No. 2:16-cv-1314-JRG-RSP, Dkt. 498 (E.D. Tex. June 15, 2018).

consistently and in the same manner for issues of infringement and for issues of invalidity. In making your determination as to invalidity, you should consider each claim separately.[67]

### [PRIOR ART][68]

Some of these instructions will refer to prior art.  Prior art generally[69] means technology and information that was publicly available before the effective filing date of the patent.  Prior art may include certain[70] printed publications, issued patents, and published patent applications.  [A party's own issued patents can be prior art.][71] For a prior art reference to be considered for the purpose of determining whether or not the claims are invalid, the prior art item or reference must have been made, known, used, filed or published more than a year before the effective filing date of the patent.[72]  As you will hear in a minute, the parties disagree on the effective filing date of the

---

[67] USAA contends this instruction is redundant of the first sentence in this paragraph.

[68] **USAA** objects to the inclusion of this set of instructions.  Wells Fargo is not asserting a prior art defense against either of the patents-in-suit, and so this instruction is highly prejudicial and will be confusing to the jury.  **Wells Fargo:**  Wells Fargo is presenting a prior art defense against both patents in suit based upon the loss of priority date due to lack of written description in the 2006 specification.  As such, this instruction is appropriate.

[69] Wells Fargo objects to this statement as misleading and confusing, and the jury will be left to wonder when the "general" statement is true vs. when it is not.
USAA responds that, without this modifier, the sentence would be legally inaccurate, since not all technology and information publicly available before the date of invention is prior art.

[70] Wells Fargo again objects to USAA's proposal to include vague and confusing language such as "may" in the jury instruction.  The jury should be given specific guidance on when documents are prior art, not left to guess.

[71] The ownership of alleged prior art references is irrelevant to any issue in this case.  There is no 102(e) theory being asserted.  There is also no dispute that the alleged prior art references published more than a year before the date that Wells Fargo contends the claims are entitled to claim priority, just as there is no dispute that the alleged prior art references are not prior art if the claims are entitled to claim priority to 2006. The inclusion of this instruction is wholly unnecessary and likely to confuse the jury into believing the ownership of the patents has some particular relevance to validity.

[72] USAA objects that this sentence duplicates the prior sentence, except that it add a confusing reference to categories of prior art not at issue, and to "the earliest of the filing date of the asserted patent, [or[ the effective filing date."

---

patents.  USAA contends that the effective filing date is October 31, 2006.  Wells Fargo contends that it is July 27, 2018.]

To be published, a work must be publicly accessible.  Public accessibility requires that the work was disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence could have located it.[73]

### [DATE OF INVENTION[74]]

[In this case, the specifications of all of the patents were filed on October 31, 2006, the date of filing of the original patent application in the PTO from which they descend.[75]

## EFFECTIVE FILING DATE[76]

---

[73] *In re Lister*, 583 F.3d 1307, 1311-12 (Fed. Cir. 2009).  USAA contends that Byrne, and portions of "Wells Fargo Desktop Deposit" were not publicly available before the invention date of the patents in suit.  Wells Fargo objects to this instruction as unnecessary because USAA has not disputed the public accessibility of any prior art reference.

[74] Wells Fargo objects to these instructions as irrelevant and prejudicial.  USAA has not introduced evidence of a conception date or reduction to practice, and thus is not entitled to claim or argue that it is entitled to a priority date that precedes the October 31, 2006 priority date claimed by USAA.  Moreover, USAA has not asserted conception

[75] USAA notes that there is no dispute that the specifications of each of the asserted patents were filed on October 31, 2006. The only dispute that Wells Fargo has raised is whether those specifications provide written description support for certain claims.

Wells Fargo objects to this instruction as effectively constituting a directed verdict on Wells Fargo's written description defenses.  It is disputed whether the patents may be deemed to have been filed on October 31, 2006, and it is factually inaccurate, misleading and prejudicial to instruct the jury that the specifications of the patents were filed on October 31, 2006.

