1

07:38:54

```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF TEXAS
 2                        MARSHALL DIVISION

 3   UNITED SERVICES AUTOMOBILE    )(
     ASSOCIATION
 4                                 )(    CIVIL ACTION NO.

 5   VS.                           )(    2:18-CV-366-JRG

 6                                 )(    MARSHALL, TEXAS
                                         JANUARY 6, 2020
 7   WELLS FARGO BANK, N.A.        )(    9:49 A.M.

 8

 9          TRANSCRIPT OF VOIR DIRE OF THE JURY PANEL

10                        MORNING SESSION

11      BEFORE THE HONORABLE CHIEF JUDGE RODNEY GILSTRAP,

12                 UNITED STATES DISTRICT JUDGE

13
     APPEARANCES:
14

15   FOR THE PLAINTIFF:

16
     JASON SHEASBY
17   ANTHONY ROWLES
     LISA GLASSER
18   IRELL & MANELLA
     1800 Avenue of the Stars
19   Suite 900
     Los Angeles, CA 90067-4276
20

21
     ROBERT CHRISTOPHER BUNT
22   PARKER, BUNT & AINSWORTH, PC
     100 East Ferguson
23   Suite 418
     Tyler, TX 75702
24

25
```

```
 1    FOR THE DEFENDANT:

 2
      THOMAS M. MELSHEIMER
 3    M. BRETT JOHNSON
      MICHAEL A. BITTNER
 4    J. TRAVIS UNDERWOOD
      WINSTON & STRAWN LLP
 5    2121 North Pearl Street
      Suite 900
 6    Dallas, TX 75201

 7
      E. DANIELLE T. WILLIAMS
 8    WINSTON & STRAWN LLP
      300 South Tyron Street
 9    16th Floor
      Charlotte, NC 28202
10

11    MATTHEW R. MCCULLOUGH
      WINSTON & STRAWN LLP
12    275 Middlefield Road
      Suite 205
13    Menlo Park, CA 94025

14
      JACK WESLEY HILL
15    WARD, SMITH & HILL, PLLC
      P.O. Box 1231
16    1507 Bill Owens Parkway
      Longview, TX 75606
17

18
      COURT REPORTER:      Shelly Holmes, CSR, TCRR
19                         Official Court Reporter
                           United States District Court
20                         Eastern District of Texas
                           Marshall Division
21                         100 E. Houston
                           Marshall, Texas  75670
22                         (903) 923-7464

23
      (Proceedings recorded by mechanical stenography, transcript
24    produced on a CAT system.)

25
```

|          |    |                                                      |
|----------|----|------------------------------------------------------|
| 09:49:06 | 1  |              P R O C E E D I N G S                    |
| 09:49:06 | 2  |         (Venire panel in.)                            |
| 09:49:08 | 3  |         COURT SECURITY OFFICER:  All rise.            |
| 09:49:11 | 4  |         THE COURT:  Good morning.  Please be seated.  |
| 09:49:23 | 5  |         Good morning, ladies and gentlemen.  It's good to |
| 09:49:37 | 6  | have you with us this morning.                        |
| 09:49:38 | 7  |         My name is Rodney Gilstrap, and I am the Chief |
| 09:49:45 | 8  | United States District Judge for the U.S. District Court |
| 09:49:47 | 9  | for the Eastern District of Texas.                    |
| 09:49:48 | 10 |         I live here in Marshall.  I've lived in Marshall |
| 09:49:52 | 11 | since 1981 when I graduated from law school and came here |
| 09:49:56 | 12 | to start practicing law.  I've practiced law in and around |
| 09:49:59 | 13 | this part of Texas for 30 years before I was nominated and |
| 09:50:04 | 14 | confirmed to be a U.S. District Judge.  And I will confess |
| 09:50:08 | 15 | to you that I was not born in Texas, but I got here as |
| 09:50:12 | 16 | quick as I could.                                     |
| 09:50:13 | 17 |         I was born in Pensacola, Florida, and I came to |
| 09:50:16 | 18 | Texas to go to college at Baylor University where I did my |
| 09:50:20 | 19 | undergraduate degree, and then I stayed and went to law |
| 09:50:25 | 20 | school at Baylor School of Law.                       |
| 09:50:27 | 21 |         I'm married.  I have two grown children.  And my |
| 09:50:29 | 22 | wife owns and operates a retail floral business here in |
| 09:50:32 | 23 | Marshall.                                             |
| 09:50:33 | 24 |         Now, I tell you all these things about myself |
| 09:50:35 | 25 | because in a few minutes, I'm going to ask each of you to |

09:50:38   1   give me the same kind of information about each of you.

09:50:41   2   And I think you're entitled to know as much about me as I'm

09:50:44   3   about to find out about each of you.

09:50:46   4        We are about to engage in the selection of a jury

09:50:50   5   in a civil case involving allegations of patent

09:50:53   6   infringement.  However, before we go any further, I'd like

09:50:57   7   to briefly review with you how we came to have our civil

09:51:01   8   jury trial system in the United States.

09:51:03   9        If you go back in ancient history and if you begin

09:51:07   10  with the first five books of the Old Testament, the

09:51:13   11  Pentateuch, you'll see that the ancient Jewish Nation

09:51:15   12  empaneled juries to decide issues of property ownership and

09:51:18   13  property value.

09:51:20   14       The ancient Greeks began using a jury system about

09:51:23   15  1500 BC.  The Romans, as they did with many things, copied

09:51:29   16  the jury system from the Greeks.  And it was the Romans

09:51:32   17  that brought the jury system to what we now know as Great

09:51:36   18  Britain when they conquered that island in the 4th Century

09:51:40   19  AD.

09:51:40   20       Having brought the jury system to Great Britain in

09:51:43   21  the 4th Century AD, it flourished there for 800 years until

09:51:47   22  the 12th century when a tyrannical king came to the throne

09:51:55   23  of Great Britain known as King John.  And King John ended

09:51:59   24  up in a series of multiple disputes with his nobles which

09:52:03   25  led England to the brink of civil war.

09:52:06   1        Among those disputes was King John's efforts to do
09:52:11   2   away with the right to trial by jury in a civil case.
09:52:14   3   Those disputes, as I say, led England to the brink of civil
09:52:18   4   war, but that civil war was avoided by an agreement.
09:52:22   5        A settlement was reached between the king and his
09:52:23   6   nobles, signed at a location known as Runnymede.  And the
09:52:27   7   document that settled all those disputes and avoided civil
09:52:30   8   war and restored the right to trial by jury in a civil case
09:52:34   9   in England is known as the Magna Carta.  In fact, ladies
09:52:40   10  and gentlemen, 28 of our 50 United States have adopted from
09:52:43   11  the Magna Carta the exact language verbatim guaranteeing
09:52:48   12  the right to trial by jury in a civil case.
09:52:50   13       So you can see that the right to trial by jury was
09:52:55   14  an important part of life in Great Britain for centuries
09:53:00   15  before those brave souls who traveled across the Atlantic
09:53:07   16  Ocean came to these shores as colonists of Great Britain,
09:53:10   17  and they brought with them the concept of the right to
09:53:14   18  trial by jury in a civil case.  And that right to trial by
09:53:17   19  jury in a civil case flourished in British North America
09:53:20   20  for over a hundred years until another tyrannical king came
09:53:24   21  to the throne of Great Britain.
09:53:27   22       This time his name was King George III.  In fact,
09:53:30   23  when Thomas Jefferson sat down to write the Declaration of
09:53:34   24  Independence that specifies clearly and specifically why we
09:53:38   25  should separate from Great Britain and form our own

09:53:41  1   independent nation, one of the specific points spelled out

09:53:46  2   in the Declaration of Independence was the Crown's efforts

09:53:50  3   to prevent there being the right to trial by jury in civil

09:53:53  4   cases in this country.

09:53:55  5        After we won our independence, that right was so

09:54:00  6   important that it was written into our governing document,

09:54:04  7   which you should all know to be the Constitution of the

09:54:08  8   United States.  In fact, it's a part of what we call the

09:54:10  9   Bill of Rights, the first 10 amendments to the

09:54:13  10  Constitution.

09:54:13  11       Those rights were added and ratified in 1791, and

09:54:19  12  among those first two -- first 10 amendments, you find the

09:54:24  13  Seventh Amendment.  The Seventh Amendment to the U.S.

09:54:27  14  Constitution guarantees constitutionally to every American

09:54:31  15  citizen the right to submit their civil disputes to a trial

09:54:34  16  by jury, and we've had that right since 1791.

09:54:38  17       So by being here today, ladies and gentlemen, and

09:54:42  18  presenting yourselves for jury duty, in a very real way,

09:54:46  19  you are all doing important public service to preserve and

09:54:50  20  protect and defend the rights that we enjoy as Americans,

09:54:55  21  including the right to trial by jury in a civil case.

09:54:57  22       I always tell citizens who appear for jury duty,

09:55:02  23  as you have this morning, that in my personal opinion, jury

09:55:07  24  duty is the second highest form of public service any

09:55:10  25  American can render.  In my personal opinion, the highest

09:55:14    1    form of public service that any American can render to our

09:55:19    2    country is to serve in our armed forces.

09:55:21    3            Now, later this morning, the lawyers are going to

09:55:26    4    address the panel, that's those of you who have appeared

09:55:30    5    for jury duty, and they're going to ask questions, and

09:55:32    6    that's their right to ask questions as a part of securing a

09:55:35    7    fair and impartial jury from among you to hear the evidence

09:55:39    8    in this case.

09:55:40    9            But as they ask those questions of you later this

09:55:43   10    morning, I want you to understand that they're not trying

09:55:46   11    to be nosy; they're not trying to pry into your personal

09:55:49   12    affairs unduly.  They are trying to carry out their

09:55:53   13    obligation to secure for the purposes of this trial a fair

09:55:58   14    and impartial jury to hear the evidence.

09:56:01   15            I don't know if it will happen this morning during

09:56:04   16    jury selection, it rarely does, but I want to make you

09:56:08   17    aware that if you should specifically be asked a

09:56:11   18    question -- and some of these questions will be to the

09:56:13   19    panel as a whole, some of them will be to specific members

09:56:17   20    of the jury panel, each of you individually, so you can

09:56:19   21    expect questions both ways -- but if during the process you

09:56:23   22    should be asked a question that you consider to be so

09:56:25   23    personal and so private that you're not comfortable

09:56:28   24    answering it in front of the rest of the panel, then you

09:56:31   25    always have the right to simply say, I'd like to discuss

09:56:34  1  that with Judge Gilstrap.

09:56:35  2        And if that's your answer, I'll provide an

09:56:38  3  opportunity for you to answer that question to me outside

09:56:40  4  of the presence of the rest of the members on the panel.

09:56:44  5        However, ladies and gentlemen, that is a rarity.

09:56:46  6  It doesn't come up often, but I want you to know that at

09:56:49  7  least that possibility is there if it should.

09:56:51  8        The important thing is, while you're being

09:56:53  9  questioned this morning that your answers are full,

09:56:56  10 complete, and truthful to the questions that are asked.

09:56:59  11 There are no wrong answers to any of the questions you're

09:57:03  12 going to be asked as long as your responses are full,

09:57:05  13 complete, and truthful.

09:57:07  14       Now, the trial in this case will begin today and

09:57:12  15 will continue through the remainder of this week, and I

09:57:14  16 expect that we will finish and have a verdict sometime on

09:57:20  17 Friday of this week.  That's my expectation.

09:57:22  18       And so I need to ask if there are any persons on

09:57:26  19 the panel that either have a surgical procedure scheduled

09:57:29  20 this week for you or a member of your family that's

09:57:32  21 dependent upon you, or if you have non-refundable

09:57:35  22 international airline tickets to leave the country -- and

09:57:39  23 hopefully a return ticket to come back -- if there's some

09:57:42  24 very serious reason why you could not be here this week if

09:57:46  25 you were selected to serve on the jury, then I need to know

09:57:49  1  about that.  If there's anybody that falls in that

09:57:51  2  category, please raise their hand.

09:57:53  3       I don't see anybody in the jury box.  I don't see

09:57:59  4  anybody outside the jury box.  I see no hands.  Okay.

09:58:03  5  Thank you.

09:58:03  6       At this time, I'm going to call for announcements

09:58:07  7  in the case of United States Automobile Association --

09:58:08  8  excuse me -- United Services Automobile Association versus

09:58:14  9  Wells Fargo Bank.  This is Civil Case No. 2:18-CV-366.

09:58:20  10       And, counsel, as you give your announcements,

09:58:22  11  please identify yourselves, the members of your trial

09:58:24  12  teams, and any corporate representatives that you have with

09:58:28  13  you.  We'll begin first with the Plaintiff.  What says the

09:58:32  14  Plaintiff?

09:58:33  15       MR. BUNT:  Thank you, Your Honor.  Good morning,

09:58:35  16  ladies and gentlemen.  My name is Chris Bunt, and I

09:58:38  17  represent the Plaintiff, United Services Automobile

09:58:42  18  Association whom we will refer to as USAA.

09:58:43  19       With me today is Mr. Jason Sheasby, Ms. Lisa

09:58:47  20  Glasser, Mr. Tony Roles, and our corporate representative,

09:58:55  21  Mr. John Brady, who is a vice president at USAA.

09:58:58  22       And, Your Honor, we're ready to proceed.

09:59:00  23       THE COURT:  Thank you, counsel.

09:59:01  24       What says the Defendant?

09:59:02  25       MR. HILL:  Good morning, Your Honor.  May it

09:59:05  1   please the Court.  Good morning, ladies and gentlemen.  My

09:59:07  2   name is Wesley Hill, and it is my privilege in this case to

09:59:10  3   represent the Defendant, Wells Fargo Bank.  And I'd like to

09:59:14  4   introduce you to the other folks here at the table with me.

09:59:16  5          Trying the case with me this week will be Mr. Tom

09:59:18  6   Melsheimer, Ms. Danielle Williams, and Mr. Brett Johnson.

09:59:22  7   And our corporate representative, ladies and gentlemen,

09:59:24  8   from Wells Fargo Bank is Mr. Al Hecht.  He's a senior vice

09:59:31  9   president with Wells Fargo.

09:59:32  10         And we're also ready to proceed, Your Honor.

09:59:34  11         THE COURT:  Thank you.

09:59:35  12         Now, ladies and gentlemen, as I've told you, this

09:59:38  13  is a patent case arising under the patent laws of the

09:59:41  14  United States.  And what the Plaintiff, USAA, is claiming

09:59:45  15  in this case is that their patents were infringed by the

09:59:48  16  Defendant, Wells Fargo Bank, and the Plaintiff is seeking

09:59:53  17  money damages because of that alleged infringement.

09:59:55  18         Now, the Defendant, Wells Fargo, denies that it

09:59:58  19  has infringed the patents owned by USAA and Wells Fargo

10:00:04  20  contends that those patents are invalid.

10:00:07  21         Now, what I've just told you is a very shorthand

10:00:10  22  informal way of describing this case in layman's terms.  I

10:00:14  23  know that you've all seen the video prepared by the Federal

10:00:18  24  Judicial Center on patent cases, and having seen that, you

10:00:21  25  know more than most citizens in East Texas do about the

10:00:24  1  patent process.

10:00:25  2          As I say, the lawyers on both sides are about to

10:00:28  3  question the panel to gather information to exercise their

10:00:33  4  challenges and complete the process of securing eight

10:00:36  5  jurors who will serve as the jury in this case and will

10:00:39  6  hear the evidence on a fair and an impartial basis.

10:00:42  7          Again, ladies and gentlemen, there are no wrong

10:00:45  8  answers to any of the questions you'll be asked as long as

10:00:48  9  the responses you give are full, complete, and truthful.

10:00:52  10         During the jury selection process, if any of the

10:00:56  11  attorneys should ask anybody on the panel or the panel as a

10:00:59  12  whole a question that I don't think is proper, I will

10:01:02  13  certainly stop them.  But I want you to understand, ladies

10:01:04  14  and gentlemen, these are very skilled and experienced trial

10:01:08  15  lawyers.  They understand the rules of this Court.  I don't

10:01:11  16  expect that to happen.

10:01:12  17         One thing I do want to call your attention to

10:01:15  18  before the lawyers begin their questioning, because I

10:01:18  19  suspect you may be questioned about it by the lawyers, is

10:01:21  20  the burden of proof that will be applied in this case.

10:01:25  21         In a patent case like this, a jury may be called

10:01:28  22  upon to apply two different burdens of proof.  The jury may

10:01:33  23  apply a burden of proof known as the preponderance of the

10:01:37  24  evidence, as well as a second burden of proof known as

10:01:39  25  clear and convincing evidence.

10:01:40  1          Now, when you -- when you're responding to any of

10:01:47  2  the lawyers' questions about your ability to apply these

10:01:50  3  burdens of proof, I need to instruct you that when the

10:01:52  4  party -- when a party has the burden of proof on any claim

10:01:56  5  or defense by a preponderance of the evidence -- that's the

10:02:00  6  first burden of proof I mentioned to you -- that means that

10:02:04  7  the jury must be persuaded by the credible or believable

10:02:07  8  evidence that that claim or defense is more probably true

10:02:11  9  than not true.  I'll say that again, more probably true

10:02:17  10 than not true.

10:02:18  11         Sometimes this preponderance of the evidence is

10:02:22  12 talked about as being the greater weight and degree of

10:02:25  13 credible testimony.

10:02:26  14         Let me see if I can give you an example that I

10:02:29  15 hope will help.  I think everyone in the room can see in

10:02:33  16 front of our court reporter a statue of the Lady of

10:02:37  17 Justice.  She is blindfolded.  She holds the Sword of

10:02:40  18 Justice in her right hand lowered at her side.  And at her

10:02:44  19 left, she holds above her the Scales of Justice.  And those

10:02:47  20 scales are equally balanced.  And that's where the parties

10:02:50  21 start off in this case, equally balanced in the same

10:02:54  22 position.

10:02:55  23         Over the course of the trial, both sides are going

10:03:00  24 to put on evidence in this case.  And you can think of it

10:03:02  25 as putting evidence on one side of the scales for the

| | | |
|---|---|---|
| 10:03:04 | 1 | Plaintiff and one side of the scales for the Defendant. |
| 10:03:07 | 2 | And when all the evidence has been presented, the |
| 10:03:09 | 3 | jury is going to be asked to answer certain questions.  And |
| 10:03:14 | 4 | if the party has the burden of proof on any question, and |
| 10:03:17 | 5 | you look at those scales and you consider all the evidence |
| 10:03:19 | 6 | that's been put on both sides during the trial, if those |
| 10:03:23 | 7 | scales tip in favor of the party who has the burden of |
| 10:03:27 | 8 | proof, even if they tip ever so slightly, then that party |
| 10:03:31 | 9 | has met the burden of proof of a preponderance of the |
| 10:03:33 | 10 | evidence. |
| 10:03:38 | 11 | On the other hand, ladies and gentlemen, where a |
| 10:03:40 | 12 | party has that second burden of proof, proving any defense |
| 10:03:46 | 13 | by a clear -- by clear and convincing evidence, it means |
| 10:03:48 | 14 | that the jury must have an abiding conviction that the |
| 10:03:52 | 15 | truth of the party's factual contentions are highly |
| 10:03:58 | 16 | probable.  I'll say that again, an abiding conviction that |
| 10:04:01 | 17 | the truth of the party's factual contentions are highly |
| 10:04:04 | 18 | probable.  This second standard, this clear and convincing |
| 10:04:07 | 19 | evidence standard is a higher burden of proof than the |
| 10:04:12 | 20 | preponderance of the evidence. |
| 10:04:15 | 21 | If you think about the example I gave you, the |
| 10:04:18 | 22 | evidence is put on each side of the scales by Plaintiff and |
| 10:04:20 | 23 | Defendant over the course of the trial.  Then the jury's |
| 10:04:22 | 24 | asked to consider that in answering certain questions.  If |
| 10:04:26 | 25 | a party has the burden of proof by clear and convincing |

10:04:29 1 evidence, then those scales must tip in that party's favor,

10:04:33 2 and they must definitely tip in that party's favor.  It is

10:04:37 3 not adequate if they tip ever so slightly.

10:04:43 4        Clear and convincing evidence requires more and is

10:04:46 5 a higher burden of proof than the preponderance of the

10:04:48 6 evidence.

10:04:48 7        Now, ladies and gentlemen, there's a third burden

10:04:52 8 of proof that has absolutely no application in this case,

10:04:54 9 but I'm confident every one of you has heard about it

10:04:57 10 because you've seen it on television and you've seen it in

10:05:00 11 the movies, and that's beyond a reasonable doubt.  That

10:05:05 12 burden of proof, beyond a reasonable doubt, is the burden

10:05:08 13 of proof applied in a criminal case, and it has absolutely

10:05:12 14 no application whatsoever in a civil case such as this.

10:05:17 15        You should not -- you should not confuse clear and

10:05:20 16 convincing evidence with beyond a reasonable doubt.  It's

10:05:22 17 not as high as beyond a reasonable doubt, but it is a

10:05:26 18 higher standard than the preponderance of the evidence.

10:05:31 19        I give you these instructions in case the lawyers

10:05:33 20 ask you about your ability to apply those two burdens of

10:05:37 21 proof fairly and impartially to the evidence that will be

10:05:40 22 presented if you're selected to serve on this jury.

10:05:42 23        Now, before the lawyers address you, I'm going to

10:05:48 24 let each of you at this time give me the same information

10:05:52 25 about each of yourselves that I gave you about myself when

10:05:54  1   we started this morning.  Each of you have laminated copies

10:05:59  2   of nine questions, and I think they're also shown on the

10:06:02  3   screen -- or they will be.  They're readily available to

10:06:07  4   you.

10:06:07  5          This is how we're going to do this, ladies and

10:06:09  6   gentlemen.  We're going to start with Panel Member No. 1,

10:06:12  7   and the Court Security Officer is going to bring a handheld

10:06:16  8   microphone to Panel Member No. 1.  And at that point, I'm

10:06:18  9   go to ask that member of the panel to stand and answer

10:06:23 10   those nine questions.  And, if you will, make sure that you

10:06:26 11   hold the handheld microphone close enough so that you can

10:06:29 12   be heard.

10:06:30 13          This is a big room.  There are a lot of bodies in

10:06:33 14   here.  And it takes a lot of sound so that everybody can

10:06:37 15   hear, so make sure that you speak up.

10:06:39 16          Also, please direct your answers toward the

10:06:41 17   lawyers at the tables because they're the ones that need to

10:06:44 18   know the answers to these questions from each of you.

10:06:47 19          Then when we're finished with Panel Member No. 1,

10:06:50 20   he'll hand the microphone to Panel Member No. 2.  She'll do

10:06:53 21   the same thing.  And Panel Member No. 3 is next.  And we'll

10:06:56 22   go through all the members of the panel one at a time.

