08:33:09

1 IN THE UNITED STATES DISTRICT COURT
   FOR THE EASTERN DISTRICT OF TEXAS
2    MARSHALL DIVISION

3 UNITED SERVICES AUTOMOBILE )(
 ASSOCIATION
4        )( CIVIL ACTION NO.

5 VS.     )( 2:18-CV-366-JRG

6        )( MARSHALL, TEXAS
          JANUARY 10, 2020
7 WELLS FARGO BANK, N.A. )( 8:33 A.M.

8

9     TRANSCRIPT OF JURY TRIAL

10      ALL DAY

11  BEFORE THE HONORABLE CHIEF JUDGE RODNEY GILSTRAP,

12    UNITED STATES DISTRICT JUDGE

13
 APPEARANCES:
14

15 FOR THE PLAINTIFF:

16
 JASON SHEASBY
17 ANTHONY ROWLES
 LISA GLASSER
18 IRELL & MANELLA
 1800 Avenue of the Stars
19 Suite 900
 Los Angeles, CA 90067-4276
20

21
 ROBERT CHRISTOPHER BUNT
22 PARKER, BUNT & AINSWORTH, PC
 100 East Ferguson
23 Suite 418
 Tyler, TX 75702
24

25

```
 1    FOR THE DEFENDANT:

 2

      THOMAS M. MELSHEIMER
 3    M. BRETT JOHNSON
      MICHAEL A. BITTNER
 4    J. TRAVIS UNDERWOOD
      WINSTON & STRAWN LLP
 5    2121 North Pearl Street
      Suite 900
 6    Dallas, TX 75201

 7

      E. DANIELLE T. WILLIAMS
 8    WINSTON & STRAWN LLP
      300 South Tyron Street
 9    16th Floor
      Charlotte, NC 28202
10

11    MATTHEW R. MCCULLOUGH
      WINSTON & STRAWN LLP
12    275 Middlefield Road
      Suite 205
13    Menlo Park, CA 94025

14

      JACK WESLEY HILL
15    WARD, SMITH & HILL, PLLC
      P.O. Box 1231
16    1507 Bill Owens Parkway
      Longview, TX 75606
17

18
      COURT REPORTER:      Shelly Holmes, CSR, TCRR
19                         Official Court Reporter
                           United States District Court
20                         Eastern District of Texas
                           Marshall Division
21                         100 E. Houston
                           Marshall, Texas  75670
22                         (903) 923-7464

23
      (Proceedings recorded by mechanical stenography, transcript
24    produced on a CAT system.)

25
```

```
               1                    P R O C E E D I N G S
08:33:10       2            (Jury out.)
08:33:10       3            COURT SECURITY OFFICER:  All rise.
08:33:12       4            THE COURT:  Be seated, please.
08:34:28       5            Are the parties prepared to read into the record
08:34:36       6    those items from the list of pre-admitted exhibits used
08:34:40       7    during yesterday's portion of the trial?
08:34:42       8            MR. BUNT:  Yes, Your Honor, we are.
08:34:44       9            THE COURT:  All right.  Please proceed.
08:34:46      10            MR. BUNT:  Your Honor, there were two Plaintiff's
08:34:50      11    exhibits that came in yesterday.  Those were PX-6 and PX-7.
08:34:54      12            THE COURT:  Any objection to that rendition from
08:34:58      13    the Defendant?
08:34:58      14            MR. UNDERWOOD:  No objection, Your Honor.
08:34:59      15            THE COURT:  Does Defendant have a similar
08:35:02      16    rendition to offer for the record?
08:35:03      17            MR. UNDERWOOD:  Defendant does not.
08:35:06      18            THE COURT:  All right.  Thank you.
08:35:21      19            Mr. Sheasby, who's going to present closing
08:35:23      20    arguments for the Plaintiff?
08:35:24      21            MR. SHEASBY:  Your Honor, Mr. Bunt and I will be
08:35:28      22    jointly presenting the closing arguments.  Mr. Bunt would
08:35:30      23    like a warning at seven minutes.
08:35:31      24            THE COURT:  Mr. Bunt will go first?
08:35:33      25            MR. SHEASBY:  Mr. Bunt will go first.  We're going
```

08:35:35  1  to have 25 minutes in the opening, 15 in rebuttal.

08:35:39  2  Mr. Bunt would like a warning at seven minutes, and I would

08:35:44  3  like a warning at 20 minutes used, so five-minute, which is

08:35:54  4  probably an easier way of saying it.

08:36:00  5         And then in my rebuttal, I'd also respectfully

08:36:03  6  request a seven-minute warning.

08:36:06  7         THE COURT:  All right.  So in the first

08:36:08  8  Plaintiff's closing argument, both of you are going to

08:36:12  9  argue?

08:36:12  10         MR. SHEASBY:  Yes.

08:36:13  11         THE COURT:  And Mr. Bunt is going to start?

08:36:14  12         MR. SHEASBY:  Yes.

08:36:15  13         THE COURT:  And I'm going to warn Mr. Bunt when

08:36:17  14  he's used seven minutes?

08:36:19  15         MR. SHEASBY:  Yes, Your Honor.

08:36:20  16         THE COURT:  And then you all will decide when he

08:36:22  17  stops and when you start?

08:36:23  18         MR. SHEASBY:  Yes, Your Honor.

08:36:24  19         THE COURT:  And then you'd like a warning at what

08:36:26  20  point after that?

08:36:27  21         MR. SHEASBY:  Five minutes left, Your Honor.

08:36:29  22         THE COURT:  At 20 minutes?

08:36:30  23         MR. SHEASBY:  Yes, yes, Your Honor.

08:36:31  24         THE COURT:  At 20 minutes used.  And then you'll

08:36:35  25  do the final close -- --

1289

| | | |
|---|---|---|
| 08:36:36 | 1 | MR. SHEASBY:  Yes, Your Honor. |
| 08:36:37 | 2 | THE COURT:  -- closing argument?  And on that you |
| 08:36:40 | 3 | want five minutes remaining? |
| 08:36:43 | 4 | MR. SHEASBY:  Yes, Your Honor. |
| 08:36:44 | 5 | THE COURT:  All right.  Mr. Melsheimer, who's |
| 08:36:51 | 6 | going to present closing arguments for Defendant? |
| 08:36:53 | 7 | MR. MELSHEIMER:  Your Honor, I will, along with |
| 08:36:55 | 8 | Ms. Williams. |
| 08:36:58 | 9 | THE COURT:  And you want warnings on your time? |
| 08:37:01 | 10 | MR. MELSHEIMER:  I do, Your Honor.  I would |
| 08:37:03 | 11 | like -- we're going to split it 20/20. |
| 08:37:07 | 12 | THE COURT:  You're going to begin? |
| 08:37:08 | 13 | MR. MELSHEIMER:  I am. |
| 08:37:09 | 14 | THE COURT:  Okay. |
| 08:37:09 | 15 | MR. MELSHEIMER:  And so I would like a warning |
| 08:37:11 | 16 | when I've used 15 minutes of my 20, and Ms. Williams would |
| 08:37:15 | 17 | like a warning when she has used 15 minutes of her 20. |
| 08:37:20 | 18 | THE COURT:  Well, I don't have any way of knowing |
| 08:37:22 | 19 | that you will stop exactly on 20 minutes and she will |
| 08:37:26 | 20 | start.  So I'll warn you when 15 minutes have been used. |
| 08:37:30 | 21 | That will tell you you've got five minutes remaining.  You |
| 08:37:34 | 22 | will either stop at exactly 20 minutes or you'll keep going |
| 08:37:37 | 23 | or you'll stop early.  But whenever you stop, she'll start, |
| 08:37:41 | 24 | and I'll warn her when she has five minutes left.  Will |
| 08:37:44 | 25 | that work? |

08:37:44   1            MR. MELSHEIMER:  That will work.  There's --

08:37:46   2    there's grave concern on this side that I will keep

08:37:47   3    talking.

08:37:48   4            THE COURT:  That had nothing to do with the

08:37:49   5    questions I asked.

08:38:14   6            All right.  Just to make sure I have this right.

08:38:17   7    Plaintiff's first closing argument, Mr. Bunt will begin.

08:38:20   8    I'll warn him when he has used seven minutes.  At some

08:38:24   9    point, he and Mr. Sheasby will tag out, and I'll tell

08:38:29  10    Mr. Sheasby when 20 minutes have been used.

08:38:33  11            Then for Defendant's closing, Mr. Melsheimer will

08:38:37  12    start.  I'll tell him when 15 minutes have been used.  He

08:38:41  13    and Ms. Williams will tag in and out, and when she has five

08:38:47  14    minutes left, I will tell her.

08:38:48  15            On Plaintiff's final closing, whatever time is

08:38:51  16    left -- Plaintiff will have, and I'll tell Mr. Sheasby when

08:38:54  17    he has five minutes remaining.

08:38:56  18            Do I have that right?

08:38:57  19            MR. SHEASBY:  Yes, Your Honor.

08:38:59  20            MR. MELSHEIMER:  You do, Your Honor.

08:39:00  21            THE COURT:  Okay.  Thank you.

08:39:01  22            Do either Plaintiff or Defendant have anything

08:39:06  23    else that the Court needs to hear before I bring in the

08:39:09  24    jury and we begin with the Court's final jury instructions?

08:39:12  25            MR. SHEASBY:  Nothing from Plaintiffs, Your Honor.

08:39:13    1          MR. MELSHEIMER:  Nothing here, Your Honor.

08:39:14    2          THE COURT:  All right.  I will say this before I

08:39:18    3   bring in the jury, and this is directed not only to counsel

08:39:22    4   but everyone present, including our guests behind the bar.

08:39:27    5          The Court's final instructions to the jury and

08:39:29    6   counsel's closing arguments are, in the Court's view, the

08:39:35    7   most serious part of a very serious process.

08:39:38    8          Those of you that are behind the bar in the

08:39:40    9   gallery, I don't want any whispering.  I don't want any

08:39:43   10   talking.  I sure don't want to hear any cell phone noises.

08:39:48   11   And if you need to get up to come and go, get up and come

08:39:55   12   and go now.

08:39:56   13          I don't want people walking in and out of the

08:39:57   14   courtroom unnecessarily.  I want people to remain as quiet

08:39:58   15   and as still as possible.  I don't want anything that might

08:40:00   16   distract the jury from my final instructions to them or

08:40:04   17   from counsels' closing arguments.

08:40:06   18          All right.  With that, let's please bring in the

08:40:10   19   jury.

08:40:21   20          COURT SECURITY OFFICER:  All rise.

08:40:22   21          (Jury in.)

08:40:23   22          THE COURT:  Good morning, ladies and gentlemen.

08:40:40   23   Please be seated.

08:40:40   24          Ladies and gentlemen of the jury, you've now heard

08:40:56   25   the evidence in this case.  And I'll now instruct you on

1292

08:40:59   1   the law that you must apply.

08:41:01   2        Each of you, as I told you yesterday, will have

08:41:05   3   your own printed copy of these final jury instructions.

08:41:09   4   You're welcome -- you're welcome to make notes as I give

08:41:12   5   these instructions to you orally, but I want you to

08:41:14   6   understand, you'll have your own printed copy for your own

08:41:17   7   review in the jury room when you retire.

08:41:19   8        It's your duty to follow the law as I give it to

08:41:25   9   you.  On the other hand, ladies and gentlemen, as I've said

08:41:29  10   previously, you, the jury, are the sole judges of the facts

08:41:33  11   in this case.

08:41:35  12        Do not consider any statement that I have made

08:41:37  13   over the course of the trial or that I make during these

08:41:40  14   instructions as an indication to you that I have any

08:41:44  15   opinion about the facts.

08:41:46  16        You're about to hear closing arguments from the

08:41:49  17   attorneys in the case.  Statements and arguments from the

08:41:53  18   attorneys, I remind you, are not evidence, and they are not

08:41:59  19   instructions on the law.  They're intended only to assist

08:42:02  20   the jury in understanding the evidence and the parties'

08:42:08  21   competing contentions.

08:42:09  22        A verdict form has been prepared for you.  You

08:42:13  23   will take this verdict form with you when you retire to the

08:42:17  24   jury room.  And when you've reached a unanimous decision

08:42:21  25   regarding the verdict, you will have your foreperson fill

08:42:24  1   in the banks regarding the questions in the verdict form

08:42:29  2   with your unanimous answers.

08:42:31  3        Sign the verdict form and date it.  At that point,

08:42:36  4   the foreperson of the jury should notify the Court Security

08:42:39  5   Officer that the jury has reached a verdict.

08:42:40  6        Answer each question in the verdict form from the

08:42:46  7   facts as you find them to be.  Do not decide who you think

08:42:50  8   should win this case and then answer the questions to reach

08:42:54  9   that result.

08:42:55  10        Again, ladies and gentlemen, your answers and your

08:42:59  11   verdict must be unanimous.

08:42:59  12        In determining whether any fact has been proven in

08:43:05  13   this case, you may, unless otherwise instructed, consider

08:43:08  14   the testimony of all the witnesses, regardless of who may

08:43:12  15   have called them, and you may consider the effect of all

08:43:16  16   the exhibits received into evidence, regardless of who may

08:43:20  17   have produced or presented them.

08:43:22  18        You, the jury, are the sole judges of the

08:43:26  19   credibility and believability of each and every witness and

08:43:31  20   the weight and effect, if any, to give to the evidence

08:43:35  21   that's been presented to you in this case.

08:43:36  22        Now, I've told you previously that the attorneys

08:43:41  23   are acting as advocates for their competing parties and

08:43:45  24   those parties' competing claims, and they have a duty to

08:43:49  25   object when they believe evidence is offered during the

08:43:52   1   course of the trial that they believe should not be

08:43:55   2   admitted under the rules of the Court.

08:43:57   3            In that case, when the Court has sustained an

08:44:02   4   objection to a question addressed to a witness, you must

08:44:05   5   disregard the question entirely, and you may not draw any

08:44:10   6   inferences from its wording or speculate about how the

08:44:13   7   witness would have answered the question if I had allowed

08:44:16   8   them to answer the question.

08:44:17   9            On the other hand, if an objection has been

08:44:21  10   overruled by the Court, then you are to consider the

08:44:24  11   question and the answer just as if no objection had been

08:44:28  12   made, like any other question and answer.

08:44:30  13            Now, at various times during the course of the

08:44:34  14   trial, it's been necessary for the Court to talk to the

08:44:37  15   lawyers, either here at the bench or when you were outside

08:44:41  16   of the courtroom in the jury room.

08:44:43  17            This happens because during a trial, there are

08:44:47  18   things that you -- that occasionally arise that do not

08:44:50  19   involve the jury.  You should not speculate, ladies and

08:44:54  20   gentlemen, about what was said during any of the

08:44:57  21   discussions that took place outside of your presence.

08:44:59  22            Now, there are two types of evidence that you may

08:45:04  23   consider in properly finding the truth as to the facts in

08:45:07  24   this case.

08:45:08  25            One is direct evidence, such as the testimony of

08:45:11   1   an eyewitness.

08:45:12   2          The other is indirect evidence, or sometimes

08:45:16   3   called circumstantial evidence, which is the proof of a

08:45:19   4   chain of circumstances that indicates the existence or

08:45:25   5   non-existence of certain other facts.

08:45:25   6          As a general rule, you should know that the law

08:45:29   7   makes no distinction between direct evidence and

08:45:32   8   circumstantial evidence but simply requires that you, the

08:45:37   9   jury, find the facts based on the evidence that has been

08:45:40   10   presented, both direct and circumstantial.

08:45:43   11          Now, the parties may have stipulated or agreed to

08:45:49   12   some facts in this case.  And when the lawyers for both

08:45:51   13   sides stipulate as to the existence of a fact, you must,

08:45:55   14   unless otherwise instructed, accept that stipulation as

08:45:59   15   evidence and regard that fact as proven.

08:46:01   16          Certain testimony in this case has been presented

08:46:05   17   to you through depositions.  A deposition is the sworn,

08:46:10   18   recorded answers to questions asked to a witness in advance

08:46:15   19   of the trial.  If a witness cannot be present to testify in

08:46:19   20   person, then the witness's testimony may be presented under

08:46:23   21   oath in the form of a deposition.

08:46:24   22          As I told you earlier, before the trial, the

08:46:28   23   attorneys representing the parties in this case questioned

08:46:31   24   these deposition witnesses under oath.  At that time, a

08:46:35   25   court reporter was present, and their recorded testimony

08:46:39  1   was transcribed and written down.

08:46:42  2         Both sides have had an opportunity to contribute

08:46:45  3   portions of that testimony to those deposition witnesses

08:46:49  4   that have presented -- have been presented to you as a part

08:46:52  5   of this trial in open court.

08:46:55  6         Deposition testimony is entitled to the same

08:46:58  7   consideration by you as testimony given by a witness who

08:47:06  8   appears in person and testifies live from the witness

08:47:11  9   stand.

08:47:11  10         Accordingly, you should judge the credibility and

08:47:14  11   the importance of deposition testimony to the best of your

08:47:18  12   ability just as if the witness had testified from the

08:47:20  13   witness stand in open court.

08:47:22  14         Now, while you should consider only the evidence

08:47:25  15   in this case, ladies and gentlemen, you should understand

08:47:28  16   that you are permitted to draw such reasonable inferences

08:47:32  17   from the testimony and exhibits as you feel are justified

08:47:36  18   in the light of common experience.

08:47:42  19         In other words, ladies and gentlemen, you may make

08:47:44  20   deductions and reach conclusions that reason and common

08:47:50  21   sense lead you to draw from the facts that have been

08:47:53  22   established by the testimony and evidence in this case.

08:47:55  23         However, you should not base your decisions on any

08:47:57  24   evidence not presented by the parties in open court during

08:48:03  25   the trial.

08:48:04  1          Now, unless I instruct you otherwise, you may

08:48:06  2    properly determine that the testimony of a single witness

08:48:11  3    is sufficient to prove any fact, even if a greater number

08:48:14  4    of witnesses may have testified to the contrary, if after

08:48:18  5    considering all of the evidence you believe that single

08:48:20  6    witness.

08:48:23  7          Now, when knowledge of a technical subject may be

08:48:26  8    helpful to the jury, a person who has special training and

08:48:30  9    experience in that technical field, called an expert

08:48:35  10   witness, is permitted to state his or her opinions on those

08:48:45  11   technical matters to the jury.

08:48:45  12         However, ladies and gentlemen, you're not required

08:48:46  13   to accept those opinions.  As with any other witness, it is

08:48:49  14   solely up to you to decide who you believe and who you do

08:48:51  15   not believe, and whether or not you want to rely on their

08:48:59  16   testimony.

08:48:59  17         Now, over the course of the trial, certain

08:49:02  18   exhibits have been shown to you that were illustrations.

08:49:05  19   We call these demonstrative exhibits or sometimes just

08:49:08  20   demonstratives for short.

08:49:11  21         Demonstrative exhibits are a party's description,

08:49:13  22   picture, model, or drawing to describe something involved

08:49:23  23   in the trial.

08:49:23  24         If your recollection of the evidence differs from

08:49:24  25   these demonstratives, then you should rely on your

08:49:26  1   recollection.

08:49:27  2        Demonstrative exhibits are sometimes called jury

08:49:29  3   aids.  And the demonstrative itself is not evidence, ladies

08:49:33  4   and gentlemen, and I cannot send demonstrative exhibits to

08:49:37  5   you in the jury room during your deliberations because it's

08:49:40  6   not evidence.  But the witness's testimony given during the

08:49:47  7   use of a demonstrative is evidence.