[76] Is disputed whether the patents may be deemed to have been filed on October 31, 2006, and accordingly it is appropriate to instruct the jury on effective filing date.

USAA responds that this question is adequately described to the jury in the later section regarding continuation patents/patent families and the written description requirement and is thus confusing and unnecessary as inserted here.

---

As I noted, the parties disagree on the effective filing date of the '605 and '681 patents. USAA contends that the patents are entitled to an effective filing date of October 31, 2006. Wells Fargo contends that the patents are entitled to an effective filing date of July 28, 2017.

Because the patents were filed on July 28, 2017, they are at least entitled to a priority date of July 28, 2017. To determine whether USAA is entitled to an earlier filing date of October 31, 2006, you will need to determine whether the patent specification filed on October 31, 2006 in the parent application satisfies the written description requirement for the patent claims filed in 2017. If they do, the patents are entitled to an effective filing date of October 31, 2006. If they do not, the patents are only entitled to an effective filing date of July 28, 2017.

The adequacy of the written description is judged as of the effective filing date of the Asserted Patent.[77] Here, USAA claims that the '605 and '681 patents are entitled to an effective filing date of October 31, 2006, because '605 and '681 patents are continuations of, and can claim priority to, a parent application. However, a continuation patent is not entitled to claim priority to an earlier patent if it claims new matter not supported by the specification of the earlier patent. "New matter" refers to subject matter that has no antecedent basis in the original specification, and therefore an addition to a patent specification constitutes "new matter" when it changes the invention disclosed or introduces a concept not previously present in that specification. A continuation patent that adds new matter is not entitled to claim priority to an earlier patent, and therefore is not entitled to claim the effective filing date of an earlier patent. The priority date of

---

[77] Adapted from *In re Downing*, 754 Fed. App'x 988 (Fed. Cir. 2018)

a continuation patent that claims new matter is the actual filing date of the patent, and not the filing date of an earlier patent to which it is claiming priority.[78]

## CONTINUATION PATENTS/PATENT FAMILIES

[[As I previously explained, to obtain a patent, one must first file an application with the United States Patent and Trademark Office, or the PTO of obtaining a patent is called patent prosecution. The application submitted to the PTO includes within it what is called a specification. The specification contains a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it.[79]

The patentee may later file additional patent applications based on the same specification as the original application, but with different claims.  These follow-on applications are called "continuations" because they are a continuation of the original patent application.[80]

The original patent application is sometimes called the "parent" application. Continuation applications based on the "parent" application are sometimes called "children." The combination of patents issued from the parent application and from any continuation (or child) applications are

---

[78] Adapted from *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. General Elec. Co.*, 264 F.3d 1111, 1118 (Fed. Cir. 2001); MPEP § 1504.04; *Dart Industries, Inc. v. Banner*, 636 F.2d 684, 688 (D.C. Cir. 1980) ("An addition to a patent specification constitutes 'new matter' when it changes the invention disclosed or introduces a concept not previously present in that specification.").

[79] **Wells Fargo** objects to this sentence as effectively constituting a directed verdict on its written description defense.  The instructions should not instruct the jury that the specifications contain a "written description" of the claims.  **USAA** responds that this is taken verbatim from the Court's preliminary instructions in Case 1. 2:18-cv-245, 10/30/2019 PM Trial Tr., 6:4-6; *see also* Fed. Cir. Model Patent Jury Instructions at A.1 (Preliminary Instructions).

[80] **Wells Fargo** objects to the "because…" clause as confusing and prejudicial to its written description defense, which (in part) disputes that the '605 and '681 patents are properly entitled to claim priority to earlier applications.  **USAA** responds that there is no dispute that the '605 and '681 patents were filed as continuation applications.