10:06:58 23          Also, ladies and gentlemen, I'd like to tell you

10:07:04 24   that during the process where you're actually being asked

10:07:07 25   questions by the lawyers, if you're asked a specific

10:07:10   1   question that calls for you to give a specific response,
10:07:14   2   then you should wait until the handheld microphone is
10:07:16   3   brought to you by the Court Security Officer, stand, and
10:07:19   4   give your answer to the lawyer that's asked the question.
10:07:24   5          We'll do it the same way for questions asked
10:07:27   6   during the examination by the lawyers as we will during
10:07:30   7   this background information section when you answer those
10:07:33   8   nine questions for us.
10:07:34   9          So with that, we'll begin with Panel Member No. 1,
10:07:40  10   and we'll ask our Court Security Officer, Mr. Johnston, to
10:07:42  11   take the microphone to Panel Member No. 1.
10:07:45  12          JUROR BOUZEK:  Good morning.  My name is Charles
10:07:53  13   Bouzek.  I live in Diana, Texas.  I have two grown sons.
10:07:58  14   My place of employment is Sabine Mining company -- or
10:08:01  15   actually coal mining company, obviously.  I'm operation
10:08:05  16   supervisor with them.  I've been with them for 36 years.
10:08:09  17          My educational background is I am a high school
10:08:13  18   graduate.  I have an A and P license, which is an Airframe
10:08:18  19   and Powerplant license which I acquired through St. Louis
10:08:24  20   University.  It's also where I'm from.
10:08:26  21          My spouse's name is Kathleen Kay.  She's a
10:08:30  22   seamstress, and she's done that work for many years, and
10:08:33  23   she works out of our home.
10:08:36  24          And I -- prior jury services, I've sat on one
10:08:41  25   criminal case, and that's the extent of it.

| | | |
|---|---|---|
| 10:08:46 | 1 | THE COURT:  Where was that criminal case, sir, and |
| 10:08:48 | 2 | how long ago was it? |
| 10:08:49 | 3 | JUROR BOUZEK:  It's approximately about 15 years |
| 10:08:51 | 4 | ago; Upshur County. |
| 10:08:52 | 5 | THE COURT:  Thank you.  If you'll hand the mic to |
| 10:08:55 | 6 | Ms. Jones, Panel Member No. 2. |
| 10:08:56 | 7 | JUROR JONES:  Hello.  Cheryl Jones.  I live in |
| 10:09:00 | 8 | Gilmer, Diana school district. |
| 10:09:03 | 9 | THE COURT:  Ms. Jones, hold the microphone a |
| 10:09:05 | 10 | little closer. |
| 10:09:06 | 11 | JUROR JONES:  I'm sorry. |
| 10:09:06 | 12 | THE COURT:  Thank you. |
| 10:09:08 | 13 | JUROR JONES:  Cheryl Jones, Gilmer, Texas.  I have |
| 10:09:09 | 14 | one child.  I'm employed at Christus DeHaven Eye Center. |
| 10:09:15 | 15 | I've been there about 17 years.  My education is high |
| 10:09:18 | 16 | school and some college certifications. |
| 10:09:21 | 17 | Spouse is Danny Jones.  He works for East Texas |
| 10:09:25 | 18 | Machine Works.  He's been there about 25 years. |
| 10:09:28 | 19 | And my prior would be criminal case, and I'm not |
| 10:09:33 | 20 | sure how long ago that was. |
| 10:09:35 | 21 | THE COURT:  It's been quite a few years? |
| 10:09:37 | 22 | JUROR JONES:  It has. |
| 10:09:38 | 23 | THE COURT:  Thank you, ma'am. |
| 10:09:39 | 24 | Next is No. 3, Ms. Harris. |
| 10:09:42 | 25 | JUROR GAYLE HARRIS:  Good morning.  My name is |

| | | |
|---|---|---|
| 10:09:44 | 1 | Gayla Harris.  And I live in Pittsburg.  I have three grown |
| 10:09:46 | 2 | sons.  I'm semi-retired.  I worked at Lakeside Baptist |
| 10:09:54 | 3 | Church in Canton, Texas, for 10 years.  I have an Associate |
| 10:09:58 | 4 | of Arts degree in business. |
| 10:10:00 | 5 | My spouse's name is Kyle Harris.  And he is a |
| 10:10:03 | 6 | captain for the Mesquite Fire Department in Mesquite, |
| 10:10:06 | 7 | Texas.  And he's been there close to 20 years. |
| 10:10:09 | 8 | And I have no prior jury service. |
| 10:10:10 | 9 | THE COURT:  All right.  Thank you, ma'am. |
| 10:10:11 | 10 | Next is Panel Member No. 4. |
| 10:10:14 | 11 | JUROR JOHNS:  My name is Travis Johns.  I live in |
| 10:10:17 | 12 | Hughes Springs, Texas.  I have two children.  One is a |
| 10:10:21 | 13 | senior in high school, one is a sophomore.  I work for |
| 10:10:24 | 14 | Christus Good Shepherd as a registered nurse.  I also work |
| 10:10:27 | 15 | at UT Health in their Trauma Unit.  Christus, I work in the |
| 10:10:34 | 16 | surgical oncology.  A little over a year on both.  I have |
| 10:10:36 | 17 | my Associate's degree in nursing.  I'm working on my |
| 10:10:38 | 18 | Bachelor's right now. |
| 10:10:40 | 19 | My wife's name is Melissa Jones.  She's a dental |
| 10:10:44 | 20 | hygienist for East Texas Children's Dentistry in |
| 10:10:45 | 21 | Mt. Pleasant.  She's worked there a little over 10 years. |
| 10:10:47 | 22 | And I served on one jury case, and that was a |
| 10:10:49 | 23 | criminal. |
| 10:10:50 | 24 | THE COURT:  All right.  Thank you, sir. |
| 10:10:55 | 25 | No. 5 is next, Ms. Fisher. |

```
10:10:55   1          JUROR FISHER:  My name is Pamela Fisher.  I have
10:10:58   2   two grown children.  I also have a stepdaughter who is
10:11:01   3   grown.  I'm currently not employed, thinking of -- retiring
10:11:06   4   is my status is what it should be.  I was a nurse, and I've
10:11:11   5   been a nurse since '96.  I went to high school here in
10:11:16   6   Marshall.  I graduated from Kilgore Junior College.
10:11:21   7          My spouse is Richard Fisher.  He's also retired.
10:11:25   8   And he's retired from a mining company in Tatum.  He worked
10:11:32   9   there for 35 years.
10:11:34  10          And I have had prior jury service.  One was a
10:11:38  11   mental incompetency case, and I've also been here in this
10:11:44  12   court.  And I don't know what kind of case you would call
10:11:47  13   it, but...
10:11:49  14          THE COURT:  How long ago was that that you
10:11:50  15   appeared in this court and served on a jury?
10:11:53  16          JUROR FISHER:  I don't know, six or seven years
10:11:55  17   ago.
10:11:55  18          THE COURT:  Okay.  Thank you, ma'am.
10:11:59  19          All right.  Next is Mr. Meade, No. 6.
10:12:02  20          JUROR MEADE:  Name is Jeffery Meade.  I live in
10:12:04  21   Naples, Texas.  I have one eight-year-old son.  Currently
10:12:09  22   employed with Sandlin Chevrolet in Mt. Pleasant, body shop
10:12:16  23   estimator.  Been there right at 10 years.  I have an
10:12:20  24   Associate's degree in accounting from NTCC.
10:12:23  25          My wife is Holly Meade.  She's retired --
```

| | | |
|---|---|---|
| 10:12:27 | 1 | medically retired Air Force and currently employed with Mt. |
| 10:12:32 | 2 | Pleasant ISD as a computer technician.  Been there -- she's |
| 10:12:35 | 3 | fixing to be there 10 years, as well. |
| 10:12:36 | 4 | One criminal drug case in Titus County. |
| 10:12:39 | 5 | THE COURT:  How long ago was that, sir? |
| 10:12:42 | 6 | JUROR MEADE:  Seven, eight years. |
| 10:12:43 | 7 | THE COURT:  All right.  Thank you very much. |
| 10:12:46 | 8 | Next is No. 7. |
| 10:12:48 | 9 | JUROR NILSSON:  Good morning.  My name is Aaron |
| 10:12:50 | 10 | Nilsson.  I'm from Daingerfield, Texas.  I have three |
| 10:12:53 | 11 | children, an 11-year-old daughter, 12-year-old daughter, |
| 10:12:57 | 12 | 15-year-old son.  I work at WOI Petroleum, where my mother |
| 10:13:01 | 13 | and I started the company in '98 and sold it in 2016, so I |
| 10:13:07 | 14 | work for the -- the new owner.  I have a high school |
| 10:13:09 | 15 | education. |
| 10:13:10 | 16 | My wife's name is Meredith Nilsson.  She owns and |
| 10:13:15 | 17 | operates a salon in downtown Daingerfield.  And she bought |
| 10:13:15 | 18 | that from the previous owner in '13. |
| 10:13:18 | 19 | And I have no prior service as far as jury is |
| 10:13:20 | 20 | concerned. |
| 10:13:21 | 21 | THE COURT:  Thank you, sir. |
| 10:13:21 | 22 | And we'll ask the Court Security Officer to carry |
| 10:13:24 | 23 | the microphone around to Panel Member No. 8, Ms. McDonald. |
| 10:13:29 | 24 | JUROR MCDONALD:  My name is Karen McDonald.  I |
| 10:13:33 | 25 | live in Hallsville, Texas.  I have no children.  I'm |

10:13:36    1    retired.  I used to work at Blue Cross Blue Shield as a

10:13:39    2    claims examiner.  I worked there for 12 years.  High school

10:13:43    3    graduation -- graduate.

10:13:44    4         My spouse's name is John McDonald.  He is retired

10:13:47    5    from LeTourneau.  He used to be an application engineer.

10:13:52    6    He worked there for about 12 years.  And I've served on one

10:13:55    7    jury here in district -- in this courthouse back in '84,

10:14:00    8    '85.

10:14:01    9         THE COURT:  That's fine.  That long ago, it

10:14:04   10    doesn't matter.  If you'll pass the microphone to No. 9.

10:14:10   11         JUROR MANNING:  Hi.  My name is Rose Manning.  I

10:14:13   12    live in Elysian Field, Texas, off of 31.  I have no kids.

10:14:20   13    I work at Genpak Corp. -- cups -- plastic plates and cups.

10:14:28   14    That's what I work with.  I've been there for 10 years.  I

10:14:31   15    had a high school education.

10:14:36   16         My spouse name, Willie Manning.  He retired from

10:14:39   17    Tyson Foods in Carthage.

10:14:43   18         I have no other --

10:14:46   19         THE COURT:  No jury service, ma'am?

10:14:47   20         JUROR MANNING:  No.

10:14:48   21         THE COURT:  Okay.  Thank you.

10:14:49   22         Next is No. 10, Ms. Walker.

10:14:52   23         JUROR WALKER:  My name is Laney Walker.  I live in

10:14:55   24    Daingerfield, Texas.  I have one son, and currently

10:14:58   25    pregnant with our second child.  I work at Healthcare

10:15:01  1   Express.  It's an urgent care clinic.  I'm a registered

10:15:05  2   nurse.  I've worked there for about five years.  I have two

10:15:09  3   Associate's degrees from NTCC in Mt. Pleasant.

10:15:13  4          My husband's name is Cameron Walker.  He currently

10:15:13  5   works for the City of Marshall as a firefighter paramedic.

10:15:18  6   Been there for about four years.  And I have no prior jury

10:15:19  7   services.

10:15:20  8          THE COURT:  All right.  Thank you, ma'am.

10:15:21  9          Next is No. 11, Mr. Rankin.

10:15:24  10         JUROR RANKIN:  My name is -- excuse me -- my name

10:15:28  11  is Josh Rankin.  I have six kids.  I'm divorced.  I have

10:15:34  12  three with my first wife and three with my second wife.  My

10:15:36  13  oldest is 18, and I have twin nine-month-olds at home.  So

10:15:40  14  anyways, I'm -- I'm from Hallsville.  I work at Hallsville

10:15:45  15  at the high school.  I coach and teach.  I've been there

10:15:48  16  for three years.  I got my Master's and Bachelor's at

10:15:54  17  Southern Arkansas University.

10:15:55  18         My wife's name is Christi, and she's -- currently

10:15:58  19  is staying at home, but she has worked as a doctor's

10:16:00  20  assistant.

10:16:04  21         And this is my -- I have no prior service.

10:16:08  22         THE COURT:  All right, sir.  Thank you.

10:16:09  23         No. 12 is next.

10:16:10  24         JUROR KASSIDY HARRIS:  My name is Kassidy Harris.

10:16:15  25  I live in Pittsburg, Texas.  I don't have any kids.  I'm a

10:16:20  1  missions and discipleship pastor at First Baptist Church in

10:16:24  2  Pittsburg.  I've worked there about six-and-a-half years.

10:16:24  3  I have a high school education, a Bachelor's degree, and

10:16:29  4  Master's degree.

10:16:30  5        My spouse's name is Codi CheyAnne Harris.  She's a

10:16:34  6  labor and delivery nurse at Titus Regional, and she's

10:16:38  7  worked there about five years.  And I have never served on

10:16:41  8  a jury.

10:16:41  9        THE COURT:  Thank you.

10:16:41  10        No. 13 is next, Mr. Richardson.

10:16:46  11        JUROR RICHARDSON:  Good morning, David Richardson.

10:16:47  12  I live here in Marshall.  I have two grown children and

10:16:51  13  three step grown children.  I don't like the word "step."

10:16:55  14  They're my children.  I worked at Eastman Chemical in

10:17:00  15  Longview for 40 years.  And I -- I have a high school

10:17:04  16  education.

10:17:04  17        My wife is Kerry Richardson.  She's a registered

10:17:09  18  nurse here at Christus Good Shepherd for 16 years.

10:17:11  19        And I have served on a criminal case, probably six

10:17:13  20  to eight years ago.

10:17:14  21        THE COURT:  Where was that, sir?

10:17:15  22        JUROR RICHARDSON:  It was here in Harrison County.

10:17:17  23        THE COURT:  All right.  Thank you very much.

10:17:18  24        Ms. Pate is next, No. 14.

10:17:21  25        JUROR PATE:  Lara Pate.  I'm from Naples and I

| | |
|---|---|
| 10:17:24 | 1 |
| 10:17:29 | 2 |
| 10:17:33 | 3 |
| 10:17:34 | 4 |
| 10:17:36 | 5 |
| 10:17:38 | 6 |
| 10:17:40 | 7 |
| 10:17:42 | 8 |
| 10:17:43 | 9 |
| 10:17:49 | 10 |
| 10:17:52 | 11 |
| 10:17:54 | 12 |
| 10:17:55 | 13 |
| 10:17:58 | 14 |
| 10:18:01 | 15 |
| 10:18:04 | 16 |
| 10:18:07 | 17 |
| 10:18:11 | 18 |
| 10:18:15 | 19 |
| 10:18:18 | 20 |
| 10:18:19 | 21 |
| 10:18:24 | 22 |
| 10:18:29 | 23 |
| 10:18:36 | 24 |
| 10:18:40 | 25 |

1  have three kids.  I work at Pewitt CISD.  I've been there

2  for three years.  Well, no, that's my second year back

3  there, sorry.

4        THE COURT:  What do you do at Pewitt?

5        JUROR PATE:  I teach second grade.

6        THE COURT:  Thank you.

7        JUROR PATE:  I have a Master's in special

8  education.

9        My husband is Adam Pate, and he's a rural mail

10  carrier for Omaha for about three years.

11        And I have never served on a jury.

12        THE COURT:  All right.  Thank you.

13        And we'll ask the Court Security Officer to carry

14  the mic around to Panel Member No. 15, Ms. Shepard.

15        JUROR SHEPARD:  My name is Christie Shepard.  I

16  live here in Marshall.  I have two teenage children.  I

17  work for Texas Health and Human Services Commission as a

18  case manager.  I have worked there for 25 years.  I have a

19  Bachelor of Science degree from East Texas Baptist

20  University here in Marshall.

21        My spouse is Jason Shepard.  He is a draftsman for

22  MTX Surveying here in Marshall, recently started there.

23  They merged with his previous employer ArkLaTex Surveying.

24        I served on a criminal case probably seven or

25  eight years ago here in Harrison County.

| | | |
|---|---|---|
| 10:18:40 | 1 | THE COURT:  Thank you, ma'am.  No. 16 is next. |
| 10:18:43 | 2 | JUROR HILGENFELD:  Hi I'm Karen Hilgenfeld.  I |
| 10:18:46 | 3 | live in Omaha.  I work for Cable Interiors, which is a -- |
| 10:18:54 | 4 | and I worked for them about 20 years.  I do the finances. |
| 10:18:58 | 5 | We do data and voice cabling, and I'm not sure if this is |
| 10:19:03 | 6 | appropriate, I need to say that 90 percent of our income |
| 10:19:07 | 7 | and our major customer is Wells Fargo. |
| 10:19:15 | 8 | THE COURT:  That will come out. |
| 10:19:16 | 9 | JUROR HILGENFELD:  So I've worked there about 20 |
| 10:19:22 | 10 | years. |
| 10:19:22 | 11 | THE COURT:  What about education? |
| 10:19:24 | 12 | JUROR HILGENFELD:  I am a high school dip -- I |
| 10:19:28 | 13 | have my high school diploma.  I've had some accounting in |
| 10:19:31 | 14 | college. |
| 10:19:32 | 15 | My spouse is Walter Hilgenfeld.  He lives in Omaha |
| 10:19:37 | 16 | also.  And he is a retired AT&T employee for about the last |
| 10:19:44 | 17 | seven years. |
| 10:19:44 | 18 | And I was on a criminal case in Dallas about 20 |
| 10:19:53 | 19 | years ago. |
| 10:19:53 | 20 | THE COURT:  All right.  Thank you, ma'am. |
| 10:19:55 | 21 | No. 17 is next, Ms. Brown. |
| 10:19:57 | 22 | JUROR TRACEY BROWN:  My name is Tracey Brown, and |
| 10:19:59 | 23 | I am from Longview, Texas.  I have two children.  I am the |
| 10:20:03 | 24 | department supervisor of the Home Depot.  I have worked |
| 10:20:08 | 25 | there for almost 17 years.  I have some college. |

| | | |
|---|---|---|
| 10:20:12 | 1 | I have no spouse. |
| 10:20:13 | 2 | And I've never had any prior jury service. |
| 10:20:17 | 3 | THE COURT:  Okay.  Thank you, ma'am.  No. |
| 10:20:20 | 4 | 18, Mr. Allbritton. |
| 10:20:22 | 5 | JUROR ALLBRITTON:  Henry Allbritton.  I live in |
| 10:20:24 | 6 | Gilmer, Texas.  I have two children.  I own Allbritton |
| 10:20:28 | 7 | Timber in Gilmer for the last 20 years.  I have a 12th |
| 10:20:34 | 8 | grade education. |
| 10:20:35 | 9 | I have no spouse. |
| 10:20:37 | 10 | And I've never served on a jury before. |
| 10:20:38 | 11 | THE COURT:  All right.  Sir.  Thank you. |
| 10:20:40 | 12 | Next will be Panel Member No. 19, Mr. Pickens. |
| 10:20:46 | 13 | JUROR PICKENS:  My name is Paul Pickens.  I have |
| 10:20:49 | 14 | four children total.  Place of employment currently is |
| 10:20:54 | 15 | Steel Line Rail Service where we do railcar inspections. |
| 10:20:58 | 16 | I've been there with them about nine months now.  I have a |
| 10:21:02 | 17 | high school education. |
| 10:21:03 | 18 | My spouse's name is Amy Pickens.  She works at |
| 10:21:06 | 19 | Trinity Rail in Longview as a recruiter.  She's been there |
| 10:21:11 | 20 | about five years now. |
| 10:21:14 | 21 | And I have no prior jury service. |
| 10:21:15 | 22 | THE COURT:  Thank you, sir. |
| 10:21:18 | 23 | Next is No. 20, Mr. Staley. |
| 10:21:22 | 24 | JUROR STALEY:  Hi, my name is Mervin Staley.  I |
| 10:21:26 | 25 | live in Bloomburg, Texas.  I have two children and a |

| | |
|---|---|
| 10:21:27 | 1 |
| 10:21:31 | 2 |
| 10:21:35 | 3 |
| 10:21:36 | 4 |
| 10:21:43 | 5 |
| 10:21:43 | 6 |
| 10:21:45 | 7 |
| 10:21:48 | 8 |
| 10:21:49 | 9 |
| 10:21:50 | 10 |
| 10:21:55 | 11 |
| 10:21:59 | 12 |
| 10:22:03 | 13 |
| 10:22:07 | 14 |
| 10:22:12 | 15 |
| 10:22:15 | 16 |
| 10:22:15 | 17 |
| 10:22:19 | 18 |
| 10:22:22 | 19 |
| 10:22:23 | 20 |
| 10:22:26 | 21 |
| 10:22:29 | 22 |
| 10:22:34 | 23 |
| 10:22:40 | 24 |
| 10:22:43 | 25 |

stepchild.  They're all grown.  I've worked at Mid South Distributing for 19 years in Texarkana.  I have a high school diploma.

My wife is a RN.  Her name is Lisa Staley.  She works from home for an insurance company, and it just left my mind what the name of the insurance company is but...

And I have no prior jury service.

THE COURT:  All right, sir.

No. 21 is next.

JUROR MAWER:  Nathan Mawer.  I live in Hallsville. I have three kids.  I work for Weatherford International. I'm the East Texas/North Louisiana operation's manager, I also have a small home building company.  I've been at Weatherford almost eight years.  I've got a Bachelor's degree in business management, minor in construction science.

My wife's name is Caitlin Mawer.  She's a stay-at-home mom.  And I have no prior jury service.

THE COURT:  All right.  Thank you.

No. 22 is next, Mr. Neeley.

JUROR NEELEY:  Yes, my name is Chad Neeley.  I'm from Pittsburg, Texas.  I have one daughter that's 17 months old.  I work for Pittsburg ISD as an ag science teacher.  I've been there for roughly going on four years now.  My degree is agriculture business from Texas A&M

| | | |
|---|---|---|
| 10:22:47 | 1 | University at Commerce. |
| 10:22:49 | 2 | My spouse's name is Lindsey Neeley.  She's a |
| 10:22:52 | 3 | teacher, as well.  She's been there teaching for 11 years |
| 10:22:56 | 4 | now. |
| 10:23:00 | 5 | And I went through a criminal jury selection, but |
| 10:23:04 | 6 | the case didn't go to trial. |
| 10:23:07 | 7 | THE COURT:  All right, sir.  Thank you. |
| 10:23:09 | 8 | No. 23 is next, Ms. Mize. |
| 10:23:12 | 9 | JUROR MIZE:  I'm Atrelle Mize.  I live in |
| 10:23:19 | 10 | Longview.  I have five children.  They're all grown.  I |
| 10:23:21 | 11 | currently work for a home health agency in Henderson, but I |
| 10:23:26 | 12 | retired from Good Shepherd in Longview after 44 years.  I |
| 10:23:30 | 13 | graduated from Methodist School of Nursing in Dallas. |
| 10:23:34 | 14 | And I'm a widow. |
| 10:23:36 | 15 | And I have no prior jury service. |
| 10:23:38 | 16 | THE COURT:  Thank you, ma'am. |
| 10:23:39 | 17 | We'll pass that microphone to Panel Member No. 24, |
| 10:23:48 | 18 | Mr. Terry. |
| 10:23:49 | 19 | JUROR TERRY:  My name is Cooper Terry.  I have a |
| 10:23:52 | 20 | Gilmer address, but all the activities that we do are in |
| 10:23:54 | 21 | Longview; work, school, and all that.  I have three boys; |
| 10:23:56 | 22 | 20, 18, and 14.  I work at a company called Fastenal.  I've |
| 10:24:00 | 23 | been there for 27 years.  I'm a district manager.  And |
| 10:24:04 | 24 | I've -- I've done that for 17.  I graduated from SFA in |
| 10:24:11 | 25 | '91.  I have a BBA in finance. |

| | | |
|---|---|---|
| 10:24:11 | 1 | My wife is Debbie Terry.  She's in education.  She |
| 10:24:14 | 2 | works at the central office at Longview ISD -- or, excuse |
| 10:24:18 | 3 | me, Pine Tree ISD -- that was a bad thing -- Pine Tree ISD, |
| 10:24:22 | 4 | and she's been there for about 26 years. |
| 10:24:25 | 5 | And I've served on a traffic court one time back |
| 10:24:27 | 6 | in Longview about 15 years ago. |
| 10:24:29 | 7 | THE COURT:  All right.  Thank you.  If you'll pass |
| 10:24:31 | 8 | the microphone to No. 25. |
| 10:24:33 | 9 | JUROR STOBAUGH:  Good morning.  My name is Linda |
| 10:24:35 | 10 | Sue Stobaugh.  I live on the outskirts of Marshall.  I have |
| 10:24:35 | 11 | one grown daughter, three grandchildren, two grown |
| 10:24:43 | 12 | stepchildren with four grandchildren.  I have retired from |
| 10:24:48 | 13 | the medical field.  I worked at East Texas Baptist -- East |
| 10:24:52 | 14 | Texas Border Health Clinic.  We opened the doors in 2004. |
| 10:24:56 | 15 | I am now working for myself.  I'm a Mary Kay beauty |
| 10:25:01 | 16 | consultant, independent. |
| 10:25:03 | 17 | My education, I graduated from Marshall High |
| 10:25:06 | 18 | School.  I went to the Oscar B Jones nursing school here in |
| 10:25:11 | 19 | Marshall.  Also, took accounting principle I and II at |
| 10:25:18 | 20 | Harris County Community College in Houston. |
| 10:25:20 | 21 | My spouse's name is Jerry W. Stobaugh, Sr.  He |
| 10:25:26 | 22 | worked for the Union Pacific for 38 years before he |
| 10:25:29 | 23 | retired, and then it became Union Pacific. |
| 10:25:32 | 24 | And I have never served. |
| 10:25:33 | 25 | THE COURT:  All right. |

10:25:37  1          JUROR STOBAUGH:  Thank you.