08:49:51  8        Now, in any legal action facts must be proven by a

08:49:56  9   required amount of evidence known as the burden of proof.

08:50:00 10   The burden -- the burden of proof in this case is on the

08:50:02 11   Plaintiff, USAA, for some issues, and it's on the

08:50:05 12   Defendant, Wells Fargo, for other issues.

08:50:08 13        There are two burdens of proof that you will apply

08:50:11 14   in this case.  One is the preponderance of the evidence,

08:50:16 15   and the other is clear and convincing evidence.

08:50:19 16        The Plaintiff, USAA, has the burden of proof of

08:50:23 17   proving patent infringement by a preponderance of the

08:50:27 18   evidence.  USAA also has the burden of proving willful

08:50:31 19   patent infringement by a preponderance of the evidence.

08:50:35 20   And USAA has the burden of proving damages for any patent

08:50:41 21   infringement by a preponderance of the evidence.

08:50:43 22        Now, preponderance of the evidence means evidence

08:50:47 23   that persuades you that a claim is more probably true than

08:50:51 24   not true.  Sometimes this is talked about as being the

08:50:55 25   greater weight and degree of credible testimony.

08:50:58   1          The Defendant in this case, Wells Fargo, has the

08:51:04   2   burden of proof of proving patent invalidity by clear and

08:51:07   3   convincing evidence.

08:51:09   4          Clear and convincing evidence means evidence that

08:51:12   5   produces in your mind an abiding conviction in the truth of

08:51:18   6   the party's fact -- let me say that again.

08:51:22   7          Clear and convincing evidence means evidence that

08:51:25   8   produces in your mind an abiding conviction that the truth

08:51:29   9   of the party's factual contentions are highly probable.

08:51:33   10          Although proof to an absolute certainty is not

08:51:37   11   required, the clear and convincing evidence standard

08:51:40   12   requires a greater degree of persuasion than is necessary

08:51:44   13   for the preponderance of the evidence standard.

08:51:47   14          If the proof establishes in your mind an abiding

08:51:51   15   conviction in the truth of the matter, then the clear and

08:51:54   16   convincing evidence standard has been met.

08:51:59   17          Now, as I've previously told you, ladies and

08:52:02   18   gentlemen, these two burdens of proof are not to be

08:52:05   19   confused with the burden of proof known as beyond a

08:52:10   20   reasonable doubt, which is the burden of proof applied in a

08:52:11   21   criminal case, not in a civil case such as this.

08:52:14   22          You should not confuse clear and convincing

08:52:18   23   evidence with beyond a reasonable doubt.  It is not as high

08:52:22   24   as beyond a reasonable doubt, but it is higher than a

08:52:25   25   preponderance of the evidence.

08:52:26  1      Now, in determining whether any fact has been

08:52:31  2  proven by a preponderance of the evidence or by clear and

08:52:34  3  convincing evidence, you may, unless otherwise instructed,

08:52:39  4  consider the stipulations of the parties, the testimony of

08:52:42  5  all the witnesses, regardless of who called them, and all

08:52:45  6  the exhibits received and admitted into evidence during the

08:52:49  7  course of the trial, regardless of who may have produced

08:52:52  8  them or presented them.

08:52:53  9      Now, as I did at the beginning of the case, I'll

08:52:58  10  give you a summary of each side's contentions, and then

08:53:01  11  I'll provide you with detailed instructions on what each

08:53:04  12  side must prove to win on each of its contentions.

08:53:07  13      As I told you previously, this case concerns two

08:53:12  14  United States patents, those being U.S. Patent No.

08:53:20  15  10,013,681, and United States Patent No. 10,1 -- excuse me,

08:53:28  16  10,013,605, which have consistently been referred to

08:53:33  17  throughout the trial as the '681 patent and the '605

08:53:35  18  patent.  And they have been referred to throughout the

08:53:42  19  trial at various times as the patents-in-suit.  Sometimes

08:53:45  20  they've been called the asserted patents.

08:53:47  21      Now, the Plaintiff, USAA, seeks money damages from

08:53:52  22  Wells Fargo, the Defendant, for allegedly infringing the

08:53:56  23  patents-in-suit by making, using, selling, or offering for

08:54:05  24  sale in the United States the Wells Fargo Mobile Deposit

08:54:07  25  system.  Sometimes in these instructions, I'll refer to

08:54:10  1   that system for shorthand as the accused product.

08:54:15  2       USAA contends that the accused product infringes

08:54:18  3   the following claims:  Claim 1, Claim 3, Claim 11 through

08:54:24  4   14, and Claim 22 of the '605 patent, and Claims 12 through

08:54:32  5   14, Claim 20, Claim 22, and Claim 30 of the '681 patent.

08:54:37  6       These -- these claims are sometimes referred to

08:54:41  7   collectively as the asserted claims.

08:54:45  8       USAA has alleged that the accused product

08:54:50  9   infringes the asserted claims.  USA -- USAA also alleges

08:54:57  10  that Wells Fargo's infringement is and has been willful.

08:55:01  11      USAA seeks damages in the form of a reasonable

08:55:06  12  royalty for Wells Fargo's alleged infringement.

08:55:08  13      Wells Fargo, the Defendant, denies that the

08:55:13  14  accused product infringes any of the asserted claims of the

08:55:20  15  '681 patent and the '605 patent.

08:55:22  16      Wells Fargo further denies USAA's allegation that

08:55:27  17  it willfully infringed any claim of the asserted patents.

08:55:35  18      Wells Fargo also contends that the asserted claims

08:55:37  19  are invalid, and Wells Fargo denies that it owes USAA any

08:55:41  20  damages in this case.

08:55:43  21      It's your job, members of the jury, to decide

08:55:49  22  whether USAA has proven that Wells Fargo has infringed any

08:55:53  23  of the asserted claims and whether any infringement is

08:55:57  24  willful.  You must also decide whether Wells Fargo has

08:56:01  25  proven that any of the asserted claims are invalid.

08:56:04  1        If you decide that any of the asserted claims have

08:56:10  2   been infringed and are not invalid, then you will need to

08:56:17  3   decide whether any money damages should be awarded and what

08:56:20  4   amount those money damages should be to compensate USAA for

08:56:24  5   that infringement.

08:56:25  6        I'll now instruct you on a number of established

08:56:31  7   facts, and you must take these facts as true when deciding

08:56:34  8   the issues in this case.

08:56:35  9        No. 1, USAA is the record assignee and owner of

08:56:44  10  the '605 and the '681 patents;

08:56:45  11       No. 2, the asserted claims of the '605 patent are

08:56:50  12  Claims 1, 3, 11 through 14, and 22;

08:56:54  13       No. 3, the asserted claims of the '681 patent are

08:56:58  14  Claims 12 through 14, 20, 22, and 30;

08:57:03  15       No. 4, it's an established fact that the system

08:57:10  16  accused of infringement satisfies the following limitations

08:57:12  17  of the claims:

08:57:15  18       The '605 patent, Claim 1, quote, an image capture

08:57:21  19  and processing system for use with a digital camera, the

08:57:24  20  image capture and processing system comprising:  A portable

08:57:29  21  device comprising a general purpose computer including a

08:57:33  22  processor coupled to a memory, the memory storing, close

08:57:38  23  quote.

08:57:38  24       Next, '605 patent, Claim 12, quote, a system for

08:57:49  25  allowing a customer to deposit a check using the customer's

| | | |
|---|---|---|
| 08:57:51 | 1 | own handheld mobile device with a digital camera, the |
| 08:57:54 | 2 | system configured to authenticate the customer, the system |
| 08:57:58 | 3 | including, close quote. |
| 08:58:00 | 4 | Next, all other instances in Claim 1 and Claim 12 |
| 08:58:06 | 5 | of the '605 patent of the term "mobile device" or the term |
| 08:58:11 | 6 | "portable device." |
| 08:58:12 | 7 | Next, '681 patent, Claim 12, quote, a system for |
| 08:58:18 | 8 | allowing a customer to deposit a check using the customer's |
| 08:58:23 | 9 | own mobile device with a digital camera, the system |
| 08:58:26 | 10 | configured to ask the customer to log in using a customer |
| 08:58:32 | 11 | name and password, the system including, close quote. |
| 08:58:35 | 12 | Next, '681 patent, Claim 30, quote, a |
| 08:58:41 | 13 | non-transitory computer-readable medium storing an app |
| 08:58:45 | 14 | that, when downloaded -- downloaded and run by a customer's |
| 08:58:49 | 15 | mobile device, causes the customer's mobile device to |
| 08:58:54 | 16 | perform, close quote. |
| 08:58:55 | 17 | Next, all other instances in Claims 12, 20, and 30 |
| 08:59:00 | 18 | of the '681 patent of the term "mobile device." |
| 08:59:03 | 19 | Now, before you can decide many of the issues in |
| 08:59:10 | 20 | this case, you will need to understand the role of the |
| 08:59:12 | 21 | patent claims. |
| 08:59:14 | 22 | The claims of a patent, ladies and gentlemen, are |
| 08:59:17 | 23 | the numbered sentences at the end of the patent.  The |
| 08:59:21 | 24 | claims define the owner's rights under the law.  The claims |
| 08:59:27 | 25 | are important because it's the words of the claims |

08:59:29  1   themselves that define what the patent covers.

08:59:36  2        The figures and the text in the rest of the patent

08:59:38  3   are intended to provide a description or examples of the

08:59:41  4   invention and to provide a context for the claims, but it

08:59:44  5   is the claims themselves that define the breadth of the

08:59:48  6   patent's coverage.

08:59:48  7        Each claim is effectively treated as if it were

08:59:53  8   its own separate patent, and each claim may cover more or

08:59:57  9   may cover less than any other claim.  Therefore, what a

09:00:02  10   patent covers collectively or as a whole depends on what

09:00:07  11   each of its claims cover.

09:00:09  12        You first need to understand what each claim

09:00:12  13   covers in order to decide whether or not there is

09:00:16  14   infringement of that claim and to decide whether or not the

09:00:19  15   claim is invalid.  And the first step is to understand the

09:00:24  16   meaning of the words used in the patent claim.

09:00:28  17        Now, the law says that it's my role as the Judge

09:00:34  18   to define the terms of the claims, but it's your role as

09:00:37  19   the jury to apply my definitions to the issues that you're

09:00:40  20   asked to decide in this case.

09:00:41  21        Accordingly, and as I explained to you at the

09:00:47  22   beginning of the case, I have already determined the

09:00:49  23   meaning of certain claim language, and I've provided

09:00:52  24   definitions of those claim terms to you in your juror

09:00:56  25   notebooks.

09:00:57  1        You must accept my definitions of those words in
09:01:02  2   the claims as being correct, and it's your job to take
09:01:05  3   these definitions that I have supplied and apply them to
09:01:09  4   the issues that you are asked to decide, including the
09:01:13  5   issues of infringement and invalidity.
09:01:15  6        My interpretation of the claim terms should not be
09:01:20  7   taken by you as an indication that I have a view regarding
09:01:24  8   the issues of infringement and invalidity.  The decisions
09:01:28  9   regarding infringement and invalidity are yours alone to
09:01:34 10   make.
09:01:34 11        For claim limitations where I have not construed
09:01:36 12   the language or defined or interpreted any particular term,
09:01:40 13   you are to use the plain and ordinary meaning of that term
09:01:44 14   as understood by one of ordinary skill in the art, which is
09:01:50 15   to say in the field of the technology of the patent at the
09:01:53 16   time of the alleged invention.
09:01:57 17        The meaning of the words of the patent claims must
09:01:59 18   be the same when deciding the issues of infringement and
09:02:02 19   when deciding the issues of invalidity.
09:02:06 20        I'll now explain how a claim defines what it
09:02:11 21   covers.
09:02:11 22        A claim sets forth in words a set of requirements.
09:02:15 23   Each claim sets forth its requirements in a single
09:02:19 24   sentence.  If a device satisfies each of these requirements
09:02:22 25   in that sentence, then it is covered by and infringes the

09:02:27  1   claim.

09:02:28  2          There can be several claims in a patent.  A claim

09:02:32  3   may be narrower or broader than any other claim by setting

09:02:35  4   forth more or fewer requirements.  The coverage of a patent

09:02:40  5   is assessed on a claim-by-claim basis.

09:02:42  6          In patent law, the requirements of a claim are

09:02:48  7   often referred to as the claim elements.  They're sometimes

09:02:52  8   called the claim limitations.

09:02:54  9          When a product meets all of the requirements of a

09:02:56  10  claim, where it meets all of its limitations or elements,

09:03:01  11  then the claim is said to cover that product, and the

09:03:05  12  product is said to fall within the scope of that claim.  In

09:03:10  13  other words, a claim covers a product where each of the

09:03:13  14  claim elements or limitations is present in that product.

09:03:21  15         If a product is missing even one limitation or

09:03:25  16  element of a claim, the product is not covered by the

09:03:27  17  claim.  And if the product is not covered by the claim, the

09:03:31  18  product does not infringe the claim.

09:03:32  19         Now, this case involves two types of patent

09:03:35  20  claims, independent claims and dependent claims.

09:03:39  21         An independent patent claim does not refer to any

09:03:42  22  other claim in the patent.  An independent claim sets forth

09:03:47  23  all the requirements that must be met in order to be

09:03:50  24  covered by that claim.  It's not necessary to look at any

09:03:54  25  other claim to determine what an independent claim covers.

09:03:57  1          On the other hand, a dependent claim does not by

09:04:02  2   itself recite all the requirements of a claim but refers to

09:04:08  3   another claim or claims for some of its requirements.  In

09:04:11  4   this way, the dependent claim depends on another claim, or

09:04:17  5   we sometimes say refers to another claim.

09:04:22  6          The law considers a dependent claim to incorporate

09:04:26  7   all the requirements of the claim or claims to which it

09:04:30  8   refers or depends, as well as the additional claims set

09:04:33  9   forth -- the additional elements set forth in the dependent

09:04:39  10  claim itself.

09:04:40  11         To determine what a dependent claim covers, it's

09:04:42  12  necessary to look at both the dependent claim and any other

09:04:47  13  claim to which it refers or from which it depends.

09:04:52  14         A product that meets all the requirements of both

09:04:54  15  the dependent claim itself and the claim or claims to which

09:04:58  16  it refers, or as we say from which it depends, is covered

09:05:03  17  by that department claim.

09:05:07  18         The claims of the patents-in-suit use the word

09:05:09  19  "comprising."  Comprising means including or containing.

09:05:15  20  When the word "comprising" is used, a product that includes

09:05:19  21  all the limitations or elements of the claim, as well as

09:05:24  22  additional elements or limitations, is covered by the

09:05:26  23  claim.

09:05:27  24         Some of the claims of the patents-in-suit use the

09:05:31  25  word "including."  In a claim, including means comprising.

| | | |
|---|---|---|
| 09:05:37 | 1 | For example, if you take a claim that covers the |
| 09:05:40 | 2 | invention of a table, if the claim recites a table |
| 09:05:44 | 3 | comprising a tabletop, four legs, and glue that holds the |
| 09:05:50 | 4 | legs to the tabletop, that claim will cover any table that |
| 09:05:54 | 5 | contains those structures, even if the table also contains |
| 09:06:00 | 6 | other structures, such as leaves to go in the tabletop or |
| 09:06:05 | 7 | wheels to be added to the ends of the legs. |
| 09:06:07 | 8 | Now, that's a simple example using the word |
| 09:06:10 | 9 | "comprising" and what it means.  In other words, an accused |
| 09:06:13 | 10 | product can have other features in addition to those |
| 09:06:16 | 11 | covered by the patent and still infringe a patent's claim |
| 09:06:22 | 12 | so long as every element or limitation of the claim is |
| 09:06:24 | 13 | present. |
| 09:06:25 | 14 | If a product is missing even one element or |
| 09:06:31 | 15 | limitation of a claim, it does not meet all the |
| 09:06:33 | 16 | requirements of the claim and is not covered by the claim. |
| 09:06:36 | 17 | And as I've said, if it's not covered by the claim, it does |
| 09:06:39 | 18 | not infringe the claim. |
| 09:06:40 | 19 | If a person makes, uses, sells, or offers for sale |
| 09:06:49 | 20 | within the United States or imports into the United States |
| 09:06:53 | 21 | a product that is covered by a patent claim without the |
| 09:06:56 | 22 | patent owner's permission, that person is said to infringe |
| 09:07:01 | 23 | the patent. |
| 09:07:01 | 24 | To determine whether there is infringement, you |
| 09:07:05 | 25 | must compare the asserted patent claims as I have defined |

09:07:10  1    each of them to the accused product.  You should not

09:07:13  2    compare the accused product with any specific example set

09:07:18  3    out in the patent or with the patent owner's own commercial

09:07:23  4    product or with the prior art in reaching your -- your

09:07:26  5    decision on infringement.

09:07:27  6            As I've reminded you during the trial, the only

09:07:32  7    correct comparison is between the accused product and the

09:07:36  8    language of the claims themselves.

09:07:39  9            You must reach your decision as to each assertion

09:07:43  10   of infringement based on my instructions about the meaning

09:07:46  11   and the scope of the claims, the legal requirements for

09:07:50  12   infringement, and the evidence presented to you by both of

09:07:56  13   the parties.

09:07:56  14           As I've already told you, to prove infringement,

09:07:59  15   USAA, the Plaintiff, must prove by a preponderance of the

09:08:03  16   evidence that the Defendant, Wells Fargo, has made, used,

09:08:07  17   sold, or offered for sale a product that meets all the

09:08:10  18   requirements of an asserted claim -- that is, USAA must

09:08:15  19   show that it is more likely than not that the accused

09:08:19  20   product meets all the requirements of an asserted claim.

09:08:21  21           If the accused product does not include any single

09:08:28  22   step or element of an asserted patent claim, then Wells

09:08:31  23   Fargo does not infringe that claim.

09:08:35  24           The issue of infringement, ladies and gentlemen,

09:08:37  25   is based on a claim-by-claim -- it's assessed on a

09:08:41  1   claim-by-claim basis within each patent.  Therefore, there

09:08:45  2   may be infringement of a particular patent as to one claim,

09:08:49  3   even if there's no infringement as to the other claims in

09:08:52  4   that patent.

09:08:52  5         In order to infringe a patent claim, the accused

09:08:57  6   device must include each and every element of the claim.

09:09:01  7   In determining whether Wells Fargo infringes USAA's

09:09:06  8   asserted claims, you must determine if the accused product

09:09:10  9   contains each and every element recited in a claim of the

09:09:15  10  asserted patent.

09:09:16  11        A claim element is present if it exists in the

09:09:21  12  accused product as it is described in the claim language,

09:09:24  13  either as I have explained it to you, or if I did not

09:09:28  14  explain it, according to its -- if I did not explain it,

09:09:32  15  according to its ordinary meaning as understood by one of

09:09:36  16  ordinary skill in the art.

09:09:36  17        To establish direct infringement of a dependent

09:09:43  18  claim, the Plaintiff, USAA, must show that it is more

09:09:45  19  likely than not that the Defendant, Wells Fargo, infringed

09:09:51  20  each and every element of the independent claim to which

09:09:54  21  the dependent claim refers and the additional elements of

09:09:57  22  the dependent claim itself.

09:09:58  23        A patent can be infringed, ladies and gentlemen,

09:10:05  24  even if the alleged infringer did not have knowledge of the

09:10:10  25  patent and without the infringer knowing that what it is

09:10:13   1   doing is infringement of the claim.