---

referred to as a "patent family."  Each issued patent in a patent family is a separate property right.[81] ]]

[[In this case, the parent application of the '681 patent was filed on October 31, 2006 and published on January 18, 2011.  The parent application and the '681 patent share the same specification. The parent application of the '605 patent was filed on October 31, 2006 and available on written request from the United States Patent Office on January 18, 2011, but was not available on a publicly searchable database. The parent application was published on April 29, 2014. The parent application and the '605 patent share the same specification.[82]  USAA had the right under the law to correct its patent applications to add a priority claim to the 2006 application.[83]

[[In the United States, parties can file for more than one patent based on the same specification.  Each of these patents will have identical specifications but different claims.  These patents are then called "related" patents or are said to be in the same "patent family."  The first patent can be referred to as the "parent" patent, and subsequent patents that descend from that patent can be referred to as a "child" or "grandchild" patent.  In this case, the '136 and '681 patents are related to another in the same patent family.  The '136 and '681 patents share the same specification, but have different claims.]]

---

[81] **USAA:** *Kearns v. Gen. Motors Corp.*, 94 F.3d 1553, 1555 (Fed. Cir. 1996) ("By statutory and common law, each patent establishes an independent and distinct property right.").

[82] **USAA:** This reflects the parties' agreed stipulation regarding these facts, with minor modifications for flow and to eliminate references to the '332 Patent.  **Wells Fargo** maintains its relevance objection from the pretrial conference.  In response, Judge Payne ruled this stipulation "is available to the defendant to request that it be provided to the jury.  And if the defendant does not request that the stipulation be provided to the jury, it would not be."  12/16/19 PTC Tr. at 46:8-14.

[83] MPEP § 211.02(a).

Each patent, regardless of whether it is in the same patent family, [[is]] [[must be]] assessed individually with respect to infringement, invalidity, marking, damages, and willfulness. You are to assess each of these issues independently for each Asserted Patent according to the instructions I give you. [[You may not substitute your verdict on one patent in a family for another patent in the family on any of the issues in this case.[84]]]

[[Evidence regarding one member of a patent family may be relevant to other members of the same patent family for different issues in the case.  Regarding invalidity, the disclosure in the specifications of related patents may be relevant to written description.  Additionally, evidence or opinions about the what was well-known in the art with respect to one patent can be relevant to another patent in the same family to the extent that they claim similar inventions or have overlapping content, which they do here.  Similar evidence may also be relevant to the utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results, which is evidence relevant to damages.[85]]]

---

[84] **USAA** objects to this as confusing and duplicative of the preceding instructions.

[85] **USAA** contends this language would be confusing and misleading, including because related patents are irrelevant to the written description defense that Wells Fargo is presenting. The only written description issue presented is whether the claims of the issued '605 and '681 Patents are adequately described in the original specifications filed in the respective file histories of those patents. Wells Fargo's proposed language attempts to re-argue MIL rulings already made by Judge Payne. *See* Day 1 PTC Tr., at 146:20-21 ("You look at the specification to determine whether it supports the new claims; right?"), 151:5-7 (granting MIL excluding reference to claims in earlier patents in family). Similarly, referring to related patents as evidence regarding what was known in the prior art or the Georgia-Pacific factor regarding old modes or devices would be confusing and misleading, as neither side is present any such argument in this case. Indeed, in this case there is no dispute that the specification of each patent-in-suit as well the alleged "earlier related application" referenced by Wells Fargo below was filed on the same day (October 31, 2006).

**Wells Fargo** contends this instruction is an accurate statement of the law.  This instruction accurately reflects that written description requires analysis of the disclosure of parent applications to establish the priority date (which Wells Fargo's expert does and concludes is no earlier than July 28, 2017).  Moreover, Wells Fargo relies on related applications as prior art and thus this instruction properly reflects that the jury

---

## WRITTEN DESCRIPTION

Before issuing a continuation patent, the patent examiner determines whether the originally-filed disclosure provides adequate written description support for each claim limitation.  If the examiner does not find that the originally filed disclosure provides adequate written support, Patent Office procedures require that the application be denied.[86]