10:25:38  2          THE COURT:  Thank you, ma'am.  Next is No. 26,

10:25:40  3  Ms. Black.

10:25:40  4          JUROR BLACK:  My name is Lorie Black.  I live here

10:25:42  5  in Marshall, Texas.  I have two grown children. I am a real

10:25:45  6  estate agent for Century 21, and I've been there for about

10:25:49  7  a year -- four years, I'm sorry.  I have some college with

10:25:52  8  some real estate certification.

10:25:54  9          My spouse's name is Kenny Black.  He works for

10:25:58 10  LATX, which is an oil and gas operation's company.  He is

10:26:01 11  the general manager there, and he's been there for about a

10:26:04 12  year.

10:26:05 13          And I have no prior jury service.

10:26:06 14          THE COURT:  Thank you, ma'am.

10:26:07 15          No. 27, Ms. Callaway.

10:26:10 16          JUROR CALLAWAY:  My name is Kim Callaway.  I live

10:26:13 17  in Queen City, and I have two grown children.  I work at

10:26:18 18  Queen City ISD as a second grade teacher.  I've been there

10:26:21 19  for 24 years.  I have a Bachelor's degree from Texas A&M in

10:26:27 20  Texarkana.

10:26:27 21          I have no spouse.

10:26:29 22          And I have no prior jury service.

10:26:33 23          THE COURT:  All right.  Thank you.

10:26:35 24          And No. 28, Ms. Brown.

10:26:37 25          JUROR ALANA BROWN:  My name is Alana Brown.  I

10:26:40   1   live in Diana.  I have two 19-year-old sons who are working

10:26:45   2   on being grown.  I work for Pace Opportunity Centers in

10:26:48   3   Longview as a case coordinator.  I've worked there for

10:26:51   4   about two months.  I have a Bachelor's degree in business

10:26:54   5   and management from NC State.

10:26:57   6          My spouse's name is Jim Brown.  He works for

10:27:00   7   SWEPCO AEP as a substation supervisor.  He's worked for AEP

10:27:06   8   for over 25 years.

10:27:07   9          I served on a criminal case, I believe it was, it

10:27:11  10   was about 2005 in Ohio.

10:27:13  11          THE COURT:  All right.  Thank you, ma'am.

10:27:14  12          Thank you, ladies and gentlemen.

10:27:19  13          Now, I need to tell you a couple more things

10:27:21  14   before I turn the questioning over to the lawyers.

10:27:24  15          The jurors that are actually selected to serve in

10:27:27  16   this case will serve in the role as the judges of the

10:27:31  17   facts.  And the jurors selected will make the sole

10:27:34  18   determination about what the facts are in this case.

10:27:37  19          Now, my job as the Judge is to rule on questions

10:27:41  20   of law, evidence, procedure, to maintain the decorum of the

10:27:46  21   courtroom, and to oversee an efficient flow of the trial

10:27:48  22   and the evidence.

10:27:49  23          Also, I want to say a couple things to you about

10:27:52  24   our judicial system that hopefully will put things in a

10:27:56  25   proper perspective for each of you.

10:27:57   1          In every jury trial, besides the actual parties

10:28:02   2   themselves, there are always three participants, the jury,

10:28:06   3   the judge, and the lawyers.

10:28:08   4          With regard to the lawyers, I think it's important

10:28:10   5   for each of you to understand that our American judicial

10:28:14   6   system is an adversary system, which simply means that

10:28:19   7   during a trial, each of the parties will seek to present

10:28:22   8   their respective cases to the juries -- to the jury in the

10:28:26   9   very best light possible.

10:28:27  10          Now, it's no surprise to any of you that lawyers

10:28:31  11   are sometimes criticized in the public and in the media,

10:28:34  12   but the Court's observed that at least some of that

10:28:37  13   criticism is a result of a basic misunderstanding about our

10:28:41  14   adversary system in which the lawyers act as advocates for

10:28:46  15   the competing parties.

10:28:48  16          And as an advocate, a lawyer is ethically and

10:28:51  17   legally obligated to zealously assert his or her client's

10:28:56  18   position under the rules of our adversary system.  And by

10:29:00  19   presenting the best case possible on behalf of their

10:29:03  20   clients, the lawyers hopefully will enable the jury to

10:29:09  21   better weigh the relevant evidence, to determine the truth,

10:29:12  22   and to arrive at a just verdict based on that evidence.

10:29:15  23          Now, this system of justice, this adversary

10:29:19  24   system, has served our nation well for over 200 years, and

10:29:22  25   America's lawyers have been and will continue to be an

```
10:29:25   1   indispensable part of the process.
10:29:29   2        So as we go forward, even though it's possible
10:29:31   3   over the course of the trial you may see me frown or even
10:29:36   4   growl at the lawyers from time to time, it's simply because
10:29:38   5   I'm trying to make sure that their advocacy doesn't get
10:29:42   6   outside the boundaries of our adversary system.  But you
10:29:45   7   should keep in mind, they are doing their jobs, and I think
10:29:49   8   it's important for all of you to be aware of that as we go
10:29:52   9   forward.
10:29:52  10        Also, ladies and gentlemen, over the course of the
10:29:54  11   trial, I'm going to do my very best to make sure that none
10:29:58  12   of you that are on the jury have any idea about what I
10:30:02  13   think about the evidence in this case, because determining
10:30:07  14   what the facts are based on that evidence is the job of the
10:30:11  15   jury over the course of this trial.  It is not my job.
10:30:14  16        And those of you that are selected on the jury
10:30:16  17   should not take any expressions that you see or think you
10:30:21  18   see or any comments that you hear or think you hear from me
10:30:24  19   as being something to consider as a factor in making the
10:30:28  20   ultimate decision about what the facts are in this case.
10:30:31  21        Now, at this time, the lawyers will have an
10:30:35  22   opportunity to make their presentations and question the
10:30:38  23   members of the jury panel.
10:30:39  24        We'll begin with the Plaintiff.  Mr. Bunt, you may
10:30:43  25   address the panel on behalf of the Plaintiff.
```

```
10:30:44   1          MR. BUNT:  Thank you, Your Honor.
10:30:47   2          THE COURT:  And you'd like a warning at five
10:30:49   3   minutes, correct?
10:30:50   4          MR. BUNT:  Yes, Your Honor.  When I have five
10:30:51   5   minutes left.  I appreciate it.
10:30:53   6          THE COURT:  All right.  You may proceed.
10:30:54   7          MR. BUNT:  Thank you, Your Honor.
10:30:54   8          Good morning, again, ladies and gentlemen.  As I
10:30:57   9   mentioned to you, my name is Chris Bunt.  It's my pleasure
10:31:00  10   to be here today representing the Plaintiff, USAA, in this
10:31:06  11   case.
10:31:06  12          You've graciously given us a lot of information
10:31:11  13   about yourselves.  We really appreciate that.  We
10:31:12  14   appreciate the jury questionnaire forms you've turned in.
10:31:12  15   I'll just briefly give you the same information about me.
10:31:15  16          I grew up in Hallsville.  I graduated from high
10:31:18  17   school there.  My wife, Celia, also graduated from high
10:31:21  18   school there.  We've been living in Tyler for the last 26
10:31:25  19   years.
10:31:27  20          I have a law practice over there, and Celia works
10:31:30  21   as the office manager at our firm.  We have two kids.  My
10:31:35  22   daughter is 17, and my son is 14.
10:31:38  23          And I have been called on a number of occasions
10:31:41  24   for jury service but have never actually been on a jury
10:31:44  25   panel.
```

10:31:45  1          So you're going to hear a lot more about this case

10:31:49  2   as -- as the week progresses.  But I want to give you just

10:31:53  3   a very brief overview.

10:31:54  4          So this case involves two United States patents

10:31:59  5   that are owned by my client, USAA.  And these patents

10:32:05  6   relate to depositing checks using your smartphone or mobile

10:32:09  7   device.

10:32:09  8          So before this invention, if you wanted to deposit

10:32:14  9   a check, you'd go to the bank teller or to the ATM or you

10:32:18  10  might have one of these very expensive commercial check

10:32:21  11  scanners.

10:32:22  12         USAA invented the use of consumer devices, like

10:32:29  13  smartphones, enabling them to take high quality check

10:32:33  14  images so that the check could be deposited remotely and so

10:32:37  15  that fraud detection could be performed in a real-time

10:32:43  16  during the process.

10:32:43  17         So that's the case in a nutshell.  And we allege

10:32:46  18  that Wells Fargo is using our patented technology in their

10:32:50  19  own product.  In patent cases, this sort of trespassing on

10:32:54  20  property is called infringement.

10:32:58  21         Now, Wells Fargo denies that it is infringing or

10:33:01  22  trespassing on our property.  And, indeed, Wells Fargo also

10:33:05  23  claims even if it is infringing, the patents are invalid,

10:33:09  24  that is, that they should not have been issued by the

10:33:12  25  Patent Office.

10:33:12   1          And then, finally, Wells Fargo claims even if it's

10:33:16   2   infringing, even if the patents are valid, they're really

10:33:20   3   not worth that much money.

10:33:22   4          So as His Honor told you, the purpose of voir dire

10:33:27   5   is to give us a chance to talk with you directly to see if

10:33:31   6   this is the right case for you, to see if you're starting

10:33:34   7   out with any life experiences, any likes or dislikes that

10:33:39   8   might make it difficult for you to sit on this jury.

10:33:41   9          So let me start with that.  In my experience, I've

10:33:43  10   found that, generally speaking, most people fall within two

10:33:51  11   groups when it comes to their attitudes about patents.

10:33:54  12          The first group, people are -- are people who

10:33:57  13   think that patents are a good thing, that they encourage

10:34:02  14   innovation, that innovation is a good thing to make

10:34:04  15   advances in products, that without patent protection, a lot

10:34:09  16   of research and development would not take place.  That's

10:34:15  17   Group No. 1, pro patent.

10:34:16  18          And then Group No. 2 are folks who believe that

10:34:20  19   patents should not be protected by law, that patents are

10:34:24  20   maybe an archaic system, that patents don't really make

10:34:27  21   sense, and it doesn't make sense to give a 20-year monopoly

10:34:31  22   when -- on -- on a patent when technology is changing so

10:34:37  23   rapidly these days; the thought being here with this group,

10:34:41  24   just because patents were a good idea when the Constitution

10:34:45  25   was being framed doesn't mean that they're still a good

```
10:34:49   1   idea now.
10:34:49   2        Let me start on the first row -- actually let me
10:34:52   3   just start with you, Mr. Bouzek.
10:34:54   4        JUROR BOUZEK:  Bouzek.
10:34:55   5        MR. BUNT:  Bouzek.
10:34:57   6        JUROR BOUZEK:  Bouzek.
10:34:57   7        MR. BUNT:  Bouzek.  Mr. Bouzek.
10:34:59   8        JUROR BOUZEK:  It's Bouzek.
10:35:00   9        MR. BUNT:  Bouzek.
10:35:02  10        JUROR BOUZEK:  Correct.
10:35:03  11        MR. BUNT:  Okay.  Thank you, sir.
10:35:05  12        Which group do you think you'd fall in?  Do you
10:35:08  13   think you'd be more in Group 1, pro -- pro patent, or do
10:35:13  14   you think you'd fall more in the second category of not
10:35:16  15   thinking they're such a hot idea?
10:35:18  16        JUROR BOUZEK:  I would consider myself mainly in
10:35:19  17   the first group.
10:35:20  18        MR. BUNT:  All right.
10:35:21  19        And, Ms. Jones, right next to you, how do you feel
10:35:24  20   about that?
10:35:25  21        JUROR JONES:  I would say pro -- pro patent.
10:35:28  22        MR. BUNT:  Okay.  Is there anybody here in the
10:35:30  23   jury box -- let me just see a show of hands -- anybody who
10:35:33  24   feels like they would lean more toward Group No. 2, who
10:35:38  25   feel like maybe patents aren't such a hot idea in this day
```

10:35:42  1   and time when technology is changing?  Anybody?

10:35:45  2           How about over here in the -- the -- outside the

10:35:47  3   jury box, is there anybody who feels that way?

10:35:50  4           If I could -- Mr. Johnston, if we could have the

10:35:58  5   microphone to Ms. Brown in the very back, Ms. Alana Brown.

10:36:07  6           Ms. Brown, I believe you mentioned in your

10:36:09  7   questionnaire form that you -- you had some concerns about

10:36:14  8   medical or maybe pharmaceutical patents.  Did I get that

10:36:16  9   right?

10:36:17  10          JUROR ALANA BROWN:  I don't remember exactly how I

10:36:19  11  answered.  I don't necessarily have any concerns.  I think

10:36:23  12  that other than potential of the price increasing because

10:36:30  13  of them -- of medication.

10:36:32  14          MR. BUNT:  Would that cause you to start out

10:36:33  15  leaning against patent owners -- anything about that?

10:36:38  16          JUROR ALANA BROWN:  No.

10:36:38  17          MR. BUNT:  Okay.  Is there anybody who feels like

10:36:41  18  they have some views about patents that would cause them to

10:36:44  19  start out leaning against patent owners?  I don't see any

10:36:48  20  hands.

10:36:49  21          Okay.  Mr. Johnston, if we could come back over to

10:36:51  22  the jury box.

10:36:52  23          Everybody has already heard, and you saw the

10:36:54  24  patent jury video this morning, you know from the patent

10:36:58  25  video that patents are pieces of property.  And when the

| | | |
|---|---|---|
| 10:37:03 | 1 | Patent Office issues a patent, it's like a deed that is |
| 10:37:06 | 2 | being issued. |
| 10:37:07 | 3 | So could I see a show of hands in the jury box, |
| 10:37:10 | 4 | how many of you are land owners, whether you own a house or |
| 10:37:15 | 5 | whatever that your piece of land is sitting on? |
| 10:37:17 | 6 | Okay.  Let's just go to Ms. Harris -- Gayla |
| 10:37:21 | 7 | Harris -- No. 3, I apologize. |
| 10:37:24 | 8 | Ms. Harris, you own a piece of land? |
| 10:37:28 | 9 | JUROR GAYLE HARRIS:  Yes. |
| 10:37:28 | 10 | MR. BUNT:  And let me ask you this:  If an oil |
| 10:37:30 | 11 | company -- oil and gas company, let's say, is drilling on |
| 10:37:34 | 12 | your property without your permission, would you have any |
| 10:37:38 | 13 | discomfort about going to court to get them off your |
| 10:37:41 | 14 | property? |
| 10:37:41 | 15 | JUROR GAYLE HARRIS:  No, I would not. |
| 10:37:42 | 16 | MR. BUNT:  Okay.  Mr. Johns -- Mr. Travis Johns, |
| 10:37:48 | 17 | No. 4 -- |
| 10:37:48 | 18 | JUROR JOHNS:  Yes, sir. |
| 10:37:48 | 19 | MR. BUNT:  -- how about the same question? |
| 10:37:51 | 20 | JUROR JOHNS:  No, I wouldn't -- I wouldn't like it |
| 10:37:52 | 21 | either. |
| 10:37:52 | 22 | MR. BUNT:  You don't have any discomfort about |
| 10:37:55 | 23 | going to court? |
| 10:37:56 | 24 | JUROR JOHNS:  No. |
| 10:37:57 | 25 | MR. BUNT:  Let me ask this:  Does anybody feel |

10:37:59  1   like intellectual property should be treated differently

10:38:04  2   than physical property, like a piece of land?  Anybody in

10:38:07  3   the jury box feel that way?

10:38:09  4        Okay.  I forgot to ask over here.  Outside the

10:38:13  5   jury box, is there anybody here who feels like, you know

10:38:16  6   what, I just don't feel comfortable with the idea of going

10:38:19  7   to court to protect property rights?  Anybody feel that

10:38:23  8   way?

10:38:23  9        Is there anybody over on this side who feels like

10:38:27  10  intellectual property, like a patent, should be treated

10:38:30  11  differently than physical property, like a piece of land?

10:38:34  12       Okay.  You're going to hear evidence during this

10:38:41  13  trial about damages, and we're going to put on a financial

10:38:45  14  expert who's going to explain to you the financial benefits

10:38:49  15  that Wells Fargo has received using our property.  And we

10:38:56  16  anticipate at the end of the trial asking you if you agree

10:39:00  17  that there's been infringement.  And if you agree with our

10:39:03  18  evidence, we're going to ask you to award $102.8 million.

10:39:09  19       And I'll just tell you that Wells Fargo has an

10:39:11  20  expert, a damage expert, who says even if they infringe,

10:39:14  21  even if the patents are valid, they wouldn't owe any more

10:39:18  22  than $3.9 million.

10:39:20  23       So my question is, how many of you here in the

10:39:22  24  jury box feel like no matter what the evidence is, even if

10:39:28  25  you were able to find infringement, there's just no way you

| | |
|---|---|
| 10:39:30 | 1 |
| 10:39:34 | 2 |
| 10:39:37 | 3 |

10:39:30  1  could ever see yourself writing down a number of a hundred

10:39:34  2  million dollars?  Is there anybody here in the jury box who

10:39:37  3  feels that way?

10:39:38  4        Mr. Meade, No. 6, any issues at all with that?

10:39:47  5        JUROR MEADE:  No, sir.

10:39:47  6        MR. BUNT:  Okay.  Mr. Nilsson, how about you?

10:39:50  7        JUROR NILSSON:  I believe we have to look at all

10:39:53  8  sides, and, I mean, if it's -- if it's 3 -- 3 million or

10:39:58  9  102 million or something in the middle, you got to weigh it

10:40:01  10  all out like the Judge said earlier.

10:40:03  11        MR. BUNT:  Thank you, sir.  And let me -- I'll

10:40:05  12  just follow up with that.

10:40:06  13        If you could hand the microphone back.

10:40:07  14        I don't -- I'm not asking anybody here to commit

10:40:11  15  to awarding a hundred million dollars, but I just want to

10:40:13  16  know, if there's evidence to support that award, is there

10:40:16  17  anybody here who feels like they could not ever write down

10:40:20  18  that number?  Anybody in the jury box?

10:40:22  19        Anybody over here on this side of the courtroom

10:40:24  20  who feels like -- yes, ma'am, Ms. -- Ms. Hilgenfeld?

10:40:32  21        JUROR HILGENFELD:  Let me -- I just have a

10:40:36  22  question.

10:40:37  23        MR. BUNT:  Yes, ma'am.

10:40:38  24        JUROR HILGENFELD:  I mean, my concern is, doesn't

10:40:41  25  all banks do this -- the same?

| | | |
|---|---|---|
| 10:40:44 | 1 | MR. BUNT:  Well, the issue is whether USAA has a |
| 10:40:47 | 2 | patent on it and whether Wells Fargo is using our patent |
| 10:40:50 | 3 | and benefitting from it. |
| 10:40:51 | 4 | JUROR HILGENFELD:  So it doesn't matter if any |
| 10:40:54 | 5 | other -- |
| 10:40:54 | 6 | MR. BUNT:  No, ma'am.  So -- but I -- |
| 10:40:57 | 7 | JUROR HILGENFELD:  So that's the -- that's one of |
| 10:40:59 | 8 | the reasons I would have. |
| 10:41:00 | 9 | MR. BUNT:  I appreciate that. |
| 10:41:02 | 10 | JUROR HILGENFELD:  And then -- |
| 10:41:02 | 11 | THE COURT:  We're here -- we're here about this |
| 10:41:04 | 12 | Plaintiff and this Defendant. |
| 10:41:06 | 13 | JUROR HILGENFELD:  Okay. |
| 10:41:06 | 14 | THE COURT:  And what may happen with other |
| 10:41:08 | 15 | Plaintiffs and other Defendants is not a part of this |
| 10:41:10 | 16 | trial. |
| 10:41:12 | 17 | JUROR HILGENFELD:  Okay.  I just know that |
| 10:41:13 | 18 | different banks -- anyway.  That's -- that was my concern. |
| 10:41:18 | 19 | MR. BUNT:  Yes, ma'am.  While I've got you, |
| 10:41:21 | 20 | though -- |
| 10:41:21 | 21 | JUROR HILGENFELD:  Okay. |
| 10:41:21 | 22 | MR. BUNT:  -- you very graciously gave us a pretty |
| 10:41:25 | 23 | good bit of information in your jury questionnaire form, |
| 10:41:28 | 24 | and I did actually write down some of that information. |
| 10:41:31 | 25 | You mentioned that Wells Fargo, the Defendant in this case, |

| | | |
|---|---|---|
| 10:41:33 | 1 | is a major customer of your employer. |
| 10:41:36 | 2 | JUROR HILGENFELD:  Yes, sir. |
| 10:41:36 | 3 | MR. BUNT:  And I think you just mentioned, they -- |
| 10:41:39 | 4 | they account for about 90 percent of the revenues or income |
| 10:41:42 | 5 | of your company that you work for. |
| 10:41:44 | 6 | JUROR HILGENFELD:  Yes, sir. |
| 10:41:45 | 7 | MR. BUNT:  And I believe you said that they've |
| 10:41:48 | 8 | been a major customer for 20 years. |
| 10:41:50 | 9 | JUROR HILGENFELD:  At least 20 years. |
| 10:41:52 | 10 | MR. BUNT:  And I think you also said in your |
| 10:41:54 | 11 | questionnaire form you felt like it would be a conflict of |
| 10:41:57 | 12 | interest for you to serve on this jury. |
| 10:41:58 | 13 | JUROR HILGENFELD:  Yes, because I wasn't sure -- |
| 10:42:01 | 14 | MR. BUNT:  No, that's fine -- |
| 10:42:02 | 15 | JUROR HILGENFELD:  -- the way it was going. |
| 10:42:04 | 16 | MR. BUNT:  No, I -- I certainly appreciate it. |
| 10:42:05 | 17 | Let's just be frank, would it put you in a bad situation to |
| 10:42:11 | 18 | serve on this jury? |
| 10:42:12 | 19 | JUROR HILGENFELD:  I have reservations that way, |
| 10:42:15 | 20 | yes. |
| 10:42:15 | 21 | MR. BUNT:  Is my -- is my client starting off a |
| 10:42:18 | 22 | little bit behind of Wells Fargo simply because you deal |
| 10:42:22 | 23 | with Wells Fargo on a regular basis at your employment? |
| 10:42:26 | 24 | JUROR HILGENFELD:  Yes, sir. |
| 10:42:27 | 25 | MR. BUNT:  Thank you.  Would you find it a little |