09:10:14   2        A patent may also be infringed -- infringed even

09:10:17   3   though the accused infringer believes in good faith that

09:10:22   4   what it is doing is not infringement of the patent.

09:10:25   5        As I just mentioned, infringement requires a party

09:10:33   6   to make, use, sell, or offer to sell each and every

09:10:38   7   component or step of a claimed system or method.  A party

09:10:42   8   makes a claimed system when it combines all of the elements

09:10:46   9   of the claims, even if it does not make each individual

09:10:50  10   component element.

09:10:52  11        A party uses a claimed system when it controls the

09:10:54  12   system and obtains benefits from it.  A party obtains a

09:11:03  13   benefit from a system if it obtains a benefit from each and

09:11:04  14   every element of the claimed system.

09:11:06  15        A party does not have to exercise physical or

09:11:08  16   direct control over each element of the system in order to

09:11:15  17   use the claimed system.

09:11:16  18        Infringement requires a single party be

09:11:20  19   responsible for infringement of the claim.  Where more than

09:11:24  20   one party is involved in the system accused of

09:11:27  21   infringement, you must determine whether the acts of one

09:11:30  22   party are attributable to another party such that a single

09:11:34  23   party is responsible for the infringement.

09:11:36  24        In this case, USAA contends that Wells Fargo

09:11:41  25   willfully infringed its patents.  If you decide that Wells

09:11:47  1   Fargo has infringed, you must then go on to separately

09:11:51  2   address the additional issue of whether or not Wells

09:11:54  3   Fargo's infringement was willful.

09:11:56  4        USAA must prove willfulness by a preponderance of

09:12:02  5   the evidence.  In other words, you must determine whether

09:12:04  6   it is more likely than not that Wells Fargo willfully

09:12:09  7   infringed the asserted patents.

09:12:10  8        You may not determine that infringement was

09:12:15  9   willful just because Wells Fargo knew of the asserted

09:12:19  10  patents and infringed them.  However, you may find that

09:12:23  11  Wells Fargo willfully infringed if you find that it acted

09:12:30  12  egregiously, willfully, or wantonly.  You may find Wells

09:12:35  13  Fargo's actions were egregious, willful, or wanton if it

09:12:39  14  acted in reckless or callous disregard of or with

09:12:45  15  indifference to the rights of USAA.

09:12:47  16       A Defendant is indifferent to the rights of

09:12:49  17  another when it proceeds in disregard of a high or

09:12:51  18  excessive danger of infringement that was known to it or

09:12:57  19  was apparent to a reasonable person in its position.

09:13:00  20       Your determination of willfulness should

09:13:03  21  incorporate the totality of the circumstances based on all

09:13:09  22  the evidence presented during the trial.  Willfulness can

09:13:12  23  be established by circumstantial evidence.

09:13:17  24       For example, in determining whether any

09:13:19  25  infringement of an asserted claim by Wells Fargo was

09:13:22  1  willful, you may consider whether Wells Fargo intentionally

09:13:27  2  copied a product that is covered by the asserted claim.

09:13:37  3  However, such copying will be relevant to willfulness only

09:13:37  4  if it copied the product -- only if the copied product is

09:13:39  5  covered by the asserted claims.

09:13:40  6       Knowledge of the existence of a patent or patent

09:13:45  7  family can be relevant to the question of willful

09:13:48  8  infringement.

09:13:50  9       For example, if Wells Fargo knew of the existence

09:13:53  10  of a patent or subjectively believed there was a high

09:13:59  11  probability that a patent existed and took deliberate

09:14:02  12  actions to avoid learning of the patent, you may take this

09:14:06  13  into account when considering willfulness.  You may also

09:14:09  14  take into account whether Wells Fargo had knowledge of a

09:14:11  15  patent family.

09:14:11  16       I'll now instruct you on the rules that you must

09:14:18  17  follow in deciding whether or not Wells Fargo has proven by

09:14:22  18  clear and convincing evidence that the asserted claims of

09:14:24  19  the patents-in-suit are invalid.

09:14:25  20       An issued patent, ladies and gentlemen, is

09:14:32  21  accorded a presumption of validity based on the presumption

09:14:36  22  that the U.S. Patent and Trademark Office office, as you've

09:14:40  23  heard referred to throughout the trial as the PTO or as the

09:14:43  24  Patent Office, acted correctly in issuing the patents.

09:14:51  25  This presumption of validity extends to all issued United

09:14:55 1   States patents.

09:14:55 2        In order to overcome that presumption, Wells Fargo

09:14:59 3   must establish by clear and convincing evidence that USAA's

09:15:01 4   patents or any claim in the patents are not valid.

09:15:07 5        The time it took the U.S. Patent and Trademark

09:15:10 6   Office office to examine and grant the patents-in-suit is

09:15:13 7   not relevant to any issue in this case.  Even though the

09:15:16 8   PTO examiner has allowed the claims of a patent, you have

09:15:19 9   the ultimate responsibility of deciding whether the claims

09:15:22 10  of the patents-in-suit are valid.  Like infringement,

09:15:27 11  invalidity is determined on a claim-by-claim basis.

09:15:33 12       Claims are construed in the same way for

09:15:35 13  determining infringement as for determining invalidity.

09:15:40 14  You must apply the claim language consistently and in the

09:15:44 15  same manner for issues of infringement and for issues of

09:15:47 16  invalidity.  You must determine separately for each claim

09:15:51 17  whether that claim is invalid.

09:15:53 18       Now, at times, you will hear me make reference to

09:16:00 19  prior art.  In patent law, a system, device, method,

09:16:04 20  publication, or patent that predated the patent claim at

09:16:09 21  issue is called prior art.

09:16:12 22       For a prior art reference to be considered for the

09:16:15 23  purpose of determining whether or not the claims are

09:16:18 24  invalid, the prior art item or reference must have been

09:16:22 25  made, known, used, filed, or published more than a year

09:16:28    1    before the effective filing date of the patent, which

09:16:34    2    you -- which you've heard referred to throughout this case

09:16:36    3    at various times at the priority date.

09:16:39    4            The parties disagree on the priority date of the

09:16:43    5    '605 and the '681 patents.

09:16:45    6            The Plaintiff, USAA, contends that the patents are

09:16:49    7    entitled to a priority date of October 31st, 2006.  The

09:16:54    8    Defendant, Wells Fargo, contends that the patents are

09:16:58    9    entitled to a priority date of July the 28th, 2017.

09:17:01   10            The patents-in-suit were filed on July the 28th,

09:17:09   11    2017.  Therefore, they're entitled to at least a priority

09:17:13   12    date of July 28th, 2017.

09:17:15   13            To determine whether Wells Fargo has met its

09:17:21   14    burden -- burden to show by clear and convincing evidence

09:17:24   15    that the asserted patents are not entitled to a priority

09:17:27   16    date of October 31, 2006, you will need to determine

09:17:34   17    whether the patent specification filed on October 31, 2006,

09:17:40   18    in the parent application satisfies the written description

09:17:45   19    requirement for the asserted claims filed in 2017.

09:17:52   20            If Wells Fargo does not meet this burden, the

09:17:55   21    asserted patents are entitled to a priority date of October

09:17:57   22    31, 2006.

09:18:07   23            As I've previously explained, to obtain a patent,

09:18:07   24    one must first file an application with the United States

09:18:08   25    Patent and Trademark Office.  The process of obtaining a

1316

09:18:12   1   patent is called patent prosecution.

09:18:14   2           The application submitted to the PTO includes

09:18:18   3   within it what is called a specification.  The

09:18:22   4   specification is required to contain a written description

09:18:27   5   of the claimed invention telling what the invention is, how

09:18:30   6   it works, how to make it, and how to use it.

09:18:36   7           The patentee may later file an additional patent

09:18:40   8   application based on the same specification as the original

09:18:44   9   application but with different claims.  These follow-on

09:18:47   10  applications are called continuations because they are a

09:18:52   11  continuation of the original patent application.

09:18:56   12          The original patent application is sometimes

09:18:59   13  called the parent application.  Continuation applications

09:19:04   14  are based on the parent applications -- excuse me,

09:19:08   15  continuation applications based on the parent application

09:19:12   16  are sometimes called children.

09:19:16   17          The combination of patents issued from the patent

09:19:20   18  application and from any continuation or child applications

09:19:25   19  are referred to as a patent family.  Each issued patent in

09:19:31   20  a patent family is a separate property right.

09:19:33   21          In this case, the parent application of the '681

09:19:40   22  patent was filed on October 31, 2006, and published on

09:19:45   23  January the 18th, 2011.  The parent application and the

09:19:52   24  '681 patent share the same specification.

09:19:54   25          The parent application of the '605 patent was

09:19:57   1   filed on October 31, 2006.  The parent application was

09:20:02   2   published on April 29th, 2014.  The parent application and

09:20:08   3   the '605 patent share the same specification.

09:20:11   4        Each patent, regardless of whether it is in the

09:20:18   5   same patent family, must be assessed individually with

09:20:21   6   respect to infringement, invalidity, marking, damages, and

09:20:27   7   willfulness.  You are to assess each of these issues

09:20:30   8   independently for each asserted patent according to the

09:20:33   9   instructions that I give you.

09:20:35  10        I'll now instruct you on the rules that you must

09:20:40  11   follow in determining whether the asserted patents satisfy

09:20:43  12   the written description requirement.

09:20:46  13        Wells Fargo bears the burden of establishing by

09:20:52  14   clear and convincing evidence that the claims of the '605

09:20:56  15   patent and the '681 patent do not satisfy the written

09:21:00  16   description requirement.

09:21:01  17        A patent must contain a written description of the

09:21:07  18   invention claimed in the patent.  The written description

09:21:10  19   requirement helps ensure that the patent applicant actually

09:21:14  20   invented the claimed subject matter.

09:21:18  21        To satisfy the written description requirement,

09:21:20  22   the patent specification must describe each and every

09:21:24  23   limitation of a patent claim in sufficient detail, although

09:21:28  24   the exact words found in the claim need not be used.

09:21:33  25        When determining whether the specification

09:21:36  1  discloses the invention, the claim must be viewed as a
09:21:40  2  whole.
09:21:43  3      In determining whether the patent satisfies this
09:21:45  4  written description requirement, you must consider the
09:21:48  5  description from the viewpoint of a person having ordinary
09:21:51  6  skill in the field of technology of the patent when the
09:21:54  7  application was filed.
09:21:59  8      The written description requirement is satisfied
09:22:01  9  if persons of ordinary skill in the field of the invention
09:22:05  10 would recognize from reading the patent specification that
09:22:08  11 the inventor possessed the subject matter finally claimed
09:22:12  12 in the patent.
09:22:12  13     The written description requirement is satisfied
09:22:17  14 if the specification shows that the inventor possessed his
09:22:22  15 or her invention as of the priority date of the claimed
09:22:25  16 invention even though the claims themselves may have been
09:22:32  17 changed or new claims added since that time.
09:22:35  18     The written description requirement may be
09:22:44  19 satisfied by any combination of the words, structures,
09:22:48  20 figures, diagrams, formulas, et cetera, contained in the
09:22:52  21 patent application.
09:22:58  22     It is unnecessary to spell out every detail of the
09:23:01  23 invention in the specification, and specific examples are
09:23:03  24 not required.  Only enough must be included in the
09:23:08  25 specification to convince persons of ordinary skill in the

09:23:15  1  art that the inventor possessed the full scope of the

09:23:17  2  invention.

09:23:18  3        The patent specification need not disclose every

09:23:24  4  embodiment of the invention.  Description in the

09:23:26  5  specification of as few as one example can be a sufficient

09:23:31  6  written description of a larger category of potential

09:23:35  7  embodiments of the invention.

09:23:37  8        However, the specification must describe the

09:23:39  9  claimed invention in a way that a person of ordinary skill

09:23:46  10  in the art would understand that the larger category is

09:23:48  11  being claimed -- that is being claimed has been invented,

09:23:51  12  not just a single example.

09:23:53  13        It's unnecessary for the patent applicant to

09:23:57  14  describe concepts relating to the invention that are

09:24:01  15  already well-known to persons of ordinary skill in the art.

09:24:06  16        In considering written description, be aware that

09:24:10  17  the actual possession of the invention outside of the

09:24:14  18  specification is not enough.  Rather, as stated above, or

09:24:18  19  as I've told you, it is the specification itself that must

09:24:22  20  demonstrate possession such that one skilled in the art

09:24:25  21  reading the original disclosure could reasonably discern

09:24:29  22  the limitation at issue in a claim.

09:24:31  23        I'll now instruct you on the rules that you must

09:24:40  24  follow in determining whether the asserted claims are

09:24:42  25  anticipated.

09:24:42  1          For a claim to be invalid because it is not new or

09:24:47  2     anticipated, all of its requirements must have existed in a

09:24:51  3     single system that predates the asserted claims or must

09:24:55  4     have been described in a single printed publication or

09:24:58  5     patent that predates the asserted claims.

09:25:00  6          To understand how a prior art system operates, you

09:25:06  7     may rely on multiple pieces of evidence that describe the

09:25:09  8     same prior art system for the purpose of finding

09:25:12  9     anticipation.

09:25:15  10          In other words, if you find that a single prior

09:25:17  11     art system existed that meets every requirement of the

09:25:22  12     claim, then that is enough to find the claim invalid as

09:25:25  13     anticipated by the prior art.

09:25:28  14          The prior art must contain all the limitations of

09:25:32  15     the claim, arranged as in the claim.

09:25:37  16          Defendant must prove by clear and convincing

09:25:40  17     evidence that an asserted claim was anticipated by the

09:25:43  18     prior art.

09:25:46  19          If you find that the Defendant has proven by clear

09:25:48  20     and convincing evidence that asserted -- that an asserted

09:25:51  21     claim was anticipated by the prior art, as I've explained

09:25:55  22     the law to you, you must find that the asserted claim is

09:26:01  23     invalid.

09:26:02  24          If you find that the Defendant has failed to prove

09:26:04  25     by clear and convincing evidence that an asserted claim was

09:26:08  1   anticipated by any prior art, you must find the asserted

09:26:13  2   claim is not anticipated.

09:26:16  3        In determining whether or not the invention of an

09:26:19  4   asserted claim is invalid, you must determine the scope and

09:26:23  5   content of the prior art at the time the invention was

09:26:27  6   made.

09:26:30  7        For prior art to anticipate a claim of a patent,

09:26:32  8   the disclosure in the prior art reference does not have to

09:26:35  9   be in the same words as the claim, but all of the elements

09:26:40  10  of the claim must be there, either stated or necessarily

09:26:43  11  implied, so that someone of ordinary skill in the field of

09:26:47  12  the invention looking at that reference would be able to

09:26:50  13  make and use at least one embodiment of the claimed

09:26:54  14  invention.

09:26:54  15       Anticipation can occur when the claimed invention

09:27:03  16  inherently and necessarily results from practice of what

09:27:09  17  was disclosed in the written reference, even if the

09:27:13  18  inherent disclosure was unrecognized or unappreciated by

09:27:21  19  one of ordinary skill in the field of the invention.

09:27:26  20       If you find that -- if you find that an asserted

09:27:29  21  claim is not new, as I have explained it to you, you should

09:27:32  22  find that it is invalid.

09:27:34  23       Now, ladies and gentlemen, several times in my

09:27:36  24  instructions, I have referred to a person of ordinary skill

09:27:39  25  in the field of the invention.  It's up to you to decide

09:27:42  1   the level of ordinary skill in the field of the invention.

09:27:45  2        In deciding what the level of ordinary skill is,

09:27:47  3   you should consider all the evidence introduced at the

09:27:50  4   trial, including:

09:27:53  5        (1) the levels of education and experience of

09:27:57  6   inventors and other persons working in the field;

09:27:59  7        (2) the types of problems encountered in the

09:28:03  8   field;

09:28:03  9        (3) prior art solutions to those problems;

09:28:06  10       (4) the rapidity with which innovations are made;

09:28:15  11       And, (5), the sophistication of the technology.

09:28:18  12       A person of ordinary skill in the art is a

09:28:22  13  hypothetical person who is presumed to be aware of all the

09:28:26  14  relevant prior art at the time of the claimed invention.

09:28:29  15       If you find that USAA has proven that Wells Fargo

09:28:35  16  has infringed any of the asserted claims and if you find

09:28:41  17  that Wells Fargo has failed to show that the asserted

09:28:43  18  claims are invalid, you must then consider the proper

09:28:47  19  amount of damages, if any, to award to USAA.

09:28:51  20       I will now instruct you about the measure of

09:28:59  21  damages.  However, by instructing you on damages, I'm not

09:29:02  22  suggesting which party should win this case on any issue.

09:29:05  23       If you find that Wells Fargo has not infringed any

09:29:07  24  of the asserted claims or that the infringed claims are

09:29:11  25  invalid, then USAA is not entitled to any damages.

09:29:15  1        If you award damages, ladies and gentlemen, they

09:29:19  2   must be adequate to compensate USAA for any infringement of

09:29:24  3   the asserted claims you may find.

09:29:25  4        You must not award USAA damages -- I'm sorry, you

09:29:37  5   must not award USAA more -- USAA more damages than are

09:29:41  6   adequate to compensate for the infringement, nor should you

09:29:45  7   include any additional amount for the purpose of --

09:29:48  8   purposes of punishing Wells Fargo.

09:29:52  9        The patent law specifically provide that damages

09:29:55  10  for infringement may not be less than a reasonable royalty.

09:30:00  11       Now, USAA has the burden to establish the amount

09:30:03  12  of its damages by a preponderance of the evidence.  In

09:30:07  13  other words, you should award only those damages that USAA

09:30:11  14  establishes that it more likely than not suffered as a

09:30:16  15  result of Wells Fargo's infringement of the asserted

09:30:19  16  claims.

09:30:22  17       While USAA is not required to prove the amount of

09:30:26  18  its damages with mathematical precision, it must prove them

09:30:30  19  with reasonable certainty.  USAA is not entitled to damages

09:30:35  20  that are remote or speculative.

09:30:37  21       A reasonable royalty is the amount of royalty

09:30:42  22  payment that a patentholder and the alleged infringer would

09:30:46  23  have agreed to in a hypothetical negotiation taking place

09:30:50  24  at a time immediately prior to when the infringement first

09:30:53  25  began.

09:30:54  1        In considering this hypothetical negotiation, you

09:30:57  2   should focus on what the expectations of the patentholder

09:31:05  3   and the alleged infringer would have been had they entered

09:31:08  4   into an agreement at that time and had they acted

09:31:10  5   reasonably in their negotiations.

09:31:12  6        In determining this, you must assume that both

09:31:16  7   parties believe the asserted patents were valid and

09:31:21  8   infringed and that both parties were willing to enter into

09:31:25  9   an agreement.

09:31:26  10        The reasonable royalty you determine must be a

09:31:28  11   royalty that would have resulted from the hypothetical

09:31:32  12   negotiation and not simply a royalty that either party

09:31:35  13   would have preferred.

09:31:36  14        The law requires that any damages awarded to USAA

09:31:40  15   correspond to the value of the alleged inventions within

09:31:44  16   the accused product, as distinct from other unpatented

09:31:50  17   features of the accused product or other factors, such as

09:31:54  18   advertising or marketing, or Wells Fargo's size or

09:31:58  19   market -- market position.

09:32:01  20        This is particularly true where the accused

09:32:04  21   product has multiple features and multiple components not

09:32:08  22   covered by the patent or where the accused product works in

09:32:14  23   conjunction with other non-patented items.