Wells Fargo bears the burden of establishing by clear and convincing evidence that the claims of the '605 and '681 patents do not satisfy the written description requirement.  A patent must contain a written description of the invention claimed in the patent. The written description requirement helps ensure that the patent applicant actually invented the claimed subject matter. To satisfy the written description requirement, the patent specification must describe each and every limitation of a patent claim, in sufficient detail, although the exact words found in the claim need not be used. When determining whether the specification discloses the invention, the claim must be viewed as a whole.[87]

The written description requirement is satisfied if persons of ordinary skill in the field of the invention would recognize, from reading the patent specification, that the inventor possessed the subject matter finally claimed in the patent. The written description requirement is satisfied if

---

may consider related applications as part of the *Georgia Pacific* analysis.  USAA does not dispute that *Georgia-Pacific* Factor 9 covers old modes or devices, and thus would cover features known in the prior art.

[86] MPEP § 2163 ("If the originally filed disclosure does not provide support for each claim limitation, or if an element which applicant describes as essential or critical is not claimed, a new or amended claim must be rejected under 35 U.S.C. 112(a) or pre-AIA 35 U.S.C. 112, first paragraph, as lacking adequate written description").

[87] AIPLA Model Instruction No. 9 (2018).

the specification shows that the inventor possessed his or her invention as of the effective filing date of the claimed invention, even though the claims themselves may have been changed or new claims added since that time. It is unnecessary to spell out every detail of the invention in the specification, and specific examples are not required; only enough must be included in the specification to convince persons of ordinary skill in the art that the inventor possessed the full scope of the invention.[88]  The patent specification need not disclose every embodiment of the invention.  Description in the specification of as few as one example can be sufficient written description of a larger category of potential embodiments of the invention.[89]][90]  [It is unnecessary for the patent applicant to describe concepts relating to the invention that are already well known to persons of ordinary skill in the art.][91]

[The patent law contains certain requirements for the part of the patent called the specification.  Wells Fargo contends that the asserted claims of the '605 and '681 patents are invalid because the specification of the '605 and '681 patents do not contain an adequate written description of the invention. To succeed, Wells Fargo must show by clear and convincing evidence that the specification fails to meet the law's requirements for written description of the invention. In the patent application process, the applicant may add or change the claims between the time the patent application is first filed and the time a patent is issued.  These additions or changes may

---

[88] AIPLA Model Instruction No. 9 (2018).
[89] *Allergan Sales, LLC v. Sandoz, Inc.*, 717 F. App'x 991 (2017) (affirming the Court's decision of no invalidity under written description requirement) ("Even a single representative embodiment can support written description of a claimed genus.").
[90] Wells Fargo objects to this instruction as incorrect and an incorrect statement of the law.  Wells Fargo objects to the use of the phrase "presumption of validity" as it is unduly prejudicial, will confuse the jury regarding the respective burdens of proof in this case, and is addressed via the Court's charge on the clear and convincing evidence standard with regard to invalidity.
[91] MPEP § 2164 ("A patent need not teach, and preferably omits, what is well known in the art.")

PROPOSED JURY INSTRUCTIONS

narrow or broaden the scope of the claims. The written description requirement ensures that the issued claims correspond to the scope of the written description that was provided in the original application.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent when the application was filed. The written description requirement is satisfied if a person having ordinary skill reading the original patent application would have recognized that it describes the full scope of the claimed invention as it is finally claimed in the issued patent and that the inventor actually possessed that full scope by the filing date of the original application. The written description requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent application. The full scope of a claim or any particular requirement in a claim need not be expressly disclosed in the original patent application if a person having ordinary skill in the field of technology of the patent at the time of filing would have understood that the full scope or missing requirement is in the written description in the patent application. In considering written description, be aware that actual "possession" of the invention outside of the specification is not enough. Rather, as stated above, it is the specification itself that must demonstrate possession, such that one skilled in the art, reading the original disclosure, must reasonably discern the limitation at issue in the claims.[92]]

## ANTICIPATION

---

[92] Adapted from *Eidos Display, LLC v. Chi Mei Innolux Corp.*, No. 6:11-cv-00201-JRG-JDL, Dkt. No. 867, at 22:6-24:2 (E.D. Tex. June 30, 2017); *Ariad Pharmaceuticals, Inc. v. Eli Lilly and Co*., 598 F.3d 1336, 1351–52 (Fed. Cir. 2010) (en banc); *Crown Operations Intern., Ltd. v. Solutia Inc*., 289 F.3d 1367, 1376 (Fed. Cir. 2002); Federal Circuit Bar Model Patent Jury Instructions 4.2a.