| | | |
|---|---|---|
| 10:42:29 | 1 | hard to be fair and impartial to USAA, given your |
| 10:42:32 | 2 | particular situation? |
| 10:42:33 | 3 | JUROR HILGENFELD:  Possibility.  Probability -- |
| 10:42:37 | 4 | MR. BUNT:  I'm sorry, what's the last thing you |
| 10:42:40 | 5 | said? |
| 10:42:40 | 6 | JUROR HILGENFELD:  Probability. |
| 10:42:41 | 7 | MR. BUNT:  Probability. |
| 10:42:42 | 8 | JUROR HILGENFELD:  Yeah, if I'm being honest |
| 10:42:44 | 9 | because -- I mean, I would be fair as much as I could -- |
| 10:42:50 | 10 | MR. BUNT:  Yes, ma'am. |
| 10:42:52 | 11 | JUROR HILGENFELD:  -- and listen to everything, |
| 10:42:52 | 12 | but I just -- I'm uneasy with working for them and -- but I |
| 10:43:01 | 13 | have family that uses USAA -- |
| 10:43:02 | 14 | MR. BUNT:  Yes, ma'am. |
| 10:43:04 | 15 | JUROR HILGENFELD:  -- so I don't know. |
| 10:43:06 | 16 | MR. BUNT:  Would it -- let me ask this:  Would it |
| 10:43:07 | 17 | be a difficult conversation for you to go back to the |
| 10:43:11 | 18 | office after a jury trial and say you had sat on a case and |
| 10:43:16 | 19 | you rendered a verdict against Wells Fargo? |
| 10:43:18 | 20 | JUROR HILGENFELD:  Yes, sir. |
| 10:43:19 | 21 | MR. BUNT:  Thank you. |
| 10:43:20 | 22 | JUROR HILGENFELD:  Because my name is on a lot of |
| 10:43:22 | 23 | checks. |
| 10:43:23 | 24 | MR. BUNT:  I -- I appreciate your candor.  I |
| 10:43:24 | 25 | really do.  Thank you, ma'am. |

```
10:43:26   1              JUROR HILGENFELD:   Thank you.
10:43:32   2              MR. BUNT:   I want to ask you some questions about
10:43:34   3   invalidity.   There's two different things you're going to
10:43:36   4   hear about in this trial, infringement and invalidity.   And
10:43:40   5   USAA, my client, has to prove infringement, that is, that
10:43:45   6   Wells Fargo is using our property without our permission.
10:43:47   7   And we have to prove that by a preponderance of the
10:43:49   8   evidence.   And that's a burden we gladly accept.
10:43:52   9              Wells Fargo, on the other hand, has the burden to
10:43:56  10   prove that the patents are invalid.   It's not our burden to
10:44:00  11   prove that the patents are valid.   It's their burden to
10:44:05  12   prove that they are invalid.   And the burden of proof that
10:44:08  13   they would have, if they want to do that, is to show by
10:44:12  14   clear and convincing evidence.
10:44:12  15              Now, His Honor told you a little bit ago,
10:44:16  16   preponderance of the evidence means tipping the scales,
10:44:18  17   clear and convincing evidence means a more substantial
10:44:21  18   burden of proof.
10:44:21  19              Is there anybody here -- and let's just start with
10:44:24  20   the jury box -- who feels like that is unfair that we get
10:44:28  21   to prove infringement by a preponderance of the evidence
10:44:35  22   but that Wells Fargo would have to prove invalidity by
10:44:37  23   clear and convincing, that there's a different burden of
10:44:40  24   proof for them?   Anybody have an issue with that?   Not
10:44:43  25   seeing any hands.
```

| | | |
|---|---|---|
| 10:44:44 | 1 | Over here on this side of the courtroom, if the |
| 10:44:48 | 2 | Judge tells you that is the burden of proof, is there |
| 10:44:50 | 3 | anybody here who would just have difficulty with that |
| 10:44:52 | 4 | concept? |
| 10:44:53 | 5 | Okay.  Thank you. |
| 10:44:54 | 6 | Is -- I didn't tell you much, and you're going to |
| 10:44:57 | 7 | hear a lot more during the trial, but USAA, my client, |
| 10:45:01 | 8 | provides financial services to military and to military |
| 10:45:04 | 9 | families.  These services include -- you've probably heard |
| 10:45:08 | 10 | or seen insurance company ads for USAA, but they also |
| 10:45:13 | 11 | provide banking services. |
| 10:45:14 | 12 | Is there anybody here who has had a bad or |
| 10:45:18 | 13 | negative experience with USAA?  And let me start in the |
| 10:45:22 | 14 | jury box first?  Anybody? |
| 10:45:25 | 15 | Okay.  Over on this side, Mr. Mawer, Juror No. 21. |
| 10:45:33 | 16 | JUROR MAWER:  Yes. |
| 10:45:33 | 17 | MR. BUNT:  Thank you.  Did -- did you say that you |
| 10:45:35 | 18 | had a bad experience with USAA? |
| 10:45:39 | 19 | JUROR MAWER:  It was good up until -- and I think |
| 10:45:41 | 20 | everybody kind of went up on their rates to the point that |
| 10:45:45 | 21 | we went shopping, but that was it.  It wasn't -- it wasn't |
| 10:45:48 | 22 | anything on the services that they provided.  We had |
| 10:45:50 | 23 | insurance with our house and our automobiles. |
| 10:45:53 | 24 | MR. BUNT:  Okay.  All right.  Thank you, sir.  I |
| 10:45:55 | 25 | appreciate that. |

| | | |
|---|---|---|
| 10:45:55 | 1 | Is there anybody else who has had a negative |
| 10:46:02 | 2 | experience with USAA? |
| 10:46:04 | 3 | Okay.  Can I just see a show of hands, anybody |
| 10:46:07 | 4 | here on the jury panel who has worked at a bank? |
| 10:46:10 | 5 | Okay.  No. 10, Ms. Walker, and let me -- raise |
| 10:46:16 | 6 | your hands high, please.  No. 16, Ms. Hilgenfeld. |
| 10:46:22 | 7 | And then on the back, Ms. Lorie Black -- |
| 10:46:22 | 8 | JUROR BLACK:  Yes. |
| 10:46:25 | 9 | MR. BUNT:  -- and then Ms. Brown.  Okay.  Thank |
| 10:46:30 | 10 | you. |
| 10:46:30 | 11 | Mr. Bouzek, on -- Juror No. 1, did you serve in |
| 10:46:36 | 12 | the military? |
| 10:46:36 | 13 | JUROR BOUZEK:  Yes, I did. |
| 10:46:37 | 14 | MR. BUNT:  And was that the Air Force? |
| 10:46:39 | 15 | JUROR BOUZEK:  Correct. |
| 10:46:40 | 16 | MR. BUNT:  And how long did you serve? |
| 10:46:42 | 17 | JUROR BOUZEK:  Four years. |
| 10:46:43 | 18 | MR. BUNT:  Okay.  Thank you for your service.  I |
| 10:46:47 | 19 | don't think you said anything about you have USAA, but do |
| 10:46:50 | 20 | you have any family members or friends who have USAA? |
| 10:46:54 | 21 | JUROR BOUZEK:  Not to my knowledge. |
| 10:46:55 | 22 | MR. BUNT:  Okay.  Can I see a show of hands -- |
| 10:47:00 | 23 | thank you, sir.  I appreciate it. |
| 10:47:02 | 24 | How many of you have used a phone to deposit a |
| 10:47:04 | 25 | check before? |

| | |
|---|---|
| 10:47:07 | 1 |
| 10:47:10 | 2 |
| 10:47:18 | 3 |
| 10:47:26 | 4 |
| 10:47:31 | 5 |
| 10:47:36 | 6 |
| 10:47:40 | 7 |
| 10:47:43 | 8 |
| 10:47:46 | 9 |
| 10:47:50 | 10 |
| 10:47:51 | 11 |
| 10:47:54 | 12 |
| 10:47:57 | 13 |
| 10:48:03 | 14 |
| 10:48:06 | 15 |
| 10:48:08 | 16 |
| 10:48:12 | 17 |
| 10:48:13 | 18 |
| 10:48:17 | 19 |
| 10:48:22 | 20 |
| 10:48:29 | 21 |
| 10:48:33 | 22 |
| 10:48:34 | 23 |
| 10:48:36 | 24 |
| 10:48:44 | 25 |

1    Okay.  Juror -- if you don't mind, hold them up
2  again one more time.  Juror No. 3, 4, 7, 10, 11, and 14,
3  and then 15, 16, 17 -- is that No. 23?  Yes, ma'am.  And
4  24, 26, and 28.  Thank y'all very much.
5    The -- Wells Fargo is being represented by the
6  Winston & Strawn law firm.  Mr. Tom Melsheimer here is one
7  of the lawyers at that firm.  They have offices all over
8  the country, but his office is in Dallas.  I believe you're
9  going to hear from Ms. Williams -- Danielle Williams during
10  opening statement.
11    Is there anybody here who knows Mr. Melsheimer or
12  any of the other folks at Winston & Strawn?
13    Okay.  Wells Fargo is also represented by
14  Mr. Wesley Hill of the law firm of Ward Smith & Hill.
15  That's based in Longview.
16    Is there anybody here who knows Mr. Hill or has
17  had any dealings with his law firm?
18    Also, there's some folks at his firm.  I'll just
19  list them out.  Johnny Ward, Mr. T. John Ward, Mr. Bruce
20  Smith, Claire Henry, Andrea Fair, Brett Miller, and Wendi
21  Cavazos.  Anybody here know any of those individuals?
22    Mr. Mike Collins is also assisting them with jury
23  selection.  He's based in Tyler.  Is there anybody here who
24  knows Mr. Collins?
25    Okay.  Could I see a -- well, let me just start

| | | |
|---|---|---|
| 10:48:50 | 1 | with Ms. Gayla Harris, Juror No. 3. |
| 10:48:53 | 2 | I believe you mentioned that you have -- that you |
| 10:48:56 | 3 | bank with Wells Fargo; is that right? |
| 10:48:58 | 4 | JUROR GAYLE HARRIS:  Yes.  My husband takes care |
| 10:49:05 | 5 | of all of our finances, so I'm trying to remember what we |
| 10:49:10 | 6 | have or if we currently still have... |
| 10:49:13 | 7 | MR. BUNT:  Let me just ask it like this:  Is there |
| 10:49:16 | 8 | anything about that experience that would start you off |
| 10:49:18 | 9 | leaning more towards Wells Fargo than USAA? |
| 10:49:21 | 10 | JUROR GAYLE HARRIS:  No, I didn't even actually |
| 10:49:23 | 11 | remember we had services with them.  And my husband said |
| 10:49:26 | 12 | yes, we do -- or we did, so I don't have any good or bad |
| 10:49:31 | 13 | experience. |
| 10:49:31 | 14 | MR. BUNT:  Thank you, ma'am.  I appreciate that. |
| 10:49:33 | 15 | Mr. Harris, Juror No. 12, did you indicate that |
| 10:49:39 | 16 | you have Wells Fargo banking? |
| 10:49:42 | 17 | JUROR KASSIDY HARRIS:  They just have my mortgage. |
| 10:49:44 | 18 | MR. BUNT:  All right.  How about that, you |
| 10:49:48 | 19 | understand I represent a company that is suing Wells Fargo, |
| 10:49:52 | 20 | you have Wells Fargo for your mortgage insurance company. |
| 10:49:55 | 21 | Is that going to start my client in a worse position than |
| 10:50:03 | 22 | Wells Fargo?  Are you going to start off leaning a little |
| 10:50:06 | 23 | bit more towards Wells Fargo? |
| 10:50:08 | 24 | JUROR KASSIDY HARRIS:  Absolutely no. |
| 10:50:09 | 25 | MR. BUNT:  Thank you, sir.  I appreciate that. |

10:50:11  1          Mr. Rankin, Juror No. 11, do you also have Wells
10:50:16  2   Fargo banking or have something to do with Wells Fargo?
10:50:19  3   Could you tell me --
10:50:19  4          JUROR RANKIN:  Yes, I have Wells Fargo banking.
10:50:21  5          MR. BUNT:  Same question to you, how does that
10:50:23  6   make you feel?
10:50:25  7          JUROR RANKIN:  I don't really have any personal
10:50:27  8   connection or feelings other than there's none around here.
10:50:29  9          MR. BUNT:  There's none --
10:50:31 10          JUROR RANKIN:  So I do use the picture -- you
10:50:33 11   know, the phone app.
10:50:35 12          MR. BUNT:  Well, let me ask --
10:50:36 13          JUROR RANKIN:  Very often.
10:50:38 14          MR. BUNT:  -- let me ask this:  Would you worry in
10:50:40 15   the back of your head whether if you were to find some sort
10:50:43 16   of verdict in favor of USAA that it might end up somehow
10:50:47 17   down the road costing customers like yourself more money?
10:50:51 18          JUROR RANKIN:  I wouldn't think so.
10:50:52 19          MR. BUNT:  All right.  Thank you, sir.  I
10:50:54 20   appreciate that.
10:50:54 21          Mr. Cooper Terry -- Mr. -- Juror No. 24, do you
10:51:06 22   bank with Wells Fargo also?
10:51:07 23          JUROR TERRY:  I just have a corporate credit card
10:51:13 24   that I -- it's a company card, so it's my expense card that
10:51:16 25   I use, but it's Wells Fargo.

10:51:17   1          MR. BUNT:  Same question I asked Mr. Rankin, how

10:51:20   2   would that make you feel sitting on this jury?

10:51:22   3          JUROR TERRY:  No effect.

10:51:23   4          MR. BUNT:  Okay.  Thank you, sir.

10:51:25   5          Mr. Strube, do we have Mr. Strube on the -- okay.

10:51:32   6   Never mind.

10:51:32   7          Some of you had expressed some feelings -- strong

10:51:42   8   feelings about lawsuits in your questionnaires.

10:51:45   9          Mr. Mawer, Juror No. 21, I believe you indicated

10:51:49  10   that you don't like frivolous lawsuits.  Can you tell me a

10:51:53  11   little bit more about that.

10:51:54  12          JUROR MAWER:  Ones that really don't have any

10:51:56  13   merit.  I didn't know about this case, obviously, but

10:52:00  14   the -- somebody suing somebody for hot coffee or whatever

10:52:04  15   when it has a warning on it, that's pretty much the extent

10:52:06  16   of that.

10:52:07  17          MR. BUNT:  Well, you understand that you have a

10:52:10  18   feeling against what you consider to be frivolous lawsuits,

10:52:13  19   and I'm representing somebody who has brought a lawsuit.  I

10:52:16  20   certainly don't think there's anything frivolous about this

10:52:18  21   at all.

10:52:19  22          JUROR MAWER:  Okay.

10:52:20  23          MR. BUNT:  But am I starting off a little bit

10:52:22  24   behind in your mind simply because of those feelings you

10:52:25  25   have about --

10:52:27  1          JUROR MAWER:  No, sir.

10:52:27  2          MR. BUNT:  -- lawsuits?  Thank you, sir.

10:52:30  3          Are there any others, let's say, in the jury box

10:52:33  4    that have strong feelings about lawsuits that would make it

10:52:38  5    difficult for you to sit on this jury panel?  Anybody?

10:52:40  6          How about over on this side?

10:52:42  7          Is there anybody on the jury panel over here -- on

10:52:54  8    the jury box who -- who has applied for a patent or has a

10:52:57  9    family member or a friend who has applied for a patent?

10:53:01  10         Yes, ma'am, Ms. Fisher, you said your stepson, I

10:53:07  11   believe; is that right?

10:53:08  12         JUROR FISHER:  Yes, sir.

10:53:09  13         MR. BUNT:  Can you tell me what -- what sort of

10:53:11  14   patent that was about?

10:53:13  15         JUROR FISHER:  It was something -- he worked for

10:53:14  16   the government.  It was something that was top secret.  So

10:53:18  17   I really don't know a lot about that.

10:53:21  18         MR. BUNT:  Okay.  Was he able to obtain the

10:53:23  19   patent?

10:53:24  20         JUROR FISHER:  I don't remember exactly how that

10:53:26  21   came out, if the government patented it or if he was

10:53:29  22   actually the one that got to patent it.

10:53:31  23         MR. BUNT:  Okay.  Anything about that experience

10:53:33  24   that'd make it hard to sit on this panel?

10:53:37  25         JUROR FISHER:  None.

```
10:53:37   1            MR. BUNT:  Thank you.

10:53:38   2            Ms. -- Ms. Sheryl Redmon -- no, okay.

10:53:45   3            Is there anybody else who has applied for a patent

10:53:48   4   or has a family member or a friend who has applied for a

10:53:52   5   patent or obtained a patent?  Is there anybody here who

10:53:56   6   works for companies that own patents?

10:54:01   7            Yes, sir, Mr. Mawer, remind me where you work.

10:54:06   8            JUROR MAWER:  Weatherford International, it's an

10:54:08   9   oil and gas company.

10:54:09  10            MR. BUNT:  Okay.  Do you know how they enforce

10:54:11  11   their property rights, their patent rights?

10:54:13  12            JUROR MAWER:  I don't.  I've never been involved

10:54:15  13   in it.

10:54:16  14            MR. BUNT:  Okay.  Thank you.

10:54:17  15            Is there anybody here who has ever been sued?

10:54:21  16   Let's see, in the jury box, ever been a Defendant in a

10:54:24  17   lawsuit?  How about over on this side?  Anybody?

10:54:28  18            Okay.  Mr. Bouzek, your niece -- I keep coming

10:54:35  19   back to you, Juror No. 1.  Your niece, you indicated, has a

10:54:37  20   law degree; is that right?

10:54:38  21            JUROR BOUZEK:  That's correct.

10:54:41  22            MR. BUNT:  And where does she work, if you know?

10:54:44  23            JUROR BOUZEK:  I don't know right now.

10:54:46  24            MR. BUNT:  Okay.  Do you know what kind of law she

10:54:49  25   does?
```

| | | |
|---|---|---|
| 10:54:49 | 1 | JUROR BOUZEK:  Has a medical nature to it. |
| 10:54:53 | 2 | MR. BUNT:  Okay.  I take it there's nothing about |
| 10:54:55 | 3 | that that will make it hard to sit on this jury? |
| 10:54:57 | 4 | JUROR BOUZEK:  No, sir. |
| 10:54:58 | 5 | MR. BUNT:  Okay.  Ms. Fisher, Juror No. 5, I may |
| 10:55:04 | 6 | have written this down wrong, but did you say that your |
| 10:55:08 | 7 | stepdaughter works at a law office? |
| 10:55:10 | 8 | JUROR FISHER:  She did when she was in high |
| 10:55:12 | 9 | school. |
| 10:55:12 | 10 | MR. BUNT:  Okay. |
| 10:55:13 | 11 | JUROR FISHER:  She -- she doesn't now. |
| 10:55:14 | 12 | MR. BUNT:  That doesn't have any bearing; is that |
| 10:55:15 | 13 | right? |
| 10:55:16 | 14 | JUROR FISHER:  Right. |
| 10:55:16 | 15 | MR. BUNT:  Okay.  Thank you. |
| 10:55:17 | 16 | Mr. -- no, let's see, Ms. Cheryl Jones, sorry, |
| 10:55:28 | 17 | Juror No. 2, yes, ma'am.  Your daughter, does she work at a |
| 10:55:32 | 18 | law firm? |
| 10:55:32 | 19 | JUROR JONES:  Yes. |
| 10:55:33 | 20 | MR. BUNT:  Which law firm is that? |
| 10:55:36 | 21 | JUROR JONES:  In Longview, Randy Akin. |
| 10:55:37 | 22 | MR. BUNT:  Okay.  What does she do there for him? |
| 10:55:39 | 23 | JUROR JONES:  She's a paralegal. |
| 10:55:40 | 24 | MR. BUNT:  Okay.  How long has she done that? |
| 10:55:42 | 25 | JUROR JONES:  She's done it for 15, something like |

| | | |
|---|---|---|
| 10:55:45 | 1 | that. |
| 10:55:45 | 2 | MR. BUNT:  Okay.  Thank you, ma'am.  I sure |
| 10:55:47 | 3 | appreciate that. |
| 10:55:49 | 4 | THE COURT:  You have five minutes remaining, |
| 10:55:51 | 5 | counsel. |
| 10:55:51 | 6 | MR. BUNT:  Thank you, Your Honor. |
| 10:55:51 | 7 | Are there any jurors here who know one another or |
| 10:55:56 | 8 | who may be related to one another?  You'd be surprised how |
| 10:56:01 | 9 | often that shows up. |
| 10:56:05 | 10 | Sorry, yes, sir, No. 6? |
| 10:56:09 | 11 | JUROR MEADE:  Yes. |
| 10:56:10 | 12 | MR. BUNT:  Tell me who you know. |
| 10:56:12 | 13 | JUROR MEADE:  That'd be No. 14 back here, |
| 10:56:16 | 14 | Ms. Pate. |
| 10:56:17 | 15 | MR. BUNT:  And how do you -- is it Mr. Richardson |
| 10:56:19 | 16 | that you know -- |
| 10:56:19 | 17 | JUROR MEADE:  No. |
| 10:56:20 | 18 | MR. BUNT:  -- or, no -- |
| 10:56:22 | 19 | JUROR MEADE:  Ms. Pate. |
| 10:56:23 | 20 | MR. BUNT:  Ms. Pate.  I apologize.  How do you |
| 10:56:27 | 21 | know Ms. Pate? |
| 10:56:28 | 22 | JUROR MEADE:  She was older than I was, but we all |
| 10:56:29 | 23 | went to the same high school.  And we coached tee ball |
| 10:56:36 | 24 | against each other and so... |
| 10:56:36 | 25 | MR. BUNT:  I don't think she liked it when you |

| | | |
|---|---|---|
| 10:56:37 | 1 | said she's older than you.  Okay.  So y'all --- y'all were |
| 10:56:41 | 2 | at the same school together coaching? |
| 10:56:43 | 3 | JUROR MEADE:  No, as far as tee ball goes, our |
| 10:56:46 | 4 | kids played against each other, and I mean, we were in the |
| 10:56:48 | 5 | same town. |
| 10:56:49 | 6 | MR. BUNT:  Okay.  Would -- would that create any |
| 10:56:51 | 7 | difficulties for you in sitting on this jury panel? |
| 10:56:55 | 8 | JUROR MEADE:  I don't think so. |
| 10:56:56 | 9 | MR. BUNT:  Okay.  Anybody else who knows one |
| 10:56:58 | 10 | another on the jury panel? |
| 10:57:01 | 11 | Yes, sir, Mr. Richardson? |
| 10:57:03 | 12 | JUROR RICHARDSON:  No. 2, Cheryl, friends.  Cheryl |
| 10:57:09 | 13 | Jones. |
| 10:57:09 | 14 | MR. BUNT:  Okay.  And how do y'all know each |
| 10:57:18 | 15 | other? |
| 10:57:18 | 16 | JUROR RICHARDSON:  Just from way past. |
| 10:57:18 | 17 | MR. BUNT:  All right. |
| 10:57:20 | 18 | JUROR RICHARDSON:  Distant friends.  We dated |
| 10:57:21 | 19 | actually for a little while. |
| 10:57:21 | 20 | MR. BUNT:  Okay.  We're learning lots of |
| 10:57:21 | 21 | information. |
| 10:57:22 | 22 | JUROR RICHARDSON:  We lost touch. |
| 10:57:22 | 23 | MR. BUNT:  Well, let's see what else we can find |
| 10:57:23 | 24 | out. |
| 10:57:23 | 25 | THE COURT:  That's the first time I've heard that |

```
10:57:24   1   one.

10:57:32   2            MR. BUNT:  That's right.

10:57:32   3            JUROR RICHARDSON:  She said sit down.

10:57:32   4            MR. BUNT:  Well, given that past, would it --

10:57:35   5   would that --

10:57:35   6            JUROR RICHARDSON:  Not at all.

10:57:36   7            MR. BUNT:  -- have some difficulties?

10:57:37   8            JUROR RICHARDSON:  Not at all.

10:57:39   9            MR. BUNT:  Okay.  Who else did we see a hand

10:57:42  10   raised on?

10:57:43  11            No. 12, Mr. Harris, who do you know on the panel?

10:57:45  12            JUROR KASSIDY HARRIS:  Yes.  Ms. Harris.  We're

10:57:46  13   actually not related, but we do attend church together.

10:57:50  14            MR. BUNT:  Okay.  Anything about that that would

10:57:52  15   make it difficult to sit on the jury panel?

10:57:54  16            JUROR KASSIDY HARRIS:  Absolutely not.

10:57:55  17            MR. BUNT:  While I've got you, though, let me ask

10:57:58  18   this:  If you had a difference of opinion from her, would

10:58:02  19   it be awkward to have that difference of opinion while

10:58:06  20   you're deliberating on a case if you know each other so

10:58:10  21   well from church?

10:58:11  22            JUROR KASSIDY HARRIS:  No.

10:58:12  23            MR. BUNT:  Okay.  Thank you.  Who else --

10:58:13  24            JUROR KASSIDY HARRIS:  Not for me anyway.

10:58:15  25            MR. BUNT:  Let me -- let me go back to Ms. Harris,
```

10:58:18   1   give you a moment for rebuttal from everybody.  Would

10:58:20   2   that -- would that case you any -- any concern?