09:32:17  24        Therefore, ladies and gentlemen, the amount you

09:32:18  25   find as damages must be on the value attributable to the

09:32:23   1   patented technology alone.

09:32:24   2          Now, in determining a reasonable royalty, you

09:32:27   3   should consider all the facts known and available to the

09:32:30   4   parties at the time infringement began.  You may also

09:32:35   5   consider the following:

09:32:36   6          (1) the royalties received by the patentee for

09:32:40   7   licensing of the patent-in-suit, proving or tending to

09:32:43   8   prove an established royalty;

09:32:44   9          (2) the rates paid by the licensee for the use of

09:32:49  10   other patents comparable to the patent-in-suit;

09:32:52  11          (3) the nature and scope of the license, as

09:32:56  12   exclusive or non-exclusive, or as restricted or

09:32:59  13   non-restricted in terms of territory, or with respect to

09:33:03  14   whom the manufactured product may be sold;

09:33:05  15          (4) the licensor's established policy and

09:33:10  16   marketing program to maintain its patent monopoly by not

09:33:15  17   licensing others to use the invention or by granting

09:33:18  18   licenses under special conditions designed to preserve that

09:33:23  19   monopoly;

09:33:23  20          (5) the commercial relationship between the

09:33:26  21   licensor and licensee, such as whether they are competitors

09:33:30  22   in the same territory in the same lines of business or

09:33:35  23   whether they are inventor and promoter;

09:33:37  24          (6) the effect of selling the patented specialty

09:33:41  25   in promoting sales of other products of the licensee, that

09:33:46  1   existing value of the invention or the licensor as a

09:33:51  2   generator of sales of its non-patented items and the extent

09:33:54  3   of such derivative or convoyed sales;

09:33:57  4          (7) the duration of the patent and the term of the

09:34:01  5   license;

09:34:02  6          (8) the established profitability of a product

09:34:09  7   made under the patent, its commercial success, and its

09:34:12  8   current popularity;

09:34:13  9          (9) the utility and advantages of the patent

09:34:17  10  property over the old modes or devices, if any, that had

09:34:23  11  been used for working out similar results.

09:34:25  12         (10) the nature of the patented invention, the

09:34:28  13  character of the commercial embodiment of it as owned and

09:34:32  14  produced by the licensor, and the benefits to those who

09:34:35  15  have used the invention;

09:34:36  16         (11) the extent to which the infringer has made

09:34:40  17  use of the invention and any evidence probative of the

09:34:43  18  value of that use;

09:34:44  19         (12) the portion of the profit or of the selling

09:34:50  20  price that may be customary in the particular business or

09:34:53  21  in comparable businesses to allow for the use of the

09:34:56  22  invention or analogous inventions;

09:34:58  23         (13) the portion of the realizable profit that

09:35:03  24  should be credited to the invention as distinguished from

09:35:06  25  non-patented elements, the manufacturing process, business

09:35:10  1  risks, or significant features or improvements added by the

09:35:16  2  infringer;

09:35:17  3          (14) the opinion testimony of qualified experts;

09:35:20  4          (15) the amount that a licensor, such as USAA, and

09:35:27  5  a licensee, such as Wells Fargo, would have agreed upon at

09:35:32  6  the time the infringement began if both had been reasonably

09:35:35  7  and voluntarily trying to reach an agreement -- that is,

09:35:39  8  the amount which a prudent licensee, who desired as a

09:35:44  9  business proposition to obtain a license to manufacture and

09:35:50  10 sell a particular article embodying the patented invention,

09:35:53  11 would have been willing to pay as a royalty and yet be able

09:35:56  12 to make a reasonable profit and which amount would have

09:35:59  13 been acceptable by a prudent patentee who was willing to

09:36:03  14 grant a license.

09:36:04  15      No one of these factors is dispositive, ladies and

09:36:09  16 gentlemen, and you can and should consider all the evidence

09:36:12  17 that's been presented to you in this case on each of these

09:36:15  18 factors.

09:36:18  19      You may also consider other factors which in your

09:36:21  20 minds would have increased or decreased the royalty

09:36:25  21 Wells Fargo would have been willing to pay and the patent

09:36:29  22 owner, USAA, would have been willing to accept, both acting

09:36:32  23 as normally prudent business people.

09:36:34  24      In determining a reasonable royalty, you may also

09:36:40  25 consider evidence concerning the availability or lack

09:36:43  1  thereof of non-infringing alternatives to the patented

09:36:47  2  invention.

09:36:48  3       You may compare the patented invention to

09:36:51  4  non-infringing alternatives to determine the value of the

09:36:54  5  patented invention, including the utility and advantages of

09:37:00  6  the patent over the old modes or devices, if any, that had

09:37:04  7  been used to achieve similar results.

09:37:06  8       As I've already told you, you must not award

09:37:11  9  USAA -- USAA any additional amount for the purpose of --

09:37:15  10  purposes of punishing Wells Fargo or setting an example.

09:37:19  11       Additionally, you must not consider USAA's

09:37:22  12  allegations of willfulness in considering damages.

09:37:27  13  Consideration of willfulness is entirely separate from the

09:37:30  14  question of damages.  You may not increase damages because

09:37:35  15  you find willfulness or decrease damages because you did

09:37:38  16  not find willfulness.

09:37:40  17       I will take your decision regarding the issue of

09:37:43  18  willfulness into account later.

09:37:45  19       Now, with these instructions, ladies and

09:37:48  20  gentlemen, we will now at this time proceed to hear closing

09:37:52  21  arguments from the attorneys for the parties.

09:37:55  22       Plaintiff, you may now present your first closing

09:37:58  23  argument.

09:37:59  24       MR. BUNT:  Thank you, Your Honor.

09:38:00  25       May it please the Court.

09:38:08   1                THE COURT:  You may proceed.

09:38:09   2                MR. BUNT:  Good morning, ladies and gentlemen.

09:38:14   3           I want to begin by thanking you for your service

09:38:18   4      today.  I know that many of you have driven from different

09:38:22   5      towns every day here.  I know that your time here has taken

09:38:26   6      you away from your family and from your jobs.

09:38:30   7           I know that both sides have presented a lot of

09:38:34   8      information to you in a very rapid fashion, and it may have

09:38:38   9      felt like you were at times drinking from a fire hose.

09:38:42  10           And on behalf of USAA and the entire legal team, I

09:38:44  11      would just like to say thank you for your time and for your

09:38:47  12      attention.

09:38:47  13           Now, Wells Fargo said something in their opening

09:38:51  14      statement that resonated with me.

09:38:55  15           Ms. Williams said that this case is about respect,

09:38:59  16      and I think that makes a lot of sense.  And, in fact, I

09:39:02  17      wrote down what she said.  She said:  I want to talk with

09:39:05  18      you about respect for property rights, respect for the

09:39:08  19      process, and respect for the value of those specific

09:39:13  20      property rights.

09:39:15  21           Judge Gilstrap just gave you instructions, and one

09:39:17  22      of those instructions that you heard is that you are the

09:39:20  23      sole judges of the credibility and believability of the

09:39:24  24      witnesses and the evidence.  And I want to ask that you

09:39:28  25      consider the credibility of the evidence, especially in

09:39:32  1   light of the issue of respect.

09:39:35  2           I want to talk first about respect for USAA's

09:39:42  3   property.

09:39:43  4           USAA began the research on remote deposit capture

09:39:49  5   back in 2004, and USAA launched Deposit@Home product in

09:39:56  6   2006.  You'll recall that that's the product that allowed

09:39:59  7   members to use everyday scanners and digital cameras to

09:40:02  8   deposit their checks remotely.

09:40:05  9           And USAA filed its patent applications in 2006 for

09:40:11  10  the parents of the '605 and '681.  And USAA released its

09:40:18  11  MRDC phone app in 2009, the first bank to do that.

09:40:23  12          And in 2011, the parent application for the '605

09:40:28  13  and the '681, those patent applications began to be

09:40:30  14  published.

09:40:31  15          Then we look to 2012.  Three years after USAA came

09:40:37  16  out with its first product is when Wells Fargo finally

09:40:40  17  launched its MRDC app.

09:40:43  18          Now, what did you hear in opening statements,

09:40:46  19  though, about this?  You heard them say that the patent was

09:40:49  20  invalid.  Look at the testimony at the bottom of this slide

09:40:52  21  from Mr. -- Mr. Saffici, who said:  You can't -- he was

09:40:56  22  asked:  You can't identify any system, any design anywhere

09:41:00  23  in the world that anticipates or renders obvious the '605

09:41:05  24  or '681 patent, correct?

09:41:06  25          And he said:  That was my testimony then and now.

09:41:10  1           Nobody else was before USAA.  Ask yourself what

09:41:18  2   does Wells Fargo's contention about invalidity say to you

09:41:23  3   about their respect for USAA's property rights?

09:41:26  4           You also heard in the opening statement that the

09:41:33  5   Patent Office gave no express indication that they had

09:41:37  6   looked at the 2006 specifications to confirm whether mobile

09:41:41  7   phones were described during that one-year process.

09:41:44  8           But what did you hear in evidence?

09:41:46  9           Mr. Saffici was asked:  You understand that Patent

09:41:50  10  Office examiners are required to read the specification to

09:41:52  11  determine if there is support in a specification for the

09:41:56  12  claims as a part of the examination process?

09:42:00  13          And he said:  Yes, I would agree.

09:42:02  14          He was also asked:  The Patent Office in the '605

09:42:06  15  process -- prosecution record considered the question of

09:42:09  16  priority, correct?

09:42:10  17          His answer was:  Yes.

09:42:12  18          The examiner looked at the patent and agreed that

09:42:16  19  it was entitled to a priority date of 2006 because it was

09:42:22  20  supported by that specification.

09:42:24  21          What else did we hear?

09:42:26  22          Well, you heard in the opening statement that the

09:42:31  23  2018 patents for the first time talk about using a mobile

09:42:35  24  device with a digital camera for check deposit.  That's

09:42:38  25  what Wells Fargo told you.

09:42:39  1          Evidence you heard, though, was that Mr. Saffici

09:42:45  2   was asked:  The specifications of the patents in this case

09:42:49  3   disclose the use of mobile devices with digital cameras,

09:42:53  4   correct?

09:42:53  5          And he said:  That is what I testified to.

09:42:56  6          That was disclosed in 2006 by the original

09:43:00  7   specification, the exact opposite of Wells Fargo's opening

09:43:03  8   statement.

09:43:04  9          Now, there was some suggestion that -- that

09:43:11 10   Mr. Saffici was somehow confused about this issue or that

09:43:14 11   he didn't know exactly what had been said in the

09:43:17 12   deposition.  Mr. Saffici gave two days' worth of

09:43:21 13   depositions.  Both sides were there.  Both sides were

09:43:24 14   allowed to question him.  Both sides were allowed to

09:43:27 15   redirect questions just like you've heard here in the

09:43:29 16   Court.  Mr. Saffici had a chance to look at that deposition

09:43:32 17   after it was taken back at his office and to see if any

09:43:36 18   mistakes were made.

09:43:38 19          Wells Fargo just doesn't like this testimony.  But

09:43:40 20   that is the testimony that was given.

09:43:42 21          You also heard from Mr. Brady who told you that

09:43:47 22   the patent rules changed back in 2016, and he said:  USAA

09:43:53 23   went back and refiled its patents to make sure it complied

09:43:57 24   with the new standards.

09:43:58 25          What does that tell you about who has respect for

09:44:01  1   the patent process?

09:44:02  2        I expect Wells Fargo may say to you throughout

09:44:07  3   this process that we should have brought Mr. Calman here to

09:44:12  4   testify.  I want you to remember that Wells Fargo is the

09:44:15  5   party who has the burden of proof on invalidity.  And it's

09:44:20  6   a clear and convincing standard of proof.

09:44:21  7        You heard testimony that Mr. Calman had prepared

09:44:26  8   an expert report and that he and Dr. Conte worked together

09:44:30  9   on those -- on preparing those reports.  And Dr. -- or

09:44:36  10  Mr. Calman described the specification to Dr. Conte.

09:44:39  11       And you'll recall Dr. Conte discussing the Palm

09:44:44  12  Treo that existed back in 2006.  And you'll recall that

09:44:48  13  Mr. Calman had told him that by 2006, the Windows operating

09:44:52  14  system included Windows mobile phone operating system for

09:45:00  15  use with mobile phones.

09:45:02  16       Dr. Conte testified that he agreed with

09:45:05  17  Mr. Calman.  There was no reason to bring additional

09:45:06  18  witnesses when all the evidence was already here.

09:45:11  19       You just heard from the Court that a single

09:45:14  20  witness -- a single witness is sufficient to prove -- you

09:45:17  21  don't have to bring multiple witnesses.  That would have

09:45:20  22  been a waste of time for the Court and for you.

09:45:23  23       THE COURT:  Seven minutes have been used.

09:45:25  24       MR. BUNT:  Thank you, Your Honor.

09:45:27  25       If Wells Fargo thought that Mr. Calman would have

09:45:29   1   said something different here at trial, then they could

09:45:32   2   easily have called him to testify at trial themselves.

09:45:36   3          One more comment about Mr. Saffici.  Mr. Saffici

09:45:39   4   was not hired -- well, let me say this:  Wells Fargo hired

09:45:44   5   as an invalidity expert a person who did not have technical

09:45:54   6   expertise.  He had no role in actually designing a mobile

09:45:55   7   capture system.  And it was not fair to put Mr. Saffici in

09:45:57   8   that role.

09:45:59   9          And it's even more unfair when you consider what

09:46:01   10   his expertise is in.  He's highly experienced in business.

09:46:06   11   He has 53 years of banking experience, and he could have

09:46:11   12   easily talked about the value of MRDC and what the value of

09:46:17   13   that technology is in the marketplace.  But Wells Fargo did

09:46:19   14   not call him for that.

09:46:20   15          Ladies and gentlemen, this case is about

09:46:25   16   infringement, validity, and damages.  And despite what the

09:46:28   17   documents say and what their own witnesses said at the

09:46:31   18   deposition, they have trotted out a litany of excuses at

09:46:35   19   this trial.

09:46:37   20          Think about what they are saying.  It is basically

09:46:40   21   like if somebody stole your lawn mower and you accuse them

09:46:44   22   of it, and they said, oh, no, I didn't take that, but even

09:46:47   23   if I did, it was broken at the time, and even if it wasn't

09:46:52   24   broken, it really wasn't worth that much to me.

09:46:57   25          That doesn't make any sense.  All of this

1335

09:47:00  1   indicates Wells Fargo's lack of respect for property

09:47:03  2   rights, their lack of respect for the process, their lack

09:47:07  3   of respect for the value of property rights.

09:47:10  4        I respectfully request that you consider these

09:47:10  5   facts when you retire to the jury room to deliberate.

09:47:18  6        Thank you so much for your time and your

09:47:21  7   attention.

09:47:21  8        MR. SHEASBY:  Good morning, ladies and gentlemen

09:47:26  9   of the jury.  I would also like to thank you for your time

09:47:30 10   this last week.

09:47:31 11        I want to start out by talking about the story

09:47:38 12   that led to where we are today, and it's a story that

09:47:41 13   begins with Chuck Oakes, the head of the Applied Research

09:47:45 14   Division at USAA, who is now retired -- he has over a

09:47:49 15   hundred patents to his name -- who believes that the system

09:47:52 16   that USAA created would transform the banking industry.

09:47:55 17        And we see from Wells Fargo's own internal records

09:47:59 18   that he was right, that the MRDC system that USAA created

09:48:03 19   was recognized as table stakes, as absolutely essential to

09:48:08 20   the industry.

09:48:09 21        And what's powerful about USAA's system is its

09:48:15 22   durability.  A system was created in 2006, that as

09:48:22 23   Mr. Brady testified, to this day can host and support any

09:48:27 24   digital device that has a camera and a general purpose

09:48:31 25   processor.  USAA can meet its members wherever they are

09:48:34  1  over the years.

09:48:35  2      And you think about, by building that foundation,

09:48:38  3  it answers the question:  Why did the United States Patent

09:48:42  4  Office give us a foundational patent on MRDC?  Because of

09:48:47  5  the powerful foundation the applied engineering division at

09:48:50  6  USAA had created.

09:48:50  7      Four questions.  The first one is infringement.

09:48:57  8  No intent required.  No acts -- it doesn't matter if it was

09:49:00  9  an accident.  It doesn't matter if you did it on purpose.

09:49:03  10  It's strict liability.

09:49:04  11      The burden is ours.  The burden is preponderance

09:49:07  12  of the evidence.  If one pebble tips in favor of USAA on

09:49:12  13  infringement, as a matter of law, USAA must prevail.

09:49:17  14      Professor Conte spent time and walked you through

09:49:21  15  each limitation of each claim of the patent.  He reviewed

09:49:25  16  source code with you.  He looked and mapped every single

09:49:29  17  limitation.

09:49:30  18      Now, what is remarkable about that is that when

09:49:34  19  Wells Fargo's expert took the stand -- there are two

09:49:38  20  patents in the case.  There's the '605 patent.  And Wells

09:49:44  21  Fargo's own expert admitted that he has no technical

09:49:48  22  defense whatsoever to the infringement of the '605, none at

09:49:53  23  all.  Nothing.

09:49:55  24      As to the '681 patent, he said, oh, well, the

09:50:00  25  mobile device has to perform the OCR and optical character

09:50:03  1   recognition.  But if you remember, he showed you a claim

09:50:08  2   that expressly says that the system performs the OCR

09:50:11  3   system.  But he didn't highlight the word "system."  He

09:50:17  4   didn't highlight the word "system."

09:50:18  5          And when I cross-examined him, he admitted that

09:50:21  6   the system includes both the back end and front end

09:50:24  7   processors.

09:50:25  8          Now, what Wells Fargo did say is they say, oh,

09:50:29  9   it's not our fault.  We don't make the system.  That's our

09:50:33  10  customer's problem.

09:50:35  11         But when I asked Dr. Villasenor on

09:50:39  12  cross-examination, he admitted that when he told you all

09:50:44  13  the claims were system claims, that was not true.  There's

09:50:49  14  a claim to a mobile application.

09:50:50  15         So even if you accepted his argument, the argument

09:50:54  16  would fail because here we have a claim to the application,

09:50:58  17  which Dr. Villasenor admits Wells Fargo's made -- makes.

09:51:02  18         Now I want to turn to willful infringement.

09:51:06  19  Willful infringement is about intent.  And there's a couple

09:51:10  20  of interesting categories of evidence that have been

09:51:15  21  created -- that have been discovered during this case.

09:51:18  22         The first is that Wells Fargo has known about our

09:51:19  23  patent application since 2010.  They knew about the MRDC

09:51:23  24  patent applications since 2010.  Their corporate

09:51:30  25  representative -- representative had to admit it.  If --

09:51:32  1  remember, he first denied it.  And then Ms. Glasser had to

09:51:36  2  show him his testimony under oath.  And at that point, he

09:51:39  3  was forced to admit it.

09:51:42  4      And what's more, the folks who actually designed

09:51:47  5  Wells Fargo's MRDC system, like Mr. Ajami, admitted that

09:51:52  6  they were copying USAA's system.

09:51:54  7      Now, here's an important point.  If we hadn't

09:51:59  8  created something foundational, if our patent was invalid,

09:52:04  9  if we're just -- have worthless technology, why were they

09:52:10 10  looking at our applications in 2010, four years after they

09:52:13 11  were filed?  Why were they leveraging our design to create

09:52:17 12  our design?