[A patent claim is invalid if it is not new. For a claim to be invalid because it is not new, all of its requirements must have exited in a single device or method that predates the patent or must have been described in a single previous publication or patent that predates the patent.  As discussed, in patent law, a previous device, publication, or patent that predates the claimed invention is called a prior art reference. If a patent claim is not new, we say it is anticipated by the prior art reference. Anticipation requires that a single reference not only disclose all the elements of the claim but that it must also disclose those elements arranged or combined in the same way as in the claim, as the claim has been construed or interpreted by the Court.

Here, Wells Fargo contends that the asserted claims are anticipated by the prior art.  Wells Fargo must prove with clear and convincing evidence that an asserted patent claim was anticipated by the prior art. Wells Fargo may prove anticipation by proving that the claimed invention was already patented, existed in a physical product, or was present in the prior art, more than a year before the effective filing date of the patents-in-suit.

In determining whether or not the invention is valid, you must determine the scope and content of the prior art at the time the invention was made. For prior art to anticipate a claim of a patent, the disclosure in the prior art reference does not have to be in the same words or take the same form as in the claim; but all of the elements of the claim must be there, either stated or necessarily implied so that someone of ordinary skill in the field of the invention looking at that one prior art reference would be able to make and use at least one embodiment of the claimed invention. Anticipation can occur when the claimed invention inherently and necessarily results from practice of what is disclosed in the written reference, even if the inherent disclosure was

unrecognized or unappreciated by one of ordinary skill in the field of invention. If you find that a patent claim in this case is not new, as explained above, you should find that claim to be invalid.[93]

## PERSON WITH ORDINARY SKILL IN THE ART[94]

Now, several times in my instructions, I've referred to a person of ordinary skill in the field of the invention. It's up to you to decide the level of ordinary skill in the field of the invention.

In deciding what the level of ordinary skill is, you should consider all of the evidence introduced at trial including:

1.      the levels of education and experience of the inventors and other persons working in the field;

2.      the types of problems encountered in the field;

3.      prior art solutions to those problems;

4.      rapidity with which innovations are made; and

5.      the sophistication of the technology.

A person of ordinary skill in the art is a hypothetical person who is presumed to be aware of all of the relevant prior art at the time of the claimed invention.

## DAMAGES[95]

If you find that USAA has proven that Wells Fargo has infringed any of the Asserted Claims, you must then consider the proper amount of damages, if any, to award to USAA. I will now instruct you about the measure of damages. However, by instructing you on damages, I am

---

[93] Adapted from *Flexuspine v. Globus*, 6:15-cv-201-JRG-KNM, Dkt. No. 250.
[94] *Whirlpool*, Case No. 2:15-cv-01528-JRG, Dkt. 166 (E.D. Tex. Mar. 23, 2017).
[95] *United Services Automobile Association v. Wells Fargo Bank, N.A.*, No. 2:18-cv-00245-JRG, (E.D. Tex. Nov. 5, 2019).

not suggesting which party should win this case, on any issue. If you find that Wells Fargo has not infringed any of the Asserted Claims, then USAA is not entitled to any damages.

If you award damages, they must be adequate to compensate USAA for any infringement of the Asserted Claims you may find. You must not award USAA more damages than are adequate to compensate for the infringement, nor should you include any additional amount for the purpose of punishing Wells Fargo. The patent laws specifically provide that damages for infringement may not be less than a reasonable royalty.