10:58:26   3          JUROR GAYLE HARRIS:  No, not at all.

10:58:28   4          MR. BUNT:  Okay.  One follow-up question.  This

10:58:36   5   invention that USAA invented has to do with a system that

10:58:42   6   can be used with many different consumer devices.  Is there

10:58:45   7   anybody here who would find it hard to rule on a case where

10:58:49   8   the system can apply to many different devices, like

10:58:52   9   digital cameras, scanners, or -- or smartphones, iPhones,

10:58:57   10  anything about that that would cause difficulty to you?

10:59:00   11         JUROR NILSSON:  Can you repeat the question one

10:59:02   12  more time?

10:59:02   13         MR. BUNT:  Sure.  This invention has to do with a

10:59:04   14  way of using many different consumer devices to take great

10:59:08   15  pictures that are going to be able to use -- to be used to

10:59:12   16  deposit checks.  Is there anything that would make -- about

10:59:15   17  that that would make it hard for you to sit on this jury,

10:59:19   18  ruling on a system that can apply to many different

10:59:24   19  devices?  Anything about that, sir?

10:59:27   20         JUROR NILSSON:  No, I don't think so.  I just

10:59:28   21  wanted to understand your question correctly.

10:59:30   22         MR. BUNT:  I appreciate that.

10:59:31   23         One final question, and I'm sure I missed

10:59:34   24  something, if there's some reason you feel like this is not

10:59:37   25  the right case for you, that I've failed to ask you

| | | |
|---|---|---|
| 10:59:41 | 1 | something, and if I had, you would -- it's something that I |
| 10:59:43 | 2 | would really want to know.  If for whatever reason you feel |
| 10:59:47 | 3 | like this is not the case for you, please raise your hand. |
| 10:59:49 | 4 | If it's something you don't want to take up in front of |
| 10:59:52 | 5 | everybody, you want to take up privately with the Judge, we |
| 10:59:56 | 6 | can do this.  But this is the last chance.  If you feel |
| 11:00:00 | 7 | like this is not the right case for you, please raise your |
| 11:00:04 | 8 | hand and let me know. |
| 11:00:05 | 9 | Okay.  Thank you so much, ladies and gentlemen.  I |
| 11:00:05 | 10 | appreciate your time and attention, and we look forward to |
| 11:00:08 | 11 | putting on our case. |
| 11:00:09 | 12 | THE COURT:  Mr. Hill, you may address the panel on |
| 11:00:11 | 13 | behalf of the Defendant. |
| 11:00:11 | 14 | MR. HILL:  Thank you, Your Honor. |
| 11:00:15 | 15 | THE COURT:  And you'd like a five-minute warning, |
| 11:00:17 | 16 | as well? |
| 11:00:17 | 17 | MR. HILL:  Yes, sir, please. |
| 11:00:18 | 18 | THE COURT:  All right.  You may proceed. |
| 11:00:19 | 19 | MR. HILL:  Thank you. |
| 11:00:20 | 20 | Good morning, ladies and gentlemen. |
| 11:00:21 | 21 | As I mentioned to you earlier, my name is Wesley |
| 11:00:25 | 22 | Hill.  And to give fair disclosure, the information y'all |
| 11:00:30 | 23 | gave us, I'll give you the same. |
| 11:00:30 | 24 | I'm married.  I -- my wife's name is Catherine. |
| 11:00:35 | 25 | We've got a 25-year-old son that's a school teacher in |

| | | |
|---|---|---|
| 11:00:38 | 1 | Austin and a 12-year-old little girl that's a 7th grader |
| 11:00:42 | 2 | and a tennis player.  I grew up in Murchison over in |
| 11:00:42 | 3 | Henderson County.  That's over closer to Athens. |
| 11:00:47 | 4 | My law firm is based in Longview.  It's called |
| 11:00:50 | 5 | Ward Smith & Hill, that Mr. Bunt mentioned to you earlier. |
| 11:00:53 | 6 | That's my firm with me and my partners.  And along with my |
| 11:00:56 | 7 | co-counsel here, I'm proud to represent Wells Fargo in this |
| 11:01:00 | 8 | case. |
| 11:01:00 | 9 | Now, folks, I only get 30 minutes to talk to you |
| 11:01:04 | 10 | this morning.  So I want to spend my time this morning |
| 11:01:07 | 11 | focused on what's most important to me, and that's you, |
| 11:01:12 | 12 | okay? |
| 11:01:12 | 13 | I want to start by saying thank you because I know |
| 11:01:16 | 14 | that jury service is an imposition on your time.  I know |
| 11:01:20 | 15 | that it is a pain to have to disrupt your schedule, your |
| 11:01:24 | 16 | life, show up at the courthouse early one morning, sit |
| 11:01:31 | 17 | around, watch videos about things you might not find that |
| 11:01:31 | 18 | interesting, and then have lawyers talk at you for a couple |
| 11:01:34 | 19 | of hours, okay?  Not to mention the service and the time |
| 11:01:37 | 20 | imposition that will exist for those of you who serve on |
| 11:01:40 | 21 | this jury.  So I wanted to first, right out of the box, |
| 11:01:44 | 22 | tell you, thank you very much for being here.  You're what |
| 11:01:47 | 23 | makes the system work. |
| 11:01:48 | 24 | Now, Mr. Bunt had some things to say about USAA's |
| 11:01:52 | 25 | claims in this case.  He talks about what their claims in |

11:01:55   1   this case are.  And because I want to talk to you, all I'm

11:01:59   2   going to say at this point is that Wells Fargo respects

11:02:02   3   USAA, but we disagree with just about everything Mr. Bunt

11:02:09   4   had to say about the claims in these case -- in this case

11:02:13   5   and the patents in this case.

11:02:14   6         And those of you -- that's why we're here is to

11:02:18   7   get to present that dispute.  And those of you who serve on

11:02:25   8   this jury are going to get a chance to hear the full story

11:02:28   9   of that dispute and hear why I tell you that we disagree

11:02:31  10   with USAA and look forward to getting to show that to those

11:02:33  11   of you that -- that serve.

11:02:34  12         Now, folks, the reason we go through this process,

11:02:36  13   the reason we take all this time to talk to everybody, you

11:02:40  14   fill out the questionnaires, you answer the questions that

11:02:42  15   the Judge has you stand up and answer, is we're trying to

11:02:45  16   find a jury that's committed to being fair to both sides,

11:02:50  17   okay?  Fair to both sides.

11:02:51  18         And so what does that mean?  Think about that.

11:02:57  19   Think about if -- if you had an important case, what would

11:03:01  20   it mean for you for the jury to be fair to both sides?  And

11:03:05  21   I'll start out with Juror No. 1 here.  Mr. Bouzek, let

11:03:11  22   me -- let me ask, what would it mean to you for a jury to

11:03:17  23   be fair to both sides?

11:03:19  24         JUROR BOUZEK:  It would be very important to me if

11:03:20  25   I was on trial or my company.

| | | |
|---|---|---|
| 11:03:22 | 1 | MR. HILL:  Okay.  Does it mean that that jury |
| 11:03:25 | 2 | doesn't start out leaning one way or the other? |
| 11:03:28 | 3 | JUROR BOUZEK:  Absolutely. |
| 11:03:29 | 4 | MR. HILL:  Doesn't start out pre-disposed? |
| 11:03:32 | 5 | JUROR BOUZEK:  That's correct. |
| 11:03:32 | 6 | MR. HILL:  All right.  Thank you, sir. |
| 11:03:35 | 7 | Let me ask just you to pass the microphone down |
| 11:03:38 | 8 | there to Juror No. 2 next to you. |
| 11:03:41 | 9 | Ms. Jones -- |
| 11:03:41 | 10 | JUROR JONES:  Yes. |
| 11:03:41 | 11 | MR. HILL:  -- I'm going to ask you, what does it |
| 11:03:42 | 12 | mean to you for a jury to be fair to both sides? |
| 11:03:45 | 13 | JUROR JONES:  Same thing.  I mean, he -- exactly |
| 11:03:46 | 14 | what he was talking about. |
| 11:03:47 | 15 | MR. HILL:  Let me ask you this:  Does it mean that |
| 11:03:48 | 16 | the jury doesn't make their mind up early based on who the |
| 11:03:53 | 17 | parties are or what they think they know about them coming |
| 11:03:56 | 18 | in? |
| 11:03:57 | 19 | JUROR JONES:  Correct. |
| 11:03:58 | 20 | MR. HILL:  All right.  Does anybody disagree with |
| 11:04:01 | 21 | Ms. Jones?  Everybody agree that for a jury to be fair to |
| 11:04:06 | 22 | both sides, it doesn't mean they make their mind up early |
| 11:04:10 | 23 | or come in deciding things based on what they think they |
| 11:04:13 | 24 | know? |
| 11:04:14 | 25 | Let me ask -- we'll start there on the back row |

| | | |
|---|---|---|
| 11:04:16 | 1 | since we've got some -- you're there close, Mr. Johnston. |
| 11:04:21 | 2 | Juror No. 9, that's Ms. Manning? |
| 11:04:21 | 3 | JUROR MANNING:  Yes. |
| 11:04:24 | 4 | MR. HILL:  Ms. Manning, what do you think it means |
| 11:04:26 | 5 | for a jury to be fair to both sides? |
| 11:04:28 | 6 | JUROR MANNING:  Well, I think it should be equal |
| 11:04:32 | 7 | to both of them. |
| 11:04:34 | 8 | MR. HILL:  Do you think it -- do you think it |
| 11:04:36 | 9 | means that you hear all the evidence before you make up |
| 11:04:39 | 10 | your mind on what the real story is? |
| 11:04:42 | 11 | JUROR MANNING:  Well, I have to see what -- what |
| 11:04:47 | 12 | the story about before I could say. |
| 11:04:51 | 13 | MR. HILL:  Is there anybody right now -- and let |
| 11:04:53 | 14 | me -- I'll start with you, Ms. Manning.  Is there anybody |
| 11:04:55 | 15 | right now, because maybe of what you think of USAA or maybe |
| 11:05:01 | 16 | because of something Mr. Bunt had to say this morning when |
| 11:05:05 | 17 | he was talking to you about USAA and their claims, that you |
| 11:05:08 | 18 | feel like that, in fairness, you ought to tell us, you |
| 11:05:15 | 19 | know, I think I might start out leaning a bit their way? |
| 11:05:19 | 20 | Do you feel that way? |
| 11:05:21 | 21 | JUROR MANNING:  No. |
| 11:05:22 | 22 | MR. HILL:  No, ma'am? |
| 11:05:22 | 23 | JUROR MANNING:  No, sir. |
| 11:05:22 | 24 | MR. HILL:  You feel that way? |
| 11:05:25 | 25 | JUROR MANNING:  No, sir, no, sir. |

| | | |
|---|---|---|
| 11:05:27 | 1 | MR. HILL:  We start out equal footing? |
| 11:05:29 | 2 | JUROR MANNING:  Yes. |
| 11:05:29 | 3 | MR. HILL:  Thank you very much.  I appreciate it. |
| 11:05:30 | 4 | Let me ask this:  Is there anybody else that has |
| 11:05:33 | 5 | opinions about -- because of the opinions they hold about |
| 11:05:35 | 6 | USAA or the opinions that they hold about Wells Fargo, that |
| 11:05:39 | 7 | you feel like you start out in this case maybe a little |
| 11:05:44 | 8 | predisposed, and you're not the person for this case -- for |
| 11:05:50 | 9 | this case that can be that juror that is a hundred percent |
| 11:05:54 | 10 | fair on both sides?  Anybody? |
| 11:05:57 | 11 | Now, look, if -- if you do lean one way or another |
| 11:06:03 | 12 | on something, there's nothing wrong with that.  That |
| 11:06:05 | 13 | doesn't mean you don't get to serve on a jury.  All it |
| 11:06:08 | 14 | means is that we've got to make full disclosure here so |
| 11:06:12 | 15 | that the parties know where they start, okay? |
| 11:06:14 | 16 | And let me ask first -- I'll go back to Juror |
| 11:06:20 | 17 | No. 1 here, Mr. Bouzek, you had some things to say in the |
| 11:06:22 | 18 | questionnaire about Wells Fargo. |
| 11:06:25 | 19 | JUROR BOUZEK:  Yes. |
| 11:06:26 | 20 | MR. HILL:  And past experiences you had with the |
| 11:06:29 | 21 | company. |
| 11:06:29 | 22 | JUROR BOUZEK:  Correct. |
| 11:06:30 | 23 | MR. HILL:  Do you believe those past experiences |
| 11:06:32 | 24 | start you out with a -- where we start out a little bit |
| 11:06:37 | 25 | behind? |

| | | |
|---|---|---|
| 11:06:38 | 1 | JUROR BOUZEK:  No, I don't think so.  It's been |
| 11:06:42 | 2 | years ago, and, you know, if it was closer to that time, |
| 11:06:46 | 3 | I'd say yeah -- |
| 11:06:47 | 4 | MR. HILL:  Okay. |
| 11:06:47 | 5 | JUROR BOUZEK:  -- anyhow. |
| 11:06:49 | 6 | MR. HILL:  Okay.  Nothing that you think would |
| 11:06:52 | 7 | influence your ability to be that impartial jury where that |
| 11:06:55 | 8 | I as a lawyer for Wells Fargo should have concerns about |
| 11:07:01 | 9 | anything from your past interactions with the company. |
| 11:07:03 | 10 | JUROR BOUZEK:  I don't think so. |
| 11:07:04 | 11 | MR. HILL:  All right.  All right.  It certainly |
| 11:07:04 | 12 | didn't have anything to do with patents, did it? |
| 11:07:06 | 13 | JUROR BOUZEK:  No, sir. |
| 11:07:06 | 14 | MR. HILL:  Thank you very much. |
| 11:07:07 | 15 | Also, by the same token, we had Ms. -- |
| 11:07:11 | 16 | Ms. Hilgenfeld over here, yes, ma'am, can I talk to you for |
| 11:07:14 | 17 | just a second?  Now, you mentioned your business works a |
| 11:07:18 | 18 | lot for Wells Fargo -- |
| 11:07:20 | 19 | JUROR HILGENFELD:  Yes, sir. |
| 11:07:20 | 20 | MR. HILL:  -- is that right?  And you think |
| 11:07:21 | 21 | because of that that you might start out predisposed? |
| 11:07:25 | 22 | JUROR HILGENFELD:  I honestly can't tell you.  I |
| 11:07:32 | 23 | mean, I don't know for sure.  I mean, since it's a patent |
| 11:07:35 | 24 | case, but at the same time, if they were sued -- |
| 11:07:46 | 25 | MR. HILL:  Uh-huh. |

11:07:47  1          JUROR HILGENFELD:  -- or if they lost, then, you

11:07:50  2   know, that may have bearings.  I don't -- I'm kind of

11:07:54  3   wishy-washy there.

11:07:55  4          MR. HILL:  Okay.  Let me ask this question:  Who

11:07:57  5   in the jury panel thinks the folks at USAA's table ought to

11:08:02  6   be concerned a little bit if Ms. Hilgenfeld was on the

11:08:05  7   jury?

11:08:07  8          Okay.  I think we all kind of see that.  I mean,

11:08:10  9   she's got a business that -- that gets a lot of work from

11:08:13  10  Wells Fargo, and that doesn't mean she's not fair-minded.

11:08:16  11  It doesn't mean she wouldn't sit and consider the evidence

11:08:19  12  fairly, but it means she would start out because of her

11:08:23  13  experience with Wells Fargo probably in a way that would

11:08:25  14  make them a little uncomfortable, probably in a way that

11:08:28  15  would make people on the street looking at this trial think

11:08:32  16  maybe there was something going on there, maybe they didn't

11:08:34  17  get a fair shake, okay?  Everybody see that?

11:08:38  18          Thank you, Ms. Hilgenfeld.

11:08:40  19          JUROR HILGENFELD:  Thank you.

11:08:41  20          MR. HILL:  Appreciate that.

11:08:41  21          And, folks, the reason I bring that up, is there

11:08:44  22  anybody -- that works both ways.  Is there anybody that has

11:08:48  23  a relationship with USAA or opinions about USAA that makes

11:08:52  24  you feel like I might be a little bit in Ms. Hilgenfeld's

11:08:57  25  camp, if -- if Mr. Hill up there knew what I think about

| | | |
|---|---|---|
| 11:09:02 | 1 | USAA, it might look like I start out a little slanted?  You |
| 11:09:07 | 2 | know, it doesn't mean you're not fair-minded, it just means |
| 11:09:09 | 3 | it's how you view folks, it's how you view the parties in |
| 11:09:13 | 4 | the case.  Anybody? |
| 11:09:14 | 5 | All right.  I appreciate that. |
| 11:09:16 | 6 | Now, ladies and gentlemen, before I get too far, |
| 11:09:20 | 7 | let me ask the obvious questions that lawyers have to ask |
| 11:09:23 | 8 | in these things and, that is, do you know anybody here on |
| 11:09:26 | 9 | the other side? |
| 11:09:27 | 10 | So we'll start out, you've got the lawyers in this |
| 11:09:30 | 11 | case for USAA, is a law firm called Irell & Manella, and |
| 11:09:36 | 12 | their lead lawyer in this case is a gentleman named |
| 11:09:40 | 13 | Mr. Jason Sheasby.  He's from Los Angeles.  And does anyone |
| 11:09:42 | 14 | here have any connection or has ever heard of or know |
| 11:09:45 | 15 | anything about the law firm Irell & Manella?  Anybody? |
| 11:09:50 | 16 | All right.  And you previously met Mr. Bunt. |
| 11:09:53 | 17 | Mr. Bunt is from Tyler.  He is with a firm called Parker |
| 11:09:59 | 18 | Bunt and Ainsworth, and Mr. Bunt and his wife's family, the |
| 11:10:02 | 19 | Parkers, are from the Hallsville area originally.  Does |
| 11:10:07 | 20 | anybody here have any connection to Mr. Bunt, heard of his |
| 11:10:10 | 21 | law firm, or you think you know either the Bunts or the |
| 11:10:14 | 22 | Parkers from the Hallsville area?  Anybody? |
| 11:10:20 | 23 | All right.  Oh, I'm sorry. |
| 11:10:23 | 24 | JUROR RANKIN:  I know some of the Parkers that |
| 11:10:25 | 25 | work in the high school. |

11:10:25  1          THE COURT:  Let's get the microphone and let you

11:10:27  2     stand up, please, sir.

11:10:29  3          MR. HILL:  Thank you.  That's Mr. Rankin.

11:10:32  4          JUROR RANKIN:  Yes, I know a couple of the Parkers

11:10:34  5     that work at the high school, but I was not -- unaware

11:10:36  6     there was any connections.

11:10:38  7          MR. HILL:  So you know some Parkers, but you don't

11:10:40  8     know them to be Mr. Bunt's in-laws?

11:10:43  9          JUROR RANKIN:  No, sir.

11:10:44  10         MR. HILL:  Thank you very much.  Anybody else?

11:10:46  11         Now, there's one other person I'd like to mention,

11:10:49  12    Mr. Todd Parish.  Mr. Parish is assisting USAA with the

11:10:53  13    jury selection in the case.  Is there anybody that knows

11:11:00  14    Mr. Parish?

11:11:01  15         All right.  Now, as I mentioned earlier, USAA is

11:11:05  16    the Plaintiff in this case, and according to Wikipedia,

11:11:09  17    USAA is the United Services Automobile Association --

11:11:15  18    that's what that stands for -- in San Antonio.  It is a

11:11:19  19    diversified financial services group of companies including

11:11:22  20    a Texas Department of Insurance regulated reciprocal

11:11:27  21    insurance exchange.  And it has subsidiaries offering

11:11:30  22    banking, investing, and insurance.