09:52:18 13      The idea that our patents are invalid, the idea

09:52:21 14  that our patents don't cover MRDC, the idea that our

09:52:24 15  patents aren't foundational, has no connection to common

09:52:31 16  sense.

09:52:33 17      And as the Judge told you, one of the most

09:52:36 18  powerful tools you have is common sense.  Why would a bank

09:52:39 19  that has more branches and more tellers than any other bank

09:52:42 20  in the United States be looking at our patent applications

09:52:45 21  and be, quote, leveraging our design if we hadn't created

09:52:49 22  something foundational?

09:52:51 23      The third question:  Are USAA's patents valid?

09:52:58 24      Validity is a completely different standard.

09:53:05 25  Validity requires clear and convincing evidence, and the

09:53:10   1   reason it requires clear and convincing evidence is because

09:53:14   2   the patents were carefully examined by independent third

09:53:19   3   parties, the Patent Office.

09:53:20   4        And so whereas the preponderance of the evidence

09:53:24   5   standard requires just one pebble to weigh in favor of

09:53:30   6   USAA, the clear and convincing standard requires much

09:53:34   7   greater weight of evidence for Wells Fargo.

09:53:37   8        And you'll see it in the Judge's instructions.  On

09:53:43   9   Page 14 of the Judge's instructions, the presumption of

09:53:45  10   validity exists.

09:53:47  11        The instructions also make clear that it is Wells

09:53:51  12   Fargo's sole burden to prove by clear and convincing

09:53:53  13   evidence that the patent is invalid.  Their sole burden.

09:54:00  14        The instructions also make clear that as few as

09:54:05  15   one example can be sufficient for written description of a

09:54:08  16   larger category.

09:54:09  17        When you create a foundational invention, you

09:54:12  18   can't just take a new type of digital device that comes out

09:54:15  19   next year and say, oh, well, then we don't have to do

09:54:19  20   anything to take responsibility for our actions because now

09:54:22  21   we purchased the new iPhone.  But that doesn't make sense

09:54:26  22   when you have a foundational invention.

09:54:28  23        The United States Patent Office considered the

09:54:35  24   exact question presented to the jury.  Are the claims

09:54:41  25   described in the specification?  And Mr. Saffici was --

09:54:45  1   admitted under oath that the prosecution record makes clear

09:54:49  2   that the question of priority was considered by the

09:54:52  3   examiner in the '605 patent, and he admitted that the

09:54:55  4   question of priority was considered in the '681 patent, and

09:55:00  5   the patents were granted.

09:55:01  6         Now, the record, I believe, showed at trial that

09:55:07  7   the patent examiners got it right.  The claims have no

09:55:13  8   connection to how a digital camera and a general purpose

09:55:16  9   computer are connected.  It's irrelevant how they're

09:55:20  10  connected because the power of the claims is the use of a

09:55:22  11  software application that could control those systems to

09:55:27  12  create something powerful.

09:55:30  13        The inside of a patent is the software, and you

09:55:33  14  heard Mr. Brady talk about that in his testimony.  A

09:55:38  15  digital camera, a portable device to control the digital

09:55:42  16  camera with software.

09:55:42  17        Professor Conte spoke about the fact the patent

09:55:51  18  doesn't care about how many boxes you put the devices in.

09:55:54  19  What the patent cares about is the software.

09:55:57  20        And if you remember, he talked about cracking open

09:56:00  21  his iPhone, and if he cracked open his iPhone, he'd see in

09:56:03  22  that iPhone a camera connected to a general purpose

09:56:09  23  processor.

09:56:11  24         That's what's in an iPhone.  That's what's in a

09:56:15  25  tablet.  That's what's in every digital device with a

09:56:19  1  camera and that can run an app today.

09:56:21  2          Mr. Saffici was asked bluntly, the claims of the

09:56:28  3  patents just require the presence of a digital camera in a

09:56:31  4  portable or mobile device.  Integrated versus

09:56:35  5  non-integrated, two boxes versus three boxes versus four

09:56:38  6  boxes.  It's irrelevant to the patent claims, and it's

09:56:41  7  irrelevant to the patent because USAA created the

09:56:46  8  foundation, because it takes its members where they were.

09:56:50  9          And what did Mr. Saffici say, under oath:  You

09:56:53  10  said that the specification teaches that the handheld

09:56:55  11  device may include a digital camera?

09:56:56  12          I did say that.

09:56:58  13          He didn't just say it in his deposition.  He

09:57:02  14  didn't just say it at trial.  He said it in his actual

09:57:06  15  expert report.

09:57:10  16          They claim that this patent doesn't disclose a

09:57:13  17  handheld device that may include a digital camera.  That is

09:57:15  18  the essence of what they spent the last four days trying to

09:57:20  19  convince you of.

09:57:21  20          And Mr. Saffici in his report and under oath in

09:57:23  21  front of you said the exact opposite.  That is the

09:57:29  22  testimony in the record.  Mr. Saffici wasn't confused.

09:57:33  23  Mr. Saffici told the truth when he was faced with the facts

09:57:38  24  of what was in front of him.

09:57:40  25          Mr. Saffici admitted, without qualification, that

09:57:46  1   every single limitation, mobile device, digital camera,

09:57:50  2   communication together is described in that common 2006

09:57:54  3   specification.  Mr. Saffici wasn't confused.  This is what

09:57:59  4   he admitted to under oath.

09:58:02  5        Mr. Saffici was actually shown lines of the

09:58:06  6   patent.  He was shown the passages from both the '605 and

09:58:14  7   '681 patent that talk about communicatively coupling.

09:58:15  8        THE COURT:  20 minutes have been used.

09:58:17  9        MR. SHEASBY:  And what he said -- what he said was

09:58:23 10   that, I don't see any limitation in the specification, any

09:58:30 11   limitation whatsoever as to how that communicatively

09:58:34 12   coupling occurs.  It can be in separate boxes.  It can be

09:58:38 13   in one box.  It was irrelevant to Mr. Saffici.

09:58:41 14        There is a place in this world for great

09:58:56 15   innovations.  The Applied Research Division at USAA was one

09:59:04 16   of those places.  The members' money that was used to

09:59:12 17   create these -- these -- these innovations deserves to be

09:59:16 18   respected.

09:59:18 19        And one of the most important aspects of respect

09:59:21 20   is respect of the labor of our members and the hard-earned

09:59:27 21   funds of our members that created these innovations.

09:59:32 22        The last question you're asked to be -- decide is

09:59:40 23   damages, and Mr. Weinstein has concluded that damages of no

09:59:44 24   less than 85 cents per successful deposit should be

09:59:48 25   awarded.  And that's $102 million during the damages

09:59:53  1    period.

09:59:54  2            And one of the things that's most striking about

09:59:58  3    the examination of Mr. Gerardi yesterday, at the end of the

10:00:02  4    day, was he gave you a number, $3.9 million.  He didn't

10:00:07  5    even bother to tell you what that was on a per unit basis,

10:00:11  6    and the reason for that is because it's pennies.

10:00:14  7            Wells Fargo charges USAA members $3.50 every time

10:00:19  8    we go to their ATMs, and we pay it.  And we pay it because

10:00:22  9    they invested their money in it, and they have a right to

10:00:26  10   that return.

10:00:27  11           Wells Fargo, through EWS, charges us 60 cents

10:00:32  12   every time we use their -- their Zelle system.  And USAA

10:00:35  13   pays it.  And we pay it because what they invested in.

10:00:40  14           And yet when we come to them and ask them to pay

10:00:44  15   fair value for a technology that their internal records

10:00:48  16   admit is table stakes, for a technology that their internal

10:00:51  17   records show they copied from us, they tell us, you get

10:00:55  18   three cents.

10:00:58  19           Ladies and gentlemen of the jury, I will have one

10:01:00  20   more opportunity to speak with you.  Thank you for your

10:01:02  21   time.

10:01:04  22           THE COURT:  Defendant may now present its closing

10:01:11  23   argument.

10:01:14  24           MR. MELSHEIMER:  May I have a moment, Your Honor?

10:01:20  25           THE COURT:  Proceed when you're ready.

10:01:22    1              MR. MELSHEIMER:  May it please the Court.

10:01:32    2          Good morning.  We promised you respect.  I hope

10:01:39    3   you think we've delivered it over the last few days.  We

10:01:44    4   respect you, we respect your time, and we appreciate the

10:01:48    5   sacrifice it has been for you to come to court every day

10:01:53    6   and listen to the testimony and see the evidence.

10:01:55    7          You are vitally important to this process because

10:02:00    8   without you -- without you leaving your homes every day and

10:02:03    9   leaving your jobs, someone can come into court and claim

10:02:08   10   that a patent they filed in 2017 was actually invented in

10:02:14   11   2006.  Someone can come to court and claim that a patent is

10:02:19   12   being infringed even when not all the elements are

10:02:25   13   satisfied.

10:02:26   14          Without you, someone can come to court and claim

10:02:30   15   credit and seek money for things they did not invent.  And

10:02:35   16   that is why you are so important.  That is why your role is

10:02:39   17   so important, and that is why we have so much respect for

10:02:42   18   you.

10:02:42   19          At the beginning of the trial, you heard that when

10:02:46   20   you're accused of patent infringement, you only have two

10:02:48   21   choices, vacate or seek permission.

10:02:52   22          Well, you now know that's not true, because it's

10:02:57   23   appropriate and proper for someone to come into court who's

10:03:01   24   been accused of things that are wrong or exaggerated or

10:03:06   25   overstated, to challenge the patent in court, to deny

1345

10:03:08   1   infringement, to claim the patent's invalid and prove it,

10:03:13   2   and also to say, you know what, the valuation you've put on

10:03:16   3   your innovation, if you have one, is far exaggerated and

10:03:19   4   far in excess of reality.

10:03:21   5          That's what you're here to help us with.

10:03:26   6          With all that in mind, Ms. Williams and I decided

10:03:31   7   to divide our time this way:  I'm going to go through with

10:03:35   8   you the evidence -- some of the evidence in the next 20

10:03:37   9   minutes or so.  And she's going to show you how that

10:03:40  10   evidence links up with the instructions that the Court just

10:03:45  11   gave you about how this case should be decided.  And I hope

10:03:48  12   that you will find that approach helpful.

10:03:51  13          The first witness in the case was Mr. Chuck Oakes.

10:03:55  14   Now, he was an inventor of the case.  And he invented

10:03:58  15   something -- he admitted something important, that USAA did

10:04:00  16   not invent check imaging.

10:04:03  17          He also admitted that back in 2006 their focus

10:04:10  18   wasn't on what they're claiming now.  Their focus was on

10:04:13  19   using a scanner, a separate scanner used to get checks or

10:04:17  20   documents into the system.

10:04:17  21          Before October 2006 when this patent claim claims

10:04:25  22   to have been invented, USAA had not done any work on the

10:04:28  23   processing and image of a check taken with a mobile phone,

10:04:33  24   correct?

10:04:33  25          The only thing they had done was with a webcam

10:04:36   1   which is a separate device that's attached to the computer.

10:04:38   2        They brought you Mr. Brady, their corporate

10:04:42   3   representative.  Not an inventor on these patents, not

10:04:44   4   someone that contributed to the technology that they say

10:04:47   5   they're so proud of.  But he did admit some important

10:04:50   6   things.

10:04:51   7        He admitted that USAA should not recover value or

10:04:54   8   money for things they didn't invent.  If they didn't invent

10:04:57   9   something, they shouldn't ask other people to pay for it.

10:05:01   10        He also admitted that USAA did not start

10:05:04   11   experimenting with digital phones or camera phones until

10:05:10   12   2007.  If their specification had described that fully to

10:05:13   13   support their invention, which they claim to have invented,

10:05:17   14   that wouldn't have been true.

10:05:18   15        The next witness you heard from was Dr. Conte.

10:05:24   16   Remember, the only step that we're focused on for

10:05:29   17   infringement -- because, remember, the Judge just told you,

10:05:32   18   if one's missing, there's no infringement.  These patents

10:05:35   19   claim multiple steps.  If there's one missing, there's no

10:05:39   20   infringement.

10:05:39   21        This is that confirming step, causing the

10:05:42   22   customer's mobile device to perform the confirming.

10:05:45   23        And we asked Dr. Conte:  The only device that is

10:05:50   24   deciding whether or not the check deposit can go forward is

10:05:53   25   the server?

10:05:54    1              That's correct.

10:05:57    2              The decision, yes.

10:05:59    3              In the Wells Fargo product, comparing the

10:06:01    4    OCR-determined amount to the amount indicated by the user

10:06:04    5    is not performed on the portable device?

10:06:06    6              What he's admitting there is that there's no

10:06:10    7    infringement because one element is missing.

10:06:13    8              Now, he wants to play word games about deciding

10:06:17    9    versus validating, but it's confirming.  And the work to

10:06:20   10    confirm occurs not on your phone but on the servers that

10:06:25   11    are way back in Wells Fargo's system.

10:06:27   12              There was a suggestion that somehow this patent

10:06:31   13    specification was like a word search game where we could

10:06:35   14    simply look for terms and say, well, here's a PDA, and,

10:06:38   15    therefore, that means we really invented these 2017 claims

10:06:44   16    way back in 2006.

10:06:45   17              But even Dr. Conte has to admit that PDAs only

10:06:48   18    appears twice in one of the specifications and appears not

10:06:51   19    at all in the '681.

10:06:53   20              He also never went through the claim elements of

10:06:58   21    the invention to describe how the bank was benefitted

10:07:02   22    versus how it benefitted the consumer.  That's important

10:07:05   23    because the Judge just told you that to find infringement,

10:07:10   24    when you have multiple parties involved, you have to show

10:07:13   25    an element-by-element benefit.  And that was not shown by

10:07:17  1    Dr. Conte or anyone else in this case.

10:07:19  2            He did not offer an opinion that the patents were

10:07:24  3    valid.  This man, Mr. Calman, did that.

10:07:28  4            Now, you've heard a lot about him.  He's not in

10:07:30  5    court today.  He's never been in court.  And the statement

10:07:33  6    was, well, we could have called him.  Why would we call

10:07:38  7    him?  He was their expert to supposedly do two things, to

10:07:41  8    rebut Mr. Saffici's conclusions and prove up that the

10:07:45  9    invention truly was described in the claims.

10:07:47  10           And, two, he was a man that had 20 more -- 20 or

10:07:52  11   more years in the banking industry, and he could have

10:07:54  12   talked about the benefits of the invention, the benefits

10:07:57  13   that Mr. Weinstein struggled mightily to identify for you

10:08:03  14   in the claims.  But they didn't bring him to do that

10:08:06  15   either.

10:08:06  16           And it's fair to ask -- it's fair to ask:  Why

10:08:09  17   didn't they?  What would we -- what would he have said that

10:08:12  18   they were concerned about, especially with respect to the

10:08:15  19   alleged value of the claimed benefits of this invention?

10:08:20  20   What were they worried about him saying to you?

10:08:23  21           You heard from Mr. Easley.  He had to acknowledge

10:08:26  22   that all these things they think are important about fraud

10:08:29  23   detection were, in fact, done either via the teller years

10:08:34  24   ago or through some back end processes at the time of the

10:08:39  25   asserted inventions.

10:08:40   1          They want to claim that all these things that they

10:08:42   2   say they invented in the patent provide all this great

10:08:46   3   value to mobile deposit, but they've been doing those

10:08:49   4   things for years.

10:08:50   5          All banks have been doing those things for years,

10:08:53   6   either at the teller -- when you give the check to the

10:08:56   7   teller and the person looks at it and says, okay, here's

10:08:59   8   your amount, does it match?  That's what they're talking

10:09:02   9   about.  That's what they're claiming to be the benefit or

10:09:05  10   value of their invention.

10:09:06  11          Next, you heard from Roy Weinstein, a capable man,

10:09:11  12   and he admitted some important things.  First, there's no

10:09:14  13   one that's ever licensed these patents.  The Judge tells

10:09:17  14   you that's a factor you can consider in valuing these

10:09:20  15   alleged inventions.  They say they're groundbreaking.  They

10:09:25  16   say they're like Apple or Google.  No one's taken a license

10:09:32  17   to these inventions.

10:09:33  18          Also, explain to you how you value a patent.  You

10:09:37  19   value the incremental contribution.  You value what's new

10:09:40  20   about the patent, what's new about the patent that didn't

10:09:43  21   exist before.

10:09:43  22          Now, remember when Mr. Hill went over this flip

10:09:50  23   chart here, and Mr. Weinstein was on the stand.  He says:

10:09:53  24   Okay.  Mr. Weinstein, I will write down the new fraud

10:09:58  25   prevention features that appear in those claims that you're

| | | |
|---|---|---|
| 10:10:01 | 1 | valuing.  I will write them down right here.  There's |
| 10:10:05 | 2 | nothing there because he had to admit they're not in the |
| 10:10:11 | 3 | claims. |
| 10:10:13 | 4 | Something else peculiar happened with |
| 10:10:18 | 5 | Mr. Weinstein.  He admitted that there was another damage |
| 10:10:22 | 6 | calculation that he kept private from you and the jury and |
| 10:10:27 | 7 | in court.  He had done a different calculation of damages |
| 10:10:32 | 8 | that was $40 million.  And we asked him:  Well, you didn't |
| 10:10:36 | 9 | show that one to the jury, did you? |
| 10:10:38 | 10 | Well, I wasn't asked to. |
| 10:10:40 | 11 | Do you believe it? |
| 10:10:42 | 12 | I absolutely believe in it. |
| 10:10:46 | 13 | You're entitled to consider why, in addition to |
| 10:10:50 | 14 | what Mr. Calman would have said, why didn't they present |
| 10:10:53 | 15 | this calculation to you?  Isn't it kind of obvious?  It's |
| 10:10:57 | 16 | much less and smaller than what they're claiming, but their |
| 10:11:00 | 17 | own expert said it was reliable. |
| 10:11:03 | 18 | Finally, Mr. Weinstein admitted what's happening |
| 10:11:06 | 19 | here is pretty common.  Patents are often -- often |
| 10:11:11 | 20 | invalidated.  Often.  And he's worked on many cases where |
| 10:11:15 | 21 | that exact thing has happened. |
| 10:11:17 | 22 | So this notion that the presumption is important, |
| 10:11:20 | 23 | of course it is.  The patent comes out of the Patent Office |
| 10:11:23 | 24 | presumed valid.  But every day there are juries considering |
| 10:11:29 | 25 | issues just like this and finding that the patents are |

| | | |
|---|---|---|
| 10:11:30 | 1 | invalid. |
| 10:11:31 | 2 | Our first witness was Mr. Al Hecht. |
| 10:11:36 | 3 | Now, Mr. Hecht testified for a couple of hours |
| 10:11:38 | 4 | about the Wells Fargo system, how it tries to claim the |
| 10:11:43 | 5 | value, and how Wells -- how USAA tries to talk about things |
| 10:11:47 | 6 | that they invented, when really they were things that were |
| 10:11:53 | 7 | in the Wells Fargo system for decades. |
| 10:11:54 | 8 | He talked about innovation, that Wells Fargo was |
| 10:11:59 | 9 | the first in Internet banking, was the first with remote |
| 10:12:04 | 10 | deposit capture, and the first with remote banking.  This |
| 10:12:06 | 11 | is an innovative company.  They don't have a monopoly on |
| 10:12:09 | 12 | ideas.  This company -- this bank has also been innovative. |
| 10:12:16 | 13 | And you heard that, and it was uncontradicted. |
| 10:12:19 | 14 | He talked about -- and this is important -- that |
| 10:12:21 | 15 | checks can come in through hundreds of sources.  And you |
| 10:12:25 | 16 | knew that.  You knew that before you came into court.  You |
| 10:12:28 | 17 | can deposit a check in an ATM.  You can go to a teller and |
| 10:12:32 | 18 | deposit a check.  A check can come in through direct |
| 10:12:34 | 19 | deposit.  A check can be mailed in, all sorts of different |
| 10:12:36 | 20 | ways.  And a check can come in through mobile deposit, of |
| 10:12:39 | 21 | course. |
| 10:12:39 | 22 | But he talked about and he showed you Exhibit 230. |
| 10:12:42 | 23 | You can ask for the exhibits.  This is an important one. |
| 10:12:45 | 24 | Defendant's Exhibit 230, where he talks about everything on |
| 10:12:48 | 25 | the right there, the far right, that was a pre-existing |

1352

10:12:52   1   infrastructure.  That was the work that Wells Fargo did to

10:12:56   2   process checks from whatever channel.  That's not something

10:13:03   3   USAA should get paid for.  That's not something they

10:13:05   4   created any value for.