USAA has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that USAA establishes that it more likely than not suffered as a result of Wells Fargo's infringement of the Asserted Claims. While USAA is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. USAA is not entitled to damages that are remote or speculative. If you did not find patent infringement by Wells Fargo or if you find the asserted claims are invalid, you will not consider damages at all.[96, 97]

## REASONABLE ROYALTY

USAA seeks damages in the form of a reasonable royalty.  A reasonably royalty is defined as the amount of money USAA and Wells Fargo would have agreed upon as a fee for Wells Fargo's use of USAA's invention at the time infringement began.[98] This determination of a damages award

---

[96] USAA proposes that the Court use the damages instruction that was given to the jury in the -245 case, and has proposed exactly the instruction given by the court in that case. Wells Fargo's attempt to reargue already decided issues is inefficient.
[97] *Flexuspine v. Globus*, 6:15-cv-201-JRG-KNM, Dkt. No. 250.
[98] *Flexuspine v. Globus*, 6:15-cv-201-JRG-KNM, Dkt. No. 250.

is not an exact science, and the amount need not be proven with unerring precision.  You may approximate, if necessary, the amount to which the patent owner is entitled.  However, damages may not be determined by mere speculation or guess.[99]  It may be proper to award a damages amount if the evidence shows the extent of the damages as a matter of just and reasonable inference.

A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time immediately prior to when the infringement first began.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the Asserted Claims were valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

[A reasonable royalty may also be a lump-sum amount for past and future infringement. Evidence of things that happen after the infringement began may be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from the hypothetical negotiation.][100]

---

[99] *Flexuspine v. Globus*, 6:15-cv-201-JRG-KNM, Dkt. No. 250.

[100] *Flexuspine v. Globus*, 6:15-cv-201-JRG-KNM, Dkt. No. 250.  USAA objects to this language.  Wells Fargo's expert does not opine on a paid up license, only a license through trial.  Gerardi Report ¶ 25 ("To determine the relative contribution of the patents-in-suit, I calculated Wells Fargo's profits attributable to the patents-in-suit from May 15, 2014 through January 6, 2020 (the expected date of trial).").

The law requires that any damages awarded to USAA correspond to the value of the alleged inventions within the Accused Products, as distinct from other, unpatented features of the Accused Product, or other factors such as marketing or advertising, or Wells Fargo's size or market position.[101]  This is particularly true where the Accused Product has multiple features and multiple components not covered by the patent or where the Accused Product works in conjunction with other non-patented items. Therefore, the amount you find as damages must be based on the value attributable to the patented technology alone.

[A multi-component product may have both infringing and non-infringing components.  In such products, royalties should be based not on the entire product, but instead on the "smallest salable unit" that practices the patent and has close relation to the claimed invention.  Where the smallest salable unit is, in fact, a multi-component product containing several non-infringing features with no relation to the patented feature, damages must only be based on the portion of the value of that product attributable to the patented technology.  This may involve estimating the value of a feature that may not have ever been individually sold.[102]

The entire market value rule is a narrow exception to this general rule.  In order to recover damages as a percentage of revenues or profits attributable to the entire product, USAA must establish that it is more likely than not that the patented feature drives the demand for an entire

---

[101] Magistrate Judge Payne granted Wells Fargo's Motion in Limine No. 9 by agreement to exclude all testimony, evidence, or argument relating to Wells Fargo's size, market cap, total annual revenue, total profitability, or any other financial metrics not tied to the accused products at issue in the case.  *See* Wells Fargo's Motion in Limine No. 9; Dkt. No. 188, at 5.
[102] AIPLA Model Patent Jury Instruction 10.2.5.5.

==multi-component product such that it creates the basis for customer demand or substantially creates the value of the product.==][103]

In determining a reasonable royalty, you should consider all facts known and available to the parties at the time the infringement began. You may also consider:

1. The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

2. The rates paid by the licensee for the use of other patents comparable to the patent in suit.

3. The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5. The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

6. The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

---

[103] AIPLA Model Patent Jury Instruction 10.2.5.5.