11:11:32  23         Is there anyone here who is a USAA customer --

11:11:38  24    USAA customer?  Let me see your hands here.  So we've got

11:11:42  25    No. 6, that's Mr. Meade, okay, we've got No. 19, that's

```
11:11:46   1   Mr. Pickens.  Who else do we have out there?  No. 22.

11:11:53   2          JUROR NEELEY:  My wife is.

11:11:55   3          MR. HILL:  Your wife is, okay, and that's

11:11:59   4   Mr. Neeley?

11:12:00   5          JUROR NEELEY:  Yes.

11:12:01   6          MR. HILL:  All right.  Who else, Ms. Black?

11:12:04   7          Anybody I miss?  USAA customer or maybe your

11:12:07   8   spouse is?

11:12:08   9          All right.  Thank you.

11:12:09  10          Now, those of you who -- one thing you're going to

11:12:19  11   hear, those of you that serve on the panel and also those

11:12:22  12   of you just from everyday life may know, is that USAA,

11:12:27  13   they're an insurance company, but they also have banking

11:12:29  14   services.  And that's part of what's at issue in this case.

11:12:32  15   And they limit their services -- their insurance services

11:12:37  16   or their banking services to current or former members of

11:12:40  17   the military and their families, okay.  That's what USAA

11:12:43  18   does.  That's who they sell to.

11:12:46  19          Does hearing that cause anybody to feel like they

11:12:49  20   thought -- they start off more on the USAA side because

11:12:54  21   they try to service military families?  Anybody?

11:12:58  22          Does anybody here recall seeing USAA ads on TV?

11:13:04  23   Let me see hands.  How many of you have see them?

11:13:09  24          All right.  Does anybody recall anything from

11:13:11  25   those ads?
```

| | | |
|---|---|---|
| 11:13:12 | 1 | Who do we have -- Mr. Bouzek.  Do you -- tell me |
| 11:13:15 | 2 | about that.  What -- what do you recall from those ads? |
| 11:13:18 | 3 | JUROR BOUZEK:  Just that, that they service prior |
| 11:13:22 | 4 | service members, and that's what sticks in my mind. |
| 11:13:25 | 5 | MR. HILL:  Okay. |
| 11:13:26 | 6 | JUROR BOUZEK:  So that's what I remember about |
| 11:13:28 | 7 | them, car, house, whatever. |
| 11:13:29 | 8 | MR. HILL:  Is there anything about the advertising |
| 11:13:31 | 9 | that you folks have seen that cause you to think you start |
| 11:13:34 | 10 | out having a more favorable view of USAA?  Do those ads |
| 11:13:40 | 11 | cause any of you to have just generally more favorable |
| 11:13:45 | 12 | views of USAA?  Do they cause any of you to have more |
| 11:13:50 | 13 | negative views of USAA? |
| 11:13:53 | 14 | Okay.  Thank you, sir.  I appreciate it. |
| 11:13:58 | 15 | Let me ask similarly about Wells Fargo.  Okay. |
| 11:14:02 | 16 | Wells Fargo also has television ads.  Does anybody recall |
| 11:14:05 | 17 | seeing Wells Fargo ads?  Let me see your hands.  Is there |
| 11:14:10 | 18 | anything about that advertising that makes anybody lean one |
| 11:14:13 | 19 | way or the other? |
| 11:14:14 | 20 | Now, this case involves two corporations, as we've |
| 11:14:21 | 21 | shown.  They're both large.  They're both successful.  And |
| 11:14:25 | 22 | is there anybody that, because of that, you have feelings |
| 11:14:30 | 23 | about big corporations generally?  Some people don't like |
| 11:14:33 | 24 | them.  Some people think it's a big corporation, I don't |
| 11:14:39 | 25 | really care for them.  Anybody share that feeling, feel |

```
11:14:44    1    that way?
11:14:46    2         Is there anybody who is concerned about big
11:14:51    3    corporations or think they ought to be subject to some sort
11:14:54    4    of government regulation?  Anyone?
11:14:58    5         All right.  Let me ask -- Mr. Bunt asked those of
11:15:04    6    you that knew each other.  I think there were a couple of
11:15:07    7    others he may have missed.  Let me see the hands again of
11:15:11    8    jurors that know one another.
11:15:12    9         All right.  Back here in the back.  We have Mr. --
11:15:14   10    No. 22, that's Mr. Neeley.
11:15:16   11         JUROR NEELEY:  Yes, sir.
11:15:17   12         MR. HILL:  Mr. Neeley, tell me who you know.
11:15:19   13         JUROR NEELEY:  Cooper Terry, me and him used to
11:15:23   14    work together.
11:15:23   15         MR. HILL:  Okay.  Where did y'all work?
11:15:25   16         JUROR NEELEY:  Fastenal.
11:15:26   17         MR. HILL:  All right.  Are y'all friends today or
11:15:28   18    just former work associates?
11:15:31   19         JUROR NEELEY:  Former work associates.
11:15:34   20         MR. HILL:  All right.  Thank you, sir.  Anything
11:15:35   21    about that, Mr. Neeley, that if you and Mr. Terry both
11:15:39   22    ended up on the jury that you think would be hard for you?
11:15:43   23         JUROR NEELEY:  No, sir.
11:15:43   24         MR. HILL:  If you and he disagreed, would you be
11:15:47   25    able to do that based on the fact that you know each other?
```

11:15:50  1          JUROR NEELEY:  Yes, sir.

11:15:51  2          MR. HILL:  All righty.  Is there anybody who did

11:15:55  3   know folks on the jury who thinks, you know, if I got in a

11:15:57  4   jury room and me and that other person saw it different,

11:16:02  5   that might be an uncomfortable situation for me because of

11:16:04  6   that past relationship?  Was that a concern for anybody?

11:16:07  7   All right.

11:16:07  8          Now, folks, as you heard in the video this

11:16:12  9   morning, this is a patent case, and the patent system is

11:16:15  10  based on a bargain between the government and the inventor.

11:16:20  11  And as the video explained this morning, if you have

11:16:23  12  something that's new and what patent lawyers call novel and

11:16:28  13  if you clearly specify and describe that invention, tell

11:16:31  14  others how to make it in your patent and the Patent Office

11:16:34  15  agrees that it's new and novel and you've done those

11:16:37  16  things, then you can get a government-granted monopoly on

11:16:43  17  that.  You can get a patent on it.  That's what a patent

11:16:46  18  is.  And it's good for about 20 years, and after that it

11:16:49  19  belongs to everybody.  The ideas in that patent belong to

11:16:52  20  everybody.

11:16:52  21          Is there anybody who didn't realize before the

11:16:55  22  video today that that's effectively what a patent is, is a

11:16:59  23  government -- government-granted exclusivity, a

11:17:03  24  government-granted monopoly?

11:17:04  25          Was that a surprise to anybody?

11:17:09    1          Now, is there anybody that came to court today

11:17:13    2   with any feelings about the Patent Office or you had an

11:17:16    3   opinion, you thought about it in the past?  It crossed your

11:17:20    4   mind and you have an opinion about the Patent Office?

11:17:23    5          For instance, does anybody come here today feeling

11:17:26    6   like the Patent Office generally does a pretty good job of

11:17:30    7   vetting patent applications and deciding whether to issue

11:17:33    8   patents?  Anybody come here today thinking that?

11:17:37    9          Let me call out somebody and ask.  Let's start on

11:17:40   10   the back row here, No. 12, Mr. Harris, let me ask you that

11:17:51   11   question.  Coming into court today, did you have any just

11:17:54   12   preconceived notion of the quality of the work the Patent

11:17:57   13   Office does?

11:17:58   14          JUROR KASSIDY HARRIS:  No, I did not.

11:17:59   15          MR. HILL:  All right.  What about next to you?

11:18:01   16   We'll go to Mr. Richardson.

11:18:04   17          JUROR RICHARDSON:  No, I did not.

11:18:06   18          MR. HILL:  No -- one way or the other?

11:18:06   19          JUROR RICHARDSON:  No, sir.

11:18:06   20          MR. HILL:  No --

11:18:06   21          JUROR RICHARDSON:  Never had any dealings with

11:18:06   22   patents.

11:18:07   23          MR. HILL:  All right.  And then here on the end,

11:18:08   24   No. 14, Ms. Pate?

11:18:13   25          JUROR PATE:  No, sir, no feelings.

```
11:18:15    1           MR. HILL:  All right.  One of the defenses that
11:18:17    2    the jury in this case is going to hear about and will
11:18:19    3    decide is whether USAA's patents are invalid, okay?  That's
11:18:25    4    one of the issues that are going to exist in this case.
11:18:27    5    And a finding of invalidity means that you will be
11:18:31    6    canceling the patent USAA claims in this case.
11:18:34    7           Now, those are patents that were issued by the
11:18:38    8    Patent Office, and I'll -- I've done this a number of times
11:18:41    9    over the years.  A lot of folks don't feel comfortable with
11:18:43   10    that role, okay?  A lot of people think, I'm going to serve
11:18:46   11    on a jury, and I'm going to be asked to cancel a patent
11:18:53   12    that the Patent Office issued, I don't so much know about
11:18:57   13    that.
11:18:57   14           And so what I'm asking is, is there anybody out
11:19:00   15    there that feels like a jury shouldn't be the one asked to
11:19:03   16    invalidate a patent?  Anybody feel that way?  Anybody feel
11:19:07   17    uncomfortable knowing you're going to sit on a case where
11:19:10   18    depending on what the evidence shows, you may be in a
11:19:13   19    position where you have to invalidate a patent?  Does that
11:19:18   20    cause anybody discomfort?
11:19:19   21           Let's ask Mr. -- Mr. Nilsson.
11:19:23   22           JUROR NILSSON:  My question -- I actually had a
11:19:24   23    question because what --
11:19:24   24           MR. HILL:  Okay.
11:19:25   25           JUROR NILSSON:  -- what you're saying is, at the
```

| | | |
|---|---|---|
| 11:19:26 | 1 | end of the day, so the decision made by the jury will not |
| 11:19:31 | 2 | only could -- it will invalidate a patent and then |
| 11:19:36 | 3 | naturally any money that someone was seeking would be |
| 11:19:40 | 4 | negated, as well? |
| 11:19:42 | 5 | MR. HILL:  That's right. |
| 11:19:44 | 6 | JUROR NILSSON:  That is what you're -- that's what |
| 11:19:44 | 7 | you're saying? |
| 11:19:44 | 8 | MR. HILL:  Yes, sir. |
| 11:19:44 | 9 | JUROR NILSSON:  Okay.  Just so we're clear. |
| 11:19:45 | 10 | MR. HILL:  If the patent is invalid -- if the |
| 11:19:46 | 11 | patent is invalid, then USAA can't use that invalid patent |
| 11:19:49 | 12 | to demand money damages -- |
| 11:19:49 | 13 | JUROR NILSSON:  Understood. |
| 11:19:51 | 14 | MR. HILL:  -- from a company like Wells Fargo. |
| 11:19:52 | 15 | JUROR NILSSON:  That makes it clear for all of us. |
| 11:19:55 | 16 | MR. HILL:  All right.  Is there anybody who thinks |
| 11:19:58 | 17 | to themselves -- and, Mr. Nilsson, I'll start with you |
| 11:20:01 | 18 | since we were talking about it -- who thinks, you know, if |
| 11:20:03 | 19 | the -- if the evidence supported it, I might still have a |
| 11:20:09 | 20 | little hesitancy about invalidating a patent? |
| 11:20:12 | 21 | JUROR NILSSON:  I -- I'm not educated enough to |
| 11:20:15 | 22 | make that decision yet.  I need to have some more |
| 11:20:18 | 23 | information because I'm just not -- we're not there yet for |
| 11:20:21 | 24 | me to be able to answer the question. |
| 11:20:25 | 25 | MR. HILL:  Yes, sir. |

11:20:25   1          JUROR NILSSON:  I don't have all the facts.

11:20:26   2          MR. HILL:  A lot of people think -- you know, they

11:20:28   3   think, well, you know, that may be the law, but I couldn't

11:20:29   4   take away a patent issued by the Patent Office.  Do you

11:20:32   5   feel that way?

11:20:33   6          JUROR NILSSON:  I'm -- I'm just not ready to

11:20:35   7   make -- I just -- I can't answer it honestly because I

11:20:37   8   don't know.  I'm going to want to know more of the rules

11:20:41   9   and how all that stuff works.

11:20:42  10          MR. HILL:  Yes, sir.  And -- and once you learn

11:20:43  11   those rules and hear those rules, if the Judge tells you

11:20:47  12   that those are the rules and that's what you'll be asked to

11:20:49  13   do, do you believe you'd be able to consider the evidence

11:20:49  14   and decide that question and invalidate a patent if you

11:20:53  15   needed to?

11:20:53  16          JUROR NILSSON:  If it's wrong, it's wrong; if it's

11:20:55  17   right, it's right.

11:20:56  18          MR. HILL:  All right.  Let me go down the row

11:21:00  19   here.  Mr. -- Mr. Meade next to you.

11:21:02  20          Mr. Meade, how do you feel about that?

11:21:02  21          JUROR MEADE:  I'm kind of one of the ones that --

11:21:05  22   you know, it's not going to sway me either way.  If it's --

11:21:07  23   the findings go that it needs to be invalidated or

11:21:11  24   validated, either way.  In some ways, I kind of look at --

11:21:13  25   maybe it's a Patent Office issue that shouldn't be a jury.

| | | |
|---|---|---|
| 11:21:16 | 1 | MR. HILL:  Uh-huh. |
| 11:21:17 | 2 | JUROR MEADE:  But that's kind of dealing with |
| 11:21:19 | 3 | things at work.  Usually, if it's your fight, then deal |
| 11:21:23 | 4 | with the people that should be dealing with it, not |
| 11:21:26 | 5 | necessarily anybody else.  But that's -- that's kind of |
| 11:21:29 | 6 | just a -- the way my business goes.  That's the way it's |
| 11:21:31 | 7 | kind of dealt with.  If it's your problem, you deal with it |
| 11:21:36 | 8 | with the people that it's circled around. |
| 11:21:36 | 9 | MR. HILL:  Well, if the -- if the Judge instructs |
| 11:21:38 | 10 | you on the law in this case and says that's an issue the |
| 11:21:42 | 11 | jury has to decide, that's the jury's role -- |
| 11:21:42 | 12 | JUROR MEADE:  Uh-huh. |
| 11:21:43 | 13 | MR. HILL:  -- would you be able to perform that |
| 11:21:45 | 14 | role? |
| 11:21:45 | 15 | JUROR MEADE:  Yes, sir. |
| 11:21:47 | 16 | MR. HILL:  All right.  Is there anybody that would |
| 11:21:48 | 17 | have pause, who would think, Mr. Hill, that may be the law, |
| 11:21:51 | 18 | but I -- even if the evidence is there, I don't know if I |
| 11:21:55 | 19 | could invalidate a patent. |
| 11:21:58 | 20 | Let me start on the back row, folks I haven't |
| 11:22:01 | 21 | talked to here -- No. 10 here, if I can.  That's |
| 11:22:05 | 22 | Ms. Walker. |
| 11:22:06 | 23 | Ms. Walker, how do you feel about that? |
| 11:22:08 | 24 | JUROR WALKER:  I feel that if evidence presented |
| 11:22:10 | 25 | the fact that it was not valid, then I could rule it not |

| | | |
|---|---|---|
| 11:22:15 | 1 | valid. |
| 11:22:16 | 2 | MR. HILL:  Okay.  And then No. 9 right next to you |
| 11:22:19 | 3 | there.  Again, Ms. Manning? |
| 11:22:19 | 4 | JUROR MANNING:  Well, I feels the same way she |
| 11:22:23 | 5 | just said. |
| 11:22:24 | 6 | MR. HILL:  Okay.  And then No. 8 beside you there, |
| 11:22:28 | 7 | Ms. McDonald? |
| 11:22:29 | 8 | JUROR MCDONALD:  I feel the same way. |
| 11:22:32 | 9 | MR. HILL:  All right. |
| 11:22:32 | 10 | JUROR MCDONALD:  Whatever the evidence. |
| 11:22:33 | 11 | MR. HILL:  Is there anybody that disagrees with |
| 11:22:35 | 12 | them? |
| 11:22:39 | 13 | Now, let me see the hands of everybody that gets a |
| 11:22:42 | 14 | property tax bill every year from the county appraiser. |
| 11:22:45 | 15 | Doesn't bring a happy face when you raise that hand. |
| 11:22:48 | 16 | Now, let me -- let me just start -- let me see |
| 11:22:51 | 17 | those hands again.  Let me see who all we've got.  All |
| 11:22:55 | 18 | right.  Let's -- let's start here on the -- No. 15, that's |
| 11:22:59 | 19 | Ms. -- Ms. Shepard? |
| 11:23:00 | 20 | Ms. Shepard, let me ask you about that.  Now, you |
| 11:23:05 | 21 | get that property tax appraisal every year, right?  And the |
| 11:23:08 | 22 | appraisal district has trained professional appraisers, |
| 11:23:12 | 23 | right? |
| 11:23:12 | 24 | JUROR SHEPARD:  Right. |
| 11:23:14 | 25 | MR. HILL:  And it's their work for them to come up |

| | | |
|---|---|---|
| 11:23:16 | 1 | with that new property value each year.  Are those |
| 11:23:18 | 2 | appraisals always right? |
| 11:23:20 | 3 | JUROR SHEPARD:  In my mind, no. |
| 11:23:22 | 4 | MR. HILL:  Okay.  Why not? |
| 11:23:24 | 5 | JUROR SHEPARD:  I just feel like it reflects an |
| 11:23:28 | 6 | amount that not always -- you know, we haven't always done |
| 11:23:29 | 7 | improvements to our property and this and that, I don't |
| 11:23:32 | 8 | feel like.  But I do pay my taxes so... |
| 11:23:33 | 9 | MR. HILL:  Yes, ma'am.  We all have to -- |
| 11:23:37 | 10 | begrudgingly or not, we have to. |
| 11:23:41 | 11 | JUROR SHEPARD:  Right. |
| 11:23:41 | 12 | MR. HILL:  Let me ask, is there anybody who |
| 11:23:43 | 13 | disagrees with Ms. Shepard and thinks, no, you know, the |
| 11:23:45 | 14 | tax office, they get those appraisals right?  Okay. |
| 11:23:50 | 15 | They make -- mistakes can be made, correct? |
| 11:23:55 | 16 | JUROR SHEPARD:  Correct. |
| 11:23:56 | 17 | MR. HILL:  Have you ever had to challenge an |
| 11:23:59 | 18 | appraisal? |
| 11:24:02 | 19 | JUROR SHEPARD:  Not that I recall, no. |
| 11:24:03 | 20 | MR. HILL:  Has anybody here ever challenged their |
| 11:24:06 | 21 | tax appraisal? |
| 11:24:07 | 22 | All right.  Let's see, No. 5 here, Ms. Fisher. |
| 11:24:07 | 23 | Thank you, Ms. Shepard. |
| 11:24:13 | 24 | Ms. Fisher, you've challenged a tax appraisal? |
| 11:24:13 | 25 | JUROR FISHER:  Yes, sir. |

11:24:14  1          MR. HILL:  All right.  Did you know that if you

11:24:15  2    take that far enough, you can even get a trial in court

11:24:19  3    over that property value?

11:24:20  4          JUROR FISHER:  I didn't.  I was able to settle it.

11:24:22  5          MR. HILL:  All right.  Very good.  But why do we

11:24:23  6    have that process, Ms. Fisher?

11:24:26  7          JUROR FISHER:  Well, to make sure that everything

11:24:28  8    is equal and -- and balanced.

11:24:32  9          MR. HILL:  All right.  So it's a check and a

11:24:34  10   balance on the -- on the appraisal office because sometimes

11:24:38  11   when things are done the first time, government agencies

11:24:41  12   don't all get it right, do they?

11:24:42  13         JUROR FISHER:  That's correct.

11:24:43  14         MR. HILL:  Anybody think government agencies are

11:24:47  15   infallible?

11:24:49  16         Okay.  Now, the Patent Office, Ms. Fisher, let

11:24:51  17   me -- let me just ask you a question about this.  The

11:24:53  18   Patent Office is a federal government agency, like the IRS,

11:24:57  19   like the VA, or other federal government agencies.  Have

11:25:02  20   you ever had any dealings with a federal government agency?

11:25:03  21         JUROR FISHER:  I've worked for the federal

11:25:05  22   government.

11:25:05  23         MR. HILL:  Okay.  Who did you work for?

11:25:06  24         JUROR FISHER:  It was an ammunition plant.

11:25:09  25         MR. HILL:  Was it Red River up in --

11:25:11    1            JUROR FISHER:  No, it was Thiokol -- or Longhorn

11:25:15    2    Army Ammunition Plant.

11:25:17    3            MR. HILL:  I got you.  I got you.

11:25:18    4            You mentioned also earlier, Ms. Fisher, while I've

11:25:21    5    got you there, that your stepson had gotten a patent on

11:25:24    6    something?

11:25:24    7            JUROR FISHER:  Correct.

11:25:25    8            MR. HILL:  All right.  Is that going to influence

11:25:26    9    you, you think, in hearing a case where you may be asked to

11:25:30   10    invalidate a patent?

11:25:31   11            JUROR FISHER:  It won't, because I don't know

11:25:32   12    about them.

11:25:32   13            MR. HILL:  Okay.

11:25:32   14            THE COURT:  You have five minutes remaining,

11:25:35   15    counsel.

11:25:35   16            MR. HILL:  Thank you, Your Honor.

11:25:35   17            Well, folks, what you're going to see today, those

11:25:50   18    of you that hear this case, is that the Patent Office also

11:25:53   19    has a check and a balance.  Our patent laws set up a check

11:25:57   20    and a balance for the Patent Office.  That check and

11:25:59   21    balance is actually this.  It's you.  It's a jury trial.

11:26:03   22            And what we're going to be presenting to the jury

11:26:07   23    is asking that that check-and-balance process be used to

11:26:12   24    look at the work that the Patent Office has done in this

11:26:15   25    case.

| | | |
|---|---|---|
| 11:26:15 | 1 | So I want to ask one last time before I move on, |
| 11:26:23 | 2 | anybody going to have a problem, going to have an issue, |
| 11:26:23 | 3 | going to have reservations if they're on a jury where |
| 11:26:27 | 4 | they're asked to exercise as to be that check valve that |
| 11:26:29 | 5 | exists? |
| 11:26:31 | 6 | Thank you, folks. |
| 11:26:32 | 7 | Now, one other thing you heard in this case is the |
| 11:26:36 | 8 | presumption of validity.  You heard mentioned earlier, |
| 11:26:39 | 9 | Judge -- and you heard it in the video earlier about there |
| 11:26:45 | 10 | is a presumption of validity about a patent.  And that's |
| 11:26:47 | 11 | true. |
| 11:26:48 | 12 | But let me talk to you about that.  Let me see the |
| 11:26:51 | 13 | hands of those of you who have served on a criminal case |
| 11:26:51 | 14 | before.  All right. |
| 11:26:56 | 15 | No. 4 here, Mr. Johns.  Now, there a presumption |
| 11:26:58 | 16 | in a criminal case, too, right? |
| 11:27:00 | 17 | JUROR JOHNS:  Yes, sir. |
| 11:27:00 | 18 | MR. HILL:  Presumption of innocence.  What did you |
| 11:27:04 | 19 | find in your case? |
| 11:27:05 | 20 | JUROR JOHNS:  My presumption of it? |
| 11:27:07 | 21 | MR. HILL:  Well, did y'all find the person guilty |
| 11:27:09 | 22 | or innocent? |
| 11:27:11 | 23 | JUROR JOHNS:  They were guilty. |
| 11:27:12 | 24 | MR. HILL:  All right.  So that presumption didn't |
| 11:27:14 | 25 | preclude you from reaching a verdict, did it? |

| | | |
|---|---|---|
| 11:27:17 | 1 | JUROR JOHNS:  No, sir. |
| 11:27:17 | 2 | MR. HILL:  Why not? |
| 11:27:18 | 3 | JUROR JOHNS:  Because it was the right -- it was |
| 11:27:19 | 4 | right.  I mean, evidence was there beyond a reasonable |
| 11:27:20 | 5 | doubt. |
| 11:27:20 | 6 | MR. HILL:  It was because the evidence was there, |
| 11:27:21 | 7 | right? |
| 11:27:21 | 8 | JUROR JOHNS:  Yes, sir. |
| 11:27:22 | 9 | MR. HILL:  So if there's evidence, the presumption |
| 11:27:25 | 10 | goes away and you follow what the evidence requires; is |
| 11:27:29 | 11 | that right? |
| 11:27:29 | 12 | JUROR JOHNS:  Yes, sir. |
| 11:27:29 | 13 | THE COURT:  Mr. Johns, hold that microphone |
| 11:27:32 | 14 | closer. |
| 11:27:32 | 15 | JUROR JOHNS:  Yes, sir. |
| 11:27:34 | 16 | MR. HILL:  Thank you, sir.  I appreciate it. |
| 11:27:35 | 17 | THE COURT:  Hold it closer next time. |
| 11:27:38 | 18 | MR. HILL:  Now, one of the things you're going to |
| 11:27:40 | 19 | hear addressed in this case is damages.  As you heard |
| 11:27:44 | 20 | earlier, USAA is going to ask for over a hundred million |
| 11:27:47 | 21 | dollars in damages. |
| 11:27:48 | 22 | And I have heard jurors say to me before after a |
| 11:27:53 | 23 | case, well, the Defendant in the case talked about why the |
| 11:27:56 | 24 | damages were wrong and why the damages should be lower, so |
| 11:28:00 | 25 | they obviously thought they owed something. |

11:28:05  1        Anybody think about it that way?  Think that if a

11:28:10  2   Defendant mentions damages, that they must think they owe

11:28:13  3   something?

11:28:14  4        No?

11:28:18  5        As you heard the Judge describe earlier, my job as

11:28:22  6   a lawyer, I'm legally required to rebut the case the

11:28:25  7   Plaintiff puts on, and so I can't just say, huh-uh.  I have

11:28:28  8   to put on evidence to rebut it.  And so part of our role

11:28:32  9   will be to put on damages evidence also.  And my question

11:28:35  10  is, is anybody on the jury going to look at our

11:28:39  11  presentation of damages evidence and think, oh, they're

11:28:42  12  admitting something?