10:13:06   5        And he told you that that information -- those

10:13:11   6   machines, that technology, that innovation had been in

10:13:18   7   place for decades.  And there were no changes made to it

10:13:18   8   when they simply added another funnel.  No changes made

10:13:21   9   after adding mobile deposit.

10:13:24  10        There was a suggestion made, and it was made again

10:13:28  11   by the Plaintiff, that somehow there was a focus on USAA,

10:13:33  12   that Wells Fargo was looking at USAA and no one else.  But

10:13:36  13   you saw this document, 427.  They tried to say it was only

10:13:40  14   about USAA.  Well, it's actually about Chase.  It's about

10:13:44  15   the market.  It's about what people are doing in the

10:13:47  16   marketplace, what other banks are doing.  That's 427.  You

10:13:50  17   can look at that one, too.

10:13:52  18        And you heard time and again that it's totally

10:13:55  19   appropriate and normal for banks to look at what other

10:13:59  20   banks are doing, to go on YouTube, to go to conferences, to

10:14:04  21   listen to descriptions of things, to watch what other banks

10:14:07  22   are doing in the marketplace.  It's why -- it's the way

10:14:10  23   business works, and the way we want it to work.

10:14:12  24        Duplicate detection.  That was something that

10:14:18  25   Mr. Weinstein said was a big deal, one of the fraud

10:14:21   1   prevention features.  It's been an issue since checks were

10:14:24   2   created many, many years ago.  That's not something they

10:14:29   3   can claim credit for.

10:14:30   4          Now, this is something that you may remember in

10:14:33   5   the trial, and they've brought it up, and I predict they'll

10:14:36   6   bring it up again.  This was something they found in our

10:14:39   7   files where we were looking at some screenshots -- some

10:14:42   8   screenshots of the USAA mobile app.  And they say, well,

10:14:45   9   look at these arrows.  These arrows are pointing right to

10:14:49   10  our patents.

10:14:50   11         I hope looking at this document -- ask for it,

10:14:52   12  it's 1182 -- that you'll see that that argument is just

10:14:57   13  not -- it's disrespectful.  That's not what's going on

10:15:00   14  here.

10:15:00   15         As Mr. Hecht explained to you, people look at

10:15:02   16  other people's applications.  And you can't learn anything

10:15:05   17  about how the system works by looking at screenshots.

10:15:11   18  That's not an X-ray into the system.  That's not opening up

10:15:14   19  the code and looking at it.  That was disrespectful.  That

10:15:19   20  was an exaggeration meant to get you upset or think there's

10:15:24   21  something sinister, when it's nothing of the kind.

10:15:26   22         In fact, their own inventors testified.  You may

10:15:29   23  remember Mr. Oakes said that they look at other competitors

10:15:33   24  all the time, and, indeed, did that when they were coming

10:15:37   25  up with their own innovations at USAA.

1354

10:15:39  1        We brought you Mr. Saffici.  He told you first why

10:15:45  2   this written description issue is so important.  It's

10:15:51  3   important because we want to keep inventors honest about

10:15:53  4   their work.  We don't want them to be able to create a new

10:15:56  5   patent with new claims and new ideas and claim it was

10:15:59  6   supported by earlier specifications.  We don't want people

10:16:02  7   to lay in wait for 10 years -- for 10 years and then jump

10:16:11  8   in with a patent application in 2017 and claim, you know

10:16:14  9   what, I actually invented this in 2006.  That's the

10:16:17  10  requirement that you must act as a check and balance on.

10:16:20  11       Yes, the patent issued, but you've got to look at

10:16:23  12  that specification and determine, does it really have what

10:16:27  13  USAA is claiming?

10:16:28  14       And we asked him:  Does it describe PDAs in a way

10:16:32  15  that would suggest you could use a PDA with check

10:16:36  16  processing?

10:16:36  17       No, there's no description of that.

10:16:38  18       Is there any indication that the examiner

10:16:41  19  considered the specific issues?

10:16:43  20       Now, these file histories are lengthy, many, many

10:16:46  21  pages.  Yes, they're presumed to have looked at this, but

10:16:49  22  there's no indication -- this is all he was saying --

10:16:52  23  there's no specific indication that he looked at this and

10:16:55  24  matched up these words and matched up these descriptions to

10:16:58  25  the full scope of the claims.

10:17:00   1          THE COURT:  15 minutes have been used.

10:17:04   2          MR. MELSHEIMER:  So who did we ask that would know

10:17:07   3   best?  Who do you think would know best about what's in

10:17:11   4   their invention?  The inventors.  We're the ones that

10:17:14   5   brought you most of the inventor testimony.

10:17:16   6          In addition to not bringing you Mr. Calman, they

10:17:19   7   didn't bring you any inventor live and in court.  We

10:17:22   8   brought you the inventors by deposition.

10:17:26   9          You heard from Mr. Harpel.  Is there a difference

10:17:29  10   between a portable device comprising a general purpose

10:17:31  11   computer and the digital camera?

10:17:32  12          Yes, the digital camera is separate from the

10:17:37  13   portable device.

10:17:38  14          And that's the whole point, folks.  Their

10:17:40  15   specification talks about two devices.  It doesn't describe

10:17:44  16   something that is integrated.  And that's what they're

10:17:47  17   claiming their patents cover.

10:17:52  18          Do either of those patents describe any computing

10:17:54  19   device with the camera integrated in the same device as the

10:17:57  20   computer processor?

10:17:58  21          This man was the inventor.  Don't you think they

10:18:01  22   had him pore over that specification before his deposition?

10:18:04  23   Don't you think when asked this question, if he really

10:18:07  24   invented this back in 2006, he'd say, you know, I know

10:18:12  25   exactly where that is.  It's Column 5.  It's Line 17.  He

10:18:16  1  couldn't do that because it's not in there.

10:18:18  2      Webcams.  They said, well, we were using webcams.

10:18:25  3  But it's important to remember the webcam was a separate

10:18:30  4  piece of hardware that you would plug into the computer.

10:18:32  5  They would be separate from the computer.  It wasn't part

10:18:35  6  of the computer.

10:18:35  7      And we -- finally, Mr. Morlen, we talked to him,

10:18:41  8  another inventor.  He said there's no discussion in this

10:18:44  9  patent of an integrated computer and image capture device,

10:18:47 10  which they are claiming now is the breadth of their patent,

10:18:49 11  and it's not in there.

10:18:53 12      No inventor, folks.  No inventor testified that

10:18:56 13  the specification describes a mobile device and a camera

10:18:59 14  together, not Mr. Oakes, not Mr. Huth, not Mr. Harpel, not

10:19:04 15  Mr. Morlen.

10:19:05 16      We brought you Dr. Villasenor.  He explained why

10:19:09 17  the accused Wells Fargo product does not infringe, because

10:19:16 18  it's missing that one key element.  And one element is

10:19:19 19  enough to be missing.

10:19:20 20      And you finally heard from Mr. Gerardi, who

10:19:25 21  apportioned what Mr. Weinstein didn't do.  He didn't look

10:19:29 22  at the value of the claimed improvements.  He didn't look

10:19:33 23  at the value of what was new in the invention.  He just

10:19:43 24  said, well, fraud detection, fraud prevention, that sounds

10:19:47 25  valuable, doesn't it?  We want our checks to be protected

10:19:52  1    from fraud.

10:19:53  2            But the problem is you can't get paid for

10:19:55  3    something you didn't invent, and you shouldn't get paid for

10:19:59  4    something you didn't invent.  It's not fair, and it's not

10:20:02  5    respectful.

10:20:02  6            One other exhibit I want to you to look at if you

10:20:11  7    want to ask for it, in addition to the patents, is

10:20:12  8    Exhibit 36, Exhibit 230, and Exhibit 267 -- the patents,

10:20:18  9    Exhibit 36, 230, and 267.  Those are all exhibits that will

10:20:22  10   show you that these fraud prevention features, these

10:20:26  11   duplicate detection matters, these are all old, old

10:20:31  12   technology that predate these patents.

10:20:36  13           And when you're thinking about this blank page

10:20:39  14   where Mr. Weinstein could not identify the -- in the claims

10:20:44  15   where this value was, it's because he knew that that was

10:20:52  16   not something that had actually been invented.

10:20:55  17           Now, there's other evidence, of course, and you

10:20:57  18   should consider all of it fairly in using your common

10:21:01  19   sense.

10:21:02  20           Ms. Williams is now going to speak to you about

10:21:04  21   how the evidence fits into the charge.  I want to say one

10:21:07  22   thing to you, though.  Sometimes things come to you at the

10:21:10  23   very end.  I've been driving back and forth to court, and

10:21:13  24   there's a store on the corner of Alamo and Houston Street

10:21:18  25   that's called the Computer Box store.  And I drive by it

10:21:24  1  every day coming to court.  And the sign on the store says

10:21:28  2  "everything."  That's what the window says, "everything."

10:21:35  3       Now, I don't think that -- they claim to have

10:21:36  4  everything.  But if you looked inside the store, I bet you

10:21:40  5  find that they don't.  And that's the story of these

10:21:44  6  patents in this case.  They want to claim something very

10:21:45  7  broad that's everything, but when you really look inside,

10:21:51  8  they've got some things missing.

10:21:52  9       Thank you very much for your time.  I appreciate

10:21:55 10  it.

10:22:10 11       MS. WILLIAMS:  May it please the Court.  Good

10:22:11 12  morning.

10:22:11 13       THE COURT:  Proceed.

10:22:12 14       MS. WILLIAMS:  Now that Mr. Melsheimer has

10:22:15 15  reviewed the evidence with you, I want to take the time to

10:22:19 16  see how the law that Judge -- Judge Gilstrap gave you

10:22:22 17  applies to it.

10:22:22 18       There are four questions on the verdict form.  The

10:22:27 19  first question is:  Did USAA prove by a preponderance of

10:22:31 20  the evidence that Wells Fargo infringed any of the asserted

10:22:35 21  claims?

10:22:35 22       The Court's instructions say that if a product is

10:22:40 23  missing even one element or limitation of a claim, it does

10:22:44 24  not meet all of the requirements of the claim and is not

10:22:47 25  covered by the claim.  If a product is not covered by the

10:22:52   1   claim, it does not infringe that claim.

10:22:54   2          And, here, Wells Fargo Mobile Deposit is missing

10:22:59   3   one element from every claim of the '681 patent, the

10:23:05   4   confirming step.

10:23:06   5          Wells Fargo does not do the confirming step on the

10:23:11   6   device.  It is on the server.  And because of that, there

10:23:16   7   is no infringement.

10:23:19   8          Dr. Villasenor also informed you about another

10:23:23   9   important requirement that applies in a case like this.

10:23:29   10          As the Court just instructed you, infringement

10:23:32   11   requires that a single party be responsible for

10:23:39   12   infringement of the claim.  But both Dr. Conte and

10:23:43   13   Dr. Villasenor agree that the claims of the patents at

10:23:46   14   issue here require that both the mobile device and the bank

10:23:51   15   servers do certain things.  That means the claim is

10:23:56   16   divided.

10:23:57   17          That's the way USAA chose to write the claim.  And

10:24:01   18   there's nothing wrong with that.  But what that means here

10:24:03   19   is that, because the claim is divided, USAA must also prove

10:24:08   20   that Wells Fargo combines the elements of the claims, even

10:24:16   21   if it doesn't make each individual component or Wells Fargo

10:24:20   22   controls the system and obtains benefits from it.  And that

10:24:24   23   means it obtains benefits from each and every element of

10:24:31   24   the claimed system.

10:24:32   25          The Court instructed you that it's USAA's burden

10:24:34  1   to prove that, and USAA called one witness, one witness, to

10:24:41  2   prove infringement, Dr. Conte.

10:24:43  3          And Dr. Conte simply didn't do this analysis.

10:24:53  4          He was asked:  You think in your direct

10:24:56  5   examination, you went through each element and explained

10:24:58  6   how it benefitted the bank versus how it benefitted the

10:25:01  7   customer?

10:25:02  8          And his answer was:  Oh, no, I didn't do that.

10:25:07  9          And Dr. Villasenor checked Dr. Conte's work, and

10:25:10  10  he also concluded that Dr. Conte didn't do that.

10:25:12  11         Dr. Conte did not perform the analysis that the

10:25:19  12  law requires.

10:25:20  13         So for Question 1 on the verdict form, Wells Fargo

10:25:25  14  does not infringe any claim of either patent, and so the

10:25:29  15  answer to Question No. 1 is no.

10:25:32  16         The second question is:  Did Wells Fargo prove by

10:25:39  17  clear and convincing evidence that any of the following

10:25:42  18  asserted claims are invalid?

10:25:43  19         As the Court instructed you, even though the

10:25:48  20  Patent Office granted these patents, you and you alone have

10:25:56  21  the ultimate responsibility for deciding the validity of

10:26:01  22  the claims in this case.

10:26:02  23         USAA filed these patents on July 28th, 2017, for

10:26:10  24  an invention it claims it invented in 2006.  The evidence

10:26:16  25  presented to you this week shows that these patents are not

10:26:20    1    entitled to go back 10 years to Halloween 2006.

10:26:27    2            And why is that?  Because USAA can't claim in 2017

10:26:31    3    what it didn't write down in 2006.

10:26:36    4            The law says the specification is required to

10:26:39    5    contain a written description of the claimed invention

10:26:42    6    telling what the invention is, how it works, how to make

10:26:47    7    it, and how to use it.  And that is because under our laws,

10:26:50    8    the written description requirement helps ensure that the

10:26:56    9    patent applicant actually -- actually invented the claimed

10:27:01   10    subject matter.

10:27:02   11            The law says that exact words don't need to be in

10:27:06   12    there, but to satisfy -- to satisfy the written description

10:27:13   13    requirement, the patent specification must describe each

10:27:16   14    and every limitation of the patent claim in sufficient

10:27:21   15    detail.

10:27:22   16            Now, USAA, I expect, is going to try and focus

10:27:27   17    your attention on a part of the law that says you don't

10:27:30   18    have to spell out every detail.  And I expect they may show

10:27:38   19    you some of this on Page 17 of the charge.  And I want you

10:27:42   20    to watch for it because I think they'll only show you half

10:27:46   21    of a sentence from this charge on written description.

10:27:49   22            The law says a lot more than that.  And this

10:27:57   23    Court's charge in this very sentence says more than that.

10:28:00   24    The law requires enough detail in the specification to

10:28:04   25    convince persons of ordinary skill in the art that the

10:28:07  1   inventor -- inventor possessed the full scope of the

10:28:11  2   invention -- the full scope of the invention.

10:28:13  3          The Court said the specification must describe the

10:28:17  4   claimed invention in such a way that a person of ordinary

10:28:21  5   skill in the art would understand that the larger category

10:28:25  6   that is being claimed has been invented and not just the

10:28:28  7   single example.

10:28:30  8          In this case, the only evidence presented to you

10:28:34  9   in this trial on written description was from Mr. Saffici.

10:28:40  10  He told you the old specifications only cover a general

10:28:46  11  purpose computer and an image capture device.

10:28:49  12         But in 2017, USAA claimed more than that.  In

10:28:54  13  2017, USAA claimed the -- the original invention and

10:28:58  14  something new, something it did not describe in the 2006

10:29:03  15  specifications, a mobile device with a digital camera.

10:29:07  16         USA -- USAA wants to go on a word search, but it's

10:29:13  17  not enough to find the words disjointed in the patents.  As

10:29:17  18  I told you in opening statement, context matters.  And

10:29:21  19  Mr. Saffici is the only person -- the only person who took

10:29:26  20  that stand as an expert qualified from -- qualified by this

10:29:31  21  Court to put those words in context for you.

10:29:34  22         And Mr. Saffici, with his 53 years of hands-on

10:29:38  23  experience in this exact area of technology, told you that

10:29:45  24  the old specifications do not support USAA's new claims to

10:29:50  25  a mobile device with a camera or a portable device with a

10:29:55  1   camera together in a single unit.

10:29:56  2        Members of the jury, clear and convincing evidence

10:30:00  3   of this is right there in your notebook.  Figure 1 of both

10:30:07  4   the patents shows a general purpose computer at 111 and a

10:30:11  5   separate image capture device at 212.

10:30:15  6        They are not shown in a single unit, and you will

10:30:19  7   not find them described in the specifications as a single

10:30:24  8   unit anywhere.

10:30:26  9        Here, in Figure 3 from the '605 patent -- excuse

10:30:35  10  me, here, Figure 3 in the '605 patent describes the image

10:30:40  11  capture device as a scanner, as a digital camera, but in

10:30:46  12  both cases as a device, with communication connections to

10:30:57  13  couple a general purpose computer as shown in a separate

10:30:59  14  Figure 2 that has been shown to you throughout this trial,

10:31:08  15  and it is in your notebook.

10:31:09  16       USAA points you to this passage in '605 -- in the

10:31:13  17  '605 patent about PDAs.  But there's nothing in here about

10:31:15  18  using a PDA, an MP3 player, or a television for check

10:31:25  19  deposit.  The use of the word "PDA" in the specification no

10:31:29  20  more discloses the full scope of the invention in the

10:31:31  21  claims than the mention of the word "dormitories" does.

10:31:38  22       When we look at Figure 4, nothing discloses

10:31:40  23  depositing checks with a PDA.  There is nothing about the

10:31:46  24  specification in either one of these patents that discloses

10:31:48  25  the full scope of the claims in the patents.  The

10:31:53   1   specification is the foundation -- the foundation of the

10:31:57   2   claims.  Here, USAA filed claims 10 years after the --

10:32:03   3   after the fact without adequate foundation.

10:32:05   4          Every USAA employee, every USAA inventor testified

10:32:14   5   that USAA was not working on mobile phones in 2006.  USAA

10:32:22   6   didn't start until 2007.  Instead, in 2006 -- in 2006, when

10:32:27   7   USAA wrote its old specification, the foundation of

10:32:30   8   everything that we've been talking about this week, USAA

10:32:34   9   was only connecting two separate devices.

10:32:39   10          Not a single inventor took the stand to say

10:32:45   11   otherwise.  Not a single inventor took the stand to tell

10:32:48   12   you the specification describes a mobile phone or a mobile

10:32:52   13   device and a camera together.  Not one.

10:32:55   14          And not a single witness testified that the

10:32:59   15   patents were valid.  The only witness to testify on the

10:33:03   16   issue of validity was Mr. Saffici.