7. The duration of the patent and the term of the license.

8. The established profitability of the product made under the patent; its commercial success; and its current popularity.

9. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11. The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor (such as USAA) and a licensee (such as Wells Fargo) would have agreed upon at the time the infringement began if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would

have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

Now, no one of these factors is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors.

You may also consider any other factors which in your minds would have increased or decreased the royalty Wells Fargo would have been willing to pay and that the patent owner, USAA, would have been willing to accept, with both acting as normally prudent business people.

[A reasonable royalty is the minimum amount of compensation, but not the only form of compensation. You are permitted to consider all the benefits conferred to Wells Fargo through its infringement of the Asserted Patents, including evidence of cost savings that Wells Fargo has achieved through its use of the Asserted Patents as well as evidence of additional profits and other benefits. A reasonable royalty can exceed the profits expected by the patentee.

In determining a reasonable royalty, you may also consider evidence concerning the availability, or lack thereof, of non-infringing alternatives to the patented invention. You may compare the patented invention to non-infringing alternatives to determine the value of the patented invention, including the utility and advantages of the patent over the old modes or devices, if any, that had been used to achieve similar results. ][104]

---

[104] Wells Fargo objects to this instruction as unsupported by the evidence and contentions of the parties. USAA is only seeking a reasonable royalty. The fact that the statute says an infringer is entitled to at least a reasonable royalty is irrelevant, because USAA has sought nothing else. There should be no instructions on any other types of damages or models. And even though the Court will instruct that the jury can consider factors outside the Georgia-Pacific factors, the Court should not be identifying such factors for USAA. That is attorney argument for USAA during closing.

[One of the relevant considerations in determining reasonable royalty damages is the existence of non-infringing alternatives that were available to the accused infringer during the period of infringement. When determining a reasonable royalty, you may compare the patented invention to the next-best available alternatives to determine the value of the patented invention, including the utility and advantages of the patent over the old modes or devices, if any, that had been used for working out similar results.[105] You should consider the next-best alternative regardless of whether that alternative is acceptable.[106]   The existence of a non-infringing alternative places a cap on the reasonable royalty Defendant would agree to pay during the hypothetical negotiation].

As I have already told you, you must not award USAA any additional amount for the purpose of punishing Wells Fargo or setting an example. [You must not consider USAA's allegations of willfulness in considering damages. Consideration of willfulness is entirely separate from the question of damages. You may not increase damages because you find willfulness or

---

[105] *Salazar v. HTC Corp.*, No. 2:16-cv-01096-JRG-RSP, 2018 WL 2033709, at *3 (E.D. Tex. Mar. 28, 2018); *see also Riles v. Shell Exploration & Prod. Co.,* 298 F.3d 1302, 1312 (Fed. Cir. 2002) ("[I]n the hypothetical negotiation that characterizes the reasonable royalty calculation, Shell may have had non-infringing alternatives.... The economic relationship between the patented method and non-infringing alternative methods, of necessity, would limit the hypothetical negotiation."); *Grain Processing Corp. v. Am Maize-Prods. Co.*, 185 F.3d 1341, 1351 (Fed. Cir. 1999); *Georgia-Pacific Corp. v. U.S. Plywood Corp*., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (considering "[t]he utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results").

[106] *Salazar v. HTC Corp*., No. 216-CV-01096-JRG-RSP, 2018 WL 2033709, at *3 (E.D. Tex. Mar. 28, 2018) ("But 'acceptable non-infringing alternatives' don't play the same role in a reasonable royalty determination. . . . Bakewell's opinion doesn't relate to a lost-profits determination, so it doesn't matter whether the alternatives are 'acceptable' under Panduit. Instead, the factfinder should consider the next-best alternative, regardless of whether that alternative would preclude recovery of lost profits under Panduit.").