11:28:43  13       Mr. Nilsson, would you feel that way?

11:28:45  14       JUROR NILSSON:  Not necessarily, no -- I'm sorry.

11:28:48  15       MR. HILL:  Do you understand that that's our task

11:28:50  16  as the defense side of a case is to put on the contrary

11:28:52  17  view?

11:28:53  18       JUROR NILSSON:  As much as it is their side of the

11:28:55  19  case to present their side.

11:28:57  20       MR. HILL:  Yes, sir.  Thank you, sir.

11:28:58  21       Now, ladies and gentlemen, I'll point out to you

11:29:06  22  what's gone on here this morning, I had to go second,

11:29:07  23  that's going to go on through the whole case.  They get to

11:29:09  24  go first as the Plaintiff.  We have to go second.  Have any

11:29:12  25  of you that have small children ever had one come tattling

11:29:16  1   to you about what the other was doing?  Do you take what

11:29:19  2   the first one tells you as the gospel?  No?  Does it always

11:29:26  3   turn out that the story you get from the first one is

11:29:29  4   really what happened?  Anybody think that?

11:29:33  5        Can I get a commitment from all of you that you

11:29:36  6   will wait and hear both sides of the story, wait and hear

11:29:41  7   from us before you make your mind up?  Because it is our

11:29:45  8   belief that when you hear the whole story, you'll have a

11:29:48  9   different view of it.

11:29:49 10        And I want to just ask down the row here,

11:29:52 11   Mr. Bouzek, starting with you, can I get that commitment

11:29:55 12   from you.

11:29:55 13        JUROR BOUZEK:  Uh-huh.

11:29:58 14        MR. HILL:  Can I get that commitment from

11:30:00 15   everybody on the first row?  Can I get that commitment from

11:30:04 16   everybody on the back row?  What about over here, can I get

11:30:06 17   that commitment from everybody over on this side of the

11:30:10 18   room?  Is there anybody that tells me, I don't know if I

11:30:13 19   can give you that commitment?

11:30:15 20        Now, ladies and gentlemen, I will end much like

11:30:18 21   Mr. Bunt did.  Lawyers can't --

11:30:22 22        THE COURT:  Your time is expired.

11:30:23 23        MR. HILL:  Well, I will end quicker than Mr. Bunt

11:30:26 24   did.

11:30:27 25        Thank you, Your Honor, I appreciate the time.

| | | |
|---|---|---|
| 11:30:29 | 1 | THE COURT:  Thank you. |
| 11:30:30 | 2 | All right.  Counsel, approach the bench, please. |
| 11:30:46 | 3 | (Bench conference.) |
| 11:30:50 | 4 | THE COURT:  Does the Plaintiff have any challenges |
| 11:30:55 | 5 | for cause, Mr. Bunt? |
| 11:30:56 | 6 | MR. BUNT:  Yes, Your Honor, No. 16. |
| 11:31:02 | 7 | THE COURT:  All right.  Any others? |
| 11:31:06 | 8 | MR. BUNT:  No, Your Honor. |
| 11:31:08 | 9 | THE COURT:  Okay.  Mr. Hill, does Defendant have |
| 11:31:10 | 10 | any challenges for cause? |
| 11:31:12 | 11 | MR. HILL:  Yes, Your Honor, we have four:  No. 6, |
| 11:31:16 | 12 | No. 19, No. 22, and No. 26.  And let me explain my issue |
| 11:31:26 | 13 | there, Your Honor.  So these individuals are all members of |
| 11:31:30 | 14 | USAA.  They or their spouse are a member of USAA, which |
| 11:31:35 | 15 | means that they have a direct financial interest in the |
| 11:31:37 | 16 | outcome of the litigation. |
| 11:31:39 | 17 | USAA, because of the nature of its ownership, |
| 11:31:42 | 18 | returns dividends based on financial performance of the |
| 11:31:45 | 19 | company to its members.  It is akin to stock ownership.  It |
| 11:31:48 | 20 | is a legal disqualification from jury service, Your Honor. |
| 11:31:51 | 21 | I have cases and case cites I can give you on the matter. |
| 11:31:56 | 22 | And I don't have them on hand here, but I've got them at |
| 11:31:59 | 23 | the table, Your Honor.  But a USAA member is akin to stock |
| 11:32:04 | 24 | ownership. |
| 11:32:07 | 25 | MR. SHEASBY:  Your Honor, I can confirm that his |

11:32:08   1   case law citations are correct.

11:32:11   2           THE COURT:  So you're agreeing, Mr. Sheasby, that

11:32:13   3   if these four venire members identified by Mr. Bunt are, in

11:32:18   4   fact, members of USAA, that they should be disqualified?

11:32:22   5           MR. SHEASBY:  Yes, and Mr. Hill is correct, Your

11:32:25   6   Honor.

11:32:25   7           MR. HILL:  And we have no -- no opposition to

11:32:32   8   No. 16 to -- cause challenge by the Plaintiff, Your Honor.

11:32:35   9           THE COURT:  Is there any factual dispute among the

11:32:37  10   parties as to the four venire members identified by

11:32:41  11   Mr. Hill as being actual members of USAA?  Do I need to

11:32:44  12   call them up here and verify that?

11:32:47  13           MR. HILL:  I don't know that we do, Your Honor.

11:32:48  14   We've heard from them both in open venire, and we've seen

11:32:53  15   the answers in the questionnaires.  They indicated these

11:32:59  16   answers in the questionnaires.

11:33:05  17           MR. SHEASBY:  I think we should ask 22 and 26

11:33:08  18   quickly, Your Honor.

11:33:08  19           THE COURT:  All right.  Well, with no opposition

11:33:13  20   from the Defendants to Plaintiff's challenge for cause as

11:33:18  21   to Ms. Hilgenfeld, No. 16, I'm going to excuse No. 16.

11:33:22  22           If there's any doubt, I'll bring up 22 and 26 and

11:33:28  23   confirm their membership in USAA.

11:33:30  24           MR. SHEASBY:  We would request -- we would

11:33:34  25   appreciate that, Your Honor.

| | | |
|---|---|---|
| 11:33:35 | 1 | THE COURT:  There are obviously no scheduling |
| 11:33:37 | 2 | issues with any members of the panel.  Are there any other |
| 11:33:40 | 3 | members of the panel that I should hold back, other than 22 |
| 11:33:43 | 4 | and 26, to question here about their membership in USAA? |
| 11:33:47 | 5 | MR. SHEASBY:  Nothing from Plaintiffs, Your Honor. |
| 11:33:49 | 6 | THE COURT:  Defendant? |
| 11:33:50 | 7 | MR. HILL:  No, sir -- no, sir, Your Honor. |
| 11:33:51 | 8 | THE COURT:  All right.  Take a seat, counsel. |
| 11:33:53 | 9 | MR. SHEASBY:  Thank you, Your Honor. |
| 11:33:54 | 10 | (Bench conference concluded.) |
| 11:33:58 | 11 | THE COURT:  Ladies and gentlemen, I'm about to |
| 11:34:00 | 12 | excuse you for a recess, except there are two of you I'm |
| 11:34:04 | 13 | going to ask to stay behind and let me talk with you here |
| 11:34:07 | 14 | briefly at the bench, but everyone else I'm going to excuse |
| 11:34:10 | 15 | for recess. |
| 11:34:11 | 16 | Those of you who are part of that larger group |
| 11:34:14 | 17 | that's going to be excused for recess, if you will exit |
| 11:34:17 | 18 | through the double doors in the back and stay inside the |
| 11:34:20 | 19 | building.  Don't leave the building.  Also, as you go on to |
| 11:34:25 | 20 | the recess, if you make a left going out of those double |
| 11:34:28 | 21 | doors, you'll find two important things, the restrooms and |
| 11:34:34 | 22 | the water fountains. |
| 11:34:34 | 23 | It's also important, ladies and gentlemen, that |
| 11:34:36 | 24 | those of you that are on recess, that you not talk about |
| 11:34:39 | 25 | anything that's happened in the courtroom today.  Talk |

11:34:41   1   about the weather, talk about what's left of the football

11:34:45   2   season, talk about anything you'd like to, but don't

11:34:48   3   discuss anything that's happened in here this morning.

11:34:50   4          Let me remind every one of you, you have not heard

11:34:53   5   any evidence in this case at all at this point.  So don't

11:34:58   6   discuss anything that's happened in the courtroom this

11:34:59   7   morning.

11:35:00   8          I'm going to ask everyone to recess in just a

11:35:07   9   minute except Panel Member No. 22, Mr. Neeley, and 26,

11:35:14  10   Ms. Black.

11:35:15  11          Everyone else, if you will exit at this time, if

11:35:19  12   those two will just remain in their seats, all but 22

11:35:24  13   and -- just leave your cards in your chairs.  All about 22

11:35:28  14   and 26 are excused for recess at this time.  If you'll lead

11:35:32  15   the way, Mr. Nilsson.

11:35:57  16          (Venire panel out.)

11:36:03  17          THE COURT:  Be seated, please.

11:36:18  18          Counsel, approach the bench.

11:36:34  19          And, Mr. Neeley, would you please come up and join

11:36:39  20   us, please, sir?

11:36:41  21          JUROR NEELEY:  Yes, sir.

11:36:50  22          (Bench conference.)

11:36:52  23          JUROR NEELEY:  Yes, sir.

11:36:52  24          THE COURT:  Good morning, Mr. Neeley.

11:36:54  25          JUROR NEELEY:  Good morning, how are you?

| | | |
|---|---|---|
| 11:36:56 | 1 | THE COURT:  One quick question.  You are or are |
| 11:36:59 | 2 | not a member of USAA? |
| 11:37:01 | 3 | JUROR NEELEY:  My wife is.  I'm not. |
| 11:37:02 | 4 | THE COURT:  Okay. |
| 11:37:03 | 5 | JUROR NEELEY:  We used to have insurance through |
| 11:37:05 | 6 | them. |
| 11:37:05 | 7 | THE COURT:  How -- what -- what -- what kind of |
| 11:37:07 | 8 | insurance does your wife have through USAA? |
| 11:37:09 | 9 | JUROR NEELEY:  She has a bank account now.  We |
| 11:37:11 | 10 | used to have our homeowner's insurance and all that through |
| 11:37:14 | 11 | them. |
| 11:37:15 | 12 | THE COURT:  Yes, sir. |
| 11:37:16 | 13 | JUROR NEELEY:  And we -- we switched insurance |
| 11:37:17 | 14 | because the insurance rates, but we kept -- she kept the |
| 11:37:21 | 15 | bank account. |
| 11:37:21 | 16 | THE COURT:  So you don't have any insurance with |
| 11:37:26 | 17 | them at this time? |
| 11:37:27 | 18 | JUROR NEELEY:  No, sir. |
| 11:37:27 | 19 | THE COURT:  Do you have a bank account? |
| 11:37:27 | 20 | JUROR NEELEY:  Yes. |
| 11:37:28 | 21 | THE COURT:  Are you on that bank account? |
| 11:37:30 | 22 | JUROR NEELEY:  I don't think so.  I don't know. |
| 11:37:31 | 23 | She handles all that stuff.  I'm just the money maker. |
| 11:37:37 | 24 | THE COURT:  Okay.  All right. |
| 11:37:38 | 25 | Mr. Hill, do you have any questions of Mr. Neeley? |

| | | |
|---|---|---|
| 11:37:41 | 1 | MR. HILL:  Mr. Neeley, on the insurance policy, |
| 11:37:43 | 2 | those were your -- your home and your property y'all |
| 11:37:46 | 3 | jointly own? |
| 11:37:47 | 4 | JUROR NEELEY:  Yes, sir. |
| 11:37:48 | 5 | MR. HILL:  Did you have any other insurance with |
| 11:37:50 | 6 | them? |
| 11:37:50 | 7 | JUROR NEELEY:  No, sir. |
| 11:37:51 | 8 | MR. HILL:  Car insurance? |
| 11:37:52 | 9 | JUROR NEELEY:  We had car insurance, I believe -- |
| 11:37:55 | 10 | car insurance, our side-by-side was insured with them, our |
| 11:38:00 | 11 | house was insured with them, but we switched to Hochheim. |
| 11:38:07 | 12 | MR. HILL:  Okay.  And the bank account you still |
| 11:38:10 | 13 | have -- |
| 11:38:11 | 14 | JUROR NEELEY:  Yes, sir. |
| 11:38:12 | 15 | MR. HILL:  And you know that the USAA membership |
| 11:38:17 | 16 | extends to both the spouse -- to the military member, the |
| 11:38:18 | 17 | former military member, and to their spouse? |
| 11:38:22 | 18 | JUROR NEELEY:  Correct. |
| 11:38:22 | 19 | MR. HILL:  And so you participated in those |
| 11:38:24 | 20 | policies, as well? |
| 11:38:25 | 21 | JUROR NEELEY:  Well, yes, I guess -- because my |
| 11:38:26 | 22 | wife got it through her dad because he was a Marine, and he |
| 11:38:31 | 23 | had USAA. |
| 11:38:31 | 24 | THE COURT:  How long has it been since you had any |
| 11:38:35 | 25 | insurance with USAA, more than a year or two? |

11:38:39   1          JUROR NEELEY:  Year.

11:38:41   2          MR. BUNT:  Do you know if you were seeking

11:38:44   3   dividends from USAA?

11:38:46   4          JUROR NEELEY:  If I do, I don't know about it.

11:38:48   5          MR. BUNT:  Thank you, sir.

11:38:49   6          THE COURT:  If I were to call USAA in San Antonio

11:38:57   7   and say, is Mr. Chad Neeley a member of USAA, do you know

11:39:02   8   what they'd tell me?

11:39:04   9          JUROR NEELEY:  I honestly wouldn't know what

11:39:06  10   they'd tell you.

11:39:07  11          THE COURT:  Okay.  All right.  Mr. Neeley, anybody

11:39:09  12   else got any other questions?

11:39:11  13          MR. HILL:  No, sir.

11:39:11  14          MR. BUNT:  No, sir.

11:39:13  15          THE COURT:  Mr. Neeley, I'm going to let you join

11:39:15  16   the rest of the members outside.  Just don't discuss

11:39:18  17   anything we've talked about in here.

11:39:20  18          JUROR NEELEY:  Okay.  Thank you.

11:39:20  19          (Juror exits courtroom.)

11:39:25  20          (Bench conference continued.)

11:39:25  21          MR. SHEASBY:  Your Honor, he actually does not

11:39:27  22   sound like a member.

11:39:28  23          THE COURT:  Let me ask this, counsel, and I'll ask

11:39:30  24   this specifically to Mr. Hill:  If the participation by

11:39:34  25   someone like Mr. Neeley or his wife is unrelated to their

11:39:39  1   insurance where they make a profit and share dividends with

11:39:44  2   members but it's only related to their banking function, is

11:39:49  3   it your position that they would potentially have a

11:39:53  4   pecuniary benefit --

11:39:54  5          MR. HILL:  Yes, Your Honor.

11:39:55  6          THE COURT:  -- only through the banking?

11:39:58  7          MR. HILL:  Yes, Your Honor, it would be.

11:39:59  8   The membership interest and the way it works once they have

11:40:02  9   the membership interest and the actual dividend payment, it

11:40:05  10  can also extend to banking customers.  And so --

11:40:07  11         THE COURT:  So they participate in any benefit no

11:40:09  12  matter what their level of actual coverage or interaction

11:40:12  13  with USAA is, as long as they're designated as a member?

11:40:16  14         MR. HILL:  I don't know that I can say it that

11:40:18  15  broadly, Your Honor, but I do know that since her

11:40:21  16  membership level was such that she bought insurance and

11:40:25  17  banking, the discovery we've taken in the case and the

11:40:28  18  research we've done indicates to us that they still would

11:40:31  19  have a continuing pecuniary interest and still would be --

11:40:35  20  and there would still be a legal basis for a challenge for

11:40:36  21  cause.

11:40:37  22         The fact that it's him -- or the wife and not him

11:40:40  23  doesn't, under our view of the case law, change that

11:40:43  24  either, Your Honor, because it's still a familial direct

11:40:45  25  benefit.

| | | |
|---|---|---|
| 11:40:46 | 1 | THE COURT:  I understand.  Let me get Ms. Black up |
| 11:40:48 | 2 | here. |
| 11:40:48 | 3 | (Open court.) |
| 11:40:48 | 4 | THE COURT:  Ms. Black, would you join us, please? |
| 11:41:09 | 5 | (Bench conference continued.) |
| 11:41:09 | 6 | THE COURT:  Good morning. |
| 11:41:10 | 7 | JUROR BLACK:  Good morning. |
| 11:41:11 | 8 | THE COURT:  These are our microphones.  We're just |
| 11:41:12 | 9 | going to talk quietly.  I just really have one question. |
| 11:41:13 | 10 | Are you a member of USAA? |
| 11:41:14 | 11 | JUROR BLACK:  Yes. |
| 11:41:15 | 12 | THE COURT:  Okay.  That's all I need to know. |
| 11:41:17 | 13 | JUROR BLACK:  Okay. |
| 11:41:17 | 14 | THE COURT:  Can you join of the rest of the group |
| 11:41:20 | 15 | outside.  Just don't discuss what we talked about in here. |
| 11:41:23 | 16 | JUROR BLACK:  Thank you. |
| 11:41:23 | 17 | (Juror exits courtroom.) |
| 11:41:24 | 18 | (Bench conference continued.) |
| 11:41:24 | 19 | THE COURT:  All right.  That leaves us unresolved |
| 11:41:31 | 20 | strictly Mr. Neeley. |
| 11:41:33 | 21 | Counsel, I can take -- I can take briefing from |
| 11:41:37 | 22 | both sides or I can excuse Mr. Neeley.  He's at No. 22. |
| 11:41:42 | 23 | Let's see if we're going to reach him under any |
| 11:41:46 | 24 | circumstance. |
| 11:41:49 | 25 | No. 6 will go.  No. 16 will go.  And No. 19 will |

```
11:41:52   1   go.
11:41:52   2          MR. SHEASBY:  Your Honor, I'm going to make this
11:41:53   3   easy.  I don't want to --
11:41:55   4          THE COURT:  I don't think we're going to reach him
11:41:58   5   anyway.
11:41:58   6          MR. SHEASBY:  Okay.  So, yeah.
11:41:59   7          THE COURT:  All right.  Well, I'm going to -- just
11:42:03   8   for clarity in the record, counsel, I'm going to excuse
11:42:06   9   Ms. Hilgenfeld for cause.  I'm excusing Mr. Meade for
11:42:13  10   cause.  I'm going to excuse Mr. Pickens for cause, No. 19.
11:42:17  11   And Ms. Black, No. 26, for cause.
11:42:23  12          It does not appear -- with seating eight jurors
11:42:26  13   and each side having four strikes, it looks like we're
11:42:35  14   going to strike through No. -- is it 20?
11:42:40  15          MR. HILL:  I think it's 18, Judge.
11:42:41  16          THE COURT:  18?  It's one side or the other of 19.
11:42:43  17          MR. HILL:  16 -- 16 to burn, and then we got two
11:42:45  18   within the zone, that would be -- that's 18 total.  I
11:42:49  19   believe 18 would be the end of the strike zone.
11:42:52  20          MR. BUNT:  Your Honor, just so I'm clear, is it
11:42:55  21   Jurors No. 6 and No. 16 who are out?
11:42:59  22          THE COURT:  No. 16 is out, and No. 6 is excused,
11:43:03  23   yes.
11:43:03  24          MR. SHEASBY:  And 19.
11:43:04  25          THE COURT:  And 19 and 26, but striking from the
```

11:43:07  1  beginning of the panel, I don't think -- I think Mr. Hill

11:43:11  2  is correct, we should strike -- you should strike through

11:43:15  3  No. 18.  So it's irrelevant whether Mr. Neeley is going to

11:43:20  4  be struck or not because he's never going to be reached.

11:43:23  5          MR. SHEASBY:  Yes, understood.

11:43:24  6          THE COURT:  So I'll --

11:43:30  7          MR. SHEASBY:  So I didn't need to be that generous

11:43:33  8  that quick.

11:43:34  9          THE COURT:  I don't -- I don't think I need a -- I

11:43:37  10  don't think I need to rule on whether Mr. Neeley is going

11:43:40  11  to be struck for cause or not because he's never going to

11:43:42  12  be reached.

11:43:43  13          MR. SHEASBY:  I agree, Your Honor.

11:43:43  14          MR. HILL:  I agree, Your Honor, unless he -- we

11:43:45  15  will maintain our challenge, but if some act of God happens

11:43:45  16  and we see he's going to be reached, we want our challenge

11:43:51  17  for the record.

11:43:51  18          THE COURT:  If he's going to be -- if he's going

11:43:52  19  to be reached, then I'll re-raise the issue with counsel

11:43:57  20  outside of the jury's presence before the jury is seated.

11:44:00  21          MR. HILL:  Thank you, sir.

11:44:01  22          MR. SHEASBY:  Thank you, Your Honor.

11:44:02  23          THE COURT:  All right.  Counsel, it's about 17

11:44:04  24  minutes until noon.  Why don't you have your jury lists

11:44:08  25  struck and back to Ms. Lockhart by noon, okay?

| | | |
|---|---|---|
| 11:44:13 | 1 | MR. SHEASBY:  Thank you, Your Honor. |
| 11:44:13 | 2 | MR. HILL:  Thank you, Your Honor. |
| 11:44:14 | 3 | MR. BUNT:  May we use -- one of us use the jury |
| 11:44:16 | 4 | room, and we've already asked Judge Payne and he said we |
| 11:44:19 | 5 | could use his jury room. |
| 11:44:22 | 6 | THE COURT:  I know of no reason why you can't. |
| 11:44:24 | 7 | MR. BUNT:  Thank you, Judge. |
| 11:44:24 | 8 | MR. MELSHEIMER:  Thank you, Judge. |
| 11:44:27 | 9 | (Bench conference concluded.) |
| 11:44:27 | 10 | THE COURT:  All right.  While counsel exercise |
| 11:44:29 | 11 | their peremptory challenges, the Court will stand in |
| 11:44:33 | 12 | recess. |
| 11:44:34 | 13 | COURT SECURITY OFFICER:  All rise. |
| 11:44:35 | 14 | (Recess.) |
| 12:13:36 | 15 | (Venire panel in.) |
| 12:13:36 | 16 | COURT SECURITY OFFICER:  All rise. |
| 12:13:38 | 17 | THE COURT:  Be seated, please. |
| 12:13:49 | 18 | All right.  Ladies and gentlemen, if you will |
| 12:13:51 | 19 | listen carefully as your name is called, if you'll come |
| 12:13:54 | 20 | forward and take your seat in the jury box. |
| 12:13:57 | 21 | Let me give you a little bit of instruction before |
| 12:13:59 | 22 | we do that, however.  We're going to seat eight individuals |
| 12:14:05 | 23 | as the jury in this case.  We have a lot more than eight |
| 12:14:09 | 24 | seats in the jury box. |
| 12:14:10 | 25 | So, consequently, I'm going to ask that the first |

12:14:15  1  four people whose names are called come forward and place

12:14:19  2  themselves on the front row and the second four people,

12:14:22  3  five, six, seven, and eight, when your name is called, come

12:14:27  4  forward and go to the second row in the jury box.

12:14:29  5      I'm going to ask the first person who's called

12:14:32  6  when you enter the front row of the jury box, to walk down

12:14:36  7  and stand in front of the third chair from the end.  Leave

12:14:39  8  two vacant chairs past you.  That will put those four in

12:14:43  9  the middle of the front row.

12:14:45  10      And when Jurors 5, 6, 7, and 8 come to the second

12:14:50  11  row of the jury box, if you will just line up behind your

12:14:55  12  counterpart on the front row, that will put our eight

12:14:57  13  jurors in the center of the jury box, four on the front row

12:15:01  14  and four on the second row.  And if all of you will stand

12:15:04  15  until everyone is in the jury box and I instruct you

12:15:07  16  further, that would be the Court's preference.