10:33:06   17          Because the patents are not entitled to that old

10:33:13   18   Halloween 2006 date, the earliest priority date they can

10:33:19   19   have is July 28th, 2017.  And because of that, the old 2006

10:33:23   20   patents anticipate the asserted patents, and the asserted

10:33:26   21   patents are invalid.

10:33:27   22          Mr. Saffici wasn't confused.  He's the only person

10:33:32   23   who applied the standards of invalidity in this case and

10:33:37   24   the only person who testified regarding validity in this

10:33:42   25   case.

10:33:43  1        So for Question 2, all the claims rise and fall

10:33:46  2   together.  Each claim is invalid.  So the answer to

10:33:51  3   Question 2 for each claim is yes.

10:33:54  4        The third question, if you get to it, is:  Did

10:34:01  5   USAA prove by a preponderance of the evidence that the

10:34:04  6   infringement you found in Question 1 was willful?  The law

10:34:08  7   says to be willful, you must find that Wells Fargo acted

10:34:13  8   egregiously, willfully, or wantonly.

10:34:17  9        And when we look at the totality of the

10:34:19  10  circumstances, there is no willfulness here.  Here, the

10:34:21  11  patents issued in 2018, and USAA sued Wells Fargo just

10:34:27  12  weeks after the patents issued.

10:34:29  13       The case is important to Wells Fargo, and the

10:34:31  14  rights to challenge USAA's patents is important to Wells

10:34:35  15  Fargo.  There has been no evidence that Wells Fargo has

10:34:38  16  acted reckless -- in reckless disregard or in callous

10:34:43  17  disregard to USAA's rights to these patents that issued in

10:34:48  18  July 2018.

10:34:49  19       The answer to Question No. 3 is no.

10:34:56  20       The fourth question is:  What sum of money if paid

10:35:01  21  now in cash has USAA proven by a preponderance of the

10:35:06  22  evidence would compensate USAA for its damages resulting

10:35:10  23  from infringement beginning on August 17th, 2018, through

10:35:14  24  the date of trial?

10:35:15  25       You only reach this question if you find that the

10:35:19  1   patents are infringed and not invalid.  And we don't think

10:35:24  2   you're going to reach this question.

10:35:26  3          But if you do reach this question, then USAA has

10:35:29  4   the burden to establish the amount of damages by a

10:35:34  5   preponderance -- preponderance of the evidence.

10:35:36  6          USAA has to prove its damages just like it has to

10:35:39  7   prove its other issues in this case.  If it's not proven,

10:35:45  8   they haven't met their burden.

10:35:47  9          The law requires that the amount of damages must

10:35:52  10  be based on the value attributable to the patented

10:35:56  11  technology alone.

10:36:00  12          USAA's expert agrees that the value is this

10:36:03  13  incremental contribution, what is new about the patent that

10:36:10  14  didn't exist before.  And if you don't claim it in the

10:36:14  15  claims, a damages expert can't attribute value to it.

10:36:18  16          Now, Mobile Deposit is something that is important

10:36:22  17  to Wells Fargo.  That's what table stakes means.  But what

10:36:29  18  they're claiming as value, these fraud prevention features,

10:36:33  19  that's not a table stake.  That's old technology.

10:36:35  20          THE COURT:  Five minutes remaining.

10:36:40  21          MS. WILLIAMS:  Repeating a saying, like a buzz

10:36:43  22  word, does it change the fact that what you have to value

10:36:45  23  here is what is claimed in the patent?  And that is true

10:36:47  24  for the $40 million number and the hundred million dollar

10:36:51  25  number.

10:36:53  1        The only credible evidence presented on damages is
10:37:01  2   from Wells Fargo, from Mr. Gerardi, and he went through his
10:37:03  3   three-step process for the apportionment.
10:37:05  4        He took into consideration things that aren't
10:37:09  5   claimed in the invention, including the hard work of Wells
10:37:12  6   Fargo to put together the systems that it uses, including
10:37:15  7   the fact that USAA hasn't licensed its patents to anyone,
10:37:20  8   and determined that a reasonable royalty -- excuse me, a --
10:37:25  9   determined that the damages in this case are $3.98 million
10:37:29  10  for a lump sum for the patents.  And that is the only
10:37:35  11  credible -- credible evidence that has been presented to
10:37:37  12  you.
10:37:38  13       If you reach Question 4, the answer is no more
10:37:42  14  than 3.98 million for a lump-sum license -- excuse me, 3.98
10:37:52  15  million for compensation.
10:37:56  16       Members of the jury, USAA has a simple strategy.
10:38:00  17  You've seen it all week.  You've seen it this morning.
10:38:03  18  You're going to see it when I sit down, and I don't have a
10:38:06  19  chance to stand up again.  USAA's strategy is to create a
10:38:09  20  false narrative.  Like I said in opening, sound bites
10:38:13  21  create a lot of drama, but they don't help us get to the
10:38:17  22  truth.
10:38:17  23       And how have they executed this strategy?  Well,
10:38:21  24  overstate your rights.  Patents are constitutional rights.
10:38:24  25  That's not true.

| | | |
|---|---|---|
| 10:38:25 | 1 | Patent rights are absolute.  That's not true. |
| 10:38:28 | 2 | Wells Fargo's only choices are to vacate or ask |
| 10:38:30 | 3 | permission.  That is not true. |
| 10:38:32 | 4 | The Patent Office issued the patents so written -- |
| 10:38:36 | 5 | written description can't be questioned.  That is not true. |
| 10:38:39 | 6 | These patents provide new fraud prevention |
| 10:38:42 | 7 | protections.  That is not true. |
| 10:38:44 | 8 | These patents are as big as the iPhone and as |
| 10:38:47 | 9 | important as the Google search engine and worth a hundred |
| 10:38:51 | 10 | million dollars.  That is not true. |
| 10:38:53 | 11 | Step 2 in the strategy has been to mischaracterize |
| 10:38:57 | 12 | the documents and the testimony showing only parts of |
| 10:39:01 | 13 | documents and only parts of definitions.  You were here |
| 10:39:05 | 14 | yesterday and saw -- and saw it from the start of the day |
| 10:39:07 | 15 | to the end of the day.  Confront witnesses with consistent |
| 10:39:12 | 16 | and incomplete quotes.  Suggest normal business activities |
| 10:39:17 | 17 | are misdeeds when their own inventor said he did the exact |
| 10:39:22 | 18 | same thing.  Unfairly malign and disrespect witnesses to |
| 10:39:26 | 19 | make them look bad.  Repeatedly saying buzz words like |
| 10:39:31 | 20 | "table stakes," suggesting that it's a misdeed.  Flashing |
| 10:39:35 | 21 | big numbers up that have no connection to any actual value |
| 10:39:38 | 22 | relevant to the inventions in this case. |
| 10:39:41 | 23 | And the third step has been to hide the motives |
| 10:39:44 | 24 | and those who could actually provide the information.  We |
| 10:39:47 | 25 | don't bring all the actual inventors who might actually say |

10:39:51  1   live in court that the 2006 specification never envisioned

10:39:56  2   mobile phones with cameras.  Ignore the new patents are all

10:39:59  3   about mobile phones.  Forget what the 2006 specification

10:40:02  4   says.  And ignore the obvious motive to snare your

10:40:06  5   competitors with new claims tacked on 10 years later.

10:40:11  6          You are the check and balance.  This is an

10:40:13  7   important dispute.  We respect the process.  We respect

10:40:19  8   your part in this process.  They are counting on this

10:40:23  9   process not to work the way it's supposed to.

10:40:27  10         Everyone will go home after your verdict.  Your

10:40:37  11  verdict will send USAA home with one of two messages.

10:40:43  12  Either you can't claim in 2017 what you didn't write down

10:40:47  13  in 2006, or you got away with it.  Please don't let them

10:40:54  14  get away with it.

10:40:56  15         Thank you.

10:40:56  16         THE COURT:  Plaintiff may now present its final

10:41:02  17  closing argument.

10:41:10  18         MR. SHEASBY:  Ladies and gentlemen of the jury,

10:41:16  19  the first question you will be asked to consider is

10:41:21  20  infringement.  There was no discussion whatsoever of the

10:41:27  21  '605 patent in Wells Fargo's 40 minutes of presentation.

10:41:31  22  There's a reason for that.  They have no technical basis on

10:41:35  23  which to dispute the infringement of the '605 patent.

10:41:38  24         Now, there is an interesting argument, and the

10:41:41  25  interesting argument is that Wells Fargo doesn't control

10:41:44  1  and benefit from the system that it constructs.  That's

10:41:49  2  what they're trying to tell you.

10:41:50  3       Well, let's look at the evidence.  Professor

10:41:54  4  Conte, who is the only expert who analyzed it, said

10:41:57  5  expressly that Wells Fargo ultimately controls the software

10:41:59  6  and the hardware.  That was Wells -- that was USAA's --

10:42:03  7  Dr. Conte's analysis.  It was not disputed.

10:42:06  8       Do you really think a bank with more branches and

10:42:09  9  more tellers than any other bank in the United States that

10:42:14  10 is using a system to, as Ms. Lockwood say -- says, generate

10:42:20  11 at least a dollar every time the system is used, doesn't

10:42:24  12 control and benefit from each element of that system?

10:42:26  13      One of your most powerful tools is common sense.

10:42:30  14 What does common sense tell you about their claim that it's

10:42:34  15 their customer's fault and that they don't control and

10:42:38  16 benefit from each element of the system?

10:42:40  17      The next question you must consider is

10:42:46  18 willfulness.  You can still be liable for infringement even

10:42:47  19 if you are willful.

10:42:48  20      And Mr. -- Mr. Melsheimer said two things, and I

10:42:53  21 wrote them down because they were important to me.

10:42:55  22      First, he said that USAA laid in wait for 10

10:43:00  23 years.  But that has no connection to reality because

10:43:06  24 Mr. Hecht, Wells Fargo's corporate representative, although

10:43:11  25 he first denied it, admitted that since 2007 -- '10,

10:43:17  1  they've been tracking our patents.

10:43:18  2          The reason why this is occurring now is because

10:43:20  3  USAA took the right steps, as Mr. Brady explained.  We went

10:43:23  4  to the Patent Office.  We re-presented our claims, and we

10:43:28  5  asked them to confirm the scope of our right.

10:43:29  6          The reason why there are no licenses is because

10:43:31  7  the step we have to take to get Wells Fargo, the bank with

10:43:37  8  more branches and more tellers than -- and more ATMs than

10:43:41  9  other banks in the United States to take responsibility for

10:43:43  10  its conduct is a federal court.  And we wish that wasn't

10:43:46  11  the case.

10:43:47  12          But when we approached them about licensing, what

10:43:50  13  you heard happen, even though Wells Fargo's corporate

10:43:53  14  representative didn't even know about it, we were forced to

10:43:58  15  come here.

10:43:58  16          Now, Mr. Melsheimer said something else which I

10:44:02  17  think is very important.  He says we're an innovative

10:44:05  18  company.  Well, words are just words.  We have the

10:44:10  19  confidential records from Wells Fargo's executives, which

10:44:14  20  admit that they had no capability to create this system.

10:44:18  21  That's what's in the record.

10:44:20  22          And then he said something else.  He said this is

10:44:23  23  just the way business works.  This is the way we want

10:44:27  24  business to work.

10:44:30  25          Let me be very clear.  Leveraging USAA's designs

| | | |
|---|---|---|
| 10:44:36 | 1 | is maybe the way Wells Fargo's business works, but it's not |
| 10:44:40 | 2 | the way USAA's business works.  And it's not the way |
| 10:44:43 | 3 | business in the United States should work. |
| 10:44:46 | 4 | Wells Fargo had no right to leverage the labor of |
| 10:44:50 | 5 | the Applied Research Division, and they have no right to |
| 10:44:53 | 6 | come here and stand here and tell you, that's just the way |
| 10:44:57 | 7 | it works, folks.  That's how business works.  That's how we |
| 10:45:00 | 8 | want business to work. |
| 10:45:01 | 9 | The next issue you're going to be asked to decide |
| 10:45:06 | 10 | is validity.  And one of the things that I think is really |
| 10:45:12 | 11 | important is to understand what this invention is about. |
| 10:45:17 | 12 | One of the issues I struggled with throughout this |
| 10:45:20 | 13 | week is I could never get an explanation from any Wells |
| 10:45:25 | 14 | Fargo witness, why does it matter for the invention whether |
| 10:45:28 | 15 | the camera is separate or connected?  What's this invention |
| 10:45:32 | 16 | about?  This invention is about using a digital camera, |
| 10:45:36 | 17 | connecting it to a general purpose processor, and then |
| 10:45:39 | 18 | using software so that you can control that camera to |
| 10:45:42 | 19 | cap -- capture the picture.  That's the powerful insight, |
| 10:45:45 | 20 | the sophisticated software system that was created. |
| 10:45:48 | 21 | Nothing turns on the number of boxes you have. |
| 10:45:52 | 22 | And because nothing turns on the number of boxes you have, |
| 10:45:55 | 23 | the specification said we don't care.  Communicatively |
| 10:46:00 | 24 | couple it any way you want.  That's what makes it powerful. |
| 10:46:04 | 25 | They're turning the power of the insight of the |

10:46:08   1   inventors and using it as a criticism.  Wells Fargo doesn't

10:46:13   2   recognize something because they're not USAA.  Wells Fargo

10:46:18   3   made its members buy these expensive scanners.

10:46:22   4        And what did we do to our members?  We created a

10:46:25   5   foundation that can be used with any digital device you can

10:46:29   6   imagine.  And 10 years from now, when there's a different

10:46:32   7   digital device, this system can still use it.  And that was

10:46:37   8   the power in 2006.

10:46:45   9        Mr. Saffici admitted this was novel and

10:46:49  10   non-obvious.  If this wasn't an invention, if this wasn't

10:46:53  11   powerful, if what we invented was old, then how could it be

10:46:59  12   novel and non-obvious?

10:47:00  13        Common sense.

10:47:04  14        Dr. Conte pointed to the specification, pointed

10:47:07  15   that it expressly said any device a consumer can use, as

10:47:13  16   long as it has a camera, we can meet you where you are.

10:47:17  17   And he testified under oath, without contradiction, that

10:47:21  18   everyone knew in 2006 that consumer devices had digital

10:47:26  19   cameras as part of them.

10:47:27  20        Mr. Saffici -- this is his testimony.  This is his

10:47:35  21   testimony under oath.  You said that the specification

10:47:39  22   teaches that the handheld device may include a digital

10:47:41  23   camera?

10:47:41  24        For the last 40 minutes they have been trying to

10:47:49  25   convince you that this specification doesn't teach a

10:47:51  1   digital device that can include -- a handheld device that

10:47:57  2   can include a digital camera.  Literally, they've spent the

10:48:01  3   last 40 minutes trying to teach you that.  And their own

10:48:04  4   witness admitted it repeatedly on the stand.

10:48:07  5          Figure 3.  Figure 3 shows a device that

10:48:13  6   Mr. Saffici was -- admitted -- admitted to on examination

10:48:16  7   has within it an image capture apparatus and a general

10:48:20  8   purpose processing device.  It can be connected directly to

10:48:24  9   a server, it can be connected to another computer, and it's

10:48:28 10   all in one box.

10:48:29 11          Now, why is USAA's inventors teaching it this way?

10:48:34 12   Why are they teaching it all in one box?  And the reason is

10:48:38 13   because they don't care.  They don't care because they meet

10:48:44 14   their members where they are, and that's exactly what the

10:48:51 15   specification teaches in Figure 3.  Connect it directly to

10:48:55 16   a server, connect it to another computer, we don't care

10:48:58 17   because we are here to meet you.

10:49:00 18          Mr. Brady said it clear.  It was irrelevant to

10:49:07 19   USAA what physical box housed the digital camera.  It's not

10:49:10 20   relevant to our goals, and it's not relevant to the goals

10:49:13 21   of the patents.  And you didn't hear one witness, one

10:49:16 22   witness that said the number of boxes you use has any

10:49:21 23   connection to any of the issues, any of the problems of

10:49:26 24   image quality that this patent is so focused on.

10:49:32 25          One of the most striking comments that was made in

10:49:35  1  the last 40 minutes is the claim that no inventor -- that

10:49:39  2  all the inventors testified that they didn't do any work on

10:49:42  3  mobile phones before 2007.

10:49:44  4  Now, let me -- 2007.  Now, let me be absolutely

10:49:47  5  clear.  That is an irrelevant argument.  It's a

10:49:52  6  distraction.  It doesn't matter what devices we use because

10:49:55  7  the system we built works with all devices.  It just so

10:50:00  8  happens to be inaccurate.

10:50:01  9  Mr. Oakes, the head of Applied Research, made it

10:50:04  10  clear that before October of 2006, USAA was already

10:50:08  11  experimenting with mobile phones.  It's irrelevant.  It's

10:50:13  12  legally irrelevant, but it is unfortunately the case that I

10:50:19  13  have to stand here and show that statements that were made

10:50:22  14  to you just minutes ago have no connection whatsoever to

10:50:26  15  reality or to the record in this case.

10:50:28  16  The last issue we're going to discuss is damages.

10:50:46  17  Here's what the record evidence shows.  $3.50 when we use

10:50:51  18  their ATM.  60 cents when we use the Zelle system they

10:50:57  19  partially own.

10:50:58  20  What does USAA get?  Wells Fargo says you get

10:51:03  21  3 cents, you get a cent.  You should feel lucky.  That's

10:51:08  22  just the way business works, USAA.

10:51:09  23  I respectfully submit you -- to you that's not the

10:51:13  24  way business works.  The reality is that Wells Fargo's own

10:51:16  25  expert admit -- Wells Fargo's own corporate representative

10:51:19  1  admits that in just one year, it saved between 60 and

10:51:24  2  $120 million from using mobile remote deposit capture.

10:51:29  3          And what's interesting about that analysis is it

10:51:36  4  actually does exactly what Wells Fargo said should be done.

10:51:40  5  Wells Fargo said we shouldn't get any credit for the back

10:51:45  6  end.  We shouldn't get any credit for the back end that

10:51:48  7  they said existed before.

10:51:49  8          But if you remember, they told you that all the

10:51:52  9  different routes, teller, ATM, MRDC, all feed into the same

10:51:59  10  background.  They use that phrase funnels within funnels.

10:52:04  11          This is what the analysis shows.  All these three

10:52:07  12  channels use the same back end.  It's $2.40 for the teller.

10:52:13  13  It's $1.41 for the ATM.  And it's 35 cents for MRDC.

10:52:20  14          The front end.  The MRDC system that USAA

10:52:24  15  developed saves Wells Fargo between a dollar and $2.00

10:52:29  16  every single time it uses it.  That's what's in the record.

10:52:32  17  And there are 120 million infringing deposits using this

10:52:36  18  system -- 120 million during the damages period alone.

10:52:42  19          A second way you can think about value is that

10:52:49  20  Wells Fargo made $1.2 billion solely during the damages

10:52:55  21  period from the MRDC system, in profits.

10:53:01  22          And by the way, even Wells Fargo's own expert who

10:53:04  23  says we get a penny and we should feel lucky for it

10:53:08  24  admitted that Wells Fargo made $339 million from the MRDC

10:53:15  25  system alone in just one year.

1377

10:53:23   1          THE COURT:  You have five minutes remaining,

10:53:25   2   counsel.

10:53:25   3          MR. SHEASBY:  The reason for that power is because

10:53:31   4   the claims at issue --

10:53:36   5          Can I have Slide 55, Mr. Huynh?