---

PROPOSED JURY INSTRUCTIONS

decrease damages because you did not find willfulness. I will take your decision regarding the issue of willfulness into account later.][107]

Now, with those instructions, we're ready to hear closing arguments from the attorneys in this case.

## DELIBERATIONS

You must perform your duties as jurors without bias or prejudice as to any party.  The law does not permit you to be controlled by sympathy, prejudice, or public opinion.  All parties expect that you will carefully and partially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.  You have heard all of the evidence in this case.  You have now heard the argument of counsel.  The Court has now given you the charge in this case.  In just a few moments you're going to retire to the jury room, select one of your members to act as foreperson and begin performing the function for which you have been chosen and for which you have been impaneled in accordance with the oath that you took as jurors.

You will remember at the beginning of this trial the Court admonished you not to discuss this case with each other until it was submitted to you.  Indeed, I have admonished you of that, I believe at every break and every evening.

Well, now is time for you to begin your discussions, and you certainly may express an opinion from the evidence that you have heard and use any reasonable means to persuade other

---

[107] Wells Fargo objects to any instructions relating to willfulness on the basis of an anticipated motion for judgment as a matter of law of no willful infringement made pursuant to Federal Rule of Civil Procedure 50(a).

PROPOSED JURY INSTRUCTIONS

members of the jury to your convictions and to your honest opinion.  You are to reach a verdict which speaks the truth and which does justice to all parties without favor, bias or prejudice in any particular, either for or against any party to this lawsuit.

In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous, but do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinions of your fellow jurors or for the mere purpose of returning a verdict.

Answer the questions in the verdict form based on the facts as you find them to be, following the instructions that the Court has given you on the law. Do not decide who you think should win this case and then answer the questions accordingly.  Again, I remind you, your answers and your verdict in this case must be unanimous.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stages in life.

A patent owner is entitled to protect its patent rights under the U.S. Constitution. This includes bringing a suit in a United States District Court for money damages for infringement.

The law recognizes no distinction between types of parties. All corporations, all partnerships, all other organizations stand equal before the law, regardless of their size, regardless of who owns them, and they are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you'll each have a copy of these written jury instructions to take with you.  If you desire, during your deliberations, to review any of the exhibits which the Court has admitted into evidence during the trial, you should advise

PROPOSED JURY INSTRUCTIONS

me by written note delivered to the Court Security Officer. He will bring me your note, and then I will send you that exhibit or those exhibits.

Once you retire, you should select your foreperson and then conduct your deliberations.  If you recess during your deliberations, follow all the instructions that the Court has given you about your conduct during the trial.

Now, your verdict is in the form of questions to be answered.  You will take these questions to the jury room.  When you have reached a unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form and then advise the Security Officer that you have reached your verdict.   You are not to reveal your answers until such time as you're discharged, unless otherwise directed by me, and you must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you've taken over the course of the trial are aids to your memory only. If your memory should differ from your notes, then you should rely on your memory and not your notes. The notes are not evidence.  Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time during your deliberations, you should give a written message or a question to the Court Security Officer who will bring it to me. I'll then respond as promptly as possible, either in writing or by having you brought back into the courtroom where I can address you orally.  I will always first disclose to the attorneys in the case your question and my response before I answer your question.

After you have reached your verdict and I have discharged you from your duty as jurors, you need to understand that you are not required to talk with anyone about your service in this case.

---

PROPOSED JURY INSTRUCTIONS

By the same token, after I have discharged you from your duty as jurors, you are completely free to discuss your service as jurors in this case with anyone that you choose to. The choice is yours.

You should understand the practice in this Court is that after you are discharged, if you wish to talk about your service as jurors with any of the attorneys in the case, it's up to you to initiate a conversation with them. They are not permitted to initiate a conversation with you.

All right. I will now hand eight copies of these final jury instructions and one clean copy of the verdict form to the Court Security Officer to deliver to the jury in the jury room.

Ladies and Gentlemen of the Jury, you may now retire to the jury room to deliberate. We await your verdict.