12:15:09  17      So with that, I'm going to ask our courtroom

12:15:11  18  deputy, Ms. Lockhart, to call the eight members of our

12:15:18  19  jury.

12:15:19  20      COURTROOM DEPUTY:  Cheryl Jones, Gayla Harris,

12:15:30  21  Travis Johns, Karen McDonald, Rose Manning, Lara Pate,

12:15:52  22  Christie Shepard, and Tracey Brown.

12:15:57  23      THE COURT:  Thank you.  Please have a seat.

12:16:18  24      Those of you that were not selected to serve on

12:16:23  25  this jury, I'm about to excuse you at this time, but before

12:16:26   1   I do, I want to mention a couple of things.

12:16:28   2          First of all, if you need any documentation for an

12:16:31   3   employer about where you've been this morning, any

12:16:34   4   questions you have, see Ms. Clendening and the staff in the

12:16:37   5   clerk's office out front.  They will assist you in anything

12:16:40   6   that you need.  They're going to want to recover those very

12:16:44   7   valuable laminated numbers that you're wearing and those

12:16:48   8   juror pins.  All of that will be picked up by the clerk's

12:16:53   9   office.  So see them on the way out, if you will.

12:16:57  10          If you have any questions or need any -- anything

12:16:58  11   about where you've been this morning, they'll be glad to

12:16:58  12   help you with that.

12:17:01  13          Also, ladies and gentlemen, the Court recognizes

12:17:04  14   full well that every one of you, even though you weren't

12:17:07  15   selected to serve on this jury, every one of you had other

12:17:10  16   places to be today, you had other things to do that were

12:17:13  17   important in your respective lives, and you set that aside,

12:17:17  18   and you sacrificed those personal matters to be here and

12:17:22  19   present yourself for service on this jury.

12:17:24  20          And even though you weren't selected, ladies and

12:17:26  21   gentlemen, you have done very real and important public

12:17:29  22   service by being here.  You have answered the call to jury

12:17:33  23   duty.  Even though you weren't selected, you've done what

12:17:36  24   every good citizen should do.

12:17:38  25          And, quite honestly, without ordinary citizens

12:17:40   1   such as yourselves coming forward and summonsed and being

12:17:45   2   present for this process that we went through this morning,

12:17:46   3   the Court could not function as we're required to under the

12:17:49   4   Constitution.  You've done very real, important public

12:17:55   5   service by being here, and the Court thanks you for that.

12:17:57   6          The Court recognizes it, and I'm confident that

12:18:00   7   counsel for the parties, the Court staff, everyone on this

12:18:02   8   side of the courtroom recognizes and appreciates that.  And

12:18:06   9   we -- we want you to know that we're thankful for your

12:18:10  10   service, even though you weren't selected to serve on this

12:18:14  11   jury.

12:18:15  12          Again, if you have any questions or need anything

12:18:17  13   with regard to being here this morning, I'll direct you to

12:18:20  14   the clerk's office and Ms. Clendening.  Other than that,

12:18:22  15   ladies and gentlemen, with the sincere thanks for you being

12:18:25  16   here, you are excused at this time.

12:18:28  17          COURT SECURITY OFFICER:  All rise.

12:18:29  18          (Unselected venire panel members out.)

12:19:05  19          THE COURT:  Please be seated.

12:19:05  20          All right.  Members of the jury, I'm going to ask

12:19:10  21   that you stand at this time and be sworn.  I'll ask our

12:19:14  22   courtroom deputy, Ms. Lockhart, to administer the oath to

12:19:18  23   you.  Please stand.

12:19:19  24          (Jurors sworn.)

12:19:24  25          THE COURT:  Please be seated.

12:19:35   1          Ladies and gentlemen, I'm going to excuse you for
12:19:41   2   lunch in just a few minutes, but there's some instructions
12:19:44   3   I need to give you at this time before I do that.
12:19:47   4          First of all, ladies and gentlemen, do not discuss
12:19:51   5   this case with anyone.  That is a -- an essential and
12:19:57   6   foundational instruction, and it's so important, you're
12:20:00   7   going to hear me repeat that throughout the trial process.
12:20:05   8          As a matter of fact, probably every time you get
12:20:06   9   up out of those seats, you're going to hear me say before
12:20:09  10   you do, don't discuss the case with anyone.
12:20:12  11          And when I say don't discuss the case, I mean
12:20:14  12   don't communicate in any way in any form about this
12:20:20  13   process.  It is absolutely essential that when all the
12:20:25  14   evidence has been presented and you retire to the jury room
12:20:28  15   to deliberate on your verdict, which will be your unanimous
12:20:32  16   answers to certain questions that I will send to you at
12:20:35  17   that time, it is essential that the only information you
12:20:39  18   have to draw upon in answering those questions in the
12:20:42  19   verdict form must have come from the evidence that's been
12:20:47  20   presented in this courtroom during this trial and nowhere
12:20:51  21   else.
12:20:52  22          You must rely on only the sworn testimony of the
12:20:55  23   witnesses who testified under oath and are subject to
12:21:00  24   cross-examination and the documents and other items that
12:21:02  25   the Court has admitted into evidence.

12:21:07  1        That must be the sole universe of what you draw

12:21:10  2   upon to answer the questions in the verdict form.

12:21:13  3   Therefore, you must not communicate or discuss in any way

12:21:17  4   this case with anyone.  Otherwise, there will be things

12:21:20  5   before you that go beyond the evidence presented in open

12:21:25  6   court.  That's why this is so essential.

12:21:28  7        And I promise you, ladies and gentlemen, when you

12:21:31  8   get home this evening, unless you live alone, the first

12:21:35  9   thing you're going to hear when you walk through the door

12:21:37  10  is, tell me what happened in federal court in Marshall

12:21:40  11  today.

12:21:41  12       You can't even start to answer that question.

12:21:45  13  Just simply and upfront say to whoever, the Judge was very

12:21:51  14  clear, I can't talk about anything until the case is over.

12:21:54  15  Then I'll be free to discuss it with you.  But you must not

12:21:57  16  communicate with anyone in any way about this case.

12:22:00  17       And as a part of that, any of you that are active

12:22:02  18  on any form of social media, whether it's Facebook or

12:22:07  19  Twitter or Instagram or any of the other variations that

12:22:10  20  are out there, you must not post or tweet or do anything

12:22:15  21  with regard to social media.  That is communication.  You

12:22:18  22  must not communicate with anyone about this case.

12:22:22  23       And that, ladies and gentlemen, goes to the eight

12:22:24  24  of you among yourselves.  You are not permitted to talk

12:22:27  25  among yourselves about the evidence or the case until the

| | | |
|---|---|---|
| 12:22:33 | 1 | time that all the evidence has been heard and at the point |
| 12:22:38 | 2 | that I instruct you to retire to the jury room and to |
| 12:22:41 | 3 | deliberate on your verdict.  At that point, but only at |
| 12:22:45 | 4 | that point, things shift and -- between the eight of you, |
| 12:22:51 | 5 | you go from not being able to discuss the case among |
| 12:22:54 | 6 | yourselves to being required to discuss the case and the |
| 12:22:57 | 7 | evidence among yourselves. |
| 12:23:00 | 8 | But until we get to that point, when I -- until I |
| 12:23:02 | 9 | instruct you to retire to the jury room and to deliberate |
| 12:23:05 | 10 | on your verdict, you must not communicate, even among the |
| 12:23:09 | 11 | eight of yourselves, about anything involving the trial or |
| 12:23:12 | 12 | the evidence in this case. |
| 12:23:16 | 13 | So at this point, my instruction to you is |
| 12:23:19 | 14 | completely across the board, do not communicate with anyone |
| 12:23:22 | 15 | in any way about this case, including the eight of |
| 12:23:26 | 16 | yourselves. |
| 12:23:26 | 17 | Also, you should not attempt to do any -- do any |
| 12:23:31 | 18 | research about anything involved in this case.  You should |
| 12:23:34 | 19 | not go online and try to look up the lawyers or the parties |
| 12:23:38 | 20 | or the law firms or any of the products that you might hear |
| 12:23:44 | 21 | about.  You're not permitted to do any research of any kind |
| 12:23:48 | 22 | in any way, whether it's online or otherwise. |
| 12:23:50 | 23 | And with that in mind, I'm going to ask that if |
| 12:23:55 | 24 | you have a cell phone device with you, that you not bring |
| 12:24:00 | 25 | it back into the courtroom.  And if you have it with you |

12:24:03   1   today, leave it on the table in the jury room.  And when

12:24:07   2   you come back tomorrow, don't bring it at all.  Either

12:24:10   3   leave it in your car or leave it at home.  But I do not

12:24:13   4   want you to be tempted with a smartphone that is a computer

12:24:18   5   you hold in your hand where you might be tempted to do any

12:24:22   6   research or let's Google this or let's look at that.  I

12:24:25   7   don't want you to have that temptation.

12:24:27   8        So if you have a smartphone, you're welcome to

12:24:31   9   leave it in the jury room for the remainder of today.

12:24:36  10   After today, don't bring it back inside the courthouse.

12:24:39  11   You can either leave it in your car, or if you have an

12:24:42  12   important email that you're expecting related to a business

12:24:46  13   matter, you'll have an opportunity during the day at breaks

12:24:47  14   to go to your car and look at it if it's important, but

12:24:49  15   don't bring those handheld computers, those smartphones

12:24:53  16   back into the courtroom at all after today.

12:24:55  17        Now, you're going to see the lawyers with those

12:24:57  18   kind of devices at their tables during the trial.  Those

12:25:00  19   are tools that they are using to conduct this case.

12:25:03  20   They're permitted to do that.  They're not permitted to

12:25:06  21   allow them to interrupt or disrupt the trial, and they will

12:25:09  22   have them on silent.  If that's not the case, then I'll

12:25:13  23   deal with it.  But don't feel that you've been put upon

12:25:17  24   that they can have a cell phone in their hand and you

12:25:20  25   can't.  There are very different reasons why I want you to

| | | |
|---|---|---|
| 12:25:23 | 1 | leave them at home starting tomorrow, and they'll have them |
| 12:25:25 | 2 | available to them in the courtroom. |
| 12:25:26 | 3 | Also, ladies and gentlemen, I don't think it's |
| 12:25:30 | 4 | going to happen in this case, but it's possible, and I want |
| 12:25:34 | 5 | to bring it to your attention.  It's within the realm of |
| 12:25:38 | 6 | possibility that some third party over the course of this |
| 12:25:41 | 7 | trial could attempt to contact you and to influence your |
| 12:25:45 | 8 | vote and your decision in this case.  I don't think that's |
| 12:25:49 | 9 | likely, but I want you to understand there are no |
| 12:25:52 | 10 | insignificant cases that get to trial in a United States |
| 12:25:56 | 11 | District Court. |
| 12:25:57 | 12 | This is an important case to both of these |
| 12:25:59 | 13 | parties.  There's a lot on the line for both of these |
| 12:26:01 | 14 | parties.  And it is at least within the realm of |
| 12:26:05 | 15 | possibility that some outside third party might try to |
| 12:26:10 | 16 | influence your decision in this case. |
| 12:26:12 | 17 | If you get any overture of any type from anyone |
| 12:26:17 | 18 | that you are not comfortable with in any way while you're |
| 12:26:20 | 19 | serving as a juror in this case, you should immediately |
| 12:26:24 | 20 | inform Ms. Clendening.  She will advise me, and the Court |
| 12:26:27 | 21 | will deal with it.  I don't think it's likely, but it's |
| 12:26:27 | 22 | within the realm of possibility, so I need to call it to |
| 12:26:27 | 23 | your attention. |
| 12:26:40 | 24 | One other thing, ladies and gentlemen, during the |
| 12:26:40 | 25 | course of the trial, you'll be coming in the mornings and |

```
12:26:42    1    leaving in the afternoons, there will be breaks and

12:26:44    2    recesses, it's entirely possible, in fact it's probable,

12:26:48    3    that at some point you're going to pass in close proximity,

12:26:50    4    one of these lawyers, one of the witnesses, one of the

12:26:53    5    corporate representatives connected with this case, either

12:26:55    6    in the hallway, on the front steps, somewhere in and around

12:27:01    7    this courthouse.

12:27:01    8          When that happens, they're not going to speak to

12:27:06    9    you.  They're not going to smile and say good morning.

12:27:08   10    They're not going to be friendly and gregarious, as we

12:27:12   11    often are in East Texas.  That's because I've instructed

12:27:15   12    them not to, and that's because you are not to have any

12:27:18   13    communications of any type with anyone that would influence

12:27:21   14    you in any way and that would bring anything to bear other

12:27:27   15    than the sworn testimony that you receive in open court

12:27:30   16    during the trial and the exhibits that I admit into

12:27:33   17    evidence.

12:27:33   18          It all goes back -- most of the instructions

12:27:36   19    you're going to hear from me go back to that same bedrock

12:27:40   20    principle that the sole source of the only information that

12:27:43   21    you should have to draw upon in answering the questions

12:27:46   22    that will be in the verdict at the end of this trial must

12:27:50   23    be limited to what is given in open court under oath by way

12:27:55   24    of testimony that's subject to cross-examination and the

12:27:58   25    exhibits that the Court admits into evidence by ruling of
```

```
12:28:02   1   the Court under the Federal Rules of Evidence.  That's it,
12:28:04   2   ladies and gentlemen.
12:28:05   3        And we must be diligent, all of us, to make sure
12:28:09   4   that there's nothing from any other source that comes into
12:28:11   5   your minds or your presence as a part of this trial.
12:28:15   6        That's why you're going to hear that instruction
12:28:17   7   from me over and over, and that's why if you smile at
12:28:21   8   somebody first thing in the morning and they're related to
12:28:23   9   one of these parties, they're not going to smile back,
12:28:25  10   they're not going to speak, they're not going to ask you,
12:28:28  11   did you have a good night?  They're not going to say
12:28:31  12   anything.
12:28:32  13        Don't hold that against them when that happens.
12:28:35  14   Don't think they're being rude or unfriendly.  They're
12:28:37  15   simply following the Court's instruction all related back
12:28:42  16   to that fundamental principle that I've mentioned to you.
12:28:44  17        Also, so you'll know, over the course of the
12:28:48  18   trial, it's been my experience that jurors in our part of
12:28:51  19   the country would rather work longer days each day and be
12:28:55  20   away from their homes and their families and their
12:28:57  21   businesses a shorter number of days.  There are places in
12:29:03  22   the United States where in federal court they start at
12:29:05  23   10:00 o'clock in the morning, and they stop at 3:30 or 4:00
12:29:08  24   o'clock in the afternoon.  But instead of five days to try
12:29:12  25   this case, it will take 10 or 15 days to try this case.
```

12:29:16  1          We're not going to do that.  We're going to start

12:29:18  2   at 8:30 every morning, and we will go at least until 5:30

12:29:22  3   or 6:00 o'clock each evening.  If we've got a witness on

12:29:27  4   the witness stand that has 15 or 20 more minutes before

12:29:30  5   they're finished and it's 6:00 o'clock, we may go until

12:29:30  6   6:20 or 6:15.

12:29:33  7          I want you to be aware that my practice and the

12:29:36  8   one I think is most acceptable to the largest number of

12:29:41  9   people in our part of the country is we'd much rather be

12:29:44 10   gone from home and work a shorter number of days but work

12:29:48 11   each day a longer number of hours.  So that's the approach

12:29:51 12   that I typically take, and that's the approach we'll take

12:29:53 13   in this case.

12:29:54 14          So beginning tomorrow morning, I will need you in

12:29:57 15   the jury room present and assembled and ready to go by 8:30

12:30:00 16   which means you need to get here a little bit before 8:30

12:30:04 17   each morning.

12:30:05 18          And we will typically take a recess somewhere

12:30:09 19   between an hour and a half and two hours each part of the

12:30:14 20   day, and then we'll have a recess for lunch each day.

12:30:20 21          You also need to know that I ordered the

12:30:22 22   government -- the clerk's office to provide your lunch to

12:30:24 23   you each day in the jury room.  So lunch is going to be

12:30:27 24   brought to you in the jury room each day.  You're not going

12:30:30 25   to need to leave and go find a place to eat.  Especially

```
12:30:30   1   those of you that are not familiar with Marshall, that will

12:30:33   2   save us a lot of time and allow us to move the process

12:30:36   3   through quicker so that we can finish within the time

12:30:38   4   estimate that I gave you during jury selection, and

12:30:41   5   hopefully have a verdict in hand and the case finished

12:30:45   6   sometime on Friday of this week.

12:30:46   7        All right.  Ladies and gentlemen, at this time,

12:30:54   8   I'm going to excuse you for lunch.  It should be in the

12:30:57   9   jury room waiting for you.

12:31:00  10        Again, do not discuss or communicate about this

12:31:03  11   case in any way with anyone, and we'll have you back after

12:31:07  12   lunch, at which time I will give you my preliminary

12:31:11  13   instructions, we'll hear opening statements from the

12:31:13  14   lawyers, and then after the opening statements, we'll get

12:31:16  15   on to the evidence.

12:31:18  16        After the opening statements, the Plaintiff will

12:31:20  17   call their witnesses, put on their evidence, which is

12:31:23  18   called the Plaintiff's case-in-chief.  Then when they have

12:31:26  19   finished with that, they will rest their case-in-chief, and

12:31:30  20   the Defendants will put on their evidence and call their

12:31:33  21   witnesses and present the Defendant's case-in-chief.

12:31:37  22        Then when the Defendants have called all their

12:31:40  23   witnesses and presented all their evidence, the Defendant

12:31:42  24   will rest their case-in-chief.

12:31:44  25        When the Defendant rests its case-in-chief, then
```

```
12:31:47   1   the Plaintiff will have an opportunity to call what are
12:31:50   2   called rebuttal witnesses.  I don't know whether the
12:31:52   3   Plaintiff will or not, but at that point, if they have
12:31:57   4   rebuttal witnesses, they will put them on.  And when the
12:32:00   5   Plaintiff's rebuttal witnesses have all testified, then you
12:32:02   6   will have heard all the evidence in the case.
12:32:04   7         And at that point, I will give you my final
12:32:09   8   instructions on the law that you are to apply.  This is
12:32:11   9   sometimes called the Court's charge to the jury.
12:32:15  10         After I've given you those final instructions,
12:32:17  11   then counsel for both Plaintiff and Defendant will present
12:32:20  12   their closing arguments to you.  And when you've heard
12:32:24  13   your -- heard the closing arguments, when that's complete
12:32:27  14   and after I have completed any final instructions, then I
12:32:30  15   will instruct you to retire to the jury room and
12:32:34  16   considering all the evidence, deliberate on the verdict
12:32:36  17   that you're going to return in this case.
12:32:38  18         At that point, but not until, it will become your
12:32:43  19   obligation and duty to discuss among the eight of you the
12:32:46  20   evidence that you've heard in your attempt to arrive at a
12:32:50  21   unanimous verdict in this case.
12:32:51  22         So that's how the structure of the trial will go.
12:32:55  23   Preliminary instructions, opening statements, Plaintiff's
12:32:59  24   case-in-chief, Defendant's case-in-chief, Plaintiff's
12:33:02  25   rebuttal case, final instructions from the Court, closing
```

12:33:06  1   arguments from the lawyers, then you will retire to

12:33:09  2   deliberate on the verdict.  That's a thumbnail structural

12:33:13  3   sketch of how the trial will go over the next week.

12:33:16  4        All right.  Ladies and gentlemen, with those

12:33:17  5   instructions, again reminding you not to discuss the case

12:33:20  6   in any way, you're excused to the jury room for lunch,

12:33:23  7   which should be waiting for you there.

12:33:25  8        COURT SECURITY OFFICER:  All rise.

12:33:26  9        (Jury out.)

12:33:53  10        THE COURT:  Be seated, please.

12:33:53  11        Counsel, this morning in chambers we met and

12:34:00  12   reviewed objections to certain demonstratives and other

12:34:04  13   issues that would arise during opening statements.  At that

12:34:06  14   point, there seemed to be an agreement worked out among

12:34:09  15   Plaintiff and Defendant concerning the issue of Doctrine of

12:34:15  16   Equivalents.  And I indicated to you in chambers that once

12:34:18  17   we had the jury selected but outside their presence, I

12:34:21  18   would ask you to put that agreement on the record.

12:34:23  19        Are you prepared to do that?

12:34:29  20        MS. GLASSER:  Your Honor, we had presented a

12:34:31  21   proposal to the Defendants.  If they're amenable to it, we

12:34:34  22   can read it into the record or print it out for Your Honor.

12:34:37  23        MR. BITTNER:  Your Honor, we do have a slight

12:34:39  24   counterproposal.  We just got it a few minutes ago.  I can

12:34:42  25   speak with Ms. Glasser over the break.  I believe that we

12:34:45   1   can reach an agreement.

12:34:46   2           THE COURT:  All right.  You all -- I -- I gather

12:34:50   3   you don't think this is an insurmountable difference,

12:34:54   4   Mr. Bittner?

12:34:55   5           MR. BITTNER:  I do not.

12:34:56   6           THE COURT:  I'll let you all discuss it over the

12:34:58   7   lunch break, and then before I bring the jury back in, I'll

12:35:02   8   expect to hear something to announce into the record at

12:35:05   9   that time.

12:35:05  10           MS. GLASSER:  What would Your Honor's preference

12:35:06  11   be as to the reading of it?  Is it something that the Court

12:35:07  12   will do or -- or the parties?

12:35:08  13           THE COURT:  No, I'll probably ask you to read it

12:35:11  14   into the record, and then ask the other side to confirm

12:35:13  15   that that's accurate.

12:35:15  16           MS. GLASSER:  Thank you, Your Honor.

12:35:16  17           THE COURT:  All right.  Are there -- is either

12:35:19  18   side aware of anything else we need to take up before we

12:35:21  19   break for lunch?

12:35:23  20           MR. SHEASBY:  Your Honor, there is one issue,

12:35:25  21   which is Defendants have asked for a short instruction to

12:35:28  22   be given.  There are -- there is video plays this afternoon

12:35:31  23   that have been agreed to.  The Defendants have asked for a

12:35:33  24   short instruction to be given, given context of video

12:35:36  25   plays.  We're in the process of agreeing to that.  And my

12:35:39  1    expectation is that when we come back after lunch, we'll

12:35:43  2    present that proposed instruction to the jury on video

12:35:45  3    plays.

12:35:46  4            THE COURT:  All right.  Well, again, I'll direct

12:35:47  5    that you meet and confer about that over the lunch hour,

12:35:50  6    and we'll see where we are after lunch is completed but

12:35:53  7    before I bring the jury back in.

12:35:55  8            MR. SHEASBY:  Thank you, Your Honor.

12:35:56  9            THE COURT:  Anything from Defendant at this

12:35:57  10   juncture?

12:35:57  11           MR. MELSHEIMER:  No, Your Honor.

12:35:58  12           THE COURT:  We stand in recess for lunch.

12:36:00  13           I'll plan to be back on the bench by 1:30.

12:36:06  14           COURT SECURITY OFFICER:  All rise.

12:36:06  15           (Recess.)

01:06:45  16

          17

          18

          19

          20

          21

          22

          23

          24

          25

1                              CERTIFICATION

2

3          I HEREBY CERTIFY that the foregoing is a true and

4     correct transcript from the stenographic notes of the

5     proceedings in the above-entitled matter to the best of my

6     ability.

7

8

9      /S/ Shelly Holmes                      1/6/2020
      SHELLY HOLMES, CSR, TCRR               Date
10    OFFICIAL REPORTER
      State of Texas No.: 7804
11    Expiration Date: 12/31/20

12

13

14

15

16

17

18

19

20

21

22

23

24

25