10:53:40   6          -- are not narrow.  They're not trivial.  They're

10:53:45   7   broad for the foundation of MRDC, which is what Wells

10:53:52   8   Fargo's expert has admitted.

10:53:57   9          I -- when we talked on Monday, at the end of it, I

10:54:01  10   talked about how the fact that I wanted you to think of

10:54:04  11   jury service as not just a duty but a right.  And I've been

10:54:10  12   thinking about that a lot more this week, which is that

10:54:12  13   this has been a hard week.  It's been very long.  It's been

10:54:17  14   very complicated.

10:54:19  15          But 231 years ago, the founders placed this in our

10:54:23  16   hands.  They placed the responsibility to decide very

10:54:28  17   important questions in our hands.

10:54:30  18          And it remains that way today, and it will remain

10:54:35  19   that way in the future for as long as we have our republic.

10:54:40  20   And I think that's something sacred.  I think this power in

10:54:45  21   your hands is very important.  USAA is in your hands.  Our

10:54:53  22   members are in your hands.  Chuck Oakes, the Applied

10:54:58  23   Research decision -- division is in your hands.  The

10:55:01  24   decades of research, the hundreds of millions of dollars

10:55:04  25   that led to this are in your hands.

10:55:07  1         Ladies and gentlemen of the jury, this case is --

10:55:09  2  this case is in your hands, and I thank you for your time.

10:55:13  3  And USAA thanks you.

10:55:16  4         THE COURT:  All right.  Ladies and gentlemen, I'd

10:55:24  5  like to give you a few final instructions before you begin

10:55:27  6  your deliberations.

10:55:28  7         You must perform your duty as jurors without bias

10:55:33  8  or prejudice as to any party.  The law does not permit you

10:55:37  9  to be controlled by sympathy, prejudice, or public opinion.

10:55:43 10  All parties expect that you will carefully and impartially

10:55:47 11  consider all the evidence, follow the law as I have given

10:55:53 12  it to you, and reach a just verdict, regardless of the

10:55:57 13  consequences.

10:55:58 14         Answer each question in the verdict form based on

10:56:01 15  the facts as you find them to be, following the

10:56:04 16  instructions that the Court has given you on the law.  As

10:56:10 17  I've said, do not decide who you think should win the case

10:56:13 18  and then answer the questions to reach that result.  Again,

10:56:18 19  I remind you, your answers and your verdict must be

10:56:21 20  unanimous.

10:56:22 21         You should consider and decide this case as a

10:56:29 22  dispute between parties of equal standing in the community,

10:56:33 23  equal worth, and holding the same or similar stations in

10:56:35 24  life.  This is true in patent cases between corporations,

10:56:39 25  partnerships, other business entities, and individuals.

| | | |
|---|---|---|
| 10:56:43 | 1 | A patent owner is entitled to protect his rights |
| 10:56:46 | 2 | under the laws of the United States.  And this includes |
| 10:56:49 | 3 | bringing a suit in a United States District Court for money |
| 10:56:53 | 4 | damages for infringement. |
| 10:56:56 | 5 | The law recognizes no distinction amongst types of |
| 10:57:00 | 6 | parties.  All corporations, partnerships, and other |
| 10:57:03 | 7 | business organizations stand equal before the law, |
| 10:57:08 | 8 | regardless of their size, regardless of who owns them, and |
| 10:57:11 | 9 | they are to be treated as equals. |
| 10:57:13 | 10 | Now, when you retire to the jury room to |
| 10:57:16 | 11 | deliberate on your verdict, as I've told you, you'll each |
| 10:57:19 | 12 | have a written copy of these final jury instructions to |
| 10:57:22 | 13 | take with you. |
| 10:57:24 | 14 | If during your deliberations you desire to review |
| 10:57:27 | 15 | any of the exhibits -- not the demonstratives, but the |
| 10:57:32 | 16 | exhibits which the Court has admitted into evidence, then |
| 10:57:35 | 17 | you should advise me by a written note signed by your |
| 10:57:38 | 18 | foreperson and delivered to the Court Security Officer who |
| 10:57:41 | 19 | will bring it to me.  I will then send you that exhibit or |
| 10:57:45 | 20 | those exhibits. |
| 10:57:47 | 21 | Once you retire, you should first select your |
| 10:57:50 | 22 | foreperson and then conduct your deliberations.  If you |
| 10:57:57 | 23 | recess during your deliberations, follow all the |
| 10:58:00 | 24 | instructions that the Court has given you about your |
| 10:58:02 | 25 | conduct during the trial. |

10:58:04   1          After you've reached a unanimous verdict, your

10:58:06   2   foreperson is to fill in your answers to the questions in

10:58:10   3   the verdict form reflecting your unanimous decisions.

10:58:15   4          Do not reveal your answers until -- until such

10:58:18   5   time as you're discharged or otherwise directed by me.  And

10:58:22   6   you must never disclose to anyone, not even to me, your

10:58:26   7   numerical division on any unanswered question.

10:58:29   8          Your notes, if you've taken them over the course

10:58:34   9   of the trial, are aids to your memory only.  If your memory

10:58:37  10   should differ from your notes, then rely on your memory and

10:58:40  11   not your notes.  The notes are not evidence, and a juror

10:58:45  12   who has not taken notes should rely on his or her own

10:58:48  13   independent recollection of the evidence and not be unduly

10:58:52  14   influenced by the notes of other jurors.

10:58:54  15          Notes are not entitled to any greater weight than

10:58:57  16   the recollection or impression of each juror about the

10:59:02  17   testimony.

10:59:02  18          If you want to communicate with me at any time

10:59:08  19   during your deliberations, you should give a written

10:59:11  20   question or a message to the jury -- or, excuse me, to the

10:59:13  21   Court Security Officer, signed by the jury foreperson, and

10:59:16  22   the Court Security Officer will then bring it to me.

10:59:18  23          I'll then re -- reply to you as promptly as

10:59:25  24   possible, either in writing or by having you brought back

10:59:28  25   into the jury -- into the courtroom where I can address you

10:59:31   1   orally.

10:59:32   2          I will always disclose to the attorneys in the

10:59:35   3   case for both parties your question and my response before

10:59:37   4   I answer your questions.

10:59:39   5          After you have reached a verdict and I have

10:59:43   6   discharged you from your role as jurors, you're not

10:59:47   7   required to talk with anyone about your service in this

10:59:49   8   case.  But at that point, you will be free to talk with

10:59:53   9   anyone of your choosing about your service in the case.

10:59:57   10  That decision at that time will be yours and yours alone to

11:00:01   11  make.

11:00:01   12         I'm now going to hand one clean copy of the

11:00:05   13  verdict form and eight written copies of these instructions

11:00:08   14  to the Court Security Officer to deliver to the jury in the

11:00:11   15  jury room.

11:00:13   16         Ladies and gentlemen of the jury, you may now

11:00:25   17  retire to the jury room to deliberate.  We await your

11:00:28   18  verdict.

11:00:29   19             COURT SECURITY OFFICER:  All rise.

11:00:31   20         (Jury out.)

11:00:32   21         THE COURT:  Counsel, you are welcome to wait here

11:00:58   22  in the courtroom or the courthouse.  I also understand that

11:01:03   23  you may wish to wait at locations away from the courthouse.

11:01:08   24  That's perfectly fine.

11:01:10   25         The Court has in its possession a cell phone

| 11:01:13 | 1 | number for Mr. Bunt and Mr. Hill.  In the event I need to |
| 11:01:17 | 2 | contact you upon receipt of a question or return of a |
| 11:01:20 | 3 | verdict, I'll call Mr. Bunt, and I'll call Mr. Hill to |
| 11:01:24 | 4 | notify each trial team.  So those lawyers should have their |
| 11:01:28 | 5 | cell phones charged and turned on. |
| 11:01:30 | 6 | Also, I'm going to ask each side to select one |
| 11:01:34 | 7 | cell phone number from a member of its trial team that I |
| 11:01:38 | 8 | can give to the jury after I meet with them after I've |
| 11:01:41 | 9 | accepted their verdict so that they may, if they elect, |
| 11:01:46 | 10 | call that person to discuss their service as jurors and to |
| 11:01:51 | 11 | discuss the trial, if they choose to do so. |
| 11:01:53 | 12 | So if you will, among yourselves, pick one |
| 11:01:56 | 13 | person's name and phone number and give that to me and my |
| 11:02:00 | 14 | staff during the deliberations so I can give that to the |
| 11:02:04 | 15 | jury after I've accepted their verdict and before they |
| 11:02:06 | 16 | leave the courthouse. |
| 11:02:07 | 17 | They may choose to call and discuss their service. |
| 11:02:10 | 18 | They may not.  But that's an additional option I've |
| 11:02:14 | 19 | recently been giving them, rather than them stopping you |
| 11:02:19 | 20 | outside on the front steps to talk about their service as |
| 11:02:22 | 21 | jurors. |
| 11:02:22 | 22 | All right.  Counsel, awaiting either a question |
| 11:02:26 | 23 | from the jury or the return of a verdict, we stand in |
| 11:02:29 | 24 | recess. |
| 11:02:30 | 25 | COURT SECURITY OFFICER:  All rise. |

| | | |
|---|---|---|
| 11:02:33 | 1 | (Recess.) |
| 02:09:10 | 2 | (Jury out.) |
| 02:09:10 | 3 | COURT SECURITY OFFICER:  All rise. |
| 02:09:11 | 4 | THE COURT:  Be seated, please. |
| 02:18:05 | 5 | Counsel, the Court's received the following |
| 02:18:24 | 6 | message from the jury: |
| 02:18:26 | 7 | Quote, we have a verdict. |
| 02:18:28 | 8 | And it's signed by Mr. Johns, who, as I recall, is |
| 02:18:34 | 9 | Juror No. 3, as the foreperson. |
| 02:18:36 | 10 | I'm going to mark this -- since we've not received |
| 02:18:40 | 11 | any notes from the jury previously, I'm going to mark this |
| 02:18:43 | 12 | as Item 1, and I'll hand it to the courtroom deputy to be |
| 02:18:46 | 13 | included in this case. |
| 02:18:47 | 14 | All right.  I'm about to bring the jury in and |
| 02:18:51 | 15 | receive the verdict. |
| 02:18:52 | 16 | As indicated, I'll remind everybody there should |
| 02:18:57 | 17 | be no outburst or audible or visual expressions no matter |
| 02:19:02 | 18 | what the result is. |
| 02:19:04 | 19 | All right.  Is there any reason from either |
| 02:19:09 | 20 | Plaintiff or Defendant I should not bring the jury in and |
| 02:19:12 | 21 | receive the verdict at this time? |
| 02:19:15 | 22 | MR. SHEASBY:  Nothing from Plaintiffs, Your Honor. |
| 02:19:16 | 23 | MR. HILL:  No, Your Honor. |
| 02:19:17 | 24 | THE COURT:  Let's bring in the jury, please, |
| 02:19:20 | 25 | Ms. Denton. |

```
02:19:23   1              COURT SECURITY OFFICER:  All rise.

02:19:34   2              (Jury in.)

02:19:37   3              THE COURT:  Please be seated.

02:19:48   4              Mr. Johns, I understand that you're the foreperson

02:19:57   5    of the jury; is that correct?

02:19:59   6              THE FOREPERSON:  Yes, sir.

02:20:00   7              THE COURT:  Has the jury reached a unanimous

02:20:02   8    verdict?

02:20:03   9              THE FOREPERSON:  Yes, sir, we have.

02:20:05  10              THE COURT:  Will you hand the completed form to

02:20:07  11    the Court Security Officer, who will bring it to me?

02:20:13  12              All right.  Ladies and gentlemen, I'm going to

02:21:02  13    announce the verdict into the record at this time.  And I'd

02:21:06  14    like to ask each member of the jury to listen very

02:21:10  15    carefully as I announce the record publicly -- the verdict

02:21:16  16    publicly.  Because after I've done that, I'm going to poll

02:21:19  17    the jury to make sure that this is the unanimous verdict of

02:21:21  18    all eight members of our jury.

02:21:23  19              Turning to the verdict form, and beginning on

02:21:30  20    Page 4 where Question 1 is located:  Did USAA prove by a

02:21:37  21    preponderance of the evidence that Wells Fargo infringed

02:21:40  22    any of the asserted claims?

02:21:42  23              The jury's answer is:  Yes.

02:21:45  24              Turning to Page 5 where Question 2 of the verdict

02:21:51  25    form is located:  Did Wells Fargo prove by clear and
```

02:21:55   1   convincing evidence that any of the following asserted

02:21:58   2   claims are invalid?

02:22:00   3          The jury has answered "no" to every one of the

02:22:09   4   claims, being Claims 1, 3, 11, 12, 13, 14, and 22 of the

02:22:17   5   '605 patent, and Claims 12, 13, 14, 20, 22, and 30 of the

02:22:24   6   '681 patent.

02:22:24   7          Turning then to Page 6 of the verdict form wherein

02:22:30   8   Question 3 is found:  Did USAA prove by a preponderance of

02:22:36   9   the evidence that the infringement you found in Question

02:22:38   10  No. 1 was willful?

02:22:40   11         The jury's answer is:  Yes.

02:22:44   12         Turning then to Page 7 wherein Question 4 is

02:22:52   13  found:  What sum of money, if any, paid now in cash has

02:22:57   14  USAA proven by a preponderance of the evidence would

02:22:58   15  compensate USAA for its damages resulting from infringement

02:23:03   16  beginning on August the 17th, 2018, and through the date of

02:23:08   17  trial?

02:23:09   18         The jury's answer is:  $102 million --

02:23:21   19  $102,792,510.00.  I'll say that again.  $102,792,510.00.

02:23:30   20         Turning to the last page of the verdict form,

02:23:35   21  Page 8, I find that it's dated with today's date, and it's

02:23:39   22  signed by Mr. Travis Johns as foreperson of the jury.

02:23:41   23         Ladies and gentlemen of the jury, let me poll you

02:23:46   24  to make sure on the record that this is the unanimous

02:23:49   25  verdict of all eight members of the jury.

02:23:52  1          If this is your verdict as I have read it, would

02:23:56  2    you please stand?

02:23:58  3              (Jury polled.)

02:24:04  4          THE COURT:  Thank you.  Please be seated.

02:24:05  5          Let the record reflect that all eight members of

02:24:13  6    the jury immediately rose and stood in response to the

02:24:15  7    Court's question to poll them with regard to the unanimous

02:24:18  8    nature of the verdict, and the Court finds that this

02:24:20  9    verdict is the unanimous verdict of all eight members of

02:24:24  10   the jury.

02:24:24  11         The Court accepts the verdict, and I'll deliver

02:24:27  12   the original verdict to the courtroom deputy to be included

02:24:30  13   in the papers of this cause.

02:24:32  14         Ladies and gentlemen, that now -- this now

02:24:36  15   completes the trial of this case.  From the very beginning,

02:24:40  16   I have instructed you, probably more times than you wanted

02:24:43  17   to hear, about not discussing this case with anyone and not

02:24:47  18   discussing it with each other until you retire to

02:24:50  19   deliberate.

02:24:50  20         I'm releasing you from those instructions, and I'm

02:24:53  21   releasing you from all the instructions I've given you.  In

02:24:57  22   fact, I'm discharging you as jurors in this case.

02:25:00  23         That means, ladies and gentlemen, you're

02:25:02  24   absolutely free to talk about this case and your service

02:25:05  25   with anyone you'd like to.  That also means you don't have

02:25:08   1   to talk to anybody about this case or your service if you

02:25:11   2   don't want to.  The -- the decision is yours 100 percent

02:25:17   3   and no one else's.

02:25:18   4        And I will tell you that the custom and practice

02:25:21   5   in this court, at least for more than 35 years, because it

02:25:25   6   was that way when I started practicing law here in 1981, is

02:25:28   7   that members of this trial team, who would very much like

02:25:32   8   to know what you thought about the trial, whether they're

02:25:34   9   on the winning side or the losing side, would very much

02:25:38  10   like to have your input.  But they are not able to initiate

02:25:40  11   a conversation with you.  That's the practice here.

02:25:43  12        If they're going to hear from you in any regard,

02:25:47  13   it's going to be because -- it's going to be because you

02:25:50  14   chose to initiate a conversation with them.

02:25:52  15        That's your choice.  And I suspect that, unless

02:25:58  16   the rain has already started, they'll probably be out on

02:26:02  17   the front steps as you leave the courthouse in hopes that

02:26:05  18   you want to stop and talk with them.

02:26:07  19        If you do, stop and talk.  I promise you, they'll

02:26:10  20   be interested to hear from you.

02:26:12  21        If you don't want to discuss it, don't stop and

02:26:14  22   talk.  No one's going to stop -- stop you.  No one's going

02:26:17  23   to try to initiate a conversation with you.  Again, it's

02:26:20  24   completely your decision.

02:26:21  25        Also, ladies and gentlemen, I want to tell you how

02:26:26  1   much the Court appreciates your service in this case.  This

02:26:30  2   has been -- this has been a hard week for all of us, but

02:26:33  3   especially for you.

02:26:35  4       Many of you have had to drive a great distance to

02:26:38  5   get here every day and to get home at night.  You stayed

02:26:42  6   late, as I told you we would, in hopes that we could get

02:26:45  7   this done in a week and not extend it into another week.

02:26:48  8       You've all made an important -- an important and a

02:26:51  9   significant sacrifice, and you've rendered a very important

02:26:55  10  public service by serving on this jury.

02:26:57  11      And I think it's worthy of -- of recognition,

02:27:01  12  appreciation, and thanks.

02:27:03  13      As a matter of fact, ladies and gentlemen, it's my

02:27:06  14  practice, since I've been on the bench, whenever I receive

02:27:09  15  a verdict in a case like this and I've accepted that

02:27:12  16  verdict and discharged the jury, to ask the jury to do me a

02:27:15  17  favor.  I'm going to ask you to do me that favor right now.

02:27:19  18      And, that is, before you leave the building, I'd

02:27:21  19  like you, as you get up out of these seats in a few

02:27:25  20  minutes, I'd like you to go back to the jury room and let

02:27:27  21  me come into the jury room because I would like to shake

02:27:30  22  each one of your hands.  I'd like to look each one of you

02:27:34  23  in the eye and tell you personally thank you for your

02:27:36  24  service to our nation and to the judiciary by serving in

02:27:40  25  this case as jurors.

02:27:41   1          I promise I won't keep you.  But if you would

02:27:44   2   afford me a personal privilege of that type, I think it's

02:27:48   3   worthy of personal, individualized thanks for what you've

02:27:53   4   done.

02:27:53   5          And after that, you'll be free to go.

02:27:57   6          All right.  I've accepted the verdict in this

02:28:02   7   case.

02:28:03   8          Ladies and gentlemen, if you'll meet me in the

02:28:05   9   jury room, I will be right there in just a moment.

02:28:08  10          Counsel, this case is now closed, and you are

02:28:11  11   excused.

02:28:12  12          The Court stands in recess.

02:28:14  13          COURT SECURITY OFFICER:  All rise.

02:28:15  14          (Court adjourned.)

          15

          16

          17

          18

          19

          20

          21

          22

          23

          24

          25

CERTIFICATION

      I HEREBY CERTIFY that the foregoing is a true and correct transcript from the stenographic notes of the proceedings in the above-entitled matter to the best of my ability.


 /S/ Shelly Holmes                          1/10/2020
SHELLY HOLMES, CSR, TCRR                     Date
OFFICIAL REPORTER
State of Texas No.: 7804
Expiration Date: 12/31